LaW OFFICES
**MANOLIO & FIRESTONE, PLC**
8686 E. San Alberto Dr., Suite 200
Scottsdale, Arizona  85258
(480) 222-9100
vmanolio@mf-firm.com
Veronica L. Manolio, SBN 020230
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Takeover Industries, Inc., a Nevada corporation,<br><br>Plaintiff,<br><br>v.<br><br>Michael Holley and Chirine Holley, husband and wife; David Eisenberg and Jane Doe Eisenberg, husband and wife;<br><br>Defendants. | Case No.<br><br>**VERIFIED COMPLAINT** |

For its claims against the Defendants, Plaintiff Takeover Industries, Inc. alleges as follows:

## THE PARTIES

1. Plaintiff Takeover Industries, Inc. is a Nevada corporation with offices in Nevada and California (and its principal place of business in California).

2. Defendants Michael Holley and Chirine Holley are residents of this district and believed to reside in Cave Creek, Arizona.

3. Defendants David Eisenberg and Jane Doe Eisenberg are believed to be residents of Carmel, Indiana.

4. Plaintiff is informed and believes that each of the individual Defendants took actions as agent, employee, and/or representative of each of the other Defendants.

In taking the actions alleged, each Defendant was acting within the course and scope of the agency, representation, or employment relationship with knowledge, acquiescence and/or ratification by each and every other Defendant for the acts taken.

5. To the extent that any Defendant is married, it is alleged that each actor took the actions for the benefit of and on behalf of his/her martial community.

## JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to 28 U.S.C. §1332 as the controversy is between citizens of different states and the amount in controversy exceeds $75,000.

7. Venue is proper in this District pursuant to 28 U.S.C. §1391 as a substantial part of the events and omissions giving rise to the claims occurred in this District. Moreover, Defendants each used the means and instrumentalities of interstate commerce, including but not limited to: interstate telephone communications; interstate electronic communications; and interstate transactions between federally insured banking institution(s), all originating from within this District and/or benefitting this District.

## GENERAL ALLEGATIONS

8. Upon information and belief, Defendant Michael Holley is a sales professional specializing in the sports and nutraceutical fields.

9. Defendant Holley has been involved in several companies that have developed or promoted sports beverages and related products. On information and belief, Defendant Holley has experience in management, accounting, and corporate structuring.

10. In or about 2021, Defendant Holley and a colleague named Toby McBride, an established beverage industry veteran, put together a company and brand based upon performance water products and energy drinks. The products were to be marketed under the brand NXT LVL.

11. Defendant Holley and Mr. McBride incorporated in Nevada as Takeover Industries, Inc. ("Takeover") but wished to operate as a publicly-traded company.

12. Defendant Holley was instrumental in a deal where Labor Smart, Inc., a publicly-traded entity, trading on the OTC Markets under the symbol LTNC, acquired Takeover, and Takeover became a wholly-owned subsidiary of Labor Smart.

13. After the acquisition of Takeover by Labor Smart, Defendant Holley was named a Director of Labor Smart and became the Chief Operating Officer and Treasurer of Takeover, while also sitting on the Board of Directors of Takeover.

14. Defendant Holley and Mr. McBride worked with a well-known fitness and nutrition advocate, Joseph Pavlik, who was also an Officer and on the Board Takeover and an Officer of Labor Smart.

15. Defendant Holley, along with Mr. Pavlik and Mr. McBride, quickly put together a brand that developed an industry buzz. The flagship products were "NXT LVL" hydrogen-infused water and an energy shot developed by Mr. Pavlik.

16. Takeover began to work with Jason Tucker, a branding and business consultant with expertise in licensing, leveraging intellectual property, Internet sales, marketing, and finance. Mr. Tucker saw the potential of Takeover and put his efforts into moving the company forward on all fronts.

17. Takeover offered Mr. Tucker an ownership/shareholder interest in the company as payment for his services. By June 10, 2021, the Directors of Takeover held a "Special Meeting" and resolved that:

    a. The Company would have four Directors: Defendant Holley, Messrs. Tucker and Pavlik, and a gentleman named Toby McBride;

    b. Mr. Tucker would be appointed as the President of the Company, while Defendant Holley would remain its Treasurer and be appointed as both the Chief Operating Officer and Chief Financial Officer;

    c. Mr. McBride would act as the Company's Chief Executive Officer and Secretary; and

    d. The parties would cooperate to fulfill all paperwork requirements necessary to complete these elections and appointments.

18. Under this arrangement, Takeover has become remarkably successful. The company immediately secured an endorsement deal with boxing legend Manny Pacquiao and his Manny Pacquiao Foundation and has since secured endorsement deals with Grammy Award-winning artist and professional gamer "T-Pain," and other notables including MMA Champions, NFL players, and various celebrities.

19. Takeover's online store is active. The NXT LVL beverage product line (which includes hydrogen-infused water products and 2 oz. "Gamer Shots" that have proven to be very popular and, at times, sold out), are among the highest rated beverage products for their respective categories on Amazon.com, and the Takeover online store continues to generate substantial sales with little advertising.

20. Takeover has also:
   a. Secured retail commitments to place its products on the shelves of over 10,000 stores in 2022;
   b. Entered into exclusive manufacturing deals to source its products; and
   c. Entered into substantial endorsement deals to promote its products, including the "Official Water of the Professional Fighters League" (PFL).

21. Takeover has retained experts in beverage sales, marketing, and an established public relations firm to further promote the NXT LVL products.

22. Defendant Holley hired Defendant David Eisenberg to assist with accounting/bookkeeping functions during the company's growth.

23. Although Takeover had only begun in or about February 2021, by the time it attended the National Advancing Convenience Store ("NACS") industry trade show in October 2021, Takeover's NXT LVL Hydrogen Water was awarded the CSP Best New Beverage Product (beating Smartwater+, a Coca-Cola® product, and other brands).

24. As Takeover was skyrocketing, the four principals unanimously agreed that they would not distribute profits to any of them unless distributions were made evenly and with unanimous consent. The goal was to continue growing Takeover and its brands.

25. At the same time, Takeover was updating the books and accounting of its parent company, Labor Smart. Labor Smart had been subjected to speculation among OTC "day traders" who often buy and sell large volumes of penny stocks in short periods of time because of the spike/growth in Takeover, which obviously affected Labor Smart's pricing and value.

26. Despite efforts to bring the Labor Smart books current, it became apparent that Takeover would need to "spin off" from Labor Smart and operate under its own stock ticker. Mr. Tucker began to oversee the spinoff process, and he (for Takeover) retained the services of third-party Accounting and Legal professionals who specialized in this type of business transaction.

27. In September and October 2021, vendors began expressing frustrations to Mr. Tucker (and others) about Takeover's late payment(s) or non-payments of outstanding invoices/commitments.

28. By October 2021, Defendant Holley became ill and was hospitalized.

29. Officers/Directors Tucker and McBride requested that Defendant Holley provide access to the Takeover bank account(s) so that the bills could be paid/outstanding issues could be resolved.

30. Defendant Holley was the only Takeover officer/director with access to the bank account(s); Defendant Eisenberg could view the accounts/statements, but only Defendant Holley could manage the funds and/or access the monies. Nonetheless, Defendant Holley denied any other Takeover officers/directors to have direct access.

31. Defendant Holley instructed Defendant Eisenberg to "share information" with the others but not to grant access or control, despite Defendant Holley's hospitalization and incapacity.

32. Mr. Tucker requested .pdf copies of all bank records, which Mr. Tucker then provided to the companies' outside Accountant for review.

33. The records revealed that Defendant Holley had been making **significant** distributions to himself without any authorization, and Defendant Holley had apparently "hired" his own daughter (Courtney Holley) and was paying her from Takeover funds.

34. Mr. Tucker reported the initial findings and then engaged General Counsel and the Accountant to conduct further review. This review revealed:

   a. Defendant Holley authorized over $750,000 in distributions without obtaining Board Approval. Some of those distributions *may* have been acceptable, but they were done clandestinely and with less than full Board Approval;

   b. Distributions were not made evenly, as the owners had agreed;

   c. Defendant Holley distributed $51,500 to One Elite Sports, LLC, an entity that is controlled/owned by Defendant Holley;

   d. Defendant Holley (and/or Eisenberg) failed to enter certain debts/income into the accounting records;

   e. Third parties were paid without any invoices or documentation;

   f. Vendors and third-party sponsorship partners were not paid; and

   g. Distributions authorized by Holley were not properly taxed or reported for tax accounting purposes.

35. Takeover hired an outside law firm to conduct an independent investigation and learned that Defendant Holley had committed several tortious acts and that Defendant Eisenberg either aided and abetted or facilitated these wrongs by failure to report known issues to the company.

36. In December, the Board of Directors conducted a "Special Meeting" and voted to: a) remove Defendant Holley from the Board of Directors; and, b) direct Takeover's President (Mr. Tucker) to remove Defendant Holley from the bank account(s) and gain access to the accounts.

37. Once Defendant Holley was removed, Takeover's "full access" to the records showed additional discrepancies and misdealing, including:

      a. Defendant Holley had charged tens of thousands of dollars in personal expenses to Takeover, even after the hospitalization (and up until December 2021); and

      b. Defendant Holley had been allowing his family to make personal purchases through Takeover even while he was hospitalized.

38. On December 22, 2021, outside legal counsel for Takeover made demand to Holley for repayment of improper amounts and disposition of his stock.

39. Takeover also demanded that Defendant Holley return all of the passwords and login information he had in his possession, which gave him access and control to Takeover's banking, its online presence (through domains and purchasing websites), and its emails and shared documents/drives.

40. To date, Defendant Holley has refused to return the company passwords or credentials, essentially holding the company "hostage."

41. Takeover filed suit against Defendant Holley in the U.S. District Court, Central District of California, Western Division on or about January 5, 2021.

42. Takeover also sought injunctive relief in the California matter, arguing that the Company should be granted access to the Company's domain/key accounts to preserve operations of the entity.

43. In response, Defendant Holley:

      a. Moved to dismiss the California case, arguing that jurisdiction was proper here, in the United States District Court in and for Arizona;

      b. Argued that injunctive relief was inappropriate because he did not intend to harm the Takeover entity in the future;

      c. Argued that all of his clandestine activity was justified because he and another Board Member (Mr. McBride) agreed to make distributions without regard to the other officers/directors; and

      d. Disputed the Board's removal action of him solely based on **improper notice**.

44. Despite the pending action in California, and while that matter was pending, Plaintiff further learned that:

   a. Defendant Holley (or someone at his direction) has caused the Takeover email/Microsoft Outlook administrator passwords to be changed – making employees/contractors unable to access or make changes to certain company email accounts;

   b. Defendant Holley has continued paying personal expenses on his company credit card, including a personal storage unit in Cave Creek, Arizona;

   c. Defendant Holley has continued to receive funds/checks paid to the Company through a mail location/Post Office Box in Cave Creek, Arizona.  Defendant Holley has failed to deliver those checks or otherwise "post" the funds to the Company's books;

   d. Third parties continue to send billing statements/invoices to Defendant Holley and/or other email addresses within the Company, which Plaintiff cannot access (and which causes financial damages to Plaintiff, including past due and delinquency charges); and

   e. Defendant Holley (or someone acting at his direction) has caused the GoDaddy.com account password to be changed - making employees/contractors unable to make certain changes to Company-owned domains, including www.takeoverind.com, www.nxtlvlusa.com, and www.nxtlvlglobal.com.

45. Plaintiff has now voluntarily dismissed the California lawsuit and re-filed here to avoid any potential argument on personal jurisdiction.  This is done in the interest of efficiency and for the benefit of the Company.

46. It should be noted that Takeover (through its corporate legal counsel) made a written demand on Defendant Holley on or about December 22, 2021, seeking repayment of a portion of the funds improperly taken from the company.  Takeover also demanded Holley return all passwords and login information that he had in possession, allowing the Company to continue performing without interruption.  Defendant Holley failed to respond and continually delayed until a lawsuit was filed.

47. On or about January 7, 2022, Takeover again requested that Defendant Holley at least provide/return the Company's login credentials for www.GoDaddy.com and Microsoft Office account to ensure proper access to the Company domain/accounts. Defendant Holley still refuses to provide equal access.

48. These acts and omissions have caused Takeover significant financial damages and threaten likely further irreparable harm if the matter is not quickly decided.

## COUNT I
## Breach of Fiduciary Duties

### Against Defendants Holley

49. Plaintiff incorporates the foregoing paragraphs as if repeated here verbatim.

50. As a Director and Officer of Takeover, Defendant Holley owed fiduciary duties to the Company, his fellow Officers/Directors and the Shareholders to (at least) act in good faith in the best interest of the Company, putting aside his own personal gain.

51. By taking the acts described above, Defendant Holley has breached his fiduciary duties by, at least: engaging in intentional misconduct and knowing violations of law; placing his personal interests ahead of the Company, his fellow Officers/Directors, and/or the Company's shareholders; refusing to cooperate in protecting the interest of the Company during independent investigations of misconduct; and, placing the Company/its Shareholders in danger by ignoring the very obvious debts to be paid.

52. Defendant Holley made his wrongdoing apparent and further actionable by trying to "hide" behind a technical argument that he was permitted to make personal distributions to himself (intentionally withheld from other Officers/Directors) by only seeking cooperation and involvement from one of four Officers/Directors.

53. Defendant Holley committed such egregious acts that he could not be excused by the "Business Judgment Rule" or any similar rule of construction that would allow him to take such actions.

54. Defendant Holley's actions have caused damages to the Company, its shareholders, and the other Officers/Directors in an amount to be proven at trial but, in no event, less than the $75,000 amount necessary to establish diversity jurisdiction.

55. In addition, and because of the intentional nature of this claim, Defendant Holley may be liable for punitive or exemplary damages and/or subject to disgorgement of his shareholder, officer and director positions.

## COUNT II
### Conversion
### Against Defendants Holley

56. Plaintiff repeats, re-alleges, and incorporates the foregoing paragraphs as if repeated here verbatim.

57. As the Chief Financial Officer, Treasurer and Chief Operating Officer of the Takeover, Defendant Holley was granted access to all finances/accounts/funds of the Company.

58. By committing the acts described above, Defendant Holley wrongfully exerted control and dominion over Company property (funds) inconsistent with his rights and deprived the Company, the other Officers/Directors, and/or the Shareholders of their rights, properties, and/or monies.

59. Defendant Holley's acts cannot be excused by care, good faith, or lack of knowledge, as he has already submitted sworn testimony (a Declaration under oath) stating that he and another Board Member acted in direct violation of a known Resolution of the Board of Directors of the Company.  Defendant Holley has testified that a "technical" variation in the documentation led him to act without authority and to knowingly take funds that were not otherwise authorized or permitted to be taken.

60. Defendant Holley's actions since the time the California lawsuit was filed cannot be excused or considered good faith or lack of knowledge because he has intentionally kept himself **solely** in charge of the Company's domains/emails/post office box. While intentionally failing to allow others' access, Defendant Holley has permitted certain Company debt to remain unpaid and has withheld Company payments received.

61. Defendant Holley's actions have caused damages to the Company, its shareholders, and the other Officers/Directors in an amount to be proven at trial but, in no event, less than the $75,000 amount necessary to establish diversity jurisdiction.

62. Even if Defendant Holley were to return the wrongfully-obtained property or otherwise repay his theft/conversion, the return of money would not nullify his acts.

63. In addition, and because of the intentional nature of this claim, Defendant Holley may be liable for punitive or exemplary damages and/or subject to disgorgement of his shareholder, officer and director positions.

## COUNT III
## Unjust Enrichment

### Against Defendants Holley

64. Plaintiff repeats, re-alleges, and incorporates the foregoing paragraphs as if repeated here verbatim.

65. Defendant Holley received benefits, both financial and intangible, from Plaintiff and Plaintiff's work. Defendant Holley has retained benefit(s) far in excess of what was expected that he would receive or be compensated, and it would be inequitable for Defendant Holley to retain the full value of the benefits he took/received.

66. Even if no other claim is proved, Plaintiff may recover on a *quantum meruit* basis for the value of the benefits/monies that Defendant Holley has inequitably retained.

67. Plaintiff will prove the amount of damage (or *quantum meruit* recovery) at trial, but the amount should, in no event, be less than the statutory minimum for diversity jurisdiction in this forum.

## COUNT IV
## Aiding and Abetting Tortious Misconduct
### Against Defendants Eisenberg

68. Plaintiff repeats, re-alleges, and incorporates the foregoing paragraphs as if repeated here verbatim.

69. As described above, Defendant David Eisenberg knew of the relationship between Defendant Holley and the Company/Shareholders as well as Defendant Holley and the other Officers/Directors.

70. Defendant Eisenberg was specifically made aware that Defendant Holley was failing to provide relevant bookkeeping information/data for recordkeeping, and Defendant Eisenberg was given specific examples of items (debts) to be added to the books and payments (including distributions) that should not have been made.

71. Defendant Eisenberg knowingly participated in further breach(es) by Defendants Holley and/or continued to commit wrongdoing/erroneous bookkeeping despite the breaches, and with knowledge, participation, and/or encouragement to Defendant Holley of the wrongdoing.

72. Defendant Eisenberg's actions have further caused damages to the Company, its shareholders, and the other Officers/Directors in an amount to be proven at trial but, in no event, less than the $75,000 amount necessary to establish diversity jurisdiction.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Takeover Industries, Inc. having stated its claims, hereby prays for Judgment as follows:

A.  For judgment against the Defendants, and each of them;

B.  For compensatory, consequential, incidental, and/or equitable damages (including, but not limited to, a disgorgement of benefits under an unjust enrichment theory or *quantum meruit* measure of damages) in amounts to be proven at trial (but in no event less than the statutory minimum for diversity jurisdiction);

C.  For exemplary or punitive damages as deemed appropriate;

D.  For attorneys' fees and costs incurred herein; and

E.  For all further relief that the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby respectfully demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

DATED this 7th day of March, 2022.

**MANOLIO & FIRESTONE, PLC**

By: /s/ Veronica L. Manolio
Veronica L. Manolio
8686 E. San Alberto Dr., Suite 200
Scottsdale, Arizona 85258
*Attorneys for Plaintiff*

# VERIFICATION

By signing below, the undersigned verifies under oath and acknowledging the penalties of perjury:

I am Jason Tucker, President of Takeover Industries, Inc., and of legal age and competency to testify in Court. I have read the foregoing Complaint dated this 7th day of March, 2022, drafted on behalf of Takeover (Plaintiff). I have also read and granted authority for the previous pleadings (filed in California) and have endeavored to "update" all factual allegations of the Plaintiff as they exist today. I stand ready to testify in Court and would testify consistently with this Verification and the pleadings.

I can hereby verify that all matters stated in this Complaint and the request(s) for expedited and injunctive relief are true and correct, upon my information and belief, and I will continue to verify facts and/or update legal counsel on behalf of the Plaintiff.

I declare these statements to be true and correct and made under the penalty of perjury.

Executed on this 7th day of March, 2022.

/s/ Jason Tucker [1]
Jason Tucker

---

[1] This electronic signature is meant to comply with Arizona Rules and/or the Federal Rules that permit such electronic signatures in this Court. Declarant Jason Tucker remains available and ready to testify consistently with this verification/execution.