**Sills Cummis & Gross PC**
101 Park Avenue, 28th Fl.
New York, NY 10178

Matthew P. Canini (*Pro Hac Vice)*
Direct Dial: 212.500.1582
Email: mcanini@sillscummis.com
*Attorneys for Defendant Michael Holley*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

Takeover Industries, Inc., a Nevada corporation,

Plaintiff,

v.

Michael Holley and Chirine Holley, husband and wife; David Eisenberg and Jane Doe Eisenberg, husband and wife,

Defendants.

Case No. 2:22-cv-00357-PHX-JJT

**RESPONSE AND MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR A PRELIMINARY MANDATORY INJUNCTION, AND ACCELERATED DISCOVERY**

## PRELIMINARY STATEMENT[1]

After failing to obtain a mandatory preliminary injunction against defendant Michael Holley ("Defendant") in the Central District of California, Case No. 22-cv-00102-ODW-KS, (the "California Action"), plaintiff Takeover Industries, Inc. ("Plaintiff" or "Takeover") tries to take a second bite at the apple by bringing the instant duplicative application against Defendant. While Plaintiff styles this application as an "emergency," its actions undermine this argument. Plaintiff voluntarily dismissed the California Action after it had already requested a preliminary injunction (which was fully briefed), but prior to any decision on that motion. Moreover, Plaintiff pleaded with

[1] Capitalized terms herein without definition take their meaning in the Declaration of Michael Holley in Opposition, sworn to on March 14, 2022 (the "Holley Decl.").

this Court for emergency relief, but was unavailable to appear for the scheduled emergency hearing on this application.[2] These actions belie the fact that there is no emergency, and this application was filed with intent to harass Defendant and drum up his legal costs.

Although Plaintiff styles this application as one seeking a temporary restraining order to preserve the "status quo," the reality is exactly the opposite. Maintaining the status quo would allow Defendant to keep the passwords and prevent Plaintiff from having them. Therefore, this application seeks to cause Defendant to undertake affirmative acts and would result in the Court granting Plaintiff the ultimate relief it seeks in the action, prior to Defendant being properly served. Plaintiff's application seeks the extraordinary and disfavored remedy of a mandatory preliminary injunction.

Plaintiff has not met the high evidentiary burden required for such drastic and *irreversible* relief. Plaintiff's application is supported by a self-serving client affidavit and it's Verified Complaint, which fail to attach *any* documentary evidence. Plaintiff's self-serving statements are also contradicted by those it made just weeks ago in the California Action. For example, in this Action Plaintiff claims Defendant made "significant distributions to himself and others without authorization" that allegedly total over $750,000. (<u>See</u> Plaintiff's Memorandum in Support of Application for TRO ("Plaintiff's Br."), p. 5) (emphasis in original). However, in the California Action,

---

[2] The Court noted it was "very surprised that an attorney would file a request for emergency injunctive relief at a time that the attorney is unavailable to come to a hearing on the motion or present evidence should the Court require it. For this reason alone, the hearing will be continued." (<u>See</u> ECF No. 12).

Tucker and McBride submitted sworn declarations that Defendant only made $320,000 worth of distributions to himself. *They also admitted that $240,000 of the $320,000 was **duly authorized compensation***. Regarding the remaining $80,000, the Holley Decl. attaches text messages between Defendant and McBride (then the president of Plaintiff), which demonstrate McBride authorized additional *ad hoc* payments to Defendant, himself and Tucker (the alleged current president of Plaintiff and instigator of this lawsuit). As such, the remaining $80,000 at issue was also duly authorized compensation, and Plaintiff will not prevail in this litigation.[3]

Plaintiff also cannot show any irreparable harm. Plaintiff's statement that it needs the passwords to comply with a "PCOAB" audit that meets "federal muster" is false and misleading. First, we can only assume Plaintiff is referring to the Public Company Accounting Oversight Board ("PCAOB"). To our knowledge, there is no institution that goes by the acronym "PCOAB." Second, the PCAOB does not, as Plaintiff seems to allege, audit companies so that they can register their securities on over-the-counter ("OTC") securities markets. (ECF No. 2 at 3).[4] The PCAOB was established by the 2002 Sarbanes-Oxley Act and its function is, among other things, to

[3] Plaintiff also fails to disclose that the "others" to whom Mr. Holley is alleged to have made distributions to were Plaintiff's other officers and directors. Such transactions were also authorized and exceed any amounts Defendant actually paid to himself. For example, as of September 2021, McBride received $352,000 in distributions. (Holley Decl., ¶ 23). Plaintiff fails to explain why McBride is also not being sued based on these transactions.

[4] The various OTC markets are generally run by OTC Market Group. Inc. See https://www.sec.gov/divisions/marketreg/mrotc.shtml (last visited March 12, 2022).

develop auditing standards and to license and regulate *auditing firms* that perform audits of public companies. 15 U.S.C.A § 7211; https://www.pacpbus.org/about (last visited March 12, 2022). The PCAOB does not itself audit securities issuers (like the IRS can audit taxpayers); it reviews the audits done by *auditing firms* of public companies to regulate auditing firms. 15 U.S.C.A. § 7211(c); https://pcaobus.org/oversight/inspections/inspectio n-procedures (last visited March 12, 2022).[5] Therefore, **<u>the PCAOB is not conducting a federal audit</u>** of Plaintiff (which is not even a publicly traded company).

Upon information and belief, Plaintiff has employed a private auditor to audit Plaintiff under PCAOB standards, which is a prerequisite of many securities exchanges for an issuer to register securities thereon.[6] As Plaintiff is not currently registered on any securities exchange, at most, Plaintiff's alleged audit is (1) voluntary; and (2) private.

It is entirely misleading for Plaintiff to argue it will suffer irreparable injury if it cannot complete the audit on its own arbitrary timeline. More importantly, Plaintiff fails to identify what PCAOB standard Plaintiff cannot meet because it does not have access to these passwords. However, if Plaintiff actually needs the passwords in

---

[5] If Plaintiff were a publicly traded company, at most, the PCAOB would contact Plaintiff's audit committee in connection with its review of Plaintiff's *auditing firm's* audits of Plaintiff. <u>See</u> https://pcaobus.org/resources/information-for-audit-committees (last visited March 12, 2022).

[6] However, not all OTC markets require audited financials. For example, the OTC Pink Market, *on which LTNC's (Plaintiff's parent company's) securities are currently traded does not*. <u>See</u> https://www.otcmarkets.com/learn/faqs ("Do financial statements have to be audited?") (last visited March 12, 2022). Therefore, it is highly unlikely that the PCAOB is actively involved with Plaintiff or its parent, LTNC.

connection with the audit, it can merely delay the audit until resolution of this dispute. Thereby, avoiding any harm whatsoever.

## STATEMENT OF FACTS

The Court is respectfully referred to the Holley Decl., the Declaration of Matthew P. Canini in Opposition, sworn to on March 14, 2022 (the "Canini Decl."), and the exhibits thereto for a full statement of the facts relevant to this application only.

## ARGUMENT

## I.

## STANDARD ON THIS APPLICATION

"An injunction is an 'extraordinary remedy never awarded as of right.' Edmo v. Corizon, Inc., 953 F.3d 757, 784 (9th Cir. 2019) citing Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). "Further, there is a heightened burden where a plaintiff seeks a mandatory preliminary injunction, which should not be granted 'unless the facts and law clearly favor the plaintiff." Brisken v. Griego, 16-02434-PHX-JJT, 2017 U.S. Dist. LEXIS 222185, at *5 (D. Ariz. Dec. 8, 2017); citing Comm. of Cent. Am. Refugees v. INS, 795 F.2d 1434, 1441 (9th Cir. 1986). A plaintiff seeking a preliminary injunction must show that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest." Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015).

Moreover, it is well established in the 9th Circuit that an injunction requiring an action, such as the one requested a bar, is a mandatory injunction. See Meghrig v. KFC W., 516 U.S. 479, 484 (1996); See Edmo v. Corizon, 953 F.3d 757 (9th Cir. 2019). A

mandatory injunction carries an even higher standard than the already onerous burden of a preliminary injunction. To grant a mandatory preliminary injunction "the court must find that the facts and law clearly favor plaintiffs." Katie A., ex rel. Ludin v. Los Angeles County, 481 F.3d 1150, 1156 (9th Cir. 2007) citing Stanley v. University of Southern California, 13 F.3d 1313 (9th Cir. 1994); Brisken v. Griego, 2017 U.S. Dist. LEXIS 222185, at *5.

Since mandatory injunctions "go 'well beyond simply maintaining the status quo [p]endent lite,' they are 'particularly disfavored' and are not issued in doubtful cases." Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 879 (9th Cir. 2009) quoting Anderson v. United States, 612 F.2d 1112, 1114 (9th Cir. 1980). "In general, mandatory injunctions 'are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages.'" Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 879 (9th Cir. 2009) quoting Martinez v. Matthews, 544 F.2d 1233, 1243 (5th Cir. 1976).

Under these well settled standards, Plaintiff's application should be denied.

## II.
## THE COURT SHOULD DENY PLAINTIFF'S APPLICATION FOR A MANDATORY PRELIMINARY INJUNCTION

### A. Plaintiff Will Not Succeed On The Merits Of This Litigation

Here, Plaintiff's application should be denied because it has not substantiated its allegations with any credible evidence. Plaintiff supports this application with nothing more than a self-serving affidavit (which fails to attach any documentary evidence), and

a duplicative Verified Complaint. In fact, Plaintiff's papers focus more on its accomplishments as a company and Tucker's resume, rather than proffering evidence to support its claims. Therefore, Plaintiff has not shown the facts "clearly favor" it and this application should be denied for this reason alone. See Ludin, 481 F.3d at 1156.

Moreover, Plaintiff's various sworn declarations in the California Action contradict is claims in this Action. The Tucker and McBride Declarations from the California Action show that Plaintiff's $750,000 claim is inflated. (ECF No. 1 ¶ 28). Those Declarations admit that, at most, Defendant was paid $320,000, and that $240,000 of that is *not even in dispute*. ASICS Am. Corp. v. Stanley, No. CV-1700466, 2017 WL 7833638, at *4 (C.D. Cal. June 5, 2017) ("When an affidavit [or declaration such as in this case] contradicts the allegations in a complaint, a court cannot assume the truth of allegations in a pleading."). Plaintiff's officers even admit in text messages annexed to the Holley Decl. that the remaining $80,000 at issue in this case was also duly authorized by McBride, and McBride and Tucker took distributions from Plaintiff as well. (Holley Decl. ¶ 16 (Ex. H)). Authorized payments to Defendant do not constitute a conversion or breach of Defendant's fiduciary duties. At the very least, there are issues of fact that demonstrate Plaintiff is not likely to succeed on the merits.

Regarding the passwords, Defendant is in lawful possession of this property as a director and officer, and his merely having these passwords causes Plaintiff no harm. Tucker claims that Defendant was removed from his role as director of Takeover in December 2021 by a vote of Plaintiff's other directors. Even if there was a vote, it would constitute a legal nullity. Under Nevada law, which governs Takeover,

Takeover's board of directors cannot remove another director, only its shareholders can remove a director. See NRS § 78.335. There is no evidence in the record that a proper vote to remove Defendant ever took place, and Plaintiff cannot turn over passwords (that he is lawful possession of) to managers that have breached their fiduciary duties because they denied Takeover's and LTNC's shareholders the right to vote on changing their management team.

For the foregoing reasons, Plaintiff is unlikely to succeed on the merits of this case.

**B. Plaintiff Has Identified No Irreparable Harm**

Plaintiff alleges in a conclusory fashion that it will "suffer injury and imminent harm if immediate relief is not obtained" and if it is not "permitted to properly manage its online presence." (Plaintiff's Br., pp. 11-12). Plaintiff further incredulously alleges that "its ability to complete the federal audit [(PCAOB)] of its books and records to become independently registered on the stock market" will "thwart" its future and Defendant is "stopping its future as a federally-registered OTC entity." (Id. at 12).

A plaintiff seeking injunctive relief must show that irreparable harm is "likely" not merely possible. Winter v. Nat. Res. Def. Council, Inc., 129 S.Ct. 365, 367 (2008); Garcia v. Google, Inc., 786 F.3d 733, 748 (9th Cir. 2015) see also Bruno v. Sherman & Howard, LLC, CV-18-00361-PHX-SPL, 2018 WL 1894707, at *2 (D. Ariz. Feb. 21, 2018) (denying application for TRO and preliminary injunction because "Plaintiff [did] not demonstrate that the harm alleged is real, imminent, and significant, rather than

merely speculative, or that he would otherwise sustain some intangible injury that cannot be redressed or adequately compensated by money damages.")

Defendant has no intent to do any harm to Plaintiff because he is a large shareholder of LTNC, founded Takeover, and is a director with fiduciary duties. (Holley Decl. ¶¶ 7 – 10, 14, 16, 19, 28 – 29, 32, 42). Plaintiff provides no evidence showing that it cannot "properly manage its online presence." Plaintiff can still access its website and use its Microsoft account. (Holley Decl. ¶ 51). There is no irreparable injury to Plaintiff by Defendant merely having these passwords, and to the extent Plaintiff could lose sales were Defendant to change the passwords this alleged harm would be adequately compensated by monetary damages and therefore does not constitute irreparable harm. See Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc., 944 F.2d 597, 603 (9th Cir. 1991) ("economic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award.")

Plaintiff's allegations regarding the alleged PCAOB audit are false and misleading because the PCAOB *does not* conduct audits of securities issuers -- particularly those, like Plaintiff, who are not publicly traded. Plaintiff's act of registering its securities so it can be traded on an OTC market in the future is a voluntary action. If Plaintiff is actually undergoing an audit for this purpose and needs the passwords (*which is unlikely for a financial audit*), it can merely delay the audit until this dispute is resolved thereby avoiding any harm. Accordingly, Plaintiff cannot show any irreparable harm and its application should be denied.

Plaintiff's cited case, Ronald Cohn, Inc. v. Sprouts Farmers Markets, Inc., 2020 U.S. Dist. LEXIS 40434, *4 (S.D. Cal. March 6, 2020), does not require a different result. In this case, the Plaintiff sought an injunction to enjoin defendant Sprouts from taking additional audits until after it allowed plaintiff a reasonable period to bring its stores into compliance with safety standards. The audits at issue in Sprouts were safety audits and they were not undertaken voluntarily. Here, Plaintiff is in control of the alleged audit and its claims that it is under some federal mandate or timeline to conduct the audit are false and misleading.

Accordingly, Plaintiff has failed to identify "extreme or very serious damage" if a preliminary mandatory injunction does not issue (Marlyn Nutraceuticals, 571 F.3d at 879), and its application should therefore be denied.

### C. The Balance of Equities Do Not Favor Plaintiff

In determining whether plaintiff has met this burden, courts must consider "the interests of all parties and weigh the damage to each." L.A. Mem'l Coliseum Comm'n v. Nat'l Football League, 634 F.2d 1197, 1203 (9th Cir.1980). Here, the balance of equities do not favor Plaintiff and an injunction would irreversibly disrupt the status quo. Defendant is a lawful director of Plaintiff and LTNC, and a major shareholder in LTNC. Defendant has an interest in making sure corporate formalities are followed in legally removing directors and officers.

Given that Defendant has not been properly removed, he cannot aide Plaintiff's managers by giving them the tools to waste company property or commit further breaches of their fiduciary duties. Further still, Plaintiff's chief complaint is that

Defendant merely has access to these passwords and he could potentially do something to harm the company. This is the definition of speculative. There is no evidence that Defendant's mere possession of this information threatens Plaintiff, *or that the passwords are even needed for an audit*, and these speculative claims are insufficient for the Court to upset the status quo and issue the drastic remedy of a preliminary mandatory injunction against an unserved Defendant.

### D. Granting The Injunction Is Not In The Public Interest

The public interest is best served by protecting the rights of the shareholders to vote to remove directors and upholding statutory prohibitions which prohibit directors from removing other directors. That interest is not served by giving a manager with questionable motives, such as Tucker, access to passwords that could be used to further breach his fiduciary duties and waste corporate resources.

Plaintiff claims that the "public would be best served by … a **fulsome** application and audit before the Company is made part of the public market." (Plaintiff's Br., p. 13 (emphasis in the original). As explained, Plaintiff's alleged audit is at the very least misdirection. If the passwords are actually necessary for the audit, Defendant fails to see how the public will suffer by not being able to purchase Plaintiff's securities directly, as opposed to through LTNC, for a few months while the parties work out this dispute.

**III.**
**TAKEOVER HAS NOT ESTABLISHED GOOD CAUSE TO WARRANT BURDENSOME EXPEDITED DISCOVERY**

Without citing any case law in its application (or even addressing the need for expedited discovery in its memorandum of law), Plaintiff claims that expedited discovery is warranted because: (1) the California Action has caused a delay in discovery; (2) discovery is need in connection with the alleged "significant federal audit"; and finally; (3) Plaintiff needs "thorough evidence to support a Preliminary Injunction." (ECF No. 2, pp. 3 - 4). None of these unsupported allegations substantiate a need for expedited discovery. See Aguirre v. A.P. Green Indus., Inc., No. CV-11-1907-PHX-LOA, 2011 WL 4543959, at *1 (D. Ariz. Sept. 30, 2011) ("Good cause [for expedited discovery] exists where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party.") (internal quotations omitted).

First, contrary to Plaintiff's argument that Defendant engaged in "game-playing" by filing a motion to dismiss in California, the procedural history of this action demonstrates Plaintiff is the party who has repeatedly used gamesmanship and engaged in bad faith. Plaintiff knowingly filed suit in California when there clearly was no personal jurisdiction over the Defendant, declined Defendant's counsel's offer to stipulate to transfer the matter to this Court, and then voluntarily dismissed its cause of action before the Court could even rule on its TRO application in the California Action. (See Canini Decl. ¶ 10).

Next, as noted above, there is no "federal audit," and this allegation is false and misleading. The PCAOB has no power to compel a "federal audit" of any securities issuer, particularly one like the Plaintiff that does not even have securities listed on a public securities market. The prejudice to Defendant (who is still on oxygen and debilitated by COVID-19) that would result from expedited discovery clearly outweighs any prejudice to Plaintiff.

Finally, as the Court noted in its March 8, 2022 Order "no motion for preliminary injunction is pending. Therefore, the Court is disinclined to allow expedited discovery for purposes of Plaintiff establishing the need for a preliminary injunction." (See ECF No. 12). Further still Plaintiff fails state what exact discovery it needs from Defendant to support a motion for a preliminary injunction. Plaintiff has already frozen out Defendant from the Companies and it is Defendant who needs discovery to defend this action, not the Plaintiff. (Holley Decl.,¶¶ 44 – 45, 48).

As with its misleading claims regarding the "federal audit," Plaintiff's request for expedited discovery is yet another shell game, and the Court should deny this request. See Mach 1 Air Servs., Inc. v. Mainfreight, Inc., No. CV-14-01444-PHX-SPL, 2015 WL 11181334, at *1 (D. Ariz. Mar. 5, 2015) ("while Plaintiffs characterize the purpose of their expedited discovery request is to support their pursuit of injunctive relief, it is a disguised attempt to obtain early discovery to uncover the factual basis of their claims..." (internal citations omitted)).

**IV.**
**IF THE COURT ISSUES A MANDATORY PRELIMINARY INJUNCTION, PLAINTIFF SHOULD POST A $1.5 MILLION BOND**

In its March 8, 2022 Order, the Court instructed Defendant to address the appropriate bond amount should the Court issue a mandatory preliminary injunction. (See ECF No. 12 ("Defendants shall also address the appropriate bond amount ….").

Plaintiff's managers' intent in seeking access to the Companies' passwords is suspect. Plaintiff alleges it needs these passwords to effect a "spin off" of Takeover from LTNC. (ECF Nos. 2 at 3). While we do not know the exact nature of this proposed transaction, a "spin off" could divest LTNC of its sole asset, Takeover. LTNC is a Wyoming corporation and, as such, LTNC's shareholders need to approve such a transaction unless it is in the "usual course of business." W.S.1977 §§ 17-16-1201, 17-16-1202. LTNC and Plaintiff are in the beverage business. Therefore, if LTNC spins-off Takeover this would not constitute the "usual course of business," and would require a shareholder vote. There is no evidence in the record that LTNC's shareholders have approved such a transaction, or that Plaintiff's managers intend to seek their approval. Because Plaintiff has attempted to remove Defendant without adhering to its corporate formalities, it is highly likely they will also attempt to unlawfully strip LTNC of its sole asset.

While we are skeptical that the passwords are necessary for any audit or a "spin off," according to Plaintiff, they are the lynchpin that will allow Plaintiff's managers to divest LTNC of its sole asset. Therefore, Defendant believes a $1,500,000 bond would be appropriate.

## CONCLUSION

Accordingly, Defendant respectfully requests the Court deny Plaintiff's application, and grant Defendant such other and further relief as the Court deems just and proper.

Dated: March 14, 2022

SILLS CUMMIS & GROSS P.C.
*Attorneys for Defendant Michael Holley*

By /s/ Matthew P. Canini
Matthew P. Canini

101 Park Avenue, 28th Floor
New York, New York 10178
Telephone: (212) 643-7000
mcanini@sillscummis.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2022, I caused my office to electronically transmit the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following counsel/parties in this matter.

Veronica L. Manolio
Manolio & Firestone, PLC
8686 E. San Alberto Dr., Ste. 200
Scottsdale, AZ 85258
vmanolio@mf-firm.com
*Attorneys for Plaintiff*

/s/ Matthew P. Canini