**Sills Cummis & Gross PC**
101 Park Avenue, 28th Fl.
New York, NY 10178

Matthew P. Canini (*Pro Hac Vice)*
Direct Dial: 212.500.1582
Email: mcanini@sillscummis.com
*Attorneys for Defendant Michael Holley*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

Takeover Industries, Inc., a Nevada corporation,

Plaintiff,

v.

Michael Holley and Chirine Holley, husband and wife; David Eisenberg and Jane Doe Eisenberg, husband and wife,

Defendants.

Case No. 2:22-cv-00357-PHX-JJT

**DECLARATION OF MICHAEL HOLLEY IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR A PRELIMINARY MANDATORY INJUNCTION, AND ACCEELERATED DISCOVERY**

I, Michael Holley, declare under penalties of perjury as follows:

1. I am a defendant in the above-captioned litigation. I make this declaration based on my personal knowledge, my review of Takeover Industries, Inc.'s ("Takeover") parent corporation, Labor Smart, Inc.'s ("LTNC") (collectively, the "Companies") public filings, and relevant books and records of Takeover and LTNC.

2. I submit this Declaration in opposition to Takeover's motion, which seeks to cause me to perform the following affirmative acts: (1) turn over passwords to a Microsoft account and Godaddy.com; (2) provide equal access to a PO Box, which I do not maintain; (3) restrain me from doing certain actions that I have never done, and have no intention of doing; and (4) restrain me from destroying company records that I do not have, but if I did have would not destroy.

3. I have reviewed the declaration of Jason Tucker ("Tucker"), the Verified

Complaint in this action, and Takeover's Memorandum in Support of this Application ("Plaintiff's Br."), and the relevant facts therein are demonstrably false and misleading. (See Declaration of Jason Tucker, sworn to on March 7, 2022 (the "Tucker Decl."), ECF No. 2-2; Verified Complaint, sworn to on March 7, 2022, (the "Cmplt.") ECF No. 1; Plaintiff's Br., ECF No. 2-1).

4. Notably, Tucker's allegations are also unsupported by any documentary evidence.

5. While I have access to certain documents refuting Tucker's allegations, I, through counsel, have repeatedly requested basic information supporting Takeover's claims, which should be readily available to Tucker, however these requests have been unjustifiably denied. Attached hereto as Exhibit A is a true and accurate copy of correspondence I received from Takeover's prior attorney, Eric Bjorgum ("Bjorgum"). Attached hereto as Exhibit B is a true and accurate copy of my counsel's response and request for documents supporting Takeover's claims.

6. Takeover's refusal to disclose documents evidencing its claims has hindered my ability to support this motion with additional documentary evidence and belies the meritless nature of this litigation.

**TAKEOVER HAD TWO DIRECTORS AND OFFICERS UNTIL NOVEMBER 2021**

7. In January 2021, Toby McBride ("McBride") and I formed Takeover pursuant to the laws of the State of Nevada. Attached hereto as Exhibit C is a true and accurate copy of Takeover's formation documents.

8. At the inception of the company, we were the only directors and officers.

This was the case until November 2021 when Tucker and Joseph Pavlick ("Pavlick") were appointed to be Takeover's directors, along with McBride and me. Attached hereto as Exhibit D is a true and accurate copy of the Minutes of Takeover's June 10, 2021 Special Meeting.

9. While the Special Meeting occurred in Arizona on June 10, 2021, and the executions are dated June, 2021, Tucker's and Pavlick's appointments were not effective until November 21, 2021, when Tucker executed the minutes. (See id.)

10. Accordingly, from the formation of Takeover until November 2021, McBride and I had sole authority over the Company.

## TAKEOVER'S ALLEGATIONS THAT I IMPROPERLY TOOK MONEY ARE FALSE

11. Tucker claims that I authorized over "$750,000 in distributions without obtaining Board Approval." (Tucker Decl. ¶ 32(a)). However, in the prior duplicative action Takeover filed in the Central District of California, Case No. 22-cv-00102-ODW-KS (the "California Action"), Tucker claimed I took unauthorized distributions from Takeover in the approximate amount of $320,000. Attached hereto as Exhibit E is a true and accurate copy of the Declaration of Jason Tucker in Support of Plaintiff's Motion for Preliminary Injunction, sworn to on February 7, 2022 in the California Action (the "California Tucker Decl."), ¶ 24.

12. This is far less than the $750,000 alleged in Tucker Decl., the Cmplt., or the California Action's Complaint. Attached hereto as Exhibit F is a true and accurate copy of the Complaint filed in the California Action, ECF. No. 1 ¶ 6.

13. It is also different from the roughly $160,000 that Bjorgum demanded I

return to Takeover prior to this litigation. (Ex. A at ¶ 1).

14. Notwithstanding Takeover's inability to get its story straight, all payments I made on behalf of Takeover were duly authorized by McBride and me pursuant to our authority as the sole directors and officers of Takeover.

15. In fact, McBride and Tucker admit that McBride and I were entitled to $20,000 a month ($240,000, per year) as compensation for our services to Takeover.[1] Attached hereto as Exhibit G is a true and accurate copy of the Declaration of Toby McBride, sworn to in the California Action on January 11, 2022 (the "McBride Decl."), ¶ 10; see also California Tucker Decl., ¶ 24.

16. Regarding the remaining $80,000, McBride authorized these payments to me in his capacity as President of Takeover on an *ad hoc* basis. Attached hereto as Exhibit H are true and accurate copies of examples of text messages in which McBride directed payments to himself, me, and others, *including Tucker*. Upon information and belief, Tucker took these payments without objection.

17. Upon information and belief, neither Tucker nor McBride has repaid any portion of these amounts to Takeover, nor has Takeover demanded they do so.

**TAKEOVER'S ALLEGATION THAT PAYMENTS TO ONE ELITE SPORTS WERE UNAUTHORIZED IS FALSE**

18. The payments made to One Elite Sports were for purpose of reimbursing it

[1] In the California Tucker Decl. Tucker alleged McBride and I were only permitted to distribute $20,000 a month. However, this was not what we decided. (Ex. E ¶ 24). In 2021, Takeover was a startup company, and it was not always possible for McBride and me to take $20,000 a month. Therefore, we made distributions when feasible based on the company's cash flow.

for expenses it had laid out for Takeover.

19. As with all payments, I made these pursuant to my authority as Takeover's duly appointed COO and CFO.

20. Contrary to Tucker's assertions, as CFO and COO of Takeover during relevant times I did not need board approval for this kind of day-to-day transaction.

**TAKEOVER'S ALLEGATION THAT IT DID NOT DISCOVER THE DISPUTED PAYMENTS UNTIL THE END OF 2021 IS FALSE**

21. There is no merit to Tucker's allegations that Takeover did not learn about the aforementioned payments until I was hospitalized with a severe case of COVID-19 at the end of 2021.

22. Even setting aside McBride's text messages, which the Court should not set aside, all payments to directors were accounted for on Takeover's balance sheet, a true and accurate copy of which is attached hereto as Exhibit I.

23. As of September 30, 2021, McBride had taken $352,000.00, significantly more than me, and more than the $240,000 he admits was authorized. (Id.)

24. Similarly, there is no merit to Tucker's s claim that I denied anyone access to Takeover's bank records. In reality, McBride directed me not to give Tucker access to the bank records. A true and accurate copy of this communication is annexed hereto as Exhibit J.

**I AM STILL A DIRECTOR OF THE COMPANIES**

***A. Takeover is a Wholly Owned Subsidiary of LTNC of Which I am Still a Director***

25. Between February 2021 and July 2021, in an attempt to get access to

public capital markets, Takeover and LTNC entered into a series of transactions in which LTNC became Takeover's parent corporation, and divested itself of its prior business.

26. In this respect, by an agreement dated February 26, 2021, LTNC purchased all of Takeover's equity in exchange for 6,800,000,000 shares of LTNC. A true and accurate copy of the Stock Purchase Agreement is annexed hereto as Exhibit K.

27. In accordance with the Stock Purchase Agreement, Takeover become a wholly owned subsidiary of LTNC.

28. Moreover, in accordance with the stock Purchase Agreement, I received 17 of LTNC's 51 Series A Preferred Shares. (See id. at 6). McBride and Pavlik also received 17 shares each of LTNC's Series A Preferred Shares.

29. LTNC's Series A Preferred Shares gave each McBride, Pavlik, and I one-third voting control to LTNC. Attached hereto as Exhibit L is a true and accurate copy of LTNC's February 12, 2021 SEC Form 8-k, which describes the change in LTNC's voting control.

30. On July 14, 2021, LTNC entered into an agreement in which it transferred all of its assets associated with its former business to LTNC's former CEO for $500,000. A true and accurate copy of LTNC's SEC Form 8-K dated July 14, 2021 disclosing this transaction is annexed hereto as Exhibit M.

31. At this point, LTNC's sole business was to hold shares of Takeover.

32. On September 13, 2021, Michael Costello, Tucker, McBride and I were appointed to LTNC's board of directors. A true and accurate copy of LTNC's SEC Form 8-K disclosing this appointment is annexed hereto as Exhibit N.

33. The September 13, 2021 appointment, (filed with the SEC on September 15, 2021) is, per LTNC's filings, the last corporate action taken by LTNC. See Exhibit O.

34. LTNC's public filings do *not* show that I, at any point, have been removed as a director of LTNC.

35. Pursuant to Article III, Section 3 of LTNC's bylaws, LTNC's directors can only be removed by a vote of the shareholders. A true and accurate copy of LTNC's bylaws are annexed hereto as Exhibit P.

***B. Tucker's Attempt To Remove Me From the Companies' Management Resulted In A Nullity***

36. In the California Action, Bjorgum, claimed that Takeover's board of directors removed me following a special meeting of the "board" on December 7, 2021. Attached hereto as Exhibit Q is a true and accurate copy of the Declaration of Eric Bjorgum in Support of Plaintiff's Motion for Preliminary Injunction, sworn to on February 7, 2022, ¶ 2.

37. Incidentally, in the California Action neither Tucker nor McBride submitted a sworn declaration claiming I was removed from Takeover's board of directors. The Tucker Decl. now attempts to cure this defect. (Tucker Decl. ¶ 34).

38. Neither Bjorgum's nor Tucker's statements are supported by any board minutes, written consents, resolutions, or other documents indicating legitimate corporate action, because, upon information and belief, no such documents exist.

39. Regardless, my understanding is that under Nevada law, which governs Takeover, a director of a corporation cannot be removed except by vote of the

Company's shareholders. See NRS § 78.335. Moreover, I received no notice of this meeting. The first time I received notice that Tucker was attempting to freeze me out of the Companies was when I was contacted by Takeover's counsel. (See Ex. A). At the time, I was hospitalized with a severe case of COVID-19, and I am still on oxygen from that sickness. Accordingly, any December 2021 vote by Takeover's board of directors could not have removed me as a director, and Tucker does not allege that LTNC's board of directors properly convened and voted to remove me as a director of Takeover.

40. Tucker's contention that I was voted out in December 2021 is also contrary to Tucker's March 8, 2022 email to me attempting to schedule a board and/or shareholders meeting of the Companies two days later on March 10, 2022. This meeting was to be for the specific purposes of removing me from Takeover's and LTNC's boards of directors. A true and accurate copy of Tucker's March 8, 2022 email is annexed hereto as Exhibit R.[2]

41. However, even were this meeting to occur, any attempted action taken by the Companies would be a legal nullity. Pursuant to LTNC's Bylaws, a special meeting of the Board cannot be convened on less than 4 days' written notice, and an annual or special meeting of the shareholders cannot be convened on less than 10 days' notice.[3] (See Ex. P., Art. II § 4, Art. III § 6). Moreover, as noted, even if Takeover's board could convene a meeting on two days email notice, it does not have the power under

[2] The Court should note that Tucker sent this email from his Takeover email address, showing that the company can use its email and is suffering no harm by my having adminstrator passwords.

[3] Moreover, notices of shareholder meetings cannot be sent via e-mail.

Nevada law to remove another director.

42. Because I have not been removed from the management team of the Companies, and because this action appears to be an unscrupulous attempt to usurp corporate control from duly appointed director and officer based on false allegations, I cannot turn over any passwords to Tucker for fear that he may waste company assets or commit other breaches of his fiduciary duties to LTNC and LTNC's shareholders.

**THE NEW ALLEGATIONS IN PLAINTIFF'S BR. ARE FALSE AND/OR ILLOGICAL**

43. In addition to the allegations in the Tucker Decl., which are almost identical to those he made in the California Action, Takeover's new counsel, makes additional allegations against me in Plaintiff's Br. These allegations are not supported by a shred of evidence, and they are untrue and/or illogical.

44. For example, I have not changed any passwords since the inception of the California Action. (See Plaintiff Br. pp. 7-8).

45. Neither have I done anything with respect to the Takeover's PO Box in Arizona. (Id. at 7). I have not been to the PO Box since October or November 2020 because of my COVID-19 illness, and it would be difficult for me to get to the PO Box because I am still on oxygen from that illness. In fact, I am not sure whether Takeover kept paying for the PO Box after I was frozen out of the Company. If the PO Box has been closed, then all items therein, if any, should have been returned to sender, including any checks.

46. Still further, the claim that I paid for a personal storage facility with the Company credit card is false. The storage facility was purchased in late September to

store product I received from a tradeshow. It was unknown to me that it was still being paid. I have since canceled**.** (Id.)

47. Other contentions in Plaintiff's Br. are simply illogical.

48. For example, I cannot control what unidentified third parties do, and I cannot post anything to Takeover's accounts because, as Tucker admits, he froze me out of the Takeover's bank accounts. (Id.)

**I HAVE NO INTENTION OF HARMING THE COMPANIES**

49. Tucker claims I have the potential to harm Takeover because I have access to the company's domain name and its Microsoft account.

50. The Tucker Decl., however, fails to identify anything I have done to harm the Companies. The Declaration also fails to demonstrate anything the Companies cannot do without these high-level administrator passwords.

51. The companies still have access to, and can change, Takeover's website. For example, they changed the website to remove me from the list of company managers. See www.takeoverind.com (last visited, March 10, 2022).

52. Tucker does not claim that anyone is without access to their email accounts, or that the Company cannot do business through its website. Moreover, as noted above, Tucker sent me an email from his Takeover email account on March 8, 2022.

53. While I ultimately do not know what Tucker's true goals are behind commencing this action, it is apparent he does not have the Companies' best interests at heart. LTNC's shareholders are entitled to vote on directors and if they wanted to

remove me, they could have done so.

**THERE IS NO NEED FOR BURDENSOME AND COSTLY ACCELERATED DISCOVERY**

54. Takeover's motion for a mandatory preliminary injunction also seeks, without basis, burdensome accelerated discovery. As I indicated earlier, I need documents from Takeover – not the other way around. I am in possession only extremely limited company documents that were copied in my email account.

55. This request is part of a long pattern of Tucker's harassment that includes rejecting my counsel's offer to transfer this matter from California to Arizona, only to then voluntarily dismiss the California Action, after I opposed this same application in the California Action and moved to dismiss that action because I have no meaningful connection to that state.

56. If Tucker had any interest in expediting this dispute versus harassing me and raising my costs, he would have directed his counsel to accept my counsel's reasonable and cost saving offer.

57. Instead, Bjorgum repeatedly claimed jurisdiction in California was proper, only to then voluntarily dismiss that action on the date Takeover was due to oppose my motion to dismiss.

58. I declare under penalty of perjury that the foregoing is true and correct.

WHEREFORE, I respectfully request Takeover's motion for a preliminary mandatory injunction be denied, with prejudice.

Dated: March 14, 2022

Michael Holley

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2022, I caused my office to electronically transmit the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following counsel/parties in this matter.

Veronica L. Manolio
Manolio & Firestone, PLC
8686 E. San Alberto Dr., Ste. 200
Scottsdale, AZ 85258
vmanolio@mf-firm.com
*Attorneys for Plaintiff*

/s/ Matthew P. Canini