# EXHIBIT E

DocuSign Envelope ID: 868EFE9E-AE47-4F09-98E5-58465E126EC3


**ERIC BJORGUM (State Bar No. 198392)**
Eric.bjorgum@kb-ip.com
KARISH & BJORGUM PC
119 E. Union Street, Suite B
Pasadena, CA 91103
Telephone: (213) 785-8070
Facsimile: (213) 955-5010

Attorneys for Plaintiff
Takeover Industries, Inc.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

TAKEOVER INDUSTRIES, INC., a Nevada corporation,

Plaintiff,

vs.

MICHAEL HOLLEY, an individual, DAVID EISENBERG, an individual, and DOES 1-10, inclusive

Defendants,

**Case No.: 2:22-cv-00102-ODW-KS**

**DECLARATION OF JASON TUCKER IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

**Judge: Honorable Otis D. Wright II**
**Date: March 7, 2022**
**Time: 1:30 p.m.**
**Courtroom: 5D, Fifth Floor**
**Place: First Street Courthouse**
**350 W. 1st Street**
**Los Angeles, CA 90012**

I, Jason Tucker, under penalty of perjury, declare and state as follows:

1. I am a United States Citizen, over the age of 18 years old, make this declaration based upon personal knowledge and, if called to testify could and would testify competently to the facts set forth herein.

2. I serve as President, Treasurer, and a Director of Plaintiff Takeover Industries, Inc.

3. Takeover Industries is a wholly owned subsidiary of Labor Smart, Inc., a publicly traded Company. I serve on the Board of Directors of Labor Smart Inc. Prior to my current role, I had served as the Vice President of Business Affairs and Sr. Vice President of International.

4. I have served as a consultant to Fortune 100 companies, including Microsoft Corporation, for the rollout of several versions of Windows Media and in the development and roll out of their Digital Rights Management (DRM) technology. I have also served as a consultant for Akamai Technologies, an early leader in developing the backbone of the Internet.

5. I am the founder of a leading intellectual property management and anti-piracy enforcement company. Our clients include award winning production companies, publishers, media, technology, and physical product corporations, internet advertising networks, documentarians, filmmakers, photographers, influencers, news outlets, and award-winning entertainment studios.

6. For almost two decades I have been assisting rights holders in leveraging, managing, licensing, and enforcing their intellectual property (IP) portfolios around the world. A good portion of this work has been investigating, documenting, and mapping the unlicensed use of content by pirate networks and tracking the monies that travel through those illegal operations around the world.

7. I am a graduate of the FBI and DEA Citizens Academy and a member of InfraGard. I have received advanced training by both agencies that in turn have furthered my ability to assist seeking out and defining operations and pirate enterprises. My efforts have been acknowledged with awards from State of California Senate, the FBI, DEA, and Los Angeles Sheriff's Department, among others.

8. I joined Takeover Industries, Inc. in or about April 2021. I have over 20 years' experience in operating and branding a business, intellectual property licensing, as well as deep experience in online forensics.

9. Takeover developed quickly. Soon after I joined, I negotiated an endorsement deal with famed boxing legend Manny Pacquiao. It became apparent that Takeover had talent in creating, marketing and distributing a beverage brand, but it seemed to lack general business experience. I began focusing my energies on seeking investors and endorsement partners, securing contracts, and coordinating the different parts of the company.

10. I spearheaded Takeover's growth initiatives to refine the product portfolio and bolster national marketing efforts. I secured additional high-profile endorsement agreements with award winning music artists, NFL players, other Professional Athletes, and assisted the Company in securing national media attention from CNBC, Fox News, and CBS Sports. Additionally, I helmed Takeover's investment deals and online/retail distribution pacts.

11. At that point, Defendant Michael Holley was handing the finances for Takeover. He had sole access to the bank accounts.

12. As I negotiated deals and obtained investors for Takeover, I assumed the Mr. Holley was handling his relatively limited role. However, around August, 2021, I began to hear complaints that vendors and professional service providers

were not being paid. This was very worrisome to me because when a new business stops paying its debts, it can quickly lose credibility. In turn, I lose credibility with my relationships.

13. Mr. Holley was hospitalized with COVID in October, 2021, and we demanded that he provide us access to the banking information. He refused, delegating that authority to his daughter, and told me seek bank statements from an outside accountant, Defendant Eisenberg.

14. At the same time, we had an independent accounting firm and a CFO for hire to review and shore up the books so that we could meet the expectations of our investors. Defendant Eisenberg forwarded on the bank statements to myself and our CFO and accountant. Upon review, it became apparent that large sums of money were being withdrawn by Mr. Holley without authorization from the Board of Directors.

15. We looked into the matter and wrote a letter to Mr. Holley, who did not substantively respond. We were forced to take extraordinary actions to obtain access to the bank accounts. When we did, I began paying vendors, who were relieved to start receiving timely payment. Yet, Mr. Holley wouldn't provide us with all the information we needed.

16. One at least five separate and distinct occasions, I, directly or through counsel or others have requested that Defendant Holley provide the username and password to the account that controls our company domain names, takeoverind.com, nxtlvlusa.com, and nxtlvlglobal.com. Those domains are with the registrar Godaddy LLC. Upon notification that Mr. Holley was terminated from the Company, the username and password were changed. As of as recent as the date of this declaration, Defendant Holley has the ability to direct, sell, transfer, and/or otherwise fully control and operate any Company domains.

17. A "domain" is the "place" housing all of the files and instructions that drive a particular website. The "domain name" (and more particularly the "uniform resource locator" or "URL") point to the domain. To access the domain and change the appearance or operation of the website, a user needs to logon to the password-protected domain. Only Holley has that password. Thus, the following key domains are outside the control of Takeover:

A. Takeoverind.com. This domain, viewable at www.takeoverind.com, contains the content and instructions for the main corporate website of Takeover. It is also the domain used in connection with Microsoft.com, to control and route Takeover's email system. It is used as a center for the company's corporate online presence, and is often used as the reference point for its sales accounts and to sign up for its email and office software (also via Microsoft.com). Holley currently has the power to alter Takeover's corporate presence or read its emails.

B. nxtlvlusa.com: This domain, viewable at <www.nxtlvlusa.com>, houses the retail store website for Takeover Industries. Nearly 90% of all sales are conducted through the nxtlvlusa.com domain. At present, the Company cannot control the domain name system, the domain, or move, or otherwise control the main level of the domain. If the nvtlvlusa.com domain name be manipulated, moved, transferred, or interrupted, approximately 90% of all sales would cease.

18. Takeover is less than a year old. A majority of its business is transacted through its web domains. If anything should happen to the operation of the domains, Takeover would fail to bring in revenue substantial enough to meet its obligations and operate its business.

19. In addition to the GoDaddy Account, Mr. Holley has refused to turn over any username and password for the Company account at Microsoft's

Office.com. This account controls the Company's email system. As of as recent as the date of this declaration, Defendant Holley has the ability to see, read, and control the any Company email. The Company has employees, vendors, and daily communication with parties around the world. Email is critical to the operation and well being of the company. At present we cannot terminate or add an email or otherwise conduct important backups or control our email system at an administrator level.

20. In today's landscape and certainly as it relates to the remote operations of Takeover, email is critical to our operation. If the email system at Takeover fails, our ability to conduct effective business will wholly fail. Our sales and customer service will fail. Our ability to operate will fail.

21. I have no doubt that Mr. Holley's possession of the GoDaddy account and Office.com account without the company having access presents a clear and present danger to the basic operations of Takeover. The website is used to communicate information. The email system is used to communicate internally and externally.

22. I have seen correspondence with his Attorneys that states that Mr. Holley may not even have access to these accounts. The login email username is Elitebev@gmail.com, an email of Mr. Holley. The password granting access was changed after Mr. Holley was informed of our request and his termination. If Mr. Holley does not have access, then it is truly frightening because someone posing as him appears to have access. We need access to the GoDaddy account to operate our domains and email system. GoDaddy, LLC is the ICANN registrar of the domains owned by the Company. GoDaddy will not issue new passwords for the domains without, at the very least, a Court Order.

23. Further, Takeover is completing an audit. Since November 2021, at least five requests for completed W-9's have been made to Mr. Holley. As late as December, 2021, Mr. Holley responded to request for a W-9 saying "Is this the best we can do?" Attached hereto as Exhibit A is a true and correct copy of a December 3, 2021 email exchange with Mr. Holley regarding the W-9 request. We also requested completed W-9's from Defendant Holley's daughter Courtney Holley, and One Elite Sports LLC, a company controlled by Holley. All requests have been ignored. Just today, I got a further request from our outside accounting firm for the W9's of One Elite and Courtney Holley. Defendant Eisenberg sent his W9 back within 30 minutes of our request.

24. I understand that when Holley and Toby McBride founded Takeover, they agreed to compensate each other at $20,000 per month. Upon reviewing the bank statements for Takeover, Mr. Holley's transfers to his own account exceeded that nearly every month. Attached hereto as Exhibit B is a true and correct copy of redacted bank statements showing transfers to Mr. Holley's account in the amount of $320,770 for the seven months between May and November, 2021. Further, One Elite Sports, LLC received $51,500. The bank statements showing transfers to One Elite Sports, LLC are attached hereto as Exhibit C.

I declare under the penalty of perjury under the laws of the United States of America and that the foregoing is true and correct.

Executed on the 7th day of February 2022 at Nayarit, Mexico.

DocuSigned by:
Jason Tucker
8E02638EE1FA493...

Jason Tucker