LAW OFFICES
**MANOLIO & FIRESTONE, PLC**
8686 E. San Alberto Dr., Suite 200
Scottsdale, Arizona 85258
(480) 222-9100
vmanolio@mf-firm.com
Veronica L. Manolio, SBN 020230
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**IN AND FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Takeover Industries, Inc., a Nevada corporation,<br>Plaintiff,<br>v.<br>Michael Holley and Chirine Holley, husband and wife, *et al.*,<br>Defendants. | Case No. 2:22-cv-00357-PHX-JJT<br><br>**TAKEOVER INDUSTRIES, INC.'S REPLY IN SUPPORT OF ITS REQUEST FOR TEMPORARY RESTRAINING ORDER**<br><br>(Before the Honorable J. Tuchi) |

In considering the temporary relief at issue, Plaintiff Takeover Industries, Inc. respectfully asks this Court to focus on the very **limited** scope of relief sought. Takeover has only asked that this Court require Defendant Michael Holley to provide equal access (not exclusive access) to company accounts, domains, email (Microsoft) accounts and Internet operations to protect the company. Protecting Takeover and its finances necessarily protects the shareholders of the "parent" company, Labor Smart ("LTNC"). Takeover asks the Court to order access to P.O. box(es) to ensure that payments are received, important documentation is received, and that the Company remains protected during this dispute. Finally, Takeover asks the Court to order an injunction against acts of dissipation, waste, interference with company business, and/or destruction of evidence.

Whether these requests qualify as maintaining a *status quo* or treated "mandatory" affirmative acts is irrelevant. Takeover meets either burden for the relief it has sought.

Undersigned counsel will **not** reciprocally engage unprofessional "swipes" at opposing counsel nor point out mere mistakes or typos (*i.e.*, PCOAB vs. PCAOB). This case presents serious matters with serious implications to the nearly 50,000 shareholders who hold stock in Labor Smart, Inc. ("LTNC") and whose investments rely on the survival of Takeover. [1, 2] Whatever "bad blood" exists between clients/parties or prior counsel is unimportant Takeover asks this Court to solely focus on the facts and law to protect Takeover and the LTNC shareholders whose investments rely on Takeover.

---

[1] Takeover Industries, Inc. is referred to as "Takeover" and/or "Company" herein.

[2] While counsel does not wish to engage in a tit-for-tat argument, because both the Court (the Hon. James A. Teilborg) and opposing counsel mentioned the unavailability of undersigned counsel for an in-person emergency hearing last week, this issue needs to be addressed. By signing below, undersigned counsel avows/states:

a. First and foremost, I apologize to the Court. While I made the emergency request for Takeover with hopes for expedited relief, this Court scheduled the hearing more quickly than anticipated. I was out of the country on a pre-planned vacation but could have been back in Arizona within hours (and intended to be). I did not anticipate that a hearing would be scheduled within less than 24 hours of my request, and I could not physically drive/return to Arizona while simultaneously drafting pleadings that the Court ordered to be filed by 8:00 a.m. the following day.

b. I did have a lawyer (William H. Kennedy) from my office prepared to appear in my stead, and I would have ensured that Takeover was present in Court regardless of my physical absence and/or my appearance by phone or video.

c. I have clearly become too accustomed to the recent COVID-19 protocol of most courts, anticipating that the hearing (even an emergency hearing) would be conducted by video conferencing.

d. I accept full responsibility for underestimating this Court's speed and for failing to recognize that certain courts still prefer in-person appearances. I do apologize.

e. Takeover should not be punished, and the emergency request should not be treated any less favorably because I underestimated the speed of a hearing. This remains an emergency and important matter despite my obvious mistakes.

f. I make these statements under the penalty of perjury.

## I. REBUTTAL ON FACT ISSUES

Defendant Michael Holley ("Holley") rests his entire responsive factual background on the Declarations of Holley, himself, and legal counsel Matthew Canini. While Mr. Holley's Declaration includes opinions, insults, and avowals that future wrongdoing will not occur,[3] injunctive relief need only focus on the **undisputed** facts that Defendant Holley has now established on the record:

### A. Declaration of Michael Holley

***Facts related to Takeover***

1. Takeover was formed by Messrs. Holley and McBride, and those two (2) were the initial Directors and Officers. *See*, Holley Declaration (Doc. 15-5) at ¶¶7-8.

2. By June 2021, Takeover added Messrs. Tucker and Pavlik as Directors and Officers of Takeover. *Id.* at ¶¶9-10, citing Exhibit D thereto (Doc. 15-9), on file.

3. As of June 10, 2021, Defendant Holley was assigned the **officer** roles of CFO, COO, and treasurer of the Company. Mr. McBride was appointed as the Company's CEO, and Mr. Tucker was made the President of Takeover. *Id.*

4. Every one of the Directors/Officers signed the June 20, 2021 Minutes confirming these elections and appointments. *Id.; see specifically*, Doc. 15-9 at p. 5 of 5.

5. Between June and November 2021, Messrs. Holley and McBride made **multiple** distributions to themselves acting as the "sole directors and officers of Takeover." *See*, Holley Declaration (Doc. 15-5) at ¶14.

6. Mr. Holley solely authorized payments to his personally-owned subsidiary entity, One Elite Sports, without seeking approval from the Takeover Officers/Directors. *Id.* (Doc. 15-5) at ¶¶18-20. He claims authority to make these payments. *Id.*

---

[3] Mr. Holley's Declaration includes text messages as alleged evidence, without any foundation/authentication. Such items (Docs. 15-13 and 15-15, attached as Exhibits H and J thereto) are inadmissible and must not be considered by the Court for any purpose.

7. Mr. Holley admits that he denied access to Takeover's bank records when he was hospitalized with a severe case of COVID-19 in late 2021. *Id*. (Doc. 15-5) at ¶¶21-24. While Mr. Holley blames Mr. McBride for "directing" him to deny access, relying on an unfounded and un-authenticated text message, he does not (and cannot) deny that he forbade access to the Takeover/Company accounting records to the other Company Officers/Directors. *Id*.

8. Takeover is a Nevada corporation governed by Nevada corporate law. *Id*. (Doc. 15-5) at ¶¶7, 19, citing Exhibit C to Doc. 15-5.

9. Takeover removed any "defects" that previously existed, and Takeover removed Mr. Holley from its Company Board of Directors pursuant to a Special Meeting of the Board in December 2021. *Id*. (Doc. 15-15) at ¶37, citing Doc. 2-1 at ¶34.

10. While Mr. Holley claims that he is *still* an officer and director of Takeover, pretending that he remains the CFO, COO, and Treasurer (officer positions) and that he remains on the Board (a director position), Mr. Holley also claims that:

a. he does not have access to basic Company documents, including corporate formation documents, Operating Agreements, and/or financial documents, but admits he has "certain documents" that he has refused to provide thus far:

b. he does not have or maintain the "company records" for Takeover;

c. he does not maintain the Company's P.O. Box (and he fails to identify who does);

d. he does not maintain the Board of Directors Minutes for Meetings and/or Special Meetings;

e. he was not responsible for noticing meetings or "Special Meetings" of the Takeover Board of Directors; and

f. he is unaware of any Minutes, Consents, or Resolutions of Takeover. *Id*. (Doc. 15-5) at ¶¶ 2, 5-6, 38.

***Facts related to Labor Smart/LTNC***

1. Labor Smart is a publicly-traded company, and Labor Smart (LTNC) owns 100% of Takeover's equity. *Id*. (Doc. 15-5) at ¶¶25-27.

2.. The **sole** business of Labor Smart/LTNC is to "hold shares of Takeover." *Id*. at ¶31.

**B. Declaration of Counsel Matthew Canini**

There is absolutely nothing in Mr. Canini's Declaration that relates to the law on injunctive relief. While Mr. Canini states his opinions/positions about prior proceedings (the California lawsuit) and his assumptions about the "quicker" ways to handle this litigation, there is nothing offered for this Court to use in evaluating injunctive relief.

To the contrary, this Court should note:

1. The California Court did **not** any type of deny emergency injunctive relief as Mr. Canini claimed in his email to undersigned counsel (and which Judge Teilborg noted and requested in his Order of March 9th). *See*, Doc. 12 (Judge Teilborg's Order, referring to Doc. 11-1 at p. 1 of 3); *see also*, Doc. 15-3 at p. 2 of 12; Doc. 15-4 at p. 2. The California Court changed a hearing date to effectuate "orderly proceedings" and then dismissed the injunction hearing as "moot" when Takeover voluntarily dismissed the California suit and re-filed in Arizona. *Id*. at Docs. 15-3, 15-4. No Court "adjourned the application given its non-emergent and meritless nature" as (mis)represented.

2. Defendant Holley disputed personal jurisdiction in California but insisted that this matter was proper in Arizona. *Id*. (Doc. 15-1) at ¶8.

3. This case is not "duplicative" of the California suit because that case was dismissed before this suit was filed. *Id*. (Doc. 15-1) at ¶10, citing Exhibit 3; ¶11.

4. This Arizona lawsuit seeks "almost exactly" what was sought in California, except that the case was brought where Mr. Canini argued that jurisdiction was appropriate. *Id*. (Doc. 15-1) at ¶¶6, 8, 10-11.

## II. LEGAL REBUTTAL

### A. Takeover Meets the Standards for __Both__ "*Status Quo*" Relief and Mandatory Injunctive Relief.

Takeover does not disagree that there is a distinction in injunctive relief between a "*status quo*" order (which normally requires prohibitory actions to preserve the issues) and a "mandatory" order (which normally requires a party to take affirmative actions). *See, e.g., Marlyn Nutraceuticals, Inc. v. Mucos Pharma BmbH & Co*., 571 F.3d 873, 878-879 (9th Cir. 2009) (other, internal citations omitted). While "*status quo*" relief is less onerous to obtain, a mandatory injunction requires only a showing that extreme damages will result **__or__** that injuries cannot be compensated by money damages. *Id*. at 879, citing *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1980).

Even if this Court focuses solely on the **__undisputed__** facts, there is strong evidence that injunctive relief is warranted under either standard.[4]

#### 1. Likelihood of Success on the Merits

Defendant Holley does not dispute that Takeover is an entity that focuses on performance water products and energy drinks and does not dispute the "NXT LVL" branding that Takeover uses. Defendant Holley agrees that Takeover intended to become a publicly-traded company and fully admits that Takeover put **__all__** of its equity into LTNC, a public company whose "sole" business is to hold the shares of Takeover. *See*, Holley Declaration (Doc. 15-5) at ¶¶25-27.

The Response makes multiple attempts to "lump" the corporate entities of Takeover and LTNC together, ignoring the corporate distinctions and differing roles.

---

[4] Takeover's President and Declarant (Jason Tucker) will be present at the hearing and will present sworn testimony and evidence to further establish the Company's need for injunctive relief. However, this Reply is intentionally limited to those facts __admitted__ by the Defendant Holley which demonstrate the need for emergency relief.

**<u>Takeover</u>** is a Nevada corporation without any bylaws and, therefore, relies solely on Nevada law/statutes for its governance. *Id*. (Doc. 15-5) at ¶¶7, 19, Exhibit C thereto (Nevada corporate documentation). Under Nevada law, Officers and Directors are treated differently. N.R.S. §78.115, *et. seq.* Officers are chosen by the Board of Directors and Officers hold the fiduciary duties to exercise powers in "good faith and with a view to the interests of the corporation." N.R.S. §§78.130, 138.

As of June 2021, Defendant Holley was elected/appointed in the **<u>Officer</u>** positions of CFO, COO, and Treasurer of Takeover. (Doc. 15-5 at ¶¶9-10, Doc. 15-9). While there were other elected Officers, Defendant Holley acted as if he and Mr. McBride were the "sole" officers and directors, and Defendant Holley agreed that he could personally receive payments without approval from the other Officers or the Board of Directors. *Id*. (Doc. 15-5) at ¶14. Likewise, Defendant Holley unilaterally authorized payments to his own subsidiary entity without the knowledge or agreement of any other officers/directors. *Id*. at ¶¶18-20.

Regardless whether Defendant Holley overpaid himself by eighty thousand dollars ($80,000.00) or ONE dollar, <u>he fully admits that he made distributions to himself and his solely-owned entity (One Elite Sports) without knowledge or approval by the other Officers</u>. Defendant Holley ignores his "good faith" fiduciary duties and falsely claims that he was only one of two (50%) of the officers/directors at a time when **<u>undisputed</u>** evidence shows there were four (4) separate officers and directors. (Doc. 15-9). Although Defendant Holley has tried to implicate another officer (Mr. McBride) of similar misconduct and over-distributions, Mr. McBride's alleged participation cannot excuse the significant distributions Defendant Holley made to himself without authority.

Defendant Holley's argument that he was improperly removed as a "Director" is irrelevant to this analysis. Nevada law required Defendant Holley to act in "good faith" as an <u>Officer</u>, regardless whether he sat on the Board of Directors. N.R.S. §78.138.

Because Defendant Holley clearly disregarded the good faith interests of Takeover and intentionally took funds without notice or authority of his fellow Officers, Takeover is likely to succeed on its claims for breach of fiduciary duties, conversion, and/or unjust enrichment.

**2. Likelihood of Irreparable Harm**

First of all, Defendant Holley does not dispute that Takeover's business is mostly conducted online and through www.nxtlvlusa.com. He does not dispute that the domains www.takeoverind.com, www.nxtlvlusa.com and www.nxtlvlglobal.com are owned by Takeover (the Company) and that the Company's email relies on its Microsoft account. Defendant Holley admits his exclusive access to control the domain name system (DNS) for each domain and that he has **solely** retained the "high-level administrator passwords" for both the domains and email accounts. *See, e.g.,* Doc. 15-5 at ¶¶42, 45, 50. Defendant Holley claims "lawful possession" of the passwords and admits he is hoarding the company's logins and passwords for "fear" that the Company's other Officers/Directors ***may*** "waste" assets or commit breaches. At the same time, however, Defendant Holley admits he is not doing anything to help the Company and is not actively managing Takeover's assets, domains, emails, and/or any of its business functions. *Id.* at ¶¶44-45. In fact, Defendant Holley claims he is unable to perform certain functions because he is still suffering from his COVID-19 infection and remains on oxygen as a result. *Id.*

Secondly, Defendant Holley does not dispute that Takeover had begun a "spin off" from LTNC and/or that Takeover is in the throes of an attempt to operate under its own stock ticker. Defendant Holley intentionally ignores that the **purpose** of the spin off is to protect the 50,000 shareholders of LTNC whose sole investment lies in the beverages/ products sold through Takeover. While the Response spends multiple pages arguing about a PCAOB audit and whether such an audit is needed for a new stock registration, there is no dispute that Takeover is attempting an independent stock registration.

Finally, Defendant Holley does not dispute that Takeover has a P.O. Box in Arizona and admits he has not "done anything" with the box since last year. *Id*. at ¶45. Defendant Holley admits his **sole** access and that nobody from Takeover can retrieve payments, or other important items (i.e., insurance and IRS documents) received by mail.

Takeover has established that the GoDaddy.com account password has been changed and that the Company runs a constant risk that 90% of sales will cease if it cannot properly govern its domains (or move the domains to proper hosting providers). Takeover has established that certain Microsoft email accounts cannot be accessed, including important emails that contain invoices and delinquencies owed. It has established that vendor sponsorships/contracts are at risk. And, Takeover has established its intention to finalize the PCAOB audit as a means to become a federally-registered OTC entity to protect LTNC shareholders with a vested interest in Takeover's success.

Defendant Holley excuses his actions claiming that Takeover's injuries can all be adequately compensated by money. His argument disregards the likelihood of Takeover's **complete failure as a business.** If the Company loses 90% of sales, cannot adequately pay its sponsors and vendors, cannot adequately communicate with investors/ stockholders, and cannot accomplish its stock registration, it will likely fail entirely (with multiple third-party investors/shareholders being harmed). These are not slight damages – they are potentially catastrophic, meeting the "extreme or very serious damage" likely to occur if temporary relief is not granted. *Marlyn Nutraceuticals, supra*, at 879.

### 3. Balance of Equities in favor of Takeover and/or LTNC

Takeover agrees that this Court must consider interests of "all parties" when looking at a balance of equities. While Takeover has demonstrated its need for assistance to protect the Company, its success, its assets, and shareholders of the parent company, Defendant Holley has not articulated **any** hardship he would suffer by providing access to the "high-level administrator passwords" or access to the P.O. Box.

It is important to note that Takeover has only sought **equal** access to company property – not exclusive access. While Defendant Holley argues that someone "could" waste company resources, equal access allows both sides an ability to monitor activity. If this Court orders equal access, both sides have equal access to address any wrongdoing.

There is no "balance" in the equities here; the tipping is sharply in favor of granting the requested relief because Defendant Holley will suffer **no** harm whatsoever.

**4. Public Interest**

Defendant Holley seems to believe that this is a dispute between four (4) men who act as the Officers/Directors of Takeover. He focuses solely on self-interested arguments about his level of pay/salary and that his "removal" as an Officer/Director of Takeover. He ignores the fact that this lawsuit affects roughly 50,000 ***other*** people/shareholders.

Takeover's limited injunctive request promotes efficiency in the stock-registration (OTC) process, including properly-audited financials, that will benefit several investors. Defendant Holley suggests that Takeover can simply "delay the audit" and postpone registration "until resolution of this dispute," but that position disregards the public/ shareholders who are innocent bystanders who should not be dragged into this dispute.

There is a clear vested interest in protecting public companies and/or investors, and even a "few months" of delay is an unfair result to the public.

**B. Takeover Withdraws its Request for Expedited Discovery at this Time.**

Though the Court noted that Takeover's request seeks a TRO (not a Preliminary Injunction), the requirements are the same. Regardless of form, Takeover is required to establish likelihood of success, likelihood of irreparable injury, the balance of hardships in its favor, and that an injunction serves the public interest. *Marlyn Nutraceuticals,* at 879; *see also, Selene v. Legislature of Idaho*, 514 F.Supp.3d 1243, 1250 (D. Idaho 2021) citing *L.A. Mem. Coliseum Comm. V. NFL*, 634 F.2d 1197, 1200 (9th Cir. 1980) and FRCP Rule 65. The key difference in relief is the duration of remedy. *Selene* at 1250.

At this juncture, Takeover remains confident that temporary (TRO) relief is warranted, and once the parties are made to preserve/protect the Company, its assets, and the shareholders of LTNC who rely on Takeover's success, no further court intervention should be necessary. Thus, Takeover respectfully withdraws its request for expedited discovery at this time. If the TRO hearing/result proves that longer relief is needed, Takeover will file a renewed application and seek discovery necessary for that relief.

This withdrawal is intended to promote time and cost efficiency. Takeover did not seek expedited discovery in bad faith but does not wish to increase litigation costs. Takeover reasonably believes that **the parties should cooperate** and remains hopeful that this Court's intervention will facilitate a more cooperative approach to this litigation.

### C. A Bond Will Now be Appropriately Set at $0.

Rule 65 FRCP requires a bond to be directly tied to "costs and damages" that may be suffered from a wrongful injunction or restraint.[5] As the party opposing injunctive relief, Defendant Holley has the burden of demonstrating evidence of likely damages. *See, Conn. Gen. Life Ins. Co. v. New Images*, 321 F.3d 878, 882-883 (9th Cir. 2003).

Defendant Holley did not even **try** to address damages or costs but arbitrarily proposed a "$1,500,000 bond." While this Court has wide discretion to determine a bond amount, without actual evidence of likely costs or damages, the bond is appropriately set at zero ($0). *Id.*, citing *Walczak v. EPL Prolong, Inc.,* 198 F.3d 725, 733 (9th Cir. 1999) and *Gorbach v. Reno*, 219 F.3d 1087, 1092 (9th Cir. 2000).

## III. CONCLUSION

For all the foregoing reasons, Takeover has established the standards for both *status quo* and mandatory injunctive relief, and there is no evidence supporting a bond.

---

[5] Takeover incorporates its prior bond pleading (Doc. 12) as if repeated here *verbatim*.

DATED this 16th day of March, 2022.

**MANOLIO & FIRESTONE, PLC**

By: /s/ Veronica L. Manolio
Veronica L. Manolio
8686 E. San Alberto Dr., Suite 200
Scottsdale, Arizona 85258
*Attorneys for Plaintiff*