# Exhibit B

1  **Sills Cummis & Gross PC**
   101 Park Avenue, 28th Fl.
2  New York, NY 10178

3  Matthew P. Canini (*Pro Hac Vice*)
   Direct Dial: 212.500.1582
   Email: mcanini@sillscummis.com
4  *Attorneys for Defendant Michael Holley*

5  **Papetti Samuels Weiss McKirgan LLP**
   Scottsdale Quarter
6  15169 North Scottsdale Road
   Suite 205
7  Scottsdale, AZ 85254

   **Bruce Samuels** (State Bar No. 015996)
8  Direct Dial: 480.800.3530
   Email: bsamuels@PSWMlaw.com

9  ~~Attorneys for Defendant Michael Holley~~

10

11                **UNITED STATES DISTRICT COURT**

12                      **DISTRICT OF ARIZONA**

13  | Takeover Industries, Inc., a Nevada | Case No. 2:22-cv-00357-PHX-JJT |
    corporation,

14
              Plaintiff /
15            Counterclaim Defendant,

16        v.

17  Michael Holley and Chirine Holley,
    husband and wife; David Eisenberg and
18  Jane Doe Eisenberg, husband and wife,

19            Defendants/ Counterclaim      **VERIFIED FIRST AMENDED**
              Plaintiffs.                    **ANSWER WITH AFFIRMATIVE**
20                                           **DEFENSES, COUNTERCLAIMS AND**
                                             **THIRD-PARTY COMPLAINT**
21  Michael Holley, individually and
    derivatively on behalf of Labor Smart,
22  Inc., a Wyoming corporation,

23            Third-Party Plaintiff,

24        v.

25  Jason Tucker and Melissa Tucker,
    husband and wife~~;~~, Toby McBride, an
26  unmarried individual~~;~~, Joseph Pavlik, an
    unmarried individual,
27

                                    1

Third-Party Defendants.

Defendants-Counterclaimants Michael Holley and Chirine Holley, husband and wife, (the "Holley Defendants"), and Defendant Third-Party Plaintiff, Michael Holley, individually and derivatively on behalf of, Labor Smart, Inc., ("LTNC"), a Wyoming corporation, by and through their counsel, Sills Cummis & Gross P.C., and Papetti, Samuels, Weiss, McKirgan, LLP, answer, Plaintiff Takeover Industries, Inc.'s ("Takeover's")[1] complaint (the "Complaint") and interpose their first amended affirmative defenses, third-party complaint, and counterclaims, as follows:

## ANSWER TO THE COMPLAINT

1.      The Holley Defendants deny having knowledge or information sufficient to form a belief with respect to the allegations in paragraph 1 of the Complaint, except admit that Takeover is a Nevada corporation that claims to have a principal place of business in California.

2.      The Holley Defendants admit the allegations in paragraph 2 of the Complaint.

---

[1] Takeover and LTNC are periodically referred to herein as the "Company."

3.   The Holley Defendants deny having knowledge or information sufficient to form a belief with respect to the allegations in paragraph 3 of the Complaint.

4.   The Holley Defendants deny the allegations in paragraph 4 of the Complaint.

5.   The Holley Defendants deny the allegations in paragraph 5 of the Complaint.

6.   Paragraph 6 of the Complaint states a legal conclusion to which no response is required.  To the extent a response is required, the Holley Defendants deny the allegations in paragraph 6 of the Complaint.

7.   Paragraph 7 of the Complaint states a legal conclusion to which no response is required.  To the extent a response is required, the Holley Defendants deny the allegations in paragraph 7 of the Complaint.

8.   The Holley Defendants deny the allegations in Paragraph 8 of the Complaint.

9.   The Holley Defendants deny the allegations in paragraph 9 of the Complaint, except admit that defendant Michael Holley has decades of experience as an owner, manager, and officer of beverage companies.

10.   The Holley Defendants deny the allegations in paragraph 10 of the Complaint, except admit that defendant Michael Holley and Toby McBride formed Takeover in 2021 and that Takeover sells a product branded NXT LVL.

11.   The Holley Defendants deny the allegations in paragraph 11 of the Complaint, except admit that Takeover is a Nevada corporation.

3

12.     The Holley Defendants deny the allegations in paragraph 12 of the Complaint, except admit that at relevant times Takeover was a wholly owned subsidiary of LTNC.

13.     The Holley Defendants deny the allegation in paragraph 13 of the Complaint, except admit that at relevant times defendant Michael Holley was a director of LTNC.

14.     The Holley Defendants deny the allegation in paragraph 14 of the Complaint, except admit that at relevant times Joseph Pavlik was a director and officer of Takeover and LTNC.

15.     The Holley Defendants deny the allegations in paragraph 15 of the Complaint, except admit that Takeover sells a product branded as NXT LVL, amongst others.

16.     The Holley Defendants deny having knowledge or information sufficient to form a belief with respect to what Jason Tucker ("Tucker") saw or his expertise, except admit that at relevant times Tucker worked for the Company as a consultant.

17.     The Holley Defendants deny the allegations in paragraph 17 of the Complaint, and respectfully refer the Court to the board of directors' resolution from the meeting for its contents, terms and/or provisions.

18.     The Holley Defendants deny the allegations in paragraph 18 of the Complaint, except admit that Takeover entered into various endorsement deals, including with Manny Pacquiao and/or his affiliated entities.

4

8839049
9027452

19.     The Holley Defendants deny having knowledge or information sufficient to form a belief with respect to the allegations in paragraph 19 of the Complaint.

20.     The Holley Defendants deny having knowledge or information sufficient to form a belief with respect to the allegations in paragraph 20 of the Complaint.

21.     The Holley Defendants deny having knowledge or information sufficient to form a belief with respect to the allegations in paragraph 21 of the Complaint.

22.     The Holley Defendants deny the allegations in paragraph 22 of the Complaint, except admit that at relevant times David Eisenberg was the Company's accountant.

23.     The Holley Defendants deny the allegations in paragraph 23 of the Complaint, except admit that Takeover's product branded as NXT LVL won the CSP Best New Beverage Product award.

24.     The Holley Defendants deny the allegations in paragraph 24 of the Complaint.

25.     The Holley Defendants deny the allegations in paragraph 25 of the Complaint, except deny having knowledge or information sufficient to form a belief with respect to whether LTNC was the subject of speculation by OTC day traders.

26.     The Holley Defendants deny the allegations in paragraph 26 of the Complaint.

27.     The Holley Defendants deny the allegations in paragraph 27 of the Complaint, except deny having knowledge or information sufficient to form a belief with respect to what was expressed to Tucker.

5

8839049
9027452

28.     The Holley Defendants admit the allegations in paragraph 28 of the Complaint.

29.     The Holley Defendants deny the allegations in paragraph 29 of the Complaint.

30.     The Holley Defendants deny the allegations in paragraph 30 of the Complaint, except admit that Takeover duly authorized defendant Michael Holley to control Takeover's funds as its COO and CFO, which is in accordance with good corporate governance standards.

31.     The Holley Defendants deny the allegations in paragraph 31 of the Complaint.

32.     The Holley Defendants deny having knowledge or information sufficient to form a belief with respect to the allegations in paragraph 32 of the Complaint.

33.     The Holley Defendants deny the allegations in paragraph 33 of the Complaint and aver that all payments to defendant Michael Holley were duly authorized by the Company, as was the hiring of Courtney Holley to assist Michael Holley while he was ill with COVID-19 and in the hospital.

34.     The Holley Defendants deny the allegations in paragraph 34 of the Complaint, except deny having knowledge or information to form a belief as to the unnamed General Counsel's and Accountant's alleged findings, or the basis thereof.

35.     The Holley Defendants deny the allegations in paragraph 35 of the Complaint, except deny having knowledge or information sufficient to form a belief as to the alleged independent investigation, or its alleged findings.

8839049
9027452

36.     The Holley Defendants deny the allegations in paragraph 36 of the Complaint.

37.     The Holley Defendants deny the allegations in paragraph 37 of the Complaint.

38.     The Holley Defendants deny the allegations in paragraph 38 of the Complaint, excepted admit that Takeover's legal counsel sent the referenced letter and respectfully refer the Court to said letter for its contents, terms and/or provisions.

39.     The Holley Defendants deny the allegations in paragraph 39 of the Complaint, excepted admit that Takeover made the referenced demand and respectfully refer the Court to the referenced communication for its contents, terms and/or provisions.

40.     The Holley Defendants deny the allegations in paragraph 40 of the Complaint and aver that defendant Michael Holley offered to make the single password over which he had exclusive control (because he is the lawful owner of the subject account and its contents) available for use upon the presentation of proof that he had been lawfully and properly removed from the Company, except admit that said password was not turned over because such proof was never provided and, upon information and belief, does not exist.

41.     Admit the allegations in paragraph 41 of the Complaint.

42.     The Holley Defendants deny the allegations in paragraph 42 of the Complaint, except admit that Takeover filed a motion for injunctive relief in the

8839049
9027452

referenced lawsuit, and respectfully refer the Court to the public record of said lawsuit for the contents of the pleadings and papers filed therein.

43.     The Holley Defendants deny the allegations in paragraph 43 of the Complaint, except admit that Michael Holley opposed Takeover's motion for injunctive relief and respectfully refer the Court to the public record of said lawsuit for the contents of the pleadings and papers filed therein.

44.     The Holley Defendants deny the allegations in paragraph 44 of the Complaint, except deny having knowledge or information sufficient to form a belief as to what Takeover learned and/or as to the actions of third parties.

45.     The Holley Defendants deny having knowledge or information sufficient to form a belief with respect to the allegations in paragraph 45 of the Complaint, except admit that Takeover voluntarily dismissed the California action, and aver that this was done after refusing the Holley Defendants' offer to stipulate to transfer the matter to this district and causing them to spend legal fees on a motion to dismiss.

46.     The Holley Defendants deny the allegations in paragraph 46 of the Complaint, except admit that Takeover through its legal counsel contacted Michael Holley on or about December 22, 2022, and respectfully refer the Court to the referenced communication for its contents, terms and/or provisions.

47.     The Holley Defendants deny the allegations in paragraph 47 of the Complaint, except admit that Takeover made the referenced communication and respectfully refer the Court to said communication for its contents, terms and/or provisions.

8

8839049
9027452

48.     The Holley Defendants deny the allegations in paragraph 48 of the Complaint.

49.     With respect to the incorporated allegations in paragraph 49 of the Complaint, the Holley Defendants incorporate each corresponding denial, admission and/or averment as if fully set forth herein.

50.     The allegations in paragraph 50 of the Complaint state a legal conclusion to which no response is required.  To the extent a response is required, the Holley Defendants deny those allegations.

51.     The Holley Defendants deny the allegations in paragraph 51 of the Complaint.

52.     The Holley Defendants deny the allegations in paragraph 52 of the Complaint.

53.     The Holley Defendants deny the allegations in paragraph 53 of the Complaint.

54.     The Holley Defendants deny the allegations in paragraph 54 of the Complaint.

55.     The Holley Defendants deny the allegations in paragraph 55 of the Complaint.

56.     With respect to the incorporated allegations in paragraph 56 of the Complaint, the Holley Defendants incorporate each corresponding denial, admission and/or averment as if fully set forth herein.

9

8839049
9027452

57.     The Holley Defendants deny the allegations in paragraph 57 of the Complaint, except admit that at relevant times defendant Michael Holley was the CFO of Takeover and had access to Company financial accounts.

58.     The Holley Defendants deny the allegations in paragraph 58 of the Complaint.

59.     The Holley Defendants deny the allegations in paragraph 59 of the Complaint.

60.     The Holley Defendants deny the allegations in paragraph 60 of the Complaint.

61.     The Holley Defendants deny the allegations in paragraph 61 of the Complaint.

62.     The Holley Defendants deny the allegations in paragraph 62 of the Complaint.

63.     The Holley Defendants deny the allegations in paragraph 63 of the Complaint.

64.     With respect to the incorporated allegations in paragraph 64 of the Complaint, the Holley Defendants incorporate each corresponding denial, admission and/or averment as if fully set forth herein.

65.     The Holley Defendants deny the allegations in paragraph 65 of the Complaint.

66.     The Holley Defendants deny the allegations in paragraph 66 of the Complaint.

10

67.     The Holley Defendants deny the allegations in paragraph 67 of the Complaint.

68.     With respect to the incorporated allegations in paragraph 68 of the Complaint, the Holley Defendants incorporate each corresponding denial, admission and/or averment as if fully set forth herein.

69.     The Holley Defendants deny the allegations in paragraph 69 of the Complaint and deny having knowledge or information sufficient to form a belief with respect to defendants Eisenberg.

70.     The Holley Defendants deny the allegations in paragraph 70 of the Complaint and deny having knowledge or information sufficient to form a belief with respect to defendants Eisenberg.

71.     The Holley Defendants deny the allegations in paragraph 71 of the Complaint and deny having knowledge or information sufficient to form a belief with respect to defendants Eisenberg.

72.     The Holley Defendants deny the allegations in paragraph 72 of the Complaint and deny having knowledge or information sufficient to form a belief with respect to defendants Eisenberg.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint and each of the claims therein fail to state a claim upon which relief may be granted.

11

8839049
9027452

### SECOND AFFIRMATIVE DEFENSE

The Complaint and each of the claims therein are barred in whole or in part by the doctrines of waiver, estoppel, ratification, and/or election of remedies.

### THIRD AFFIRMATIVE DEFENSE

Without admitting that any liability lies against the Holley Defendants, which liability is expressly denied, to the extent any payment to defendant Michael Holley was unauthorized, the Company's other officers and directors took payments under the same circumstances and in similar or greater amounts rendering them and Takeover *in pari delicto*.

### FOURTH AFFIRMATIVE DEFENSE

The business judgment rule.

### FIFTH AFFIRMATIVE DEFENSE

Without admitting that any liability lies against the Holley Defendants, which liability is expressly denied, the Holley Defendants are exculpated from liability pursuant to N.R.S. 78.138 for the conduct about which Takeover complains.

### SIXTH AFFIRMATIVE DEFENSE

Without admitting that any liability lies against the Holley Defendants, which liability is expressly denied, to the extent any conduct alleged in the Complaint was unauthorized, impermissible, or unlawful, such conduct was ratified, in whole or in part, by the Company's boards of directors, shareholders, and/or officers, as applicable.

### SEVENTH AFFIRMATIVE DEFENSE

The domains, web addresses, and other similar accounts referenced in the Complaint are owned by defendant Michael Holley and/or he is in lawful possession of said information as the Company's director and/or officer.

### EIGHTH AFFIRMATIVE DEFENSE

At all relevant times, defendant Michael Holley acted as a reasonable officer and and/or director would have in the circumstances.

### NINTH AFFIRMATIVE DEFENSE

Defendant Michael Holley does not have some or all of the fiduciary duties claimed in the Complaint.

### TENTH AFFIRMATIVE DEFENSE

Defendant Michael Holley's fiduciary duties, if any, are not governed by Arizona law.

### ELEVENTH AFFIRMATIVE DEFENSE

The corporate action by the Company alleged in the Complaint was, in whole or in part, taken without properly convening a meeting of the Company's shareholders or obtaining their consent, although such a meeting and/or consent was required.

### TWELFTH AFFIRMATIVE DEFENSE

The corporate action by the Company alleged in the Complaint was, in whole or in part, taken without properly convening a meeting of the Company's relevant boards

13

of directors or obtaining their consent, although such a meeting and/or consent was required.

### THIRTEENTH AFFIRMATIVE DEFENSE

Without admitting that any liability lies against the Holley Defendants, which liability is expressly denied, any amounts owed to Takeover by the Holley Defendants should be set off, in whole or in part, by amounts Takeover owes to the Holley Defendants.

### FOURTEENTH AFFIRMATIVE DEFENSE

Without admitting that any liability lies against the Holley Defendants, which liability is expressly denied, to the extent there has been any wrongdoing such acts or omissions were not caused by the Holley Defendants, but rather the Company's other officers, directors and/or control persons including, without limitation, Toby McBride, Tucker and/or Joseph Pavlik.

### FIFTEENTH AFFIRMATIVE DEFENSE

Without admitting that any liability lies against the Holley Defendants, which liability is expressly denied, any amounts owed to Takeover by the Holley Defendants should be reduced by the proportionate amount of harm to Takeover that was caused by the Company's other officers, directors and/or control persons including, without limitation, Toby McBride, Tucker and/or Joseph Pavlik.

### RESERVATION OF RIGHTS

14

The Holley Defendants reserve the right to amend, modify or supplement the foregoing affirmative defenses during the course of additional investigation or discovery.

**[Third-party Complaint and Counterclaims to Follow on the Next Page]**

**FIRST AMENDED THIRD-PARTY COMPLAINT AND COUNTERCLAIMS**

Third-party plaintiff Michael Holley, individually and derivatively on behalf of LTNC interposes his first amended third-party complaint, and the Holley Defendants counterclaim as follows:

**THE PARTIES**

1.      Third-party plaintiff Michael Holley ("Holley"), individually and derivatively on behalf of LTNC, was, at all relevant times, a resident of the state of Arizona, and a shareholder of LTNC and/or its predecessor in interest, Takeover.

2.      Derivative third-party plaintiff LTNC is a corporation originally formed on May 31, 2011, pursuant to the laws of the State of Nevada, which, on January 13, 2020, pursuant § 17-16-1810 of the Wyoming Business Corporation Act (the "Wyoming Act"), became a Wyoming Corporation.  Upon information and belief, LTNC currently claims to maintain a principal place of business in the State of California.

15

3.     Counterclaim defendant Takeover was formed in January 2021 pursuant to the laws of the State of Nevada by Holley and Toby McBride ("McBride") and had a principal place of business in Cave Creek, Arizona until, upon information and belief, McBride, Tucker, and Joseph Pavlik ("Pavlik"), without proper authorization, moved Takeover's principal place of business to the State of California.

4.     LTNC acquired 100% of Takeover's equity from Holley, McBride, and Pavlik in exchange for, amongst other things, LTNC's Series A Preferred shares and 6.8 billion shares of its common stock.

5.     Third-party defendant McBride, an unmarried individual, is, upon information and belief, a citizen of the State of California.

6.     Third-party defendants Tucker and Melissa Tucker, husband and wife (the "Tucker Third-party Defendants") are, upon information and belief, citizens of the United States, but domiciled in the foreign state of Mexico.

7.     Third-Party defendant Joseph Pavlik ("Pavlik"), an unmarried individual, is, upon information and belief, a citizen of the State of Florida.

**JURISDICTION**

8.     The McBride, Pavlik, and the Tucker Third-party Defendants are subject to the personal jurisdiction of this Court.  McBride, Tucker, and Pavlik were, at relevant times, officers and/or directors of the Company who entered this State and District to manage the Company, and/or projected their presence into this State and District with respect to the acts and omissions alleged herein.

8839049
9027452

9.      This action is not a collusive one to confer jurisdiction the Court would otherwise lack.

**FACTS COMMON TO ALL COUNTERCLAIMS AND THIRD-PARTY CLAIMS**

**A.     Takeover's Formation**

10.      9.In January 2021, Holley and McBride formed Takeover pursuant to the laws of the State of Nevada, and were its sole shareholders, officers and directors.

11.      10.Owing to Holley and McBride's original intent to utilize a passthrough tax structure, Takeover was registered with the IRS as subchapter s corporation.

12.      11.Holley and McBride originally supported Takeover as most startups are funded, through their personal finances, short term loans from companies they controlled and/or allowing Takeover to us the resources of its owners.

13.      12.For example, Holley and McBride consented to One Elite Sports making a loan to Takeover and laying out certain of its expenses, subject to them being repaid.  Holley also permitted Takeover to use his existing godaddy.com account so that Takeover could quickly and cost effectively establish a web presence.

14.      13.Holley and McBride agreed to compensate themselves in the amount of $240,000 per year for their services to Takeover.  However, because Takeover was still a nascent entity in early 2021, Holley and McBride did not take the payments in equal $20,000 installments.  They only took payments based on Takeover's available cash, and in varying amounts depending on Takeover's cash flow.

8839049
9027452

15. ~~14.~~Holley and McBride also agreed to certain additional *ad hoc* payments for their services to Takeover.  Such payments were also made to other affiliates of the Company, including Tucker and Pavlik, all of whom accepted the payments without objection.

16. ~~15.~~All payments were duly authorized and recorded in Takeover's books and records, which reflect that as of September 30, 2021, McBride was paid $352,000, Holley was paid $278,000 and Pavlick was paid $123,750.

B.     ~~Takeover Becomes a Wholly Owned Subsidiary of LTNC~~

**B.     LTNC'S STATE OF INCORPORATION**

17. Documents available on the Wyoming Secretary of State's website show that on January 30, 2020 LTNC (originally a Nevada Corporation) applied to the State of Wyoming pursuant to W.S. 17-16-1810 for a "continuance," a statutory procedure by which LTNC became a Wyoming Corporation, and renounced Nevada as its jurisdiction of formation.  (See ECF No. 44-1 at 30 of 41).

18. The public records of the State of Wyoming contain a certification by Edward A. Buchanan, the Secretary of State of Wyoming that "Labor Smart Inc. renounced its jurisdiction of formation and is now formed under the laws of the State of Wyoming in accordance with Wyoming statutes."  (Id.)

19. The public records of the State of Wyoming also show that LTNC filed annual reports with the state, by its former president and director Ryan Schadel in January 2021.

18

20.     The public records of the state of Wyoming show that on April 8, 2020, LTNC identified Joseph Pavlik as its president and director.

21.     Furthermore, disclosures LTNC made to the SEC signed by Michael Costello, LTNC's then president, also state LTNC is a Wyoming Corporation. (ECF No. 15-19 (September 8, 2021 SEC Form 8K, noting state of incorporation as Wyoming)).

22.     Despite the foregoing, it appears that on September 27, 2021, Michael Costello, LTNC's alleged president, applied to the Secretary of State of Nevada to have LTNC reinstated as a Nevada entity.

23.     Prior to September 27, 2021, it appears that LTNC's last filing with the state of Nevada was on May 31, 2016 indicating the entities status was revoked.

24.     Upon information and belief, to move LTNC's place of incorporation, both Nevada and Wyoming require LTNC to go through the statutory process of "conversion" (called "continuance" in Wyoming) or "domestication."  See N.R.S. 93A.105(conversion); N.R.S. 92A.270 (domestication); W.S. 17-16-1801 (domestication); W.S. 17-16-1810 (continuance).

25.     While the public record contain a statement by the Wyoming secretary of state that LTNC is a Wyoming corporation, and that it renounced Nevada as its place of incorporation (See ECF No. 44-1 at 30 of 41), the public record does not show the Third-Party Defendants complied with the statutory requirements necessary to convert LTNC back into a Nevada corporation through either "conversion" or "domestication."

C.     TAKEOVER BECOMES A WHOLLY OWNED SUBSIDIARY OF LTNC

19

8839049
9027452

26.   16.In February 2021, to get access to public capital markets, Takeover and LTNC entered into a series of transactions in which LTNC became Takeover's parent corporation and divested itself of its prior labor business.

27.   17.By a Stock Purchase Agreement, dated February 26, 2021, LTNC agreed to purchase all of Takeover's equity in exchange for 6,800,000,000 restricted shares of LTNC (the "Stock Purchase Agreement").

28.   18.In accordance with the stock Purchase Agreement, as amended, Holley, McBride, and Pavlik also each received 17 of LTNC's 51 Series A Preferred Shares.

29.   19.According to LTNC's public records, the Series A Preferred Shares have voting power equal to (0.01907 x (the number of issued and outstanding shares of LTNC's common stock eligible to vote at the time of the respective vote) / .49) - (0.01907 x (the number of issued and outstanding shares of LTNC's common stock eligible to vote at the time of the respective vote).

30.   20.For example, if LTNC has 1,000,000 issued and outstanding common shares on the date of a vote, each Series A Preferred Share can vote in amount equal to: ((19,070 / .49) – 19,070), or 19,848.36 votes.  Under this example, combined, the Series A Preferred would have 1,012,266.36 votes (19,848.36 x 51).

31.   21.If all 51 of the Series A Preferred Shareholders vote together they have majority shareholder control of the Company.

32.   22.If all 51 of the Series A Preferred Shareholders do not vote together, upon information and belief, the Series A Shareholder(s) seeking a majority approval for an action would need to get those additional votes from LTNC's common shareholders.

20

33. ~~23.~~ The Stock Purchase Agreement closed, and the shares were transferred to Holley, McBride and Pavlik on or about March 2021.

34. ~~24.~~ By a Special Meeting of Takeover that occurred in Arizona on June 10, 2021, McBride and Holley agreed to re-elect themselves to Takeover's board of directors, and to expand the board to include Pavlik and Tucker.

35. ~~25.~~ At this meeting, McBride and Holley also elected Holley to be the Takeover's Treasurer, CFO and COO, McBride to be Takeover's Chief Executive Officer and Secretary, Joseph Pavlik to be Takeover's Chief Science Officer, and Tucker to be Takeover's President.

36. ~~26.~~ Prior to becoming an officer and director of Takeover, Tucker's relationship to the Company was as a consultant.   Tucker did not accept his appointment to Takeover's board and the role of President until November 2021 because he was negotiating the terms of his modified employment arrangement with the Company.

37. ~~27.~~ On July 14, 2021, LTNC entered into an agreement whereby it transferred all of its assets associated with its former business to LTNC's former CEO for $500,000.

Takeover became LTNC's sole asset by virtue of this transaction, and LTNC had no other business operations whatsoever.

38. ~~28.~~ On September 13, 2021, by exercise of the Series A Preferred Shares, Tucker, McBride and Holley were appointed to LTNC's board of directors.

~~8839049~~
9027452

39.    29.In or about November 2021, Tucker, McBride and Holley agreed to modify their compensation to receive payments in equal amounts.

C.    Tucker, McBride and Pavlik Breached their Fiduciary Duties by Unlawfully Freezing Out Holley from the Company

**D.    TUCKER, MCBRIDE AND PAVLIK BREACHED THEIR FIDUCIARY DUTIES BY UNLAWFULLY FREEZING OUT HOLLEY FROM THE COMPANY**

40.    30.In or about October 2021, Holley became severely ill with COVID-19 and was hospitalized for a prolonged period.

41.    31.While he was in the hospital, by letter dated December 23, 2021, from a Mr. Eric Bjorgum (who purported to be the Company's legal counsel), Tucker, McBride and Pavlik claimed that Holley had been removed from the Company's management.

42.    32.Mr. Bjorgum's December 23, 2021, letter also falsely accused Holley of various improprieties, and requested, without legal or logical basis, that he forfeit, (without compensation) his shares in LTNC.  McBride's, Pavlik's and Tucker's demand for Holley's shares belies their true intent behind Mr. Bjorgum's letter and this litigation; to acquire Holley's Series A Preferred Shares and, by extension, voting control of the Company for their own benefit.

43.    33.Prior to this letter, Holley had never received a material complaint from Tucker, McBride, or Pavlik with respect to his activities on behalf of the Company.

44.    34.Holley was also not notified of any board or shareholder meetings that had been convened for the purpose of removing him as an officer or director of either

22

8839049
9027452

Takeover or LTNC, which is required by Chapter 78 of the Nevada Revised Statutes

(the "Nevada Act"), LTNC's bylaws and the Wyoming Act.

45.    35.By letter dated January 7, 2022, Holley, through counsel, responded to

Mr. Bjorgum's letter by refuting its allegations and requesting the documentation upon

which the letter's purported findings of impropriety were based, as well as

documentation evidencing that Holley was removed from management through lawful

corporate action.

46.    36.Although Holley is entitled to such documents as the Company's

shareholder, director, and officer (as is the public by means of an SEC Form 8-K, which

has not been filed) and although McBride, Tucker, and Pavlik have a fiduciary duty to

make such information available to Holley, Takeover refused to provide the information.

47.    37.Holley later learned that without notice to him or LTNC's shareholders

(and without a shareholder meeting or vote), Tucker, McBride and Pavlik executed

resolutions of the Company's respective boards of directors purporting to take actions,

including, but not limited to:

(a)    On December 7, 2021, by vote of McBride, Pavlik, and Tucker acting as

Takeover's directors, and without notice to Holley, removing Holley as a

director.

(b)    On December 8, 2021 by vote of McBride, Pavlik, and Tucker, acting as

Takeover's directors, and without notice to Holley, modifying Takeover's

bank accounts and opening new bank accounts.

23

8839049
9027452

(c)     On December 28, 2021, by vote McBride, Pavlik, and Tucker, acting as LTNC's directors, removing Holley as a director of LTNC.,

(d)     On December 28, 2021, by vote McBride, Pavlik, and Tucker, acting as LTNC's directors, directing LTNC to cause Holley to pay to McBride, Pavlik and Tucker, personally, Holley's Series A Preferred Shares in LTNC, and authorizing LTNC to expend Company resources to cause this transfer, if necessary (collectively, the "Ultra Virus Acts").

48.    38. To convene a board of directors meeting for the purpose of taking corporate action, under both the Nevada Act and LTNC's bylaws, notice to all the directors is required.  Upon information and belief, McBride, Pavlik, and Tucker never properly convened a board of directors meeting with respect to the Ultra Virus Acts.

49.    39. Under both the Nevada and Wyoming Acts, to remove Holley as director, a vote of the shareholders is required.  Upon information and belief, such a vote was never noticed or held with respect to removing Holley from either Takeover's or LTNC's boards of directors.

50.    40. It is a breach of McBride's Pavlik's and Tucker's fiduciary duties to the Company to freeze out a director from management without authorization, deny the shareholders their statutory right to vote for directors, including their removal, and to take corporate action at the expense of Company resources without obtaining proper authorization through a duly convened meetings of the board of directors and/or shareholders meeting, as applicable.

24

51.    41. There is no legitimate business judgement behind violating the Nevada and Wyoming Acts and breaching LTNC's bylaws.

52.    42. There is no legitimate business judgement behind McBride, Pavlik, and Tucker causing the Company to expend its limited resources to harass Holley into transfer his Series A Preferred Shares to McBride, Pavlik and Tucker for their personal benefit.  This is corporate waste, regardless of whether it is authorized by the Company's boards of directors.

**E.    D. Demand Futility Allegations**

53.    43. As set forth herein, McBride, Pavlik, and Tucker have participated in the interested transactions, grossly negligence conduct and omission, violations of the Nevada and Wyoming Acts, and breaches of LTNC's bylaws that form the basis of LTNC's derivative claims against them.

54.    44. Accordingly, it would be futile to make a demand upon LTNC's board of directors which consists of McBride, Tucker, Holley (and now purportedly Pavlik) to initiate a lawsuit against McBride, Pavlik, and Tucker.  Therefore, no formal demand has been made and none is required.

**THIRD-PARTY CLAIM I**

**Under Wyoming Law, or in the Alternative Nevada Law, LTNC Derivatively Against the McBride, Pavlik and Tucker Defendants for Breach of Fiduciary Duty**

55.    45. Paragraphs 1-44 of the Counterclaims and Third-Party Complaint are incorporated by reference as if fully set forth herein.

25

56.    There is a factual dispute between the parties with respect to LTNC's place of incorporation and what law governs its claims against the Third-Party Defendants.

57.    46.Pursuant to the Wyoming Actand Nevada Acts, McBride, Pavlik, and Tucker owe fiduciaries duties of care and loyalty to LTNC, which required them to, amongst other things, follow the law, use the Company's resources for the benefit of the Company, refrain from initiating insider transactions, and share information with other officers and directors so that business decisions can be made with the benefit of relevant information.

58.    47.Pursuant to § 78.335 of the Nevada Act a director of a Nevada Corporation, such as Holley, can only be removed by a vote of the shareholders.

59.    48.Pursuant to § 78.325 of the Nevada Act if a director's meeting occurs and is irregular for want of proper notice to the directors, the actions taken at the irregular meeting can only be ratified in a writing signed by all the parties entitled to vote at the meeting.

60.    49.Pursuant to § 17-16-808 of the Wyoming Act, a director of a Wyoming Corporation, such as Holley, can only be removed by a vote of the shareholders, and only at a shareholders meeting called specifically for that purpose.

61.    50.Pursuant to LTNC's Bylaws, a special meeting of its board of directors cannot be convened on less than 4 days' written notice, and an annual or special meeting of the shareholders cannot be convened on less than 10 days' notice.

8839049
9027452

62. 51. McBride, Pavlik and Tucker have breached their fiduciary duties to LTNC by taking actions on behalf of LTNC and Takeover (LTNC's wholly owned subsidiary) without properly convening a meeting of their respective boards of directors or shareholders and in violation of the Nevada and Wyoming Acts

63. 52. Such activities include, but are not limited to, the Ultra Virus Acts.

64. 53. McBride, Pavlik, and Tucker breached their fiduciary duties to LTNC by freezing Holley out from management in violation of Wyoming and Nevada Law, and also failed to give LTNC's shareholders an opportunity to vote.

65. 54. McBride, Pavlik, and Tucker breached their fiduciary duties to LTNC by denying Holley (a lawful director and officer of the Company) access to information, including financial information and locking him out of the Company's bank accounts, as well as by denying Holley information concerning the basis for his purported removal from the Company.

66. 55. McBride, Pavlik, and Tucker breached their fiduciary duties to LTNC by causing the Company to the loose the benefit of Holley's decades of management experience in the beverage industry based on false pretenses and for the express purpose of obtaining his Series A Preferred Shares for their personal benefit at the expense of Company resources.

67. 56. Upon information and belief, McBride, Pavlik, and Tucker breached their fiduciary duties to LTNC by failing to pay LTNC's taxes to the State of Wyoming, a fact reflected in the public records, and which has caused the State of Wyoming to take administrative action against LTNC.

27

68.   57. Such acts committed by McBride, Pavlik and Tucker were, upon information and belief, done willfully, with gross negligence, for their personal benefit, and constitute a knowing violation of the Wyoming and Nevada Acts, and LTNC's bylaws.

69.   58. Such acts by McBride, Pavlik, and Tucker were, upon information and belief, were done for the personal benefit of McBride, Pavlik and Tucker at the expense of Company resources, including, without limitation, amounts paid for the so called "independent investigation," and this lawsuit.

70.   59. Holley has not ratified any act of McBride, Pavlik and Tucker in writing, or otherwise.

71.   60. Wherefore, LTNC has been damaged by McBride's, Pavlik's and Tucker's breaches of their fiduciary duties in the amount of the corporate resources they have expended on the aforementioned unauthorized activities, including but not limited to the Ultra Virus Acts.

**THIRD-PARTY CLAIM II**

**Under Wyoming Law, or in the Alternative, Nevada Law, LTNC Derivatively Against the Tucker Defendants for Breach of Fiduciary Duty**

72.   61. Paragraphs 1-60 of the Counterclaims and Third-Party Complaint are incorporated by reference as if fully set forth herein.

73.   62. In or about the fourth quarter or 2021, Tucker sold shares of LTNC's common stock to a Mr. Luis Sequeira and/or his affiliated persons and entities pursuant to a private placement transaction (the "Private Placement").

28

74. 63. Subsequent to LTNC agreeing to the Private Placement, Tucker directed Mr. Sequeira to pay the purchase for the Private Placement to Tucker personally, as opposed to LTNC.

75. 64. As of November 2021, Tucker was still in possession of between $75,000 and $175,000 the Purchase Price for the Private Placement.

76. 65. Despite written demand from McBride and Holley in November 2021 that Tucker turn over these amounts to the Company, upon information and belief, Tucker is still in possession of this money.

77. 66. Tucker was still in possession of this money as of the date he, McBride, and Pavlik froze out Holley from the Company.

78. 67. Tucker breached his fiduciary duty of loyalty to LTNC by causing Mr. Sequeira to pay the purchase price for the Private Placement directly to Tucker, as opposed to LTNC.

79. 68. Tucker further breached his fiduciary duty to LTNC by withholding, at least, $75,000 of the purchase price for the shares.

80. 69. Wherefore, LTNC has been damaged by Tucker's breach of fiduciary duty in the amount of at least $75,000.

**THIRD-PARTY CLAIM III**

**LTNC Derivatively Against the Tucker Defendants for Conversion**

29

81. ~~70.~~Paragraphs 1-69 of the Counterclaims and Third-Party Complaint are incorporated by reference as if fully set forth herein.

82. ~~71.~~LTNC has a superior right to monies tendered by Mr. Sequira to Tucker in exchange for the Private Placement.

83. ~~72.~~Despite written demand in November of 2021 by Holley and McBride, Tucker has failed and refused to deliver at least $75,000 to LTNC to which it has a superior right.

84. ~~73.~~Wherefore, LTNC has been damaged by Tucker's conversion in the amount of at least $75,000.

**THIRD-PARTY CLAIM IV**

**The Holley Defendants, Individually Against the McBride, Tucker~~,~~ and Pavlik Defendants for Contribution**

85. ~~74.~~Paragraphs 1-73 of the Counterclaims and Third-Party Complaint are incorporated by reference as if fully set forth herein.

86. ~~75.~~If, and to the extent, the Holley Defendants are held liable to Takeover for the acts and omission alleged the Complaint, such acts were, in whole or in part, authorized and/or directed by Takeover's other managers and officers in their official capacity.

87. ~~76.~~For example, Toby McBride agreed in writing to wire payments to himself, Pavlik, Tucker, and Holley, which is reflected in Takeover's books and records.

30

88. 77.McBride also consented to Takeover taking loans from One Elite Sports and Takeover reimbursing One Elite Sports for payments One Elite Sports laid out for Takeover.

89. 78.Wherefore, the Holley Defendants demand judgment against the McBride, Tucker, and Pavlik Defendants in the propionate proportionate amount of their fault for any damages caused to Takeover.

## **COUNTERCLAIM I**

**The Holley Defendants Against Takeover for a Declaratory Judgment**

90. 79.Paragraphs 1-78 of the Counterclaims and Third-Party Complaint are incorporated by reference as if fully set forth herein.

91. 80.Takeover is in possession of certain property owned by Holley, which Holley permitted Takeover to use, including Holley's godaddy.com account and the contents thereof.

92. 81.After Holley was frozen out of the Company, Takeover in this action has claimed it is the owner of this account and the contents thereof.

93. 82.A justiciable controversy exists as to the ownership of the godaddy.com account and the contents thereof.

94. 83.Wherefore, the Holley Defendants seek judgment, declaring and adjudging that they are the owners of the godaddy.com account, and the contents thereof.

31

## COUNTERCLAIM II

**The Holley Defendants Against Takeover for Unjust Enrichment**

95. ~~84.~~Paragraphs 1-83 of the Counterclaims and Third-Party Complaint are incorporated by reference as if fully set forth herein.

96. ~~85.~~The Holley Defendants own the godaddy.com account and the contents thereof.

97. ~~86.~~Takeover is in possession of the godaddy.com account and is using it for its own benefit without compensating the Holley Defendants and without reimbursing them for the fees they paid for the account during the period of Takeover's use of the account in the amount of at least $1,025.41.

98. ~~87.~~It would be unjust and inequitable to permit Takeover to use the godaddy.com account without compensating the Holley Defendants for its use, and without reimbursing them for the expenses they paid during the period of Takeover's use of the account.

99. ~~88.~~Wherefore, Takeover has been unjustly enriched at the expense of the Holley Defendants in an amount to be determined at trial but believed to be at least $1,025.41.

## COUNTERCLAIM III

**The Holley Defendants Against Takeover for Unpaid Employment Compensation**

100. ~~89.~~Paragraphs 1-88 of the Counterclaims and Third-Party Complaint are incorporated by reference as if fully set forth herein.

32

101.   ~~90.~~Holley is still a director and officer of the Company and has not been removed.

102.   ~~91.~~In November of 2021, Takeover agreed to compensate McBride, Holley, Pavlik~~,~~ and Tucker in equal amounts.

103.   ~~92.~~Subsequent to being frozen out of the Company in December 2021, Holley has not received any payments.

104.   ~~93.~~Wherefore, the Holley Defendants demand judgment in an amount equal to those amounts Takeover paid to McBride, Pavlik and Tucker from December 2021 to the present.

## COUNTERCLAIM IV

### Under Nevada Law, For Mandatory Indemnification

105.   ~~94.~~Paragraphs 1-93 of the Counterclaims and Third-Party Complaint are incorporated by reference as if fully set forth herein.

106.   ~~95.~~Pursuant to § 78.751 of the Nevada Act

A corporation shall indemnify any person who is a director, officer, employee or agent to the extent that the person is successful on the merits or otherwise in defense of:

(a) Any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, including, without limitation, an action by or in the right of the corporation, by reason of the fact that the person is or was a director, officer, employee or agent of the corporation, or is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise; or

(b) Any claim, issue or matter therein,

33

against expenses actually and reasonably incurred by the person in connection with defending the action, including, without limitation, attorney's fees.

107.   96.Takeover commenced an action against Holley in the Central District of California, Case No, 22-cv-00210-ODW-KS, alleging breach of fiduciary duty and various other claims based on actions taken by Holley as a director and officer of Takeover (the "California Action").

108.   97.On March 8, 2022, Takeover voluntarily dismissed the California Action.  Accordingly, Holley was successful in defending the California Action and is entitled to indemnification by Takeover of his expenses incurred in connection with the California action, including without limitation his attorneys' fees.

109.   98.In this action, the Holley Defendants intend to prove that Takeover's claims against him are meritless or otherwise subject to dismissal.  Upon his successful defense of this Action, Holley will be entitled to be indemnified for this his expenses incurred in connection with this Action, including, without limitation, his legal fees.

110.   99. Wherefore, the Holley Defendants demand judgment in amount of their expenses incurred in connection with their successful defense of the California Action and, upon dismissal of this Action, for their expenses incurred in connection herewith.

## **PRAYER FOR RELIEF**

WHEREFORE, the Holley Defendants and Michael Holley, individually and derivatively on behalf of LTNC demand judgment as follows:

(a)     Dismissing the Complaint, with prejudice;

34

(b)  On the First Third-party Claim in an amount to be set at trial, measured as the amount of Company funds Tucker, McBride and Pavlik have expended on unauthorized Company acts;

(c)  On the Second Third-party Claim in an amount to be set at trial, but believed to be between $75,000 and $175,000;

(d)  On the Third Third-party Claim in an amount to be set at trial, but believed to be between $75,000 and $175,000;

(e)  On the Fourth Third-party Claim in an amount to be set at trial, measured as the proportionate amount of Tucker's, McBride's and Pavlik's fault for any damages caused to Takeover;

(f)  On the First Counterclaim for a judgment declaring and adjudging that the Holley Defendants are the owners of the godaddy.com account;

(g)  On the Second Counterclaim for a judgment in an amount to be set at trial, but believed to be at least $1,025.91;

(h)  On the Third Counterclaim for an amount to be set at trial measured as an amount of employment compensation equal to what Takeover paid to Tucker, McBride and Pavlik from December 2021 to the present;

(i)  On the Fourth Counterclaim for an amount to set at trial measured as the amount of expenses expended by the Holley Defendants for the California Action and this Action, including without limitation their attorneys' fees;

(j)  For their reasonable attorneys' fees as otherwise permitted by law;

(k)  Incidental, consequential and punitive damages as proved at trial; and

(l)  Pre and post judgment interest.

8839049
9027452

Dated this 20th day of May: New York, New York
August 29, 2022.

Respectfully submitted,

SILLS CUMMIS & GROSS P.C.


By: __/s/ Matthew P. Canini__
MATTHEW P. CANINI
101 Park Avenue, 28th Floor
New York, New York 10178
Telephone: (212) 643-7000
*(Pro Hac Vice)*


PAPETTI SAMUELS WEISS LLP


By: __/s/ Robert McKirgan__
Robert McKirgan
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

*Attorneys for the Holley Defendants*

36

8839049
9027452

## **VERIFICATION**

I, Michael Holley, declare under penalties of perjury as follows:

1.      I have read the foregoing and verify pursuant to Fed. R. Civ P. 23.1, that I know the contents thereof to be true, except as to those matters which are alleged upon information and belief, and as to those matters, I believe them to be true.

2.      The source of my knowledge is, among other things, based on my personal knowledge and the public records.

3.      I declare under penalty of perjury that the foregoing is true and correct.


_____
Michael Holley

8839049
9027452

**CERTIFICATE OF SERVICE**

I hereby certify that on ~~May 20~~August 29, 2022, I caused my office to electronically transmit the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following counsel/parties in this matter~~:~~.:

Veronica L. Manolio
**Manolio & Firestone, PLC**
8686 E. San Alberto Dr., Ste. 200
Scottsdale, AZ 85258
480-222-9100
vmanolio@mf-firm.com
*Attorneys for ~~Plaintiff~~Takeover Industries, Inc.*

Jennifer A. Reiter
**Reiter Law, PLC**
4500 N. 32nd St. Suite 201H
Phoenix, Arizona 85018
602-840-3567
jenreiter@reiterlawaz.com
*Attorneys for Toby McBride.*

/s/ ———————Matthew P. Canini

8839049
9027452