# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Takeover Industries, Inc., a Nevada corporation,<br><br>                Plaintiff,<br>v.<br><br>Michael Holley, *et al.*;<br><br>                Defendants. | Case No. CV-22-00357-PHX-JJT<br><br>**DECLARATION OF JAMES V. DEPPOLETO JR. IN SUPPORT OF TAKEOVER INDUSTRIES, INC.'S EMERGENCY MOTION FOR INJUNCTIVE RELIEF (INCLUDING APPOINTMENT OF A RECEIVER) (WITH NOTICE)**<br><br>(Hon. John J. Tuchi) |

I, James V. Deppoleto Jr., declare pursuant to 28 U.S.C. § 1746 and under penalty of perjury that the following is true and correct:

Between May 25, 2022 and August 19, 2022, I loaned Takeover Industries, Inc.'s (the "Company") $1.5 million pursuant to a convertible debt investment. I am the Company's senior secured lender with a perfected security interest against substantially all of the Company's assets.

My secured convertible debt interest in the Company is documented by way of that certain Convertible Note Purchase Agreement dated as of May 25, 2022 by and between myself, the Company, and Labor Smart, Inc., a Nevada corporation ("Labor Smart"), as amended by that certain First Amendment to Convertible Note Purchase Agreement dated as of July 6, 2022, and by that certain Second Amendment to Convertible Note Purchase Agreement dated as of August 19, 2022 (collectively, the "NPA"). The principal, as well as any unpaid interest, under the NPA and the three secured promissory notes (the "Notes"; the Note and NPA together referred to as the "Loan Documents") will mature and is due and payable to me on November 21, 2022 (the "Initial Loan Payment Due Date"); however, as described below, the Company is in default due to breaches of representations, warranties, and covenants under the Loan Documents, which I noticed the Company of on November 8, 2022. Also, on October 27, 2022, and November 3, 2022, I loaned

the Company an additional $515,698.48, which is a supplemental amount that I and the Company agreed would be added to my convertible debt investment. I expedited my funding of this supplemental amount because the Company informed me that it was necessary for its cash flow needs. In addition to my convertible debt investment, I also hold 200,000,000 shares of the Company's common stock, which I acquired pursuant to a separate $500,000 investment.

The Loan Documents provide me with certain rights with respect to the Company's material decisions. For instance, section 5 of the First Amendment to the NPA provides that any appointment of a member to the Company's board of directors is subject to my written approval. Additionally, section 8.1(b) of the NPA provides that I must provide prior written consent before the Company can make any fundamental changes in the nature of the Company's business.

On November 4, 2022, I received a copy of the Notice of Special Meeting of the Board of Directors Labor Smart Inc. Therein, several of the topics set forth for discussion included issues relevant to the Company, including prior actions of the Company's board of directors, Labor Smart's planned spin-off of the Company, and the makeup of the Company's board of directors. The meeting was scheduled for November 7, 2022.

On Monday, November 7, 2022, I received a copy of the Written Consent Board of Directors of Takeover Industries, Inc. (the "Takeover Consent") which resolved in writing, in lieu of convening a meeting, for the immediate suspension of Jason Tucker, the Company's President. That same day, I also received a copy of the Resolution of the Board of Directors of Labor Smart Inc. (the "Labor Smart Resolution"). Therein, the Labor Smart Resolution resolved to reconstitute the Company's board of directors.

I did not approve the suspension of Mr. Tucker, the implementation of Joseph Pavlik as the Company's interim president, or the reappointment of Toby McBride as the Company's chief executive officer.

To protect my collateral, on November 8, 2022, I sent the Company a Notice of Default, Demand for Payment & Cease & Desist (the "Default Notice"). The Default Notice noted that the

1  Company had breached various representations, warranties, and covenants in the Loan Documents,
2  including, among others, the unauthorized removal of the Company's president and reconstitution
3  of the Company's board of directors. In the Default Notice, I specifically called for Messrs. Holley,
4  McBride, and Pavlik to cease and desist acting on behalf of the Company due to their increasingly
5  detrimental conduct. Despite my demand, Messrs. Holley, McBride, and Pavlik are continuing to
6  act on behalf of the Company.

7  Lost in the dispute amongst the various parties seeking control of the Company is the
8  Company's exigent liquidity issues and its ongoing and immediate contractual obligations. These
9  material contracts, if breached or left unfulfilled, will dramatically affect the Company's
10 profitability, and potentially its viability. In particular, the Company has a significant customer
11 contract (the "Material Customer Contract") that must be fulfilled by no later than November 23,
12 2022. The Company does not currently have the liquidity to satisfy the Material Customer
13 Contract. Absent satisfaction of the Material Customer Contract, the Company's value as a going
14 concern will diminish significantly, putting my collateral at substantial risk of devaluation.

15 Given the dispute amongst the Company's officers and directors, I am currently unwilling
16 to loan the Company any additional funds. Moreover, given the dispute, I do not know who
17 amongst the Company's officers and directors currently retains agency or authority to bind the
18 Company to a prospective loan agreement or any other significant contracts. Absent such clarity,
19 the Company's value will continue to erode.

20 On November 9, 2022, Messrs. Holley, McBride, and Pavlik, froze the Company's retail
21 website, https://www.takeoverind.com/. Absent immediate intervention, the actions of these
22 individuals will, in a short order, completely eradicate the Company's reputation and brand value.

23 In order to protect the Company, and to preserve the value of my investment and collateral,
24 I respectfully ask that the Court immediately appoint a receiver under federal law to oversee the
25 Company's operations.

26

1  Executed on this 10th day of November 2022.

2

3

4                                          James V. Deppoleto Jr.

- 4 -