# SETTLEMENT AGREEMENT

This Settlement Agreement (Agreement) is entered into by LABOR SMART, INC. ("LTNC") and TAKEOVER INDUSTRY, INC ("TAKEOVER") (together as "The Company") on one hand, and JOSEPH PAVLIK, TOBY MCBRIDE, and MICHAEL HOLLEY ("Defendants") on the other hand, (together as "the Parties") enter this Agreement as a condition of dismissal without prejudice to the Case No. 23-cv-60023-RS, in Florida Southern District Court ("Florida Action"):

## RECITALS

WHEREAS, Plaintiffs SHARMILA VISWASAM, LUIS A. SEQUEIRA, JON SISSON, and ISAIAH GRIFFIN filed suit against Defendants JOSEPH PAVLIK, TOBY MCBRIDE, and MICHAEL HOLLEY, ("together Parties"), which is currently pending in the Florida Southern District Court, relating to an alleged dispute that arose between the Parties.

**Global Recitals:**

WHEREAS the Parties are desirous of settling the Action in Florida and, therefore, enter into this Settlement Agreement ("Agreement");

WHEREAS Joseph Pavlik, Toby McBride, and Michael Holley agree to step down from current positions as Officers for new Titles. This will include exit from the C suite Registry.

WHEREAS Toby McBride will come off the board of both companies.

WHEREAS, Tom Zarro, Manny Pacquiao, Luis Sequeira, will be added to the board of Labor Smart and Takeover Industries, Inc. Takeover Industries Inc. will be governed by its Board of Directors of Labor Smart and Takeover Industries CEO.

WHEREAS Tom Zarro will be named the interim CEO of Takeover Industries Inc

WHEREAS Tom Zarro will be added to the board of Labor smart.

WHEREAS The Company will create three new board seats for Manny Pacquiao, Luis A. Sequeira, and Tom Fitzgerald Sr.

WHEREAS The Plaintiffs will dismiss the Florida Action without Prejudice and the Parties will work to dismiss or settle any and all claims against the Company.

WHEREAS The Company will work towards an increase or restructuring of the amount of the Preferred shares to allow the preferred shares to be issued as follows:

Mike Holley: 15

| | |
|---|---|
| Luis Sequeira: | 15 |
| Manny Pacquiao: | 15 |
| Tom Zarro: | 23 |
| Additional Seat: | 15 |

WHEREAS the new members of the Board, when effective by DATE will not be responsible for any past activities, including debts known, as described below and unknown that have incurred prior to date of this Agreement, contracts, and loans to the Company and will be indemnified.

WHEREAS The new Board will authorize the compensation for the officers and Board Members of the Company.

- WHEREAS it is Company's deepest desire to engage in productive talks to settle James Deppoleto's claims and obligations while allowing the Company to continue.
- The Company will work to settle all lawsuits including James Deppoleto's. In conversation are offers for preferred shares, and royalty payments on items sold until the company's obligations are complete. A board seat and position is also under consideration.

**Jon Sisson:**

WHEREAS the Company will create a new Marketing Advisory Board seat for **Jon Sisson;**

WHEREAS the Company will issue 20,000,000 common shares for the new Advisory Board member **(Jon Sisson**) or its designee(s) who will be identified and approved by the Board.

**Luis A. Sequeira:**

WHEREAS the Company will issue 400 million shares for the new Board member or it's designees.

WHEREAS Luis A. Sequeira will not be responsible for any debts before 1st March 2023 or any Debts coming up that were not mentioned or discussed previously for the exception of the PFL debt of <$300,000.

WHEREAS the Company desires to engage with the new board member to take NXT LVL ("the Products") to Europe and Asia. The specific terms of which will be expressed in separate

agreements.

**Manny Pacquiao:**

WHEREAS the Company will issue 400 million shares and $200,000 cash for the new board member or it's designees. This will settle any and all outstanding debts with Manny Pacquiao and the Manny Pacquiao Foundation.

WHEREAS Manny Pacquiao will not be responsible for any debts before 1st March 2023 or Any Debts coming up that were not mentioned or discussed previously for the exception of the PFL debt of <$300,000.

WHEREAS the Company desires to engage with the new board member to take NXT LVL ("the Products") to Europe and Asia. The specific terms of which will be expressed in separate.

**Sharmila Viswasam;**

WHEREAS The Company will issue 20 million shares to ("Advocate") or its designee as approved by the Board.

WHEREAS Sharmila to the Advisory board as Business development.

WHEREAS the Company and Sharmila agree to enter into this Agreement.

## SETTLEMENT TERMS AND CONDITIONS

IN CONSIDERATION OF the promises and releases stated, the sufficiency of which consideration is acknowledged, the Parties agree as follows:

1. The Parties agree that they will submit the accompanying stipulation of dismissal and proposed order dismissing the Florida Action without Prejudice.

2. The Parties agree that entering into this Agreement is not to be construed as an admission of liability on the part of any Party, but that said Agreement is entered into as a compromise of the Litigation which is not admitted but is denied and disputed by and between the Parties.

3. This Agreement is intended to cover all actions, causes of action, claims and demands for, upon, or by reason of any damage, loss or injury, known or unknown, which may be traced either directly or indirectly to the Litigation, as now appearing or as may appear at any time in the future, no matter how remotely they may be related to the Litigation.

4. Indemnification. The Company ("Indemnifying Party") agrees to indemnify, defend, and hold the other harmless from any and all prior Debts of the Company, known and unknown, and from any legal claims made (whether or not in connection with any current legal action, suit, or proceeding) by or on behalf of any person or entity that may be imposed on, incurred by, or asserted against the other, in any way relating to or arising out of each Party's respective terms in this Agreement and arising as the result of: (i) a misrepresentation by such indemnifying Party contained herein; (ii) a breach, default, or noncompliance of such indemnifying Party of one of its/his/her covenants, duties, or obligations; and/or (iii) such indemnifying Party's failure to fully comply with the terms and conditions. This Section shall survive the termination of this Agreement.

5. Each party will bear all of their own costs, attorneys' fees, expert costs, investigation costs, expenses and any other expense incurred in connection with this Agreement and with regards to Action in Florida, except that any default of this Settlement Agreement, in which case the prevailing party will be entitled to an award of its attorneys' fees and costs.

6. This Agreement may be executed in two or more counterparts, each of which will be deemed an original and all of which together will constitute a single instrument; a facsimile or electronic signature will be as effective as an original.

7. This Agreement is the final written expression among the Parties.

8. Each Party covenants that he or she possesses all necessary capacity and authority to sign and enter into this Agreement.

9. It is understood and agreed that this Settlement Agreement is the good faith compromise of disputed claims. The terms of the settlement as set forth in this Settlement Agreement are not intended to be, and will not be, construed as, an admission by any party of any liability whatsoever, under any law or theory of liability.

10. Governing Law; Jurisdiction. This Settlement Agreement will be governed by and construed in accordance with the laws of the State of Florida and the laws of Florida will govern its interpretation and effect.

11. Severability. If any term or provision of this Settlement Agreement be deemed to be invalid or unenforceable to any extent, the remainder of this Settlement Agreement will not be affected, and each remaining term and provision of this Settlement Agreement will be valid and be enforced as fully permitted by law.

12. Entire Agreement. This Settlement Agreement embodies the entire agreement and understanding by and between the Parties.

13. No Modification, Waiver, or Amendment. No modification, waiver, or amendment of any of the terms of this Settlement Agreement will be valid unless in writing and executed by all Parties and Approved by the Board of the Company.

14. No Assignment or Designation. No Party may designate, transfer or assign any of their rights, remedies or obligations under this Settlement Agreement without Board Approval.

**AGREED:**
LABOR SMART, INC ("LTNC")

By:__Michael Holley_____________

Its: __CEO____________________

DocuSigned by: Mike Holley 61BA515072B5410...
(Signature) 2/24/23 (Date)

DocuSigned by: 5F765187911A430...
Sharmila Viswasam

**AGREED:**
TAKEOVER INDUSTRIES, INC. ("TAKEOVER")

By:__Toby McBride_____________

Its: ____CEO__________________

DocuSigned by: Toby McBride 1437272984DD465...
(Signature) 2/24/23 (Date)

DocuSigned by: Luis Sequeira 6E7FB236B0C14D4...
Luis Sequeira

DocuSigned by: Jon Sisson 261076459EE84CF...
Jon Sisson

DocuSigned by: Toby McBride 1437272984DD465...
Toby McBride

DocuSigned by: F8B9A0C884414B1...
Joseph Pavlik

DocuSigned by: Mike Holley 61BA515072B5410...
Michael Holley