**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Labor Smart, Inc., | No. CV-22-00357-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Jason Tucker *et al.*, | |
| Defendants.[1] | |

At issue is the Joint Motion to Realign the Parties, Dismiss Parties, Amend the Third-Party Complaint, and Amend the Case Caption (Doc. 123, "Joint Motion") filed by heretofore Third-Party Plaintiff Michael Holley, Third-Party Defendants Toby McBride and Joseph Pavlik, former Plaintiff Takeover Industries, Inc. ("Takeover"), and Labor Smart, Inc. ("LTNC"), which has not previously been named as a party (collectively, the "Moving Parties"). Third-Party Defendants Jason and Melissa Tucker ("the Tuckers") filed a Response in opposition to the Joint Motion (Doc. 126, "Resp."), and the Moving Parties filed a Reply in support (Doc. 127). Also at issue is the Tuckers' Motion to Dismiss Derivative Third-Party Claims (Doc. 75), to which Mr. Holley filed a Response (Doc. 95) and the Tuckers filed a Reply (Doc. 107). The Court finds these matters appropriate for disposition without oral argument, *see* LRCiv 7.2(f), which none of the parties has requested in any event. For the reasons that follow, the Court grants in part and denies in

---

[1] This revised caption reflects the restyling of the case based on the Court's rulings herein. Henceforth the parties are: Plaintiff, Labor Smart, Inc., v. Defendants Jason Tucker and Melissa Tucker.

1    part the Moving Parties' Joint Motion and denies as moot the Tuckers' Motion to Dismiss.

2    **I.    BACKGROUND**

3            This case concerns various allegations of mismanagement and improper use of

4    corporate assets amongst the officers and directors of two entities, Takeover and LTNC.

5    Takeover was originally formed in January 2021 by Messrs. Holley and McBride and

6    incorporated in Nevada. Later in 2021, Messrs. Pavlik and Tucker joined Takeover's board

7    of directors alongside Messrs. Holley and McBride. Also in 2021, Takeover was acquired

8    by LTNC, which is a publicly traded company originally formed under Nevada law and of

9    which Takeover became a wholly owned subsidiary.[2] The composition of the boards of

10   directors of Takeover and LTNC has been disputed at various times since the end of 2021.

11           Takeover initiated this lawsuit in March 2022, seeking relief principally against

12   Mr. Holley for alleged breach of fiduciary duties, conversion, and unjust enrichment.

13   (Doc. 1, Compl.)[3] The same day it filed this lawsuit, Takeover also filed an Application for

14   Temporary Restraining Order (Doc. 2) to require Mr. Holley to provide certain information

15   and access to Takeover's credit card accounts, domains, and email accounts, which the

16   Court granted in part and denied in part on March 22, 2022. (Doc. 22.)

17           On May 20, 2022, Mr. Holley filed his Answer to Takeover's claims against him

18   and filed counterclaims against Takeover and third-party claims against Jason and Melissa

19   Tucker and Messrs. McBride and Pavlik "individually and derivatively on behalf of

20   LTNC." (Doc. 38.) Mr. Holley subsequently amended his Answer with counterclaims and

21   thirty-party claims. (Doc. 67.) Mr. Holley alleged, *inter alia*, that the Tuckers and Messrs.

22   McBride and Pavlik breached the fiduciary duties they owed to LTNC by improperly

23   freezing out Mr. Holley from LTNC's management. (*E.g.*, *id.* ¶¶ 40–52.) Mr. Holley also

24   ─────────────────

25   [2] It has been disputed in this litigation whether LTNC remains a Nevada corporation (*see* Doc. 77 ¶ 3) or whether it later became a Wyoming corporation. (*See* Doc. 67 at 15 ¶ 2.)

26   [3] The Complaint also named as a defendant Mr. Holley's wife, Chirine Holley, to reach his
27   marital community. (Doc. 1.) Takeover also brought claims against David Eisenberg and
     his marital community, but the docket being devoid of any indicia that Takeover ever
     served the Eisenbergs, or that they made any appearance in the matter, the Court dismissed
28   the claims against them without prejudice. (Doc. 118.)

- 2 -

filed a direct third-party claim, which he voluntarily dismissed. (Doc. 124.)

The Tuckers filed a Motion to Dismiss the third-party claims against them (Doc. 75), arguing that Mr. Holley lacked standing to act in a derivative capacity on behalf of LTNC because he did not fairly and adequately represent its shareholders' interests and was really seeking to further his own personal interests. At the time, Takeover and the Tuckers were represented by counsel Veronica L. Manolio. Mr. Pavlik—also initially represented by Ms. Manolio—joined in the Tucker's Motion to Dismiss, but later withdrew from it and took no subsequent action to respond to the claims against him. (*See* Doc. 122.) After seeking multiple extensions of time to respond, and the deadline to do so eventually passing, Mr. McBride did not respond to the claims against him. (*See id*.) For its part, Takeover filed an Answer to Mr. Holley's counterclaims against it. (Doc. 77.)

The parties note that no discovery took place between May 2022 and November 2022. During this time, the parties litigated various disputes, including enforcement of the Court's March 22, 2022 TRO; disqualification of counsel for Mr. Holley, Matthew Canini; and Mr. Holley's request to be relieved from guaranteeing a credit card for Takeover.

In early November 2022, Takeover filed an Emergency Motion for Injunctive Relief, including for the appointment of a temporary receiver, asserting that "Defendant Michael Holley and Third-Party Defendant Toby McBride staged a complete takeover" of Takeover's business operations. (Doc. 79 at 1.) The Tuckers now assert—and the Moving Parties do not dispute—that they "have not had any access to, rights of, or involvement with Takeover or [LTNC] business since last year." (Resp. at 3.) At a hearing on Takeover's Emergency Motion on November 15, 2022, the Court noted serious problems pertaining to the observation of corporate form and proper corporate governance by the principals of Takeover and LTNC. (Doc. 103 at 4:7–5:25.) Accordingly, the Court denied Takeover's Emergency Motion, taking under advisement an issue regarding whether there was a conflict of interest as to Ms. Manolio's representation of Takeover and the Tuckers. (Doc. 92.) Ms. Manolio subsequently moved to withdraw from representing Takeover (Doc. 96), which motion the Court granted. (Doc. 102.) The Court declined to disqualify

Ms. Manolio from representing the Tuckers. (Doc. 118.)

On January 3, 2023, a Notice of Appearance was filed on behalf of Takeover by Paul M. Levine, P.C. (Doc. 111.) On February 14, 2023, Takeover and Mr. Holley filed a Stipulation of Dismissal in which they agreed to dismiss with prejudice the claims and counterclaims among them. (Doc. 119.) The Court granted the parties' Stipulation of Dismissal on February 15, 2023. (Doc. 120.) In light of Messrs. Pavlik and McBride's failure to respond to the third-party claims against them, on March 3, 2023, the Court ordered Mr. Holley to either apply for default on these claims or file a motion to dismiss them by March 10, 2023. (Doc. 122.) The Court stated that if Mr. Holley took neither action by that time, the Court would dismiss the third-party claims against Messrs. Pavlik and McBride without prejudice for failure to prosecute them. (*Id.*)

On March 10, 2023, Messrs. Holley, Pavlik, and McBride, Takeover, and LTNC filed the instant Joint Motion. At the time it was filed, Takeover had not been a party to this litigation—which it initiated—since February 15, 2023. For its part, LTNC had never been named as a party. No Notice of Appearance was filed on behalf of LTNC until Mr. Levine filed one on April 13, 2023. (Doc. 128.) The Tuckers responded in opposition to the Joint Motion (Doc. 126) and the Moving Parties replied in support (Doc. 127).

The Tuckers have brought the Court's attention to two separate lawsuits filed in other federal district courts. On December 2, 2022, James Deppoleto filed a complaint against Takeover in the District of Nevada. (Doc. 1, *Deppoleto v. Takeover Inds., Inc.*, No. CV-22-02013-GMN-VCF (D. Nev. Dec. 2, 2022) ("Nevada Action").) Mr. Deppoleto alleges he is Takeover's largest investor and that the company owes him more than $2 million. (*Id.* ¶¶ 15, 35, 42.) After filing an answer to Mr. Deppoleto's complaint, Takeover filed a Motion to Transfer the Nevada Action to this Court, which Mr. Deppoleto has opposed and remains pending before the District of Nevada. (Nevada Action, Doc. 14.) According to a recent filing in the Nevada Action by Mr. Deppoleto, Takeover failed to notify the District of Nevada that it was dismissed from this case on February 15, 2023, undercutting its argument for transfer of that case to this Court. (Nevada Action, Doc. 19.)

On January 6, 2023, Messrs. Pavlik, McBride, and Holley were sued in a securities fraud action brought by LTNC shareholders who allege Messrs. Pavlik, McBride, and Holley fraudulently misled LTNC's investors. (Doc. 1, *Viswasam v. Pavlik*, No. CV-23-60023-RS (S.D. Fla. Jan. 6, 2023) ("Florida Action").) The plaintiffs voluntarily dismissed their suit on February 24, 2023. (Florida Action, Docs. 14, 15.) The Tuckers have submitted what purports to be the Settlement Agreement reached in that case. (Doc. 126-1.)

## II.    ANALYSIS

### A.    Misrepresentations of the Court's Rulings

Before addressing the merits of the Moving Parties' several requests, the Court will address a preliminary matter. In the Motion to Transfer it filed in the Nevada Action, Takeover implied that the Court made a ruling on promissory notes at issue in that case during the November 15, 2022 hearing in this case. Specifically, Takeover asserted that:

> the District of Arizona has already seen all three [Note Purchasing Agreements] that served as the basis for the request for injunctive relief. In addition, these requests have already been ruled on in Arizona making Arizona the State most familiar with the governing law.

(Nevada Action, Doc. 14 at 5.) Takeover further contended the Court made "an unfavorable ruling" regarding those notes, the validity of which, they assert, "is already being litigated in Arizona." (*Id.* at 6.) The Moving Parties likewise contend here the Court made a "holding" on the same. (Reply at 6.) These representations are both false and misleading.

In denying Takeover's Emergency Motion on November 15, 2022, the Court noted problems pertaining to the observance of corporate form and proper corporate governance by the principals of LTNC and Takeover, and the Court accordingly expressed its lack of confidence "that the actions taken by [LTNC] or Takeover during . . . the relevant time period and including the agreement to undertake debt funding from Mr. Deppoleto were valid." (Doc. 103 at 5:14–18.) With this observation, the Court made no binding ruling on the validity or enforceability of any notes at issue in the Nevada Action, which have never been before this Court for determination. Rather, the Court made this observation in finding Takeover did not show it was likely to succeed on the merits or raise serious questions

1    going to the merits of claims asserted in its Emergency Motion, which are no longer at
2    issue in any event. The Court will not tolerate misrepresentations of its rulings in service
3    of this gamesmanship. Takeover will immediately supply a copy of this Order to Judges
4    Navarro and Ferenbach in the District of Nevada and correct its misrepresentations.

5            **B.      Motions To Dismiss and Realign Parties**

6            The Moving Parties move under Federal Rule of Civil Procedure 41(a)(1)(A) to
7    dismiss without prejudice the third-party claims against Messrs. Pavlik and McBride.
8    Neither the Tuckers nor Messrs. Pavlik or McBride oppose this request. Accordingly, the
9    Court will dismiss without prejudice the claims against Messrs. Pavlik and McBride.

10           Next, the Moving Parties move under Rule 21 to dismiss Mr. Holley as Third-Party
11   Plaintiff and name LTNC as Plaintiff in the prosecution of the claims against the Tuckers.
12   Although the Moving Parties style this a "realignment," that label may be confusing. LTNC
13   heretofore has not been named as a party nor made an appearance. Regardless, the Moving
14   Parties argue LTNC has been a party to this case because Mr. Holley filed derivative claims
15   on its behalf. The general rule is that, as the real party in interest, the corporation is an
16   indispensable party in a shareholder's derivative action. *See Koster v. Lumbermens Mut.*
17   *Cas. Co.*, 330 U.S. 518, 522–23 (1947); *Ross v. Bernhard*, 396 U.S. 531, 538–39 (1970).
18   Accordingly, courts have aligned the corporation as either plaintiff or defendant—
19   depending on whether it is antagonistic to the shareholder who brought suit—even when
20   the corporation was not initially named as a party. *See, e.g.*, *Liddy v. Urbanek*, 707 F.2d
21   1222, 1223–25 (11th Cir. 1983); *Gabriel v. Preble*, 396 F.3d 10, 13–14 (1st Cir. 2005).
22   Further, the Moving Parties cite cases recognizing that "if a company chooses to enforce
23   its rights or has a 'change of heart' after a derivative action has been initiated, then the
24   company itself is the preferable party and not the shareholder." *Ferko v. Nat'l Ass'n of*
25   *Stock Car Racing, Inc.*, 216 F.R.D. 392, 394 (E.D. Tex. 2003); *see also Damon Trust v.*
26   *Wipfli, Ullrich, Bertelson, LLP*, No. 5:04-CV-172, 2005 WL 2405966, at *3 (W.D. Mich.
27   Sept. 29, 2005) ("If the corporation chooses to enforce its rights after a shareholder
28   derivative action has been initiated, the corporation is the preferable plaintiff.").

The Tuckers cite no contravening authority on these points. They argue that Rule 21 is an improper vehicle for the relief the Moving Parties seek because it "is not intended to substitute an entirely new plaintiff in the stead of an existing plaintiff." (Resp. at 7 (citing cases).) But the Tuckers do not dispute that LTNC is the real party in interest with respect to the claims Mr. Holley initiated against them; nor do they argue LTNC is currently antagonistic to Mr. Holley. In light of the authorities discussed above, Rule 21 would seem to provide the relief the Moving Parties seek. *See* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party."). Further, while the Tuckers question whether the Moving Parties have actual authority to sue on LTNC's behalf, they cite no authority that producing evidence of actual authority to sue on behalf of a corporation is a procedural requirement. Finally, as to the Tuckers' pending Motion to Dismiss, which challenges whether Mr. Holley has standing to sue on behalf of LTNC, it is true the Court had not adjudicated that issue prior to the filing of the Joint Motion, in significant part because of the numerous satellite disputes that consumed judicial resources. As it stands now, however, LTNC wishes to pursue the claims on its own behalf and in Mr. Holley's place, which it will be permitted to do. For the same reason, the Tuckers' Motion to Dismiss for lack of standing is now moot.

The Moving Parties also seek to name Takeover as Plaintiff in the prosecution of the claims against the Tuckers. This presents a different question. In the Joint Motion, the Moving Parties argue Mr. Holley brought his derivative claims not only on behalf of LTNC but also on behalf of its subsidiary, Takeover, such that the suit was both a derivative suit and a "double derivative suit." (Joint Motion at 3–4.) The Tuckers respond that Mr. Holley's Third-Party Complaint ("TPC") did not raise any claim belonging to Takeover. (Resp. at 7.) In their Reply, the Moving Parties initially maintain the TPC "asserts Jason Tucker breached his fiduciary duty to Takeover," citing to Paragraphs 47 and 62 of Docket Entry 38. (Reply at 2.) Neither cited Paragraph supports the Moving Parties' contention. Moreover, the TPC at Docket Entry 38 was superseded by the amended TPC at Docket Entry 67. While Paragraphs 47 and 62 of the amended TPC reference

- 7 -

actions taken on Takeover's behalf, these allegations are insufficient to create a double derivative suit. Perhaps recognizing this, the Moving Parties argue in their Reply that the issue is "irrelevant" in light of Takeover's request for intervention under Rule 24. (Reply at 5.)

Rule 24 provides for two types of intervention: intervention as of right and permissive intervention. The Moving Parties seek Takeover's intervention only as of right. (Joint Motion at 5–6.) The Ninth Circuit outlines four requirements for such intervention:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1148 (9th Cir. 2010) (citation and quotation marks omitted). The movant's failure to satisfy any one of these four factors is fatal. *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

Takeover's motion fails to meet the "threshold requirement" of timeliness. *See Kalbers v. U.S. Dep't of Justice*, 22 F.4th 816, 822 (9th Cir. 2021). Timeliness "hinges on three primary factors: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to the other parties; and (3) the reason for and length of the delay." *Id*. Here, while it is true this case is still in the pleading stage, that fails to convey the extraordinary amount of litigation that has already occurred and judicial resources expended. *See League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1303 (9th Cir. 1997) ("[T]hat the district court has substantively—and substantially—engaged the issues in this case weighs heavily against allowing intervention as of right under Rule 24(a)(2)."). Takeover filed this lawsuit nearly fourteen months ago. More than eleven months later, Takeover filed a Stipulation to be dismissed from the case with prejudice— and was so dismissed. Then, less than a month later, Takeover moves to get back into the case through intervention. The Moving Parties attempt to minimize this bizarre history, stating Takeover "has always been a party to this case except for the last few weeks" (Reply

at 9), but give no satisfactory explanation for why Takeover left the case, only to try to come back in. Other facts lead the Court to suspect gamesmanship might be the explanation, including, but not limited to, Takeover being sued in the District of Nevada and seeking to transfer that litigation to this Court.

Nor have the Moving Parties shown Takeover sought to intervene "as soon as [it] kn[ew]or ha[d] reason to know that [its] interests might be adversely affected by the outcome of the litigation." *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990). Mr. Holley first asserted claims against the Tuckers—which the Moving Parties now purport to construe as brought on Takeover's behalf—in May 2022. (Doc. 38.) Under the Moving Parties' own characterization, it strains credulity that Takeover only realized in March 2023 its interests might be adversely affected by adjudication of these claims. Further, while the Moving Parties make the conclusory assertion that the basis for the new allegations in the Proposed Amended Complaint (Doc. 123-1, "PAC") "has just come to light in the last four months" (Joint Motion at 8), they provide no evidence documenting the investigation of these allegations, even as they criticize the Tuckers for failing to provide support for their factual assertions. (Reply at 1.) Nor do the Moving Parties explain why Takeover's interests will not be adequately represented by its parent entity, LTNC, providing the Court no basis upon which to pinpoint the "crucial date when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties." *Kalbers*, 22 F.4th at 822 (citation and quotation marks omitted).

With respect to prejudice, the Court need not weigh in on the unsupported allegations in the Tuckers' Response to recognize that they have been prejudiced by the Moving Parties' undue delay. For example, the delay resulted in the Tuckers likely incurring unnecessary additional costs with respect to their pending Motion to Dismiss, which was initially filed in August 2022 yet has been rendered moot by the Joint Motion. In sum, because Takeover's motion to intervene is not timely, it will be denied on that basis. Were the Court to consider the other factors, it would find further reason to deny

1    intervention, including Takeover's failure to explain why it is inadequately represented by

2    the parties to the action, which notably include its parent entity, LTNC.

3         **C.**     **Motion for Leave to File Amended Complaint**

4         The Moving Parties invoke Rule 15 for leave to file their PAC, which amends the

5    TPC initially brought by Mr. Holley derivatively on behalf of LTNC and which will now

6    be prosecuted by LTNC on its own behalf.

7         A party may amend a pleading once as a matter of course within 21 days after

8    serving it, or within 21 days of service of a responsive pleading or motion under Rules

9    12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a). In all other circumstances,

10   absent the opposing party's written consent, a party must seek leave to amend from the

11   court. Fed. R. Civ. P. 15(a)(2). Although the decision to grant or deny a motion to amend

12   is within the district court's discretion, "Rule 15(a) declares that leave to amend shall be

13   freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citation

14   and quotation marks omitted). "In exercising its discretion with regard to the amendment

15   of pleadings, a court must be guided by the underlying purpose of Rule 15—to facilitate a

16   decision on the merits rather than on the pleadings or technicalities." *Eldridge v. Block*,

17   832 F.2d 1132, 1135 (9th Cir. 1987) (citation and quotation marks omitted). However, the

18   policy in favor of allowing amendments is subject to limitations. Courts consider whether

19   the complaint was previously amended, *see World Wide Rush, LLC v. City of Los Angeles*,

20   606 F.3d 676, 690 (9th Cir. 2010) (noting "discretion to deny leave to amend is particularly

21   broad where a plaintiff previously has amended the complaint"), and if amendment "would

22   cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue

23   delay." *Madeja v. Olympic Packers*, 310 F.3d 628, 636 (9th Cir. 2002) (citation and

24   quotation marks omitted). "[I]t is the consideration of prejudice to the opposing party that

25   carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052

26   (9th Cir. 2003). "The party opposing amendment bears the burden of showing prejudice."

27   *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).

28

The Moving Parties incorrectly caption their PAC a "Proposed First Amended Complaint." The pleading the PAC amends—the TPC filed by Mr. Holley—has already been amended. (Doc. 67.) In regards to bad faith, the Court agrees with the Moving Parties that some of the arguments in the Tuckers' Response prematurely challenge the truth of the PAC's allegations. However, the Court is persuaded that the PAC is not brought entirely in good faith. Many of the new allegations challenge the validity of loans made by Mr. Deppoleto to Takeover which are the subject of the Nevada Action that Takeover seeks to transfer to this Court. (PAC ¶¶ 15–32.) Takeover is evidently trying to leverage an attack on the Tuckers in this case to undermine Mr. Deppoleto's claims in the Nevada Action. Takeover has a right to defend itself, but the Court will not tolerate such gamesmanship. Similarly, the Court observes that Takeover's about-face with respect to allegations of impropriety against the four principals—withdrawing allegations of wrongdoing against Messrs. Holley, McBride, and Pavlik and asserting new allegations against the Tuckers instead—directly reflects the self-interest of those apparently now in charge. The PAC also includes allegations regarding Ms. Manolio for no apparent reason. (*E.g.*, PAC ¶¶ 27, 45.)

The Tuckers argue they will suffer prejudice if the Court grants leave to file the PAC. (Resp. at 16–17.) While the Court's determination that LTNC may prosecute the claims against the Tuckers obviates concerns about their now-moot Motion to Dismiss, the Court is persuaded by other concerns the Tuckers raise. For example, to the extent the PAC's allegations may be raised in Takeover's defense of Mr. Deppoleto's claims, the Tuckers may be forced to incur attorney's fees and expenses in two separate lawsuits concerning the same issues and face the potential of inconsistent rulings. The Moving Parties' undue delay in bringing the PAC also prejudices the Tuckers, who would have to investigate and answer new allegations, many of which concern alleged conduct occurring after Mr. Holley filed the initial claims against them. (*E.g.*, PAC ¶¶ 15–38, 47–49, 52–53.)

**IT IS THEREFORE ORDERED** granting in part and denying in part the Moving Parties' Joint Motion to Realign the Parties, Dismiss Parties, Amend the Third-Party Complaint, and Amend the Case Caption (Doc. 123). The Moving Parties' request for

dismissal of Third-Party Plaintiff Michael Holley and alignment of Labor Smart, Inc., as Plaintiff in his place under Federal Rule of Civil Procedure 21 is granted. The request for leave to file the Proposed First Amended Complaint (Doc. 123-1) under Rule 15 is denied. The request for Takeover's intervention as of right under Rule 24 is also denied.

**IT IS FURTHER ORDERED** substituting Labor Smart, Inc., as Plaintiff in place of Mr. Holley in the prosecution of the remaining claims in this matter: Claim I (breach of fiduciary duty), Claim II (breach of fiduciary duty), and Claim III (conversion) against Jason and Melissa Tucker, which were initially brought in the amended Third-Party Complaint filed by Mr. Holley (Doc. 67). The amended Third-Party Complaint shall be referred to as the Amended Complaint and the case caption is amended as reflected on the first page of this Order:

**IT IS FURTHER ORDERED** that the Clerk shall make a notation at Docket Entry 67 that the amended Third-Party Complaint is now the Amended Complaint.

**IT IS FURTHER ORDERED** dismissing without prejudice the claims brought by Mr. Holley against Third-Party Defendants Joseph Pavlik and Toby McBride (Doc. 67).

**IT IS FURTHER ORDERED** denying as moot Jason and Melissa Tucker's Motion to Dismiss Derivative Third-Party Claims (Doc. 75).

**IT IS FURTHER ORDERED** Defendants Jason and Melissa Tucker shall file an Answer to the Amended Complaint (Doc. 67) within the time provided under the Federal Rules of Civil Procedure.

Dated this 28th day of April, 2023.

_____
Honorable John J. Tuchi
United States District Judge