LAW OFFICES
**MANOLIO & FIRESTONE, PLC**
8686 E. San Alberto Dr., Suite 200
Scottsdale, Arizona  85258
(480) 222-9100
vmanolio@mf-firm.com
Veronica L. Manolio, SBN 020230
*Attorneys for Defendants Tucker*

# IN THE UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Labor Smart, Inc.,<br><br>                            Plaintiff,<br><br>v.<br><br>Jason and Melissa Tucker,<br><br>                            Defendants. | Case No. 2:22-cv-00357-PHX-JJT<br><br>**MOTION TO DISMISS<br>(PARTIAL)**<br><br>(Before the Honorable J. Tuchi) |

Pursuant to Rule 12(b)(6) FRCP, Defendants Jason Tucker and Melissa Tucker respectfully ask this Court to dismiss Claim I of the Amended Complaint (Doc. 67)[1] against them, as the outstanding allegations of this Claim have all been rendered moot and/or they are provably false at this early pleading phase.  For example, Labor Smart complains that its Nevada registration was improperly done, but the allegations are clear on the face of the Amended Complaint that such registration was done by Messrs. Holley, McBride and Pavlik before Tucker was even involved with the Company.  Similarly,

---

[1]  As this Court recently determined, the Third-Party Claims asserted in Doc. 67 shall act as the operative "Amended Complaint" against the Tucker Defendants. (Doc. 129).  Claim IV of that Amended Complaint was already previously dismissed, based on a voluntary Rule 41 dismissal (Doc. 124), leaving Third-Party Claims I-III at issue.  Moreover, as Doc. 67 makes clear, Melissa Tucker is named solely in her capacity as part of the Tucker marital community.  *Id*. at ¶6.  There are no specific allegations of (mis)conduct by Mrs. Tucker, such that "Tucker" herein shall mean Jason Tucker only.

Labor Smart complains that Mr. Holley was "improperly removed" from the Labor Smart board of directors and was removed so the others could steal his "Series A Preferred Shares" of Labor Smart from him. At this time, it is indisputable that Mr. Holley has "voted" himself back on to the Labor Smart board, and <u>everyone</u> is aware that none of Mr. Holley's Series A Shares of Labor Smart were taken. Mr. Holley has maintained his ownership of his Labor Smart shares throughout the entirety of this case.

For these reasons, and others that are more carefully explained below, Claim I is frivolous and violates Rule 11(b) FRCP.[2] Claim I should be immediately dismissed, and the Tuckers should be awarded their attorneys' fees and costs for having been made to defend this claim to date.

This motion is accompanied by a certification (below) that undersigned counsel properly raised these issues and met/conferred with opposing counsel prior to this filing, meeting the requirements of LRCiv 12.1(c), and is otherwise supported by the attached Memorandum of Points and Authorities as well as the pleadings on file to date.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      RELEVANT FACTUAL/PLEADING BACKGROUND**

As this Court is more than aware, this case started when Takeover Industries, Inc. ("Takeover") filed in March 2022 alleging that the company suffered financial losses at the hand of Michael Holley. (Doc. 1). Takeover had been formed under Nevada law as a Nevada entity in early 2021 but ultimately sold its stock to a publicly-traded company, Labor Smart, Inc. and became a wholly-owned subsidiary of that entity. *Id.* at ¶¶11, 13.

---

[2] The Tuckers also believe that Claims II and III are frivolous and violate Rule 11 FRCP. However, because assessing those claims requires evidence outside the pleadings, they are not raised at this Rule 12(b)(6) pleading stage. Instead, the Tuckers have provided significant evidence and a Rule 11 letter to Labor Smart counsel for evaluation.

Before Labor Smart was officially substituted as the Plaintiff/real party in interest, the current claims were filed by Michael Holley purporting to act derivatively for the shareholders of Labor Smart. At this point, Labor Smart has been permitted to substitute as Plaintiff. (Doc. 129). The remaining claims are set forth as Claims I-III in the Amended Complaint, Doc. 67. Boiled down to its essence, Claim I asserts:

1. Tucker[3] breached his fiduciary duties to Labor Smart by taking actions to vote Holley out of his board of directors position without properly convening a meeting of the board of directors or the shareholders. *Id*. at ¶62.

2. Tucker breached fiduciary duties to Labor Smart by "freezing Holley out from management" without giving shareholders an opportunity to vote. *Id*. at ¶64.

3. Tucker breached fiduciary duties to Labor Smart by denying Holley access to financial information of Takeover. *Id*. at ¶65.

4. Tucker breached fiduciary duties to Labor Smart by "causing the company to loose (sic) the benefit of Holley's decades of management experience in the beverage industry," which was done "for the express purpose of obtaining [Holley's] Series A Preferred Shares in Labor Smart. *Id*. at ¶66.

5. Tucker breached fiduciary duties to Labor Smart by "failing to pay LTNC's taxes to the State of Wyoming," which caused an administrative action. *Id*. at ¶66.

6. Labor Smart has been damaged "in the amount of corporate resources" spent on these breaches. *Id*. at ¶71.

The Amended Complaint also sets forth allegations dates/events that are essential in evaluating this motion:

---

[3] Although these "breach of fiduciary duties" issues were originally raised against Messrs. McBride, Pavlik **and** Tucker, the record in this case is clear that Holley, McBride and Pavlik all chose to "realign" themselves, voting themselves back into management of Takeover Industries and re-asserting their roles on the board of directors of Labor Smart. (Docs. 79, 79-1, 79-5, 79-6). Holley was even made interim CEO of Labor Smart. *Id*.

- 3 -

### *Tucker Had No Part in Labor Smart's Origin or Early Relationship to Takeover*

1. Holley and McBride formed Takeover in January 2021. Doc. 67 at ¶10.

2. In February 2021, Takeover wanted "access to public capital markets" and entered a series of transactions with Labor Smart to become the "parent" of Takeover. *Id*. at ¶27.

3. The Stock Purchase Agreement between Labor Smart and Takeover was dated February 26, 2021. *Id*. at ¶27.

4. **Only** Holley, McBride and Pavlik were part of Takeover at that time, and **only** Holley, McBride and Pavlik received shares in Labor Smart. *Id*. at ¶28, 33 (emphasis added).

5. In July 2021, Labor Smart (Holley, McBride and Pavlik) accepted $500,000 from the "former CEO" of Labor Smart. *Id*. at ¶37. (Jason Tucker was still not a part of Labor Smart nor the President of Takeover at that time. *Id.; see also*, ¶¶36, 39.)

6. Tucker was not voted onto the Labor Smart board of directors until September 13, 2021. *Id*. at ¶¶36, 38-39.

### *Labor Smart was Incorporated and in Tax Default through No Fault of Tucker*

1. Labor Smart was originally formed/incorporated in Nevada and then moved its place of corporate business to Wyoming in 2020, before Holley and McBride were even involved in that entity. *Id*. at ¶17. *See also*, State of Wyoming Secretary of State documentation attached here as **Exhibit A**.

2. The former Labor Smart CEO (Ryan Schadel) continued filing annual reports in Wyoming in early 2021. Doc. 67 at ¶19.

3. On September 27, 2021 (less than 2 weeks after Tucker was appointed to the Labor Smart board of directors), Tucker ensured that Labor Smart "applied to the Secretary of State of Nevada to have [Labor Smart] reinstated as a Nevada entity." *Id*. at ¶¶22-23; *see also*, Nevada Secretary of State documents as **Exhibit B**, incorporated here.

- 4 -

## II. LAW AND ARGUMENT

### A. Legal Standards

A complaint attacked by Rule 12(b)(6) FRCP is properly dismissed where it does not "state a claim to relief plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007). This "plausibility" standard means a complaint must state more than a "sheer possibility" of misconduct or harm; there must be something shown beyond the possibility of relief. *See, Ashcroft v. Iqbal*, 556 U.S. 662, 678, S.Ct. 1937 (2009). Determining whether a complaint sufficiently states a plausible claim for relief is specific to the facts/matter at hand and "require[es] the reviewing court to draw on its expertise and common sense." *Id*. at 663-64. Dismissal is proper under Rule 12(b)(6) when a claim lacks sufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).

Moreover, in a case analyzing Rule 12(b)(6) issues, the district court will not generally consider material "outside the pleadings." *See, e.g., Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001). However, there are two (2) exceptions to this rule, and courts may consider: 1) material submitted as part of the complaint; and 2) matters where public record allows a proper issue of judicial notice. *Id*.

When the complaint "necessarily relies" on material that is not attached to the complaint, that material is still considered "part of the complaint." *Lee* at 688, citing *Parrino v. FHP, Inc*., 146 F.3d 699, 705-06 (9th Cir. 1998). These materials may be viewed by the Court in considering dismissal, so long as authenticity is not contested. *Id*.

Matters of "public record" include records and reports of administrative bodies. *Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1282 (9th Cir. 1986). Pleadings in litigation are also matters of public record of which a court may take judicial notice. *Lee, supra*, at 690. The court may not resolve any factual dispute that may exist in a pleading but has authority to take judicial notice of undisputed matters in these public filings. *Id*.

B.   **Analysis**

1.   **Labor Smart Failed to State a Claim for Which Relief Can be Granted.**

   *a) There is No Claim for an Improper Meeting or for Removing Holley.*

The first several allegations of Claim I assert that Tucker breached his fiduciary duties to Labor Smart by not "properly convening a meeting of the board of directors or the shareholders" when voting Mr. Holley out of the board of directors, "freezing" him out of management, and then denying him access to Takeover's financial information. Doc. 67 at ¶¶62, 64-65. However, this Court may take notice of the additional pleadings in this matter which make it clear that:

1. Messrs. Holley, McBride and Pavlik convened their **own** board of directors meeting in November of last year, and they voted to reinstate Mr. Holley on the board of Directors of Labor Smart. Docs. 79-5, 79-6. Mr. Holley was even made the "interim CEO" of Labor Smart. *Id*. at 79-6. Mr. Holley was reinstated as a director of Takeover, in place of Tucker, giving Mr. Holley full access to all financial information that he complained was inaccessible. *Id*.

2. The "Special Meeting" where these votes were cast were convened on less than 2.5 days notice (notice was sent by email at 4:15 pm on Friday, November 4th and the meeting held at 9:00 am on Monday, November 7th). Doc. 79-6.

While Messrs. Holley, Pavlik and McBride continually argue that they were permitted to "reconsider[] their initial positions" in litigation (Doc. 88), and they were justified in turning on Tucker, they ignore that their joint actions make the Claim I by Labor Smart frivolous and being maintained in bad faith.

Mr. Holley has now reinstated himself as a director of Labor Smart and its CEO and is back on the board of directors of Takeover with full access to that company. The Tuckers do not ask this Court to consider whether these were proper or legal actions, but they simply ask to take notice of the fact that Labor Smart and Mr. Holley recognize his

stance as a current director of both entities and the CEO of Labor Smart. Based on the existence of those facts, there cannot be any cognizable claim against Tucker for the "freezing out" Holley, his removal from management, or denial of access to financials. Mr. Holley (and the others) resorted to self-help and can no longer maintain a cause of action when they rectified all of the items allegedly causing damages.

Moreover, while the Amended Complaint alleges that Tucker failed to "properly" convene a special meeting, and it verified the allegation that, "a special meeting of [the Labor Smart] board of directors cannot be convened on less than 4 days' written notice," (Doc. 67 at ¶61), this Court can take notice that Messrs. Holley, McBride and Pavlik did the exact same thing (Doc. 79-6). Again, the Tuckers are not asking this Court to pass judgment on whether either meeting was proper; it simply shows Labor Smart's bad faith to maintain an allegation of breached fiduciary duties by Tucker for conducting a meeting in the exact manner as the other board members/preferred shareholders have done.

### b)  *There is No Claim for "Obtaining" Holley's Preferred Shares.*

The next allegation in Claim I asserts that Tucker acted in breach of his fiduciary duties "for the express purpose of obtaining [Holley's] Series A Preferred Shares in Labor Smart." Doc. 67 at ¶66. Contrary to the allegation, public records prove that nobody took Mr. Holley's Series A Preferred Shares. *See, e.g.,* Doc. 88-1, 88-4, 88-5. Mr. Holley has publicly affirmed that he "owns 17 shares" of the Company's Series A Preferred Stock, and he has continued to vote that Preferred Stock. Doc. 79-6.

There is no cognizable claim for relief for what Mr. Holley *believed* back in September 2022 when he filed the Amended Complaint; there cannot be any damages for the alleged attempt to "obtain" this preferred stock when it never once changed hands.

### c)  *There is No Claim for "Failing to Pay Taxes" in Wyoming.*

On its face, the Amended Complaint acknowledges that Labor Smart was registered as a Wyoming entity in 2020, well before Takeover was even involved in that

- 7 -

entity. Doc. 67 at ¶17. It was the **former** owner/CEO of Labor Smart who filed annual reports in January 2021. *Id*. at ¶19. In February 2021, Holley, McBride and Pavlik entered a Stock Purchase Agreement to acquire Takeover and then in July 2021, they accepted $500,000 from the former CEO of Labor Smart. *Id*. at ¶¶27-28, 33, 37. <u>Tucker was not a part of Labor Smart's board until September 13, 2021</u>. *Id*. at ¶38.

The Amended Complaint also makes it clear that Labor Smart "applied to be reinstated as a Nevada entity" on September 27, 2021 (within weeks of Tucker joining the board). *Id*. at ¶22. It then alleges that the "public record" for Nevada does not show that Labor Smart went through proper steps to be reinstated in Nevada. *Id*. at ¶25.

Wyoming's Secretary of State public records demonstrate precisely that former CEO Schadel moved the corporate registration to Wyoming in January 2020. *See*, **Exhibit A**. Mr. Schadel was in a "Delinquency" by January 2021 for failing to pay the annual "License Tax" fee. *Id*. In March 2021, the Wyoming Annual Report was updated to add Joe Pavlik as the President and Director of Labor Smart. *See*, **Exhibit C**. <u>Tucker was clearly not involved with Labor Smart at that time, and he does not appear anywhere on Wyoming registration</u>. *Id*.

Nevada's Secretary of State public records then demonstrate that once Tucker was made a director of Labor Smart (on September 13, 2021), the company almost immediately filed to reinstate in Nevada (on September 27, 2021). *See*, **Exhibit B**. Labor Smart was reinstated in Nevada and remains an "Active" entity to this day. *Id*. Under Tucker's control, Labor Smart properly filed its 2022 Annual List and licensure fees in Nevada. *See*, **Exhibit D**. Labor Smart was provided with its annual Nevada license and has maintained its corporate status in good standing and as "Active" ever since. *Id*.; *see also*, **Exhibit B**.

This Court may certainly take judicial notice of **Exhibits A-D**, which are matters of public record taken directly from the registered/official websites of each state,

Wyoming and Nevada. *Lee, supra*, at 689. The Court may also consider these corporate registration documents at this dismissal phase because Labor Smart repeatedly alleged its reliance on the "public record" from each secretary of state. Doc. 67 at ¶¶17-20, 22-23. When the complaint relies on such material, it is to be considered "part of the complaint." *Lee* at 688, citing *Parrino, supra,* at 705-06.

Based on the bare allegations of the Amended Complaint and related public records that are to be deemed "part of the complaint," it is clear that Tucker had no involvement in causing registration in Wyoming **nor** the alleged "administrative action" in Wyoming. Labor Smart became "Delinquent" under Mr. Schadel's ownership of the Labor Smart entity, and that delinquency was never rectified according to the record. Tucker caused Labor Smart to properly reinstate in Nevada, where the entity has maintained an active registration/good standing. Thus, no claim for relief can lie against Tucker for a claim of "failing to pay taxes" to Wyoming at times he was not involved and which were never under his control/authority.[4]

## III. CERTIFICATION PURSUANT TO LRCiv 12.1(c)

By signing below, undersigned counsel certifies that: a) she notified counsel for Labor Smart of the issues asserted in this motion (and provided a lengthy and detailed Rule 11 request that Labor Smart voluntarily dismiss); b) after multiple writings and no less than three (3) phone conferences, the parties were unable to agree that this pleading was curable and/or that Labor Smart was able to amend; and, thus c) this motion (and any Rule 11 Motion for Sanctions that may follow) have become necessary despite good faith efforts to resolve this matters by and among counsel.

---

[4] Even though this conduct is not attributable to Tucker, the Court should also note that public records show the alleged unpaid taxes is a mere $50.00 "License Tax" fee due to the state of Wyoming. *See*, **Exhibit A**.

- 9 -

## IV.  CONCLUSION

For each of the reasons cited herein, Labor Smart has failed to state allegation(s) in Claim I of the Amended Complaint for which relief can be granted.  Each and every allegation of Claim I has been rendered moot by the actions of Labor Smart and/or the Holley, McBride, Pavlik "alliance," and/or the claims allege conduct that is averred to have happened without Tucker's involvement/knowledge/wrongdoing.  Moreover, none of the allegations in Claim I state any plausible damages.

Thus, Claim I should be immediately dismissed, with prejudice, and the Tuckers should be granted their attorneys' fees and costs for having to file this Motion to Dismiss after having properly raised the issues with opposing counsel on multiple occasions.

RESPECTFULLY SUBMITTED this 5th day of June, 2023.

**MANOLIO & FIRESTONE, PLC**

By:  /s/ Veronica L. Manolio
Veronica L. Manolio
8686 E. San Alberto Dr., Suite 200
Scottsdale, Arizona 85258
*Attorneys for Defendants Tucker*