LAW OFFICES
**MANOLIO & FIRESTONE, PLC**
8686 E. San Alberto Dr., Suite 200
Scottsdale, Arizona  85258
(480) 222-9100
vmanolio@mf-firm.com
Veronica L. Manolio, SBN 020230
*Attorneys for Defendants Tucker*

# IN THE UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Labor Smart, Inc. | Case No. 2:22-cv-00357-PHX-JJT |
| Plaintiff, | |
| v. | **DEFENDANT TUCKERS' REPLY RE: THEIR PARTIAL MOTION TO DISMISS** |
| Jason and Melissa Tucker, | |
| Defendants. | (Before the Honorable J. Tuchi) |

Defendants Jason Tucker and Melissa Tucker hereby reply on their Partial Motion to Dismiss (Doc. 134, seeking dismissal of Claim I of Doc. 67).

First and foremost, Labor Smart, Inc. relies on a **procedural** argument that the Tuckers "waived" their right to seek dismissal under Rule 12(b)(6) by having previously filed an Answer.  (Doc. 58).  This argument ignores the clear law of this Ninth Circuit, which permits a district court to dismiss a claim regardless whether an Answer has been previously filed.  This argument also ignores the clear factual history, where the Tuckers filed an Answer and Motion to Dismiss **simultaneously**, incorporating the Motion to Dismiss into their Answer and asserting that the Answer was filed only "in an abundance of caution" while the Motion to Dismiss was pending.  (Doc. 58 at ¶46(b), fn. 2.)

Secondly, Labor Smart relies on <u>conceivable</u> facts to suggest that Claim I states a viable claim.  It is clear that Claim I fails to state a **plausible** cause of action or damages.

## I.      REBUTTAL FACTS

### A.      Labor Smart Ignores the Essential Pleading History in this Matter.

It is true that the third-party claims were first filed on May 20, 2022 (Doc. 38). Undersigned counsel made multiple attempts to meet and confer with opposing counsel, expressing the pleading flaws to be addressed in a Rule 12(b)(6) motion to dismiss. (Doc. 60 at pp. 7-8).  When the parties were unable to reach agreement on the filing of an amended complaint, the Tuckers filed a Motion to Dismiss.  (*Id.*)  At the exact same time, the Tuckers filed an Answer that **expressly** incorporated the simultaneously-filed motion and stated that the Answer "shall not be read as a waiver of th[e] request for dismissal." (Doc. 58 at fn. 2.)  The Tuckers were clear that they filed the Answer "in an abundance of caution," but also expressly defended on the failure to state a claim.  (Doc. 58 at ¶46(b)).

Labor Smart responded to the first Motion to Dismiss in August 2022.  (Doc. 62). Labor Smart did **<u>not</u>** raise a "waiver" argument in the first Response and never suggested that the first Motion to Dismiss was untimely because an Answer was on file.  *Id.*  At the same time, Labor Smart moved to amend the Third-Party Complaint, which was granted. (Docs. 61, 66).  The Amended Third-Party Complaint was filed in September 2022, the Tuckers again moved for dismissal, and Labor Smart again responded without raising waiver or untimeliness.  (Docs. 67, 75, 95).  The Tuckers even replied. (Doc. 107).

While the Tuckers' **second** Motion to Dismiss was still pending, Michael Holley, Toby McBride and Joseph Pavlik all teamed up to "realign" themselves in this litigation and filed another request to amend and certain requests for dismissal.  (Docs. 123, 127). The Court acknowledged that the Tuckers' Motion to Dismiss was pending.  (Doc. 129). In a lengthy analysis, this Court finally ruled that the "Joint" parties would be permitted to proceed, but it would not allow the filing of another amended complaint.  *Id.*  It reverted back to the Third-Party Complaint originally on file (Doc. 67) and ordered the Tuckers to respond as if that Amended Complaint were filed anew.  (Doc. 129).

Based on the Court's "reversion" back to the Amended Complaint (Doc. 67), which the Court expressly acknowledged would allow a timely/new Answer (Doc. 129), the Tuckers timely filed a Motion to Dismiss on June 5, 2023. (Doc. 134). Prior to filing, undersigned counsel made significant efforts to confer with opposing counsel, and counsel had at least three (3) telephone conferences to discuss the motion for dismissal. (Doc. 134 at p. 9). **At no time** did Labor Smart ever suggest that a Motion to Dismiss was "waived" or "untimely." *Id*. This was a procedural argument made up after-the-fact and only because Labor Smart fears the possibility of dismissal on its Claim I.

### B.   Labor Smart Misconstrues Allegations in the Amended Complaint.

Labor Smart has taken great liberty to (mis)quote the allegations of ¶¶57, 62, 66 and 69 of the Amended Complaint (Doc. 67). The Company replaces Tucker as a sole Defendant (trying to forget that Messrs. McBride and Pavlik were originally named), and it leaves out words and typos in its own pleading, trying to re-write the record.

Most importantly, this Court should recognize that the Amended Complaint purports to use the term "Company" impermissibly by lumping two separate entities – Takeover Industries, Inc. (a NON party to this lawsuit) and Labor Smart, Inc. (the only remaining Plaintiff) into one. *See*, Doc. 67 at fn. 1. For purposes of considering the pending Motion to Dismiss, the Court must look at the Amended Complaint carefully to determine when claims actually discuss **<u>Labor Smart</u>** and not the dismissed "Company," Takeover. The Court should carefully consider whether Labor Smart, an entity, has pled viable claims for damages (as versus any ***individuals'*** complaints/claims).

## II.   REBUTTAL LAW AND ARGUMENT

### A.   The Tuckers' Motion to Dismiss is Timely, and Relief is Permitted.

Labor Smart suggests that Rule 12(b)(6) forbids the instant Motion to Dismiss because it was not filed "before" the Answer was filed. First and foremost, this Court should recognize that the Tuckers did not answer "before" filing a Motion to Dismiss.

1   (Docs. 58, 60).  Instead, the two pleadings were filed at the exact same time, and the
2   Answer was expressly filed "in an abundance of caution," while also incorporating the
3   Motion to Dismiss.  (Doc. 58).

4       Labor Smart relies on an out-of-jurisdiction case (*Lewis v. Schafer*, 571 F.Supp.2d
5   54, 57 (D. Columbia 2008)) to argue that a party is precluded from filing a motion to
6   dismiss after an answer has been filed.  However, the *Lewis* matter was specifically
7   **distinguished** by *Stanley v. Mylan, Inc.*, 2010 U.S. Dist. LEXIS 97939 (D. Utah 2010).
8   In *Stanley*, the district court evaluated when a Motion to Dismiss and Answer were "filed
9   on the same day within minutes of each other."  *Id*. at **3-4.  The *Stanley* Court held that,
10  because the two pleadings were filed at the same time, and because the Defendants
11  "intended the Answer to incorporate the Motion [to Dismiss]," the Court could justifiably
12  consider the Motion to Dismiss.  *Id*. at *4.

13      Labor Smart's reliance on *Pascal v. Concentra, Inc*., 2020 WL4923974 (N.D.
14  Calif. 2020) is just as misplaced as its reliance on *Lewis, supra*.  In *Pascal*, a California
15  district court judge ruled that the defendant was precluded from moving to dismiss an
16  amended complaint because the defendant had already filed an answer **six months prior**.
17  *Id*. at *2.  When the amended complaint was filed, defendant (Pascal) was only permitted
18  to attack any "new claims" in the amendment.  *Id*. at **5-6.  The *Pascal* case did not
19  assess a matter like ours, where a Motion to Dismiss was originally filed and then re-filed
20  after an Amended Complaint.  *Pascal* does not address similar facts or background and
21  should not be used to overcome the ruling that a simultaneous filing of an Answer and a
22  Motion to Dismiss will not trigger the "before" language contained in Rule 12(b).

23      Using the very cases on which Labor Smart relies, the Tuckers' simultaneous
24  filing of an Answer and Motion to Dismiss clearly meets the tenets of Rule 12(b)(6).
25  Thus, the Tuckers' Motion to Dismiss was timely filed and must be considered under
26  Rule 12(b)(6) at this juncture.

1      Even if this Court were to consider the Tuckers' simultaneous filing as a
2  procedural flaw, it should consider that the procedural issues result from Labor Smart's
3  own doing.  As fully discussed above, Labor Smart (not the Tuckers) turned this matter
4  into a procedural headache.[1]  The Tuckers promptly and timely moved to dismiss the
5  Third-Party Claims against them as soon as they were filed.  (Doc. 60).  They filed an
6  Answer simultaneously but expressly preserved the issues raised within their Motion to
7  Dismiss.  (Doc. 58).  Labor Smart responded without raising any waiver. (Doc. 62).
8  Labor Smart also sought to amend the Third-Party Claims, which request was granted.
9  (Docs. 61, 66).  When refiled, the Tuckers again timely filed a Motion to Dismiss (Doc.
10 75), Labor Smart again responded (Doc. 95), and only while that issue was pending did
11 the Labor Smart and the individuals (Holley, McBride and Pavlik) move to "realign"
12 matters. (Doc. 123).  If Labor Smart truly had any argument that the August 2022 Answer
13 precluded any subsequent Motion to Dismiss, it should be deemed to have waived that
14 argument when ignoring it twice before.  (Docs. 62, 95).

---

17 [1] This Court should also consider the "headaches" that Labor Smart continues to cause
18 and frivolously argue.  For example, Labor Smart dropped fn. 1 in its Response
   suggesting that the Tuckers have failed to file an Answer to Claims II and III.  (Doc. 138
19 at fn. 1).  This Court should be aware that undersigned counsel wrote to opposing counsel
20 on June 12, 2023 including significant research on the topic and asking Labor Smart
   whether it agreed that no Answer was due on Claims II and III until after the ruling on the
21 pending Motion to Dismiss.  *See*, **Exhibit A**, incorporated by this reference.  The very
22 next day, Mr. Levine (Labor Smart counsel) responded that he was in agreement and that
   no Answer was due "until the Court rules" on the Motion to Dismiss.  *Id.*

23   It is unclear what Labor Smart hoped to accomplish by its fn. 1, but (at least), it is bad
24 form to suggest that the Tuckers have done something improper by failing to file an
   Answer.  This was the very issue that undersigned counsel hoped to avoid, and it is
25 tiresome that Labor Smart and opposing counsel continues to raise issues in bad faith
26 and/or without merit.  *See also, e.g.,* fn. 3, *infra*.

Finally, and regardless whether this Court deems the Tuckers' Motion to Dismiss as having been filed "after" the Answer, the Ninth Circuit **permits** district courts to dismiss a claim, even if an answer has been filed prior to a request for dismissal.  *See, Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980).  In this circuit, when a motion to dismiss is filed under Rule 12(b)(6) after an answer is filed, a district court may treat a motion as one under Rule 12(c) for judgment on the pleadings.  *Id*.  This is considered a "qualification" of Rule 12(b)(6), and its use is strengthened when an answer has included the defense of failure to state a claim.  *Id*.; *accord, United States v. Real Property Located at 41430 De Portola Road*, 1992 U.S.App. LEXIS 6584, *3 (9th Cir. 1992) (A district court may elect to treat a late-filed Rule 12(b)(6) motion to dismiss as one for judgment on the pleadings and may still "consider whether the complaint plead a cognizable claim or stated facts with sufficient particularity."); *see also, Reilly v. Wozinak*, 2020 U.S.Dist. LEXIS 36256, *7-8, citing *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 954 (9th Cir. 2004) (A late-filed 12(b)(6) motion to dismiss may be converted by the district court for consideration under 12(c), and judgment on the pleadings may be appropriate.)

Treating a motion as one under Rule 12(b)(6) or 12(c) applies a "substantially identical" standard, and this Court must still decide if the facts alleged in the complaint can entitle Labor Smart to relief.  *Reilly v. Wozinak, supra,* at **5-6 citing *Chavez v. United States,* 683 F.3d 1102, 1108 (9th Cir. 2012).  Like requested here, partial dismissal of pleadings may be granted under Rule 12(c), despite that the rule does not expressly provide for partial judgment on the pleadings.  *Id*. at *6 (internal citation omitted).

**B.    Claim I Fails to State a Plausible Claim, Warranting Dismissal.**

As the Tuckers pointed out in their motion, a complaint attacked by Rule 12(b)(6) assesses whether a claim is "plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility requires more than a "sheer possibility" of misconduct

or harm, and district courts must draw on their own "expertise and common sense" to decide if there is something alleged beyond the possibility of relief. *See, Ashcroft v. Iqbal*, 556 U.S. 662, 663-664 (2009). The district court's inquiry is limited to "the content of the complaint." *North Star International v. Arizona Corporation Commission*, 720 F.2d 578, 581 (9th Cir. 1983) (other citations omitted). Courts may not consider any "hypothetical situation" which may flow from allegations in the complaint. *Id.* Instead, a reviewing court must limit its analysis to the actual issues pled. *Id.*; *see also*, *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) ("Ordinarily, a court may look only at the face of the complaint to decide a motion to dismiss.")

It is essential to note that the Tuckers have only sought dismissal of Claim I of the Amended Complaint, recognizing that Claims II and III may involve evidentiary issues.

When reviewing Claim I on its face, it is clear that Labor Smart complains about Tucker having: a) failed to properly convene a meeting of the board of directors or the shareholders before removing Holley as a Director/Officer; b) frozen Holley out from management without giving shareholders an opportunity to vote; c) denied Holley access to financial information of <u>Takeover</u>; and, d) failed to pay Wyoming taxes. Doc. 67 at ¶¶62-67. As a result of each of these alleged actions, Labor Smart alleged damages as:

    a.        causing Takeover (not Labor Smart) to "loose" Holley's decades of management experience;

    b.        causing Holley to lose his Series A Preferred Shares in Labor Smart;

    c.        causing Labor Smart to have an "administrative action" in Wyoming; and

    d.        causing the expense of <u>Takeover</u> corporate resources.

*Id.* at ¶¶66, 69, 71.

Relying on public information (of which this Court may take judicial notice), the Tuckers further demonstrated that the Tucker Defendants had no part in forming Takeover, no part in making Labor Smart the "parent" of Takeover, no part in

incorporating Labor Smart in Nevada or moving its place of corporation to Wyoming, and no part in failing to pay taxes or file reports. *See*, Doc. 67 at ¶¶10, 17, 27-28, 33, 36-37, 39; *see also*, Doc. 134-1, Doc. 134-2. In fact, the Tuckers demonstrated by public record that Mr. Tucker properly ensured that Labor Smart "applied to the Secretary of State of Nevada to have [Labor Smart] reinstated as a Nevada entity." *Id*. at ¶¶22-23; Doc. 134-2. The Tuckers also demonstrated that Mr. Holley did not lose any of his Series A Preferred Shares as was originally alleged. *See*, Docs. 79-6, 88-1, 88-4, 88-5.

Labor Smart disputes dismissal for three independent reasons, none of which is sufficient to state a plausible cause of action for relief.

### 1.   *Improper Meeting/Removal of Holley from the Board of Directors*

Labor Smart cannot dispute that Mr. Holley has reinstated himself as a Director, yet it continues to rely on some unknown/unpled "damage" from his temporary removal from the Board by equating the action to a kidnapped child being returned to its family months after the kidnapping. Unlike a kidnapping victim, however, Labor Smart is not entitled to emotional damage or trauma. This is a **commercial** transaction, wherein Labor Smart is required to plead an actual, appreciable loss for Mr. Holley's temporary removal from the Labor Smart Board of Directors.

There is no doubt that Labor Smart has failed to plead any actual damage(s). It focuses on the "lost benefit of Mr. Holley's decades of management experience," but does not allege that this somehow caused financial damage to Labor Smart. Without ever reaching factual determinations, this Court may certainly use its own "common sense" and "expertise" to determine that Labor Smart has not pled plausible harm. Labor Smart may have alleged some "sheer possibility" of misconduct, but there is nothing more than speculative relief pled. There is no actual, appreciable damage/harm tied to removal from the Board and nothing that common sense dictates is a cognizable damage.

/ / /

### 2.     *Obtaining Holley's Preferred Shares*

Next, Labor Smart cannot deny that Mr. Holley never really lost his Series A shares (*see*, Docs. 79-6, 88-1, 88-4, 88-5), so it once again argues that the allegations related to Mr. Holley losing his Series A Preferred Shares must be viewed with an eye toward Labor Smart having lost "the benefit of Mr. Holley's decades of management experience."  This argument simply requires the same analysis as No. 1, above.

This is a commercial transaction/matter, and Labor Smart's damages need to be considered under the allegation of an actual, quantifiable, appreciable harm or damage. Labor Smart is not entitled to a claim for damage for the "loss" of Mr. Holley's experience when such loss has not been pled to translate into financial harm to the entity. Again, the loss of "experience" may be a speculative *possibility*, but it is not a plausible damage theory for this Court to consider as the basis to move forward on this claim.

### 3.     *Failure to Pay Taxes in Wyoming*

The only **real** harm plead in Claim I is the "failure to pay taxes" in Wyoming, resulting in an "administrative action" being taken by Wyoming.  However, the Tucker Defendants have undisputedly shown that such actions were caused by Holley, McBride and Pavlik (not by the Tuckers).  (Docs. 134-1, 134-2).

This Court is absolutely permitted to consider that proof at this early pleading stage because the public records are material to the Amended Complaint and may be accepted pursuant to judicial notice.  *See, e.g., Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001).[2]

---

[2]  Because this Court is entitled to take judicial notice of public records, it should also note that the Tuckers' Motion to Dismiss was filed on June 5, 2023.  Days later, Labor Smart filed an Annual Report in Wyoming for 2023 and then an Amended Annual Report.  *See*, **Exhibit B**.  Public record demonstrates that Labor Smart is presently in good standing in Wyoming, with no taxes due and no "administrative action" in place. *See*, **Exhibit C**.

Because Labor Smart is well aware that the Tuckers had no involvement in the registration of Labor Smart in Wyoming and/or the failure to pay taxes in Wyoming, it simply retorts that "Claim I contains many factual allegations that have nothing to do with [these failures]." Regardless what other "factual allegations" are made, Labor Smart has not cited any alleged **damage** beyond the failure to pay taxes/the administrative action in Wyoming. And no matter what was alleged, the public records demonstrate that Labor Smart is not suffering any damages from alleged improper filing. *See*, fn. 2, *supra*.

## C.    The Request for Attorney's Fees May be Stayed Pending Additional Motion Practice Under Rule 11 FRCP.

As Labor Smart recognizes in its Response, the Tuckers' request for attorneys' fees is specifically based on its belief that Rule 11(b) FRCP has been violated here.[3] The

---

[3] Despite recognizing that the Tuckers provided a proper Rule 11 letter and asked that Labor Smart voluntarily dismiss this Claim before they filed a Motion to Dismiss, counsel for Labor Smart grossly misstates the record (yet again) in fn. 3 of the Response.

First, undersigned counsel did not move to withdraw from representing Takeover Industries, Inc. based on a conflict of interest. (*See*, Doc. 96). Undersigned moved to withdraw from representing Takeover by expressly disputing that a conflict existed, but for the conflict that defense counsel intentionally created. *Id*. This Court permitted withdrawal (Doc. 102) and then subsequently ruled that undersigned counsel did not have any conflicts of interest (Doc. 118). Labor Smart's continued attempts to launch personal attacks at undersigned counsel is beyond troubling. (*See also, e.g.,* Doc. 129 at p. 11, where this Court acknowledges that Labor Smart continues to launch allegations against undersigned counsel "for no apparent reason.")

Second, Takeover did not dismiss the prior Complaint because it lacked evidentiary support. Labor Smart and its counsel dismissed the prior Complaint because Messrs. Holley, McBride and Pavlik all "teamed up" and decided to pursue Mr. Tucker instead, in what the Court referred to as likely "gamesmanship" and not "entirely in good faith." (Doc. 129) The Court noted that Messrs. Holley, McBride and Pavlik were likely dealing in self-interest, as they are now considering themselves "in charge" of the entities. *Id*.

Labor Smart's fn. 3 appears as just another improper personal attack on undersigned.

Tuckers intended to preserve their right to seek attorneys' fees and costs but understand that this issue need not be resolved by the Court at this pending Motion to Dismiss stage.

## III.    CONCLUSION

Unlike the Labor Smart conclusion suggests, the Tuckers need not prove the right to dismissal "beyond doubt."  This Court may dismiss Labor Smart's Claim I at this early pleading stage if it does not raise a plausible cause of action or plausible damages.  For the reasons set forth herein and in the Tuckers' Motion to Dismiss, Labor Smart's Claim I fails to set forth a viable cause for damages, warranting dismissal now.

Labor Smart is clearly aware that its Claim I fails on its face, which is why it drops fn. 4 suggesting that it "intends to file a Motion to Supplement" under Rule 15(d). Proceeding in such manner would be wholly impermissible, as: 1) Labor Smart has not argued that the pleading deficiencies cited by the Tuckers are curable by amendment and/or sought leave to amend to address them; and 2) this Court previously ruled that Labor Smart was not entitled to file another amendment under Rule 15, as such a pleading was untimely and would prejudice the Tuckers.  (Doc. 129 at pp. 10-11).  Labor Smart's suggestion of a Rule 15(d) Motion is seeking an end-run around the prior ruling.

The Tuckers should be granted dismissal of Claim I now, and any claim for attorneys' fees (or other sanctions) can be properly determined upon further motion practice under Rule 11.

RESPECTFULLY SUBMITTED this 10th day of July, 2023.

**MANOLIO & FIRESTONE, PLC**

By: __/s/ Veronica L. Manolio__
Veronica L. Manolio
8686 E. San Alberto Dr., Suite 200
Scottsdale, Arizona 85258
*Attorneys for Defendants Tucker*

- 11 -