LAW OFFICES
**MANOLIO & FIRESTONE, PLC**
8686 E. San Alberto Dr., Suite 200
Scottsdale, Arizona 85258
(480) 222-9100
vmanolio@mf-firm.com
Veronica L. Manolio, SBN 020230
*Attorneys for Defendants Tucker*

# IN THE UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Labor Smart, Inc.<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Jason and Melissa Tucker,<br><br>　　　　　　Defendants. | Case No. 2:22-cv-00357-PHX-JJT<br><br>**TUCKER DEFENDANTS' REPLY ON THEIR MOTION TO SET ASIDE CLERK'S ENTRY OF DEFAULT**<br><br>(Before the Honorable J. Tuchi) |

## I.　INTRODUCTION

　　Defendants Jason and Melissa Tucker respectfully asked this Court to set aside the Clerk's Entry of Default based on good cause, including that the Tuckers have significant and meritorious defenses to the claims against them **and** that undersigned counsel was out of the country when the Court issued its Order (Doc. 141) asking for a status report. In response, Labor Smart, Inc. engaged in its patterned gamesmanship, failing to even address why it chose to file for default rather than give the Court a "status report" and claiming it will suffer prejudice if default is set aside.

　　Labor Smart's claim of prejudice is unreasonable.  While Labor Smart claims that its "current management team" did not initiate this lawsuit, it ignores that it filed pleadings last year to "realign" the parties, begging this Court to allow Labor Smart's substitution as the Plaintiff under its new management regime.  (Doc. 123.)

1    Likewise, Labor Smart's argument that the Tuckers did not show "specific facts" of meritorious defenses is unsound. The Tuckers filed a Motion to Dismiss (Partial), which cited how "the Tuckers have provided *significant evidence* and a Rule 11 letter to Labor Smart for evaluation" before requiring Court involvement. (Doc. 134 at fn. 2., emphasis added.) In their current motion, the Tuckers pointed to the Rule 11 letter again (and its attached evidence) and also cited how "financial data and proof that Mr. Tucker did not spend/take/convert any funds" was provided to the purported management of Labor Smart in direct settlement talks. (Doc. 144.) Labor Smart cannot sincerely deny the abundant evidence of meritorious defenses to be presented as this case proceeds.

Because Labor Smart only filed for default as a tactical advantage, and because the Tuckers have acted in good faith and with merit to their defenses, this Court should find good cause to set aside the default.

## II. REBUTTAL TO FACTUAL ISSUES

***First***, Labor Smart complains that the Tuckers' interests are no longer aligned with those of the "Company," as if that is the Tuckers' fault. While casting aspersions, Labor Smart fails to even recognize that the "Company" in this case has changed.

To remind this Court, Jason Tucker authorized this lawsuit to be filed on behalf of <u>Takeover Industries, Inc</u>. when evidence demonstrated that Michael Holley was abusing Takeover funds and prioritizing his self-interests. Mr. Tucker then led the charge when Takeover's Toby McBride admitted to spending more than $240,000 of Takeover funds on personal expenses without repaying Takeover. Despite the vast evidence against Messrs. Holley and McBride, those men (along with Joseph Pavlik) staged a "takeover" of Takeover and ousted Mr. Tucker from his position as President. (Docs. 79, 88, 90.) These gentlemen then pleaded with this Court to insert Labor Smart as Plaintiff, arguing Labor Smart was the "real" Plaintiff with claims against the Tuckers. (Doc. 123.) Yet, to this day, Labor Smart fails to specify when "Company" means Takeover vs. Labor Smart.

***Second***, Labor Smart argues that the Tuckers were ordered to file an Answer to the Amended Complaint on April 28, 2023, claiming that the Tuckers ignored the Court for 13 months. That is simply not true. The April 28, 2023 Order required the Tuckers to file an Answer "within the time provided" by the FRCP. (Doc. 131.) When the Tuckers filed their Motion to Dismiss (Partial) (Doc. 134), that extended the time for the Tuckers' Answer pursuant to the FRCP. *See*, Rule 14(a)(4)(A) FRCP. In fact, undersigned counsel wrote to Labor Smart to <u>confirm</u> the understanding that the Tuckers' time to answer was extended until after a ruling on dismissal. (Doc. 139; *see specifically*, 139-1.)

The Court ruled on dismissal in October 2023, and undersigned has already admitted that a supplemental Answer should have been filed. (Doc. 144.) However, it has not been "13 months" since October, and the Tuckers did not seek a year-plus excuse. Moreover, the supplemental Answer would nearly mimic the original Answer, since the Amended third-party claims did not change from the original claims pled. (Docs. 38, 67.)

As fully demonstrated in the Motion to Set Aside Default, the Tuckers' counsel mistakenly focused on the multiple settlement discussions with Labor Smart from October 2023 and up through the recent filings without renewing the Tuckers' Answer. (Docs. 144, 144-1.) Despite those multiple and ongoing discussions, Labor Smart never once inquired about an Answer. *Id*. When this Court ordered Labor Smart to file for default or simply "file a status report," Labor Smart had every opportunity to take the high road. Labor Smart could have informed the Court that the parties' attention had shifted to settlement discussions; Labor Smart counsel could have shown professionalism and asked undersigned to file an Answer. Instead, Labor Smart jumped on the chance to win by "default," knowing the Tuckers' defenses are significant and meritorious.

It is telling that Labor Smart's Response ***never even addresses*** why Labor Smart chose to file a default pleading over a status report. Labor Smart counsel cannot deny that the parties have engaged in multiple ongoing communications since October 2023,

continuing through the end of May 2024 (when Labor Smart filed its Response), but he seems to have intentionally omitted the parties' history to make up its "prejudice" argument. The facts do not support that the Tuckers have done nothing for 13 months.

***Third*** and finally, Labor Smart complains that the Tuckers did not provide specific facts of a meritorious defense.[1] To the contrary, the Tuckers' Motion to Set Aside points to these specific items listed as meritorious defenses to the claims against them:

- Mr. Tucker disputes that he mismanaged Labor Smart funds, and he pointed to the Rule 11 letter provided to Labor Smart counsel, which gave evidence to dispute the mismanagement allegations;
- The Tuckers provided "financial data and proof that Mr. Tucker did not spend/take/convert any funds for his own personal benefit" to the purported new management of Labor Smart in direct settlement communications; and
- Mr. Tucker disputes the improper termination of his rights, as Messrs. Holley, McBride, and Pavlik ousted him from management to "align" themselves, in what this Court has referred to as "suspect[ed] gamesmanship."

*See*, Doc. 144 at p. 5; *see also*, Rule 11 letter referred to herein as **Exhibit 1** here.

Exhibit A to the Motion to Set Aside (Doc. 144-1) further specifies the Tuckers' defenses against ongoing gamesmanship by Labor Smart:

- Labor Smart is continuing to harm the Tuckers, thwarting any sale of their businesses' owned Labor Smart stock by falsely informing the LTNC fiduciary (Clear Trust, LLC) that stock restrictions are required, in part, due to this litigation.

---

[1] Although Labor Smart did not include this in its factual predicate but only its legal argument, the Tuckers address this issue here (factually) but *analyze* it below in the rebuttal to law and argument(s).

- 4 -

## III. REBUTTAL LAW AND ARGUMENT

The Tuckers agree with Plaintiff that setting aside default under Rule 55(c) requires them to meet the "good cause" standard. This is the same standard as applied under Rule 60, and what constitutes excusable neglect under Rule 60 is sufficient as good cause under Rule 55(c). *Franchise Holding II, LLC v. Huntington Rests. Group, Inc.*, 375 F.3d 922, 927 (9th Cir. 2004), citing *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001). This requires an analysis of *equity*, which takes into account the reason(s) for delay, whether a party acted in good faith, and whether the delay had any impact on judicial proceedings. *Franchise Holding II* at 927; *TCI Group* at 696. This equitable analysis is entirely discretionary by this Court.

Furthermore, the Tuckers agree with Plaintiff that the factors establishing good cause to set aside default (culpable conduct, meritorious defense(s), and prejudice) are disjunctive. The parties agree that default can be set aside if the Tuckers can establish even **one** of these factors in their favor. *Franchise Holding II* at 926. If a request to set aside default is timely (like this one) and a meritorious defense is shown, any doubt should be resolved in favor of setting aside default. *Mendoza v. Wright Vineyard Management*, 783 F.2d 941, 946 (9th Cir. 1986).

In this instance, this Court should exercise its discretion *against* Labor Smart because its Response misleads (and omits facts) surrounding the filing of an Answer, it misleads about the meritorious defenses that the Tuckers have raised, and its "prejudice" argument is flimsy at best. Simply put, the Court should find good cause exists based on all three (3) factors at issue and should set aside default.

### A. Culpable Conduct

Labor Smart initially relies on *Peña v. Seguros La Comercial, S.A.,* 770 F.2d 811 (9th Cir. 1985) and *Franchise Holding II, supra*, to suggest that **any** time a party has notice of an action, a failure to file an answer is deemed "culpable" conduct. Those cases

have been routinely rejected in favor of a less rigid standard, and the correct rule in this jurisdiction is that "only intentional conduct is sufficiently culpable to deny a motion to set aside default." *See*, *FOC Fin. Ltd. P'ship. v. National City Commerce Capital Corp.*, 612 F.Supp.2d 1080, 1082-83 (D. Ariz. 2009), citing *TCI Group, supra*, at 698. *In TCI Group*, the Ninth Circuit explained that culpability is generally equated with conduct that appears devious, deliberate, willful, or in bad faith. *Id*. When a party (like the Tuckers) inadvertently fails to file an answer in the wake of other orders and proceedings, and there is no evidence of dilatory motive, there should not be a finding of culpable conduct. *See, e.g., FOC Fin., supra*, at 1082 (internal citations omitted).

In *Pincay v. Andrews*, the Ninth Circuit expressly rejected the rigid standard of *Franchise Holding II*, that one's knowledge of its obligation to answer, without more, was sufficient to establish culpable conduct. 389 F.3d 853, 860 (9th Cir. 2004) (*en banc*). The *Pincay* Court reminded us that late filings based on negligence can still be excusable, based on the surrounding equitable factors. *Id*. The Court should weigh all surrounding factors in each individual case, as even a lawyer's negligent acts may be forgiven if not motivated by improper means. Moreover, even if the Court does find that counsel was negligent, and even if "no decent lawyer" would have made a similar mistake, an error that is caught quickly may **still** qualify as being excusable. *Id*. at concurring opinion. Anything that weighs positively in the Tuckers' favor can justify good cause. *Id*. And, this single factor (culpability) weighs no more heavily than the remaining, so if even culpability is found, the default may still be set aside. *Id*. at 860-861.

Labor Smart then relies on *Lowery v. Barcklay*, 2014 WL 47349, 2014 LEXIS 1434 (D. Ariz. 2014) to suggest that any time legal counsel is employed, culpable conduct is to be assumed. That District Court Order is based on an analysis of *Franchise Holding II* and ignores both *TCI, supra*, and *Pincay, supra*. Because *Lowery* is not a controlling decision (but only instructive), this Court should give it no weight here.

If this Court evaluates the full factual picture of this matter, as it should, it will have to find the following elements that make this case unlike any of the cases cited:

- This case is not in the infancy of proceedings. Multiple pleadings have been filed by the various parties, and multiple "peripheral" issues have distracted this matter from a normal course of litigation.

- The Tuckers already filed a comprehensive Answer to the claims against them in August of 2022 (Doc. 58). The changes between Labor Smart's original claims against the Tuckers and the amended claims against them are nominal. (Docs. 38, 67.) In fact, when Labor Smart opposed the Tuckers' second Motion to Dismiss, it repeatedly argued that the motion was improper as a definitive Answer was already on file. (Doc. 138.) Labor Smart stressed that its original Third-Party Claims were unchanged, and because the amended pleading did "not add any new claims," the Tuckers' prior Answer should stand. *Id*. at p. 4, ll. 3-4. This fact, alone, demonstrates that the Tuckers fully intended to answer and deny the allegations against them.

- After this Court ruled on the Tuckers' Motion to Dismiss (Partial) in October of last year, the Tuckers' failure to answer was based on mistake rather than **intention**. (Doc. 144-1.) The Tuckers did not fail to answer as a strategy or for any improper reason; Labor Smart turned its attention to settlement efforts after losing the Motion to Dismiss and knowing that a Rule 11 Motion for Sanctions was forthcoming, and the Tuckers repeatedly engaged in settlement discussions. (Doc. 144-1.)

- The Tuckers (personally) and counsel **both** engaged in multiple discussions, over multiple months, and Labor Smart never once suggested that an Answer should be filed or that this litigation should proceed. *Id*. To the contrary, Labor Smart continued to <u>beg</u> for resolution, knowing that it had no real evidence against the Tuckers. *Id*.

- In its April 25th Order, this Court permitted Labor Smart to simply provide a "status report" on this matter. (Doc. 140.) Labor Smart was given the chance to explain

- 7 -

that the parties inadvertently shifted all focus to settlement discussions, **both** putting this litigation on the "back burner" in hopes of resolution. (Doc. 144-1.) Instead of giving this Court a full picture of the "why" an Answer was not filed, or why default was the appropriate choice, Labor Smart omitted the facts. Labor Smart's Response entirely failed to address these facts, though the Motion to Set Aside (and Declaration of Counsel) provided a clear picture of what has occurred in the months since the October ruling. Labor Smart's Response even chastised the Tuckers for not expressing "why" the delay occurred, despite that the motion gave a full account of the when/why/what has happened since the October 2023 ruling.[2]

In the entirety, this Court should find that the Tuckers have failed to act with culpability. They inadvertently failed to file a supplemental Answer, and there is a good reason "why" – the parties were genuinely trying to resolve this matter without the need for additional litigation. There were also multiple competing pleadings being considered, including a Motion for Sanctions (for the Rule 11 violations), and multiple issues that needed to be discussed/resolved in order to proceed. The Court should further find that any culpability must be equally shouldered by Labor Smart, who intentionally failed to give this Court a full factual picture. Labor Smart should not be rewarded for its intentional omissions and its failure to show that the Tuckers engaged in bad faith, dilatory conduct, or intent to delay. Thus, the "culpability" factor should weigh in favor of setting aside the entry of default.

**B. Meritorious Defenses**

It is absolutely disingenuous for Labor Smart to suggest that the Tuckers did not cite "specific" facts of their meritorious defenses.

---

[2] Notably, the Tuckers' motion contains a sworn Declaration to support the facts raised. Labor Smart's Response does not contain any explanations/controverting positions supported by evidence; Labor Smart blatantly ignored all of the facts put forth.

- 8 -

First and foremost, this Court knows that the Motion to Set Aside is not the first pleading to raise defenses in this case. Unlike most instances where default is entered for a failure to appear, this case has been through multiple motions for emergency relief; a comprehensive Answer has already been filed for the Tuckers; and, the Tuckers' most recent Motion to Dismiss (Partial) (Doc. 134) included citations to a Rule 11 Letter to Labor Smart counsel, **with attached evidence**, to be presented in defense of the claims. Even if this Court ignored all of the prior pleadings on file and all of the proceedings that have already taken place, the Motion to Set Aside, alone, cites meritorious defenses that: a) Mr. Tucker did not mismanage the funds of Takeover; b) Mr. Tucker did not spend/take/convert any funds for his own personal use; c) Mr. Tucker's rights in Takeover were improperly terminated when Messrs. Holley, McBride, and Pavlik ousted him and "aligned" themselves (in what even this Court suspects as gamesmanship); and d) Labor Smart continues to harm the Tuckers by "restricting" the Labor Smart stock issued to the Tuckers' business entities so they cannot sell shares on the public market. (Docs. 144, 144-1.)

Labor Smart blanketly cites *U.S. v. Mesle*, 615 F.3d 1085 (9th Cir. 2010) to argue that "specific facts" must be shown to demonstrate a meritorious defense, but it ignores that this burden is "not extraordinarily heavy." *Id*. at 1094, citing *TCI, supra*, at 700. All that is required to satisfy the meritorious defense test is to allege that sufficient facts, if true, would constitute a defense. *Id*. Here, the facts that the Tuckers stated in their Motion to Set Aside specifically include that "Mr. Tucker disputes the improper termination of his rights," he provided "financial data and proof that Mr. Tucker did not spend/take/convert any funds for his own personal benefit," and Tucker was "ousted" improperly. (Docs. 144, 144-1.) If these facts are true, the Tuckers have a complete defense to the claims against them. Thus, they have met the burden on the meritorious defense prong sufficiently to set aside default. *Mesle* at 1094.

If Labor Smart means to suggest that **proof** is required at this stage, its argument still fails. First, the case law does not require evidence at this stage, but only a statement of facts that "if true" would be a defense. *Mesle, supra.* Second, the Tuckers expressly incorporated their Rule 11 letter as part of the Motion to Set Aside. Viewing **Exhibit 1** here, this Court can see that the Rule 11 letter contains express **evidence** of the Tuckers' defenses, not just a mere denial of the allegations. The Tuckers have given Labor Smart bank statements, invoices, and records squarely disproving the claim that Mr. Tucker took/converted funds for his personal interests. *Id*. **The funds at issue were solely used to pay legitimate debts of Takeover, and Labor Smart knows this to be true**. *Id*. Thus, on this record, the Court should find a sufficient assertion of meritorious defenses.

### C. Prejudice to Labor Smart

Perhaps the most disingenuous argument Labor Smart makes is its alleged "prejudice." Labor Smart suggests (in a mere one-sentence manner) that its "current management team" did not initiate or approve this litigation. It does not explain how or why that would prejudice Labor Smart, nor does it explain who this alleged "current management team" is or how they came into management.

Contrary to every suggestion that "current" Labor Smart management did not approve this suit, Labor Smart intentionally inserted itself as the Plaintiff last year. (Docs. 123, 127.) Labor Smart contended it was the "real party in interest" here, arguing it had "always been a party to this action regardless of whether it appeared by independent counsel." (Doc. 127 at p. 3.) Labor Smart explained that it wanted to substitute in Takeover's place as Plaintiff, explaining that it evaluated this matter "after additional investigation" when Messrs. Holley, McBride and Pavlik all aligned to remove Mr. Tucker from Takeover. (Doc. 123 at p. 3.) Not only is Labor Smart's argument now a complete disregard of its prior arguments, but it fails to demonstrate **any reason** why "current management" disagrees with its prior decision to pursue the Tuckers herein.

Labor Smart fails to show whether the "current management" differs from the parties who previously approved filings in Docs. 123, 127.[3]

To be prejudicial, setting aside default "must result in greater harm than simply delaying resolution of the case." *TCI, supra*, 244 F. 3d at 701 (other citations omitted). Labor Smart must demonstrate that its ability to pursue the claims against the Tuckers has somehow been hindered, by some "tangible harm," like a loss of evidence, increased difficulty in discovery, or fraud/collusion by the Tuckers. *Id*. Labor Smart did not even ***attempt*** to make such prejudice arguments, nor could it. Labor Smart has intentionally delayed pursuing its claims, knowing the Tuckers are likely to prevail based on the vast evidence that disputes allegations of Mr. Tucker's "theft" or "mismanagement" of Takeover funds; Labor Smart has spent the past 6+ months trying to convince the Tuckers to settle this lawsuit. (Doc. 144-1.) Thus, there is no basis whatsoever for this Court to determine that Labor Smart has suffered prejudice from anything other than its own wrongdoing. Thus, this factor should also weigh in favor of setting aside default.

## IV. CONCLUSION

For all the reasons cited in the Motion to Set Aside (Doc. 144) and herein, the Tuckers again respectfully ask this Court to set aside the entry of default.

---

[3] When opposing the Joint Motion to Realign Parties, Dismiss Parties, Amend the Third-Party Complaint, and Amend the Case Caption (Doc. 123), the Tuckers expressly argued that Labor Smart had not made any Corporate Disclosure and did not provide authority to insert itself as a Plaintiff in this lawsuit. (Doc. 126 at p. 6, ll. 11-12.) The Tuckers argued that Messrs. Holley, McBride and Pavlik all pretended to have the authority to sue on behalf of Labor Smart. *Id*. at p. 8, ll. 5-7. The Tuckers asked the Court to **make** the moving parties provide a *prima facie* showing they were entitled to sue for Labor Smart. *Id*. at p. 8, ll. 13-18. The Tuckers genuinely believed the lawsuit was an end-run around required shareholder approval. *Id*. In the Reply, Labor Smart counsel called this a "strawman" argument and blamed undersigned for being nonsensical and accusatory. (Doc. 127). From the current pleading, it appears that undersigned was correct all along: Messrs. Holley, McBride and Pavlik lodged a claim for Labor Smart without authority and now suggest Labor Smart is "prejudiced" because of their wrongful actions.

| | |
|---|---|
| 1 | RESPECTFULLY SUBMITTED this 6th day of June, 2024. |
| 2 | **MANOLIO & FIRESTONE, PLC** |
| 3 | |
| 4 | By: /s/ Veronica L. Manolio |
| | Veronica L. Manolio |
| 5 | 8686 E. San Alberto Dr., Suite 200 |
| | Scottsdale, Arizona 85258 |
| 6 | *Attorneys for Defendants Tucker* |