Paul M. Levine, Esq. (007202)
**PAUL M. LEVINE, P.C.**
8502 E. Via de Ventura, Suite 230
Scottsdale, Arizona 85258
Telephone: (480) 302-4102
plevine@pmlevinepc.com
*Attorney for Labor Smart, Inc,*

# IN THE UNITED STATES DISTRICT COURT
# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Labor Smart, Inc., | Case No. 2:22-cv-00357-PHX-JJT |
| Plaintiff, | |
| v. | **LABOR SMART INC.'S RULE 12(b)(6) AND RULE 13(a) MOTION TO DISMISS**[1] |
| Jason and Melissa Tucker, | |
| Defendants. | |

Plaintiff/Counterclaimant Labor Smart, Inc., through its counsel, pursuant to Rules 12(b)(6) and 13(a)(1), Federal Rules of Civil Procedure, moves to dismiss the Counterclaim. This Motion is supported by the attached Memorandum of Points and Authorities and the entire record in this case.

## MEMORANDUM OF POINTS AND AUTHORITIES

### Rule 12(b)(6) Motion

## I.    Allegations in Counterclaim I: Breach of Contract.

Counterclaim I alleges breach of 2 contracts: *first*, the Labor Smart Bylaws, and *second*, a July 2021 Agreement. (Doc. 148, ¶'s 81 – 85.)[2]

### A.    Allegations Re: Labor Smart Bylaws.

---

[1] Undersigned counsel certifies that before filing the Motion, he notified opposing counsel of the issues asserted in the Motion. Opposing counsel responded. The parties were unable to agree that the Counterclaim was curable in any part by a permissible amendment.

[2] Counterclaimants have not attached either the Bylaws or the July 2021 Agreement to the Counterclaim. They are attached to this Motion.

**A.      Allegations Re: Labor Smart Bylaws.**

The Tuckers allege on November 7, 2022, Third-Party Defendants Holley, McBride and Pavlik "held a 'Special Meeting of the Board of Directors of Labor Smart, Inc.'" (Doc. 148, ¶ 62.) The Tuckers allege Labor Smart breached the Bylaws by taking certain actions, i.e., "an improper 'Special Meeting,' removing Tucker from his LTNC positions, and depriving Tucker from voting the 17 Series A Preferred Shares he owned to conduct LTNC business". (Doc. 148, ¶ 82.)

**B.      Allegations Re: July 2021 Agreement.**

The Tuckers allege:

83. Additionally, LTNC is a party to the July 2021 agreement, signed by all of the Board of Directors of LTNC and promising Tucker 12 Preferred Shares (4 from each Holley, McBride, and Pavlik) and 750M common shares once LTNC received a "current" status from OTC markets.

84. Although LTNC has received "current' status on the OTC markets, and despite that the Tuckers made demand for the Preferred and Common Shares owed [sic] by Holley and McBride, LTNC has refused to honor the July 2021 Agreement.

**II.      Allegations in Counterclaim II: Aiding and Abetting Tortious Misconduct.**

The Tuckers allege:

10. The Tuckers are informed and believe that each of the individual Third-Party Defendants [Holley, McBride, Pavlik and Zarro] took actions as agent(s), employee(s), and/or representatives of LTNC and/or Takeover and/or Next Gen. In taking such actions, each individual was acting within the course and scope of the agency, employment, and/or representation with knowledge, acquiescence, and/or ratification by each and every other Defendant for the acts taken.

.             .             .

89. Through the actions described in this Complaint, LTNC knowingly and intentionally assisted, encouraged, participated, or cause the Third-Party Defendants [Takeover, Next Gen, Holley, McBride, Pavlik and Zarro] to: a) breach various fiduciary duties owed to Tucker; b) breach various agreements with Tucker, both written and implied; c) interfere with Tucker's voting and financial rights in Takeover and LTNC; d) deprive Tucker of payment(s) owed to him by Takeover; e) interfere with the Tuckers' shares/ability to sell shares of LTNC stock.

90. Moreover, LTNC has substantially participated in assisted Takeover in shutting down its business, reopening under Next Gen, in an effort to avoid liabilities owed by Takeover to Jason Tucker (i.e., assisting Takeover and committing a fraudulent transfer or avoidance).

There are no allegations in the Counterclaim or Third-Party Complaint of any alleged conduct by Labor Smart that was not also the conduct of either Holley, McBride or Pavlik. Stated differently, all of the conduct of Holley, McBride and Pavlik was as an "agent, employee or representative" of Labor Smart or Takeover.

### III.    Labor Smart Complied With Its Bylaws.

#### A.    Requirements For a Special Meeting of the Board of Directors in the Labor Smart Bylaws.[3]

The Labor Smart Bylaws contain specific requirements for Special Meetings of the Board of Directors. In Article III (Directors), the Bylaws state:

SECTION 2. **NUMBER AND QUALIFICATION OF DIRECTORS**. The authorized number of directors shall be three (3) until changed by amendment of the Articles or by a bylaw duly adopted by approval of the outstanding shares amending this Section 2.

.                .                .

---

[3]  A copy of the Bylaws is attached as **Exhibit "A"**.

SECTION 6. **SPECIAL MEETINGS**. Special meetings of the Board for any purposes may be called at any time by the Chairman of the Board, the President, or the Secretary or a majority of the directors. Special meetings of the Board shall be held upon at least four (4) days written notice or forty-eight (48) hours' notice given personally or by telephone, telegraph, telex or other similar means of communication. Any such notice shall be addressed or delivered to each director at such director's address as it is shown upon the records of the Corporation or as may have been given to the Corporation by the director for the purposes of notice.

SECTION 7. **QUORUM**. A majority of the authorized number of directors constitutes a quorum of the Board for the transaction of business, except as hereinafter provided. Every act or decision done or made by a majority of the directors present at a meeting duly held at which a quorum is present shall be regarded as the act of the Board, unless a greater number be required by law or by the Articles of Incorporation. A meeting at which a quorum is initially present may continue to transact business notwithstanding the withdrawal of directors, if any action taken is approved by at least a majority of the number of directors required as noted above to constitute a quorum for such meeting.

### B. Labor Smart Complied with the Bylaws Re: Notice and Voting at the November 7, 2022 Special Meeting of the Board of Directors.

On November 4, 2022, Jason Tucker was given "NOTICE OF SPECIAL MEETING OF THE BOARD OF DIRECTORS OF LABOR SMART INC."[4] Mr. Tucker's counsel, Ms. Manolio, confirmed receipt of the email and notice.[5] Despite having the Notice of the meeting, neither Mr. Tucker nor his attorney attended.

Both Board members attended: Holley and McBride.[6] The quorum requirement was satisfied. Both Mr. McBride and Mr. Holley approved all of the Resolutions adopted

---

[4] A copy of the email to all of the Board members, dated November 4, 2022 at 4:06 PM, with the Notice, is attached as **Exhibit "B"**.
[5] Ms. Manolio's November 4, 2022 email, acknowledging receipt of the Notice, as well as emails back and forth between attorneys Jennifer Reiter, Matthew Canini and Ms. Manolio are attached collectively as **Exhibit "C"**.
[6] Mr. Pavlik attended but was not a Board member.

at the Meeting.[7]

As set forth above, a majority of the authorized number of Directors constitutes a quorum for purposes of a Special Meeting. If a quorum is present, a decision by a majority of the Directors is "regarded as the act of the Board". There is no question that at the November 7, 2022 Special Meeting of the Board of Directors a quorum was present and a majority of those present voted in favor of the Resolutions. Labor Smart complied with the terms of its Bylaws for the November 7, 2022 Special Meeting of the Directors. There was no "improper 'Special Meeting,'". Tucker was properly removed from his LTNC positions. No one "deprived Tucker from voting". Mr. Tucker (and his counsel) voluntarily chose not to attend the meeting after acknowledging receipt of proper notice.[8]

The Tuckers have failed to state a claim that Labor Smart breached the Bylaws and the portion of the Counterclaim alleging a breach of the Bylaws should be dismissed.

### IV.     Labor Smart Is Not a Party to the July 2021 Agreement.[9]

The July 2021 Agreement states:

> This Agreement memorializes an Agreement made in Scottsdale, Arizona in July 2021 by and between Toby McBride, Michael Holley, Joseph "Joe" Pavlik, in their respective positions as shareholders of Labor Smart, Inc., a Georgia Corporation and/or Takeover Industries, Inc. a Nevada Corporation and/or in their individual capacities and Jason Tucker, an individual (collectively the "Parties").

The Agreement was signed by Holley, McBride, Pavlik and Tucker. Labor Smart

---

[7] A copy of the November 7, 2022 Resolution of the Board of Directors of Labor Smart Inc. is attached as **Exhibit "D"**.

[8] After Mr. Tucker and Ms. Manolio acknowledged receipt of the November 4, 2022 meeting (Exhibit "B"), Mr. Canini emailed a detailed response to Ms. Manolio, stating in part: "[W]e would like to give your clients an opportunity to appear at Mondays meeting and do not want them to be under the misimpression that their appearance is not required by virtue of some technical defect." (See Exhibit "C".) In response to both Mr. Canini and Ms. Reiter, Ms. Manolio wrote: "Mr. Tucker will not participate; I will not participate; and I am instructing Mr. Pavlik not to participate (though I cannot control if he chooses to do so)." (See Exhibit "C".)

[9] A copy of the July 2021 Agreement is attached as **Exhibit "E"**.

is **not** a party to the Agreement and **no one signed on behalf of Labor Smart**.[10]

In order to assert a claim for breach of contract, a party must allege the existence of a contract, breach and resulting damages. *First American Title Insurance Company v. Johnson Bank*, 239 Ariz. 348, 372 P. 3d 292 (Sup. Ct. 2016). Here, the breach of contract claim against Labor Smart fails as a matter of law because there is no contract between Labor Smart and the Tuckers.

The court should dismiss the breach of contract claim based on the alleged breach of the July 2021 Agreement because it fails to set forth a claim for which relief can be granted.

## V.    Labor Smart Is Not Liable for Aiding and Abetting its Directors.

The Tuckers allege Third-Party Defendants Holley, McBride and Pavlik are liable for Breach of Fiduciary Duties (Claim I), Breach of Contract (Claim II) and Breach of Covenant of Good Faith and Fair Dealing (Claim III). (Doc. 148, ¶'s 92 – 107.) Only Claim I is a tort claim. The Tuckers allege Takeover and Labor Smart aided and abetted the Third-Party Defendants with respect to all of these claims.

Pursuant to Arizona law, a claim that a person aided and abetted tortious misconduct has three elements: (1) the primary tortfeasor must commit a tort that causes injury to the plaintiff; (2) the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach. *Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 38 P. 3d 12 (Sup. Ct. 2002). The Tuckers allege Labor Smart aided and abetted its own Directors (Holley, McBride and Pavlik) in the commission of the alleged claims.

---

[10] The Tuckers separately allege the same claim for breach of contract against Third-Part Defendants Holley, McBride and Pavlik.  The Tuckers allege: "Holley, McBride and Pavlik each entered the July 2021 Agreement…" (Doc. 148, ¶'s 97-101.)

claim against' the insurer. [Citation omitted.] In this case, Plaintiff has not argued that there is any separate conduct. Review of the complaint reveals that Plaintiff's bad faith claim against AmTrust is predicated entirely on the conduct of Greer…. Because that same conduct is the basis for Plaintiff's aiding and abetting claim against Greer, Plaintiff has failed to state a claim for aiding and abetting.

*Id.*, \*3. See also, *Aguado v. XL Insurance America*, --- F. Supp. 3d ---, \*5 (D. Ariz. 2024), which held as follows:

Because the complaint alleges no action 'taken by [Intercare] that is separate and apart from the facts giving rise to the claim against [XL Insurance], Plaintiff has failed to state a claim for aiding and abetting against [Intercare].'

In *Swift v. Wesco Insurance Company*, 2018 WL 11323085, \*2 (D. Ariz.), the issue was "whether Plaintiff's aiding and abetting claim is viable when it arises from the same actions upon which the principal tort is based." The court granted a motion to dismiss because the plaintiff alleged the same actions gave rise to both the bad faith claim and the aiding and abetting claim.. See also, *Young v. Liberty Mut. Group, Inc*., 2013 WL 840618 (D. Ariz.).

In order for Mr. Dumas and Liberty Mutual to have committed 'tortious *acts* in concert,' there must be some factual allegation showing a separate tortious act was committed by Mr. Dumas. Because the Complaint alleges no such facts, Plaintiff has failed to state a claim against Mr. Dumas.

To state a claim for aiding and abetting tortious conduct, "[t]here must be some distinction between the primary tort and the aiding and abetting conduct." *Counts v. Technology Insurance Company Inc*., 2019 WL 13195132, \*2 (D. Ariz.). "Numerous cases in this District reinforce the determination that in order for Plaintiff's aiding and abetting claim against Defendants S&C and Kerner to survive, she must allege some action taken by these defendants separate and apart from the facts giving rise to the claim

- 8 -

against ALIC." *Centeno v. American Liberty Insurance Company*, 2019 WL 568926 (D. Ariz.).

Here, the Tuckers do not allege any conduct by Labor Smart beyond that which is alleged against Third Party Defendants Holley, McBride and Pavlik. Therefore, Count II must be dismissed.

**Rule 13(a)(1) Motion**

Rule 13(a)(1), Federal Rules of Civil Procedure, states: "A pleading *must* state as a counterclaim any claim that-at the time of its service-the pleader has against an opposing party if the claim: **(A)** arises out of the transaction or occurrence that is the subject matter of the opposing party's claim;"

**VI**.     **Factual and Procedural Background.**

The Tuckers' counsel, Ms. Manolio, has been involved in this case from its original filing date, when she filed the Complaint against Holley on behalf of then Plaintiff Takeover Industries, Inc. (Doc. 1.) On ***May 20, 2022***, the Tuckers were served with the Labor Smart Third-Party Complaint. (Doc. 38.) On ***August 15, 2022***, the Tuckers filed their Answer to the Third-Party Complaint. (Doc. 58.) No Counterclaim was alleged. Now, more than two years after service of the Labor Smart Complaint and almost two years after the Tuckers filed their Answer to the Labor Smart Complaint, the Tuckers are attempting to assert a Counterclaim against Labor Smart.[11]

Virtually all the allegations in the Counterclaim and Third-Party Complaint are identical to the allegations made in the original Complaint filed by Takeover (through Ms. Manolio) against Holley. For example, compare Counterclaim and Third-Party Complaint (Doc. 148), ¶'s 2, 3, 4, 5, 6, 7, 8, 10, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 34, 35, 36, 37, 38, 39, 40, 47, 48, 49 and 50, to the Complaint (Doc. 1), ¶'s 4, 5, 8,

---

[11] The Tuckers are also seeking to add Third-Party claims against Takeover, Next Gen Beverages, LLC, Holley, McBride, Pavlik and Zarro.

9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 25, 26, 27, 28, 29, 30, 31, 33, 34, 36, 37, 38 and 39.[12]   The Tuckers waited more than two years to assert the Counterclaim and Third-Party Complaint, contrary to the requirements of Rule 13.

On May 1, 2023, this court entered an Order (Doc. 129) denying the Motion to Realign Parties and Amend the Third-Party Complaint because it found Takeover failed to meet the threshold requirement of timeliness pursuant to Rule 24(a)(2). It is respectfully urged that the timeliness standard applies equally to Rule 13(a), which requires that a party ***must*** state as a counterclaim any claim that, at the time of its service, the pleader has against an opposing party.

As is evident from the allegations in the original Complaint and the recently filed Counterclaim and Third-Party Complaint, the factual allegations against Labor Smart (and Takeover) were known to the Tuckers as early as March 8, 2022, when the original Complaint was filed. Mr. Tucker is the individual who retained Ms. Manolio to represent Takeover. The facts were also well known to the Tuckers when they filed their Answer on August 15, 2022. The Tuckers have not satisfied the Rule 13(a) requirement because, at the time of service of the Labor Smart Complaint (May 20, 2022), they had knowledge of the allegations in support of the Counterclaim but failed to assert the Counterclaim. Rule 13(a) requires that: "A pleading ***must*** state as a counterclaim any claim that-at the time of its service-the pleader has against an opposing party if the claim: **(A)** arises out of the transaction or occurrence that is the subject matter of the opposing party's claim;"

## VI.   Conclusion.

For all the foregoing reasons, the court should dismiss the Counterclaim pursuant to Rule 12(b)(6) because it fails to set forth a claim upon which relief can be granted, and

---

[12] In the original Complaint, Ms. Manolio alleged Takeover was damaged by the alleged conduct of Holley.  Now, more than two years later, Ms. Manolio alleges the Tuckers are the party damaged by virtually the same alleged conduct.

because it is not timely pursuant to Rule 13(a)(1).

Respectively submitted this 30th day of July, 2024

**PAUL M. LEVINE, P.C.**

By:    /s/ *Paul M. Levine*
Paul M. Levine
8502 E. Via de Ventura, Suite 230
Scottsdale, Arizona 85258
*Attorneys for Labor Smart, Inc.*

**ELECTRONICALLY filed**
this 30th day of July, 2024

/s /Libby S. Dwyer

# EXHIBIT A

**BYLAWS OF**

Labor Smart Inc

A Nevada Corporation

## ARTICLE I
## OFFICES

SECTION 1. **PRINCIPAL EXECUTIVE OFFICE**. The principal office of the Corporation is hereby fixed in the State of Nevada or at such other location as may be determined from time to time by the board of directors of the Corporation.

SECTION 2. **OTHER OFFICES**. Branch or subordinate offices may be established by the Board of Directors at such other places as may be desirable.

## ARTICLE II
## SHAREHOLDERS

SECTION 1. **PLACE OF MEETING**. Meetings of shareholders shall be held either at the principal executive office of the corporation or at any other location within or without the State of Nevada which may be designated by written consent of all persons entitled to vote thereat.

SECTION 2. **ANNUAL MEETINGS**. The annual meeting of shareholders shall be held on such day and at such time as may be fixed by the Board; provided, however, that should said day fall upon a Saturday, Sunday, or legal holiday observed by the Corporation at its principal executive office, then any such meeting of shareholders shall be held at the same time and place on the next day thereafter ensuing which is a full business day. At such meetings, directors shall be elected by plurality vote and any other proper business may be transacted.

SECTION 3. **SPECIAL MEETINGS.** Special meetings of the shareholders may be called for any purpose or purposes permitted under Chapter 78 of Nevada Revised Statutes at any time by the Board, the Chairman of the Board, the President, or by the shareholders entitled to cast not less than twenty-five percent (25%) of the votes at such meeting. Upon request in writing to the Chairman of the Board, the President, any Vice-President or the Secretary, by any person or persons entitled to call a special meeting of shareholders, the Secretary shall cause notice to be given to the shareholders entitled to vote, that a special meeting will be held not less than thirty-five (35) nor more than sixty (60) days after the date of the notice.

SECTION 4. **NOTICE OF ANNUAL OR SPECIAL MEETING**. Written notice of each annual meeting of shareholders shall be given not less than ten (10) nor more than sixty (60) days before the date of the meeting to each shareholder entitled to vote thereat. Such notice shall state the place, date and hour of the meeting and
(i) in the case of a special meeting the general nature of the business to be transacted, or (ii) in the case of the annual meeting, those matters which the Board, at the time of the mailing of the

notice, intends to present for action by the shareholders, but, any proper matter may be presented at the meeting for such action. The notice of any meeting at which directors are to be elected shall include the names of the nominees intended, at the time of the notice, to be presented by management for election. Notice of a shareholders' meeting shall be given either personally or by mail or, addressed to the shareholder at the address of such shareholder appearing on the books of the corporation or if no such address appears or is given, by publication at least once in a newspaper of general circulation in Clark County, Nevada. An affidavit of mailing of any notice, executed by the Secretary, shall be prima facie evidence of the giving of the notice.

SECTION 5. **QUORUM**. A majority of the shares entitled to vote, represented in person or by proxy, shall constitute a quorum at any meeting of shareholders. If a quorum is present, the affirmative vote of the majority of

shareholders represented and voting at the meeting on any matter shall be the act of the shareholders unless specifically required otherwise in the Charter or Articles of Incorporation. The shareholders present at a duly called or held meeting at which a quorum is present may continue to do business until adjournment, notwithstanding withdrawal of enough shareholders to leave less than a quorum, if any action taken (other than adjournment) is approved by at least a majority of the number of shares required as noted above to constitute a quorum. Notwithstanding the foregoing, (1) the sale, transfer and other disposition of substantially all of the corporation's properties and (2) a merger or consolidation of the corporation shall require the approval by an affirmative vote of not less than two-thirds (2/3) of the corporation's issued and outstanding shares.

SECTION 6. **ADJOURNED MEETING AND NOTICE THEREOF**. Any shareholders meeting, whether or not a quorum is present, may be adjourned from time to time. In the absence of a quorum (except as provided in Section 5 of this Article), no other business may be transacted at such meeting.

SECTION 7. **VOTING.** The shareholders entitled to notice of any meeting or to vote at such meeting shall be only persons in whose name shares stand on the stock records of the corporation on the record date determined in accordance with Section 8 of this Article.

SECTION 8. **RECORD DATE.** The Board may fix in advance, a record date for the determination of the shareholders entitled to notice of a meeting or to vote or entitled to receive payment of any dividend or other distribution, or any allotment of rights, or to exercise rights in respect to any other lawful action. The record date so fixed shall be not more than sixty (60) nor less than ten (10) days prior to the date of the meeting nor more than sixty (60) days prior to any other action. When a record date is so fixed, only shareholders of record on that date are entitled to notice of and to vote at the meeting or to receive the dividend, distribution, or allotment of rights, or to exercise of the rights, as the case may be, notwithstanding any transfer of shares on the books of the corporation after the record date. A determination of shareholders of record entitled to notice of or to vote at a meeting of shareholders shall apply to any adjournment of the

meeting unless the Board fixes a new record date for the meeting. The Board shall fix a new record date if the meeting is adjourned for more than forty-five (45) days.

If no record date is fixed by the Board, the record date for determining shareholders entitled to notice of or to vote at a meeting of shareholders shall be the close of business on the business day next preceding the day on which notice is given or, if notice is waived, at the close of business on the business day next preceding the day on which notice is given. The record date for determining shareholders for any purpose other than as set in this Section 8 or Section 10 of this Article shall be at the close of the day on which the Board adopts the resolution relating thereto, or the sixtieth day prior to the date of such other action, whichever is later.

SECTION 9. **CONSENT OF ABSENTEES**. The transactions of any meeting of shareholders, however called and noticed, and wherever held, are as valid as though had at a meeting duly held after regular call and notice, if a quorum is present either in person or by proxy, and if, either before or after the meeting, each of the persons entitled to vote not present in person or by proxy, signs a written waiver of notice, or a consent to the holding of the meeting or an approval of the minutes thereof. All such waivers, consents or approvals shall be filed with the corporate records or made a part of the minutes of the meeting.

SECTION 10. **ACTION WITHOUT MEETING**. Any action which, under any provision of law, may be taken at any annual or special meeting of shareholders, may be taken without a meeting and without prior notice if a consent in writing, setting forth the actions to be taken, shall be signed by the holders of outstanding shares having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted. Unless a record date for voting purposes be fixed as provided in Section 8 of this Article, the record date for determining shareholders entitled to give consent pursuant to this Section 10, when no prior action by the Board has been taken, shall be the day on which the first written-consent is given.

SECTION 11. **PROXIES.** Every person entitled to vote shares has the right to do so either in person or by one or more persons authorized by a written proxy executed by such shareholder and filed with the Secretary not less than five (5) days prior to the meeting.

SECTION 12. **CONDUCT OF MEETING**. The Chief Executive Officer shall preside as Chairman at all meetings of the shareholders, unless another Chairman is selected. The Chairman shall conduct each such meeting in a businesslike and fair manner, but shall not be obligated to follow any technical, formal or parliamentary rules or principles of procedure. The Chairman's ruling on procedural matters shall be conclusive and binding on all shareholders, unless at the time of ruling a request for a vote is made by the shareholders entitled to vote and represented in person or by proxy at the meeting, in which case the decision of a majority of such shares shall be conclusive and binding on all shareholders without limiting the generality of the foregoing, the Chairman SHALL have all the powers usually vested in the chairman of a meeting of shareholders.

**ARTICLE III**

# DIRECTORS

SECTION 1. **POWERS**. Subject to limitation of the Articles of Incorporation, of these bylaws, and of actions required to be approved by the shareholders, the business and affairs of the corporation shall be managed and all corporate powers shall be exercised by or under the direction of the Board. The Board may, as permitted by law, delegate the management of the day-to-day operation of the business of the corporation to a management company or other persons or officers of the corporation provided that the business and affairs of the corporation shall be managed and all corporate powers shall be exercised under the ultimate direction of the Board. Without prejudice to such general powers, it is hereby expressly declared that the Board shall have the following powers:

(a) To select and remove all of the officers, agents and employees of the corporation, prescribe the powers and duties for them as may not be inconsistent with law, or with the Articles of Incorporation or by these bylaws, fix their compensation, and require from them, if necessary, security for faithful service.

(b) To conduct, manage, and control the affairs and business of the corporation and to make such rules and regulations therefore not inconsistent with law, with the Articles of Incorporation or these bylaws, as they may deem best.

(c) To adopt, make and use a corporate seal, and to prescribe the forms of certificates of stock and to alter the form of such seal and such of certificates from time to time in their judgment they deem best.

(d) To authorize the issuance of shares of stock of the corporation from time to time, upon such terms and for such consideration as may be lawful.

(e) To borrow money and incur indebtedness for the purposes of the corporation, and to cause to be executed and delivered therefore, in the corporate name, promissory notes, bonds, debentures, deeds of trust, mortgages, pledges, hypothecation or other evidence of debt and securities therefore
.

SECTION 2. **NUMBER AND QUALIFICATION OF DIRECTORS**. The authorized number of directors shall be three (3) until changed by amendment of the Articles or by a bylaw duly adopted by approval of the outstanding shares amending this Section 2.

SECTION 3. **ELECTION AND TERM OF OFFICE**. The directors shall be elected at each annual meeting of shareholders but if any such annual meeting is not held or the directors are not elected the shareholders may elect a director or directors at any time to fill any vacancy or vacancies. Any such election by written consent requires the consent of a majority of the outstanding shares entitled to vote. If the Board accepts the resignation of a director tendered to take effect at a future time, the shareholders shall have power to elect a successor to take office when the resignation is to become effective.
No reduction of the authorized number of directors shall have the effect of removing any director prior to the expiration of the director's term of office.

SECTION 4. **PLACE OF MEETING**. Any meeting of the Board shall be held at any place within or without the State of Nevada which has been designated from time to time by the Board. In the absence of such designation meetings shall be held at the principal executive office of the corporation.

SECTION 5. **REGULAR MEETINGS**. Immediately following each annual meeting of shareholders the Board shall hold a regular meeting for the purpose of organization, selection of a Chairman of the Board, election of officers, and the transaction of other business. Call and notice of such regular meeting is hereby dispensed with.

SECTION 6. **SPECIAL MEETINGS**. Special meetings of the Board for any purposes may be called at any time by the Chairman of the Board, the President, or the Secretary or a majority of the directors. Special meetings of the Board shall be held upon at least four (4) days written notice or forty-eight (48) hours' notice given personally or by telephone, telegraph, telex or other similar means of communication. Any such notice shall be addressed or delivered to each director at such director's address as it is shown upon the records of the Corporation or as may have been given to the Corporation by the director for the purposes of notice.

SECTION 7. **QUORUM.** A majority of the authorized number of directors constitutes a quorum of the Board for the transaction of business, except to adjourn as hereinafter provided. Every act or decision done or made by a majority of the directors present at a meeting duly held at which a quorum is present shall be regarded as the act of the Board, unless a greater number be required by law or by the Articles of Incorporation. A meeting at which a quorum is initially present may continue to transact business notwithstanding the withdrawal of directors, if any action taken is approved by at least a majority of the number of directors required as noted above to constitute a quorum for such meeting.

SECTION 8. **PARTICIPATION IN MEETINGS BY CONFERENCE TELEPHONE.** Members of the Board may participate in a meeting through use of conference telephone or similar communications equipment, so long as all members participating in such meeting can hear one another.

SECTION 9. **WAIVER OF NOTICE**. The transactions of any meeting of the Board, however called and noticed or wherever held, are as valid as though had at a meeting duly held after regular call and notice if a quorum be present and if, either before or after the meeting, each of the directors not present signs a written waiver of notice, a consent to holding such meeting or an approval of the minutes thereof. All such waivers, consents or approvals shall be filed with the corporate records or made part of the minutes of the meeting.

SECTION 10. **ADJOURNMENT.** A majority of the directors present, whether or not a quorum is present, may adjourn any directors' meeting to another time and place. Notice of the time and place of holding an adjourned meeting need not be given to absent directors if the time and place be fixed at the meeting being adjourned. If the meeting is adjourned for more than forty-eight (48) hours, notice of any adjournment to another time or place shall be given prior to the time of the adjourned meeting to the directors who were not present at the time of adjournment.

SECTION 11. **FEES AND COMPENSATION.** Directors and members of committees may receive such compensation, if any, for their services, and such reimbursement for expenses, as may be fixed or determined by the Board.

SECTION 12. **ACTION WITHOUT MEETING**. Any action required or permitted to be taken by the Board may be taken without a meeting if all members of the Board shall individually or collectively consent in writing to such action. Such consent or consents shall have the same effect as a unanimous vote of the Board and shall be filed with the minutes of the proceedings of the Board.

SECTION 13. **COMMITTEES.** The board may appoint one or more committees, each consisting of two or more directors, and delegate to such committees any of the authority of the Board except with respect to:
(a) The approval of any action which requires shareholders' approval or approval of the outstanding shares;
(b) The filling of vacancies on the Board or on any committees;
(c) The fixing of compensation of the directors for serving on the Board or on any committee;
(d) The amendment or repeal of bylaws or the adoption of new bylaws;
(e) The amendment or repeal of any resolution of the Board which by its express terms is not so amendable or repealable by a committee of the board;
(f) A distribution to the shareholders of the corporation;
(g) The appointment of other committees of the Board or the members thereof.
Any such committee must be appointed by resolution adopted by a majority of the authorized number of directors and may be designated an Executive Committee or by such other name as the Board shall specify. The Board shall have the power to prescribe the manner in which proceedings of any such committee shall be conducted. Unless the Board or such committee shall otherwise provide, the regular or special meetings and other actions of any such

---

committee shall be governed by the provisions of this Article applicable to meetings and actions of the Board. Minutes shall be kept of each meeting of each committee.

## ARTICLE IV
## OFFICERS

SECTION 1. **OFFICERS.** The officers of the corporation shall be the Chief Executive Officer, a president, a secretary and a Chief Financial Officer/ treasurer. The corporation may also have, at the discretion of the Board, one or more vice-presidents, one or more assistant vice presidents, one or more assistant secretaries, one or more assistant treasurers and such other officers as may be elected or appointed in accordance with the provisions of Section 3 of this Article.

SECTION 2. **ELECTION.** The officers of the corporation, except such officers as may be elected or appointed in accordance with the provisions of Section 3 or Section 5 of this Article, shall be chosen annually by, and shall serve at the pleasure of, the Board, and shall hold their

respective offices until their resignation, removal or other disqualification from service, or until their respective successors shall be elected.

SECTION 3. **SUBORDINATE OFFICERS.** The Board may elect, and may empower the Chief Executive Officer to appoint, such other officers as the business of the corporation may require, each of whom shall hold office for such period, have such authority, and perform such duties as are provided in these bylaws or as the Board, or the Chief Executive Officer may from time to time direct.

SECTION 4. **REMOVAL AND RESIGNATION.** Any officer may be removed, either with or without cause, by the Board of Directors at any time, or, except in the case of an officer chosen by the Board, by any officer upon whom such power of removal may be conferred by the Board. Any officer may resign at any time by giving written notice to the corporation. Any such resignation shall take effect at the date of the receipt of such notice or at any later time specified therein. The acceptance of such resignation shall be necessary to make it effective.

SECTION 5. **VACANCIES.** A vacancy of any office because of death, resignation, removal, disqualification, or any other cause shall be filled in the manner prescribed by these bylaws for the regular election or appointment to such office.

SECTION 6. **CEO.** The CEO shall be the chief executive officer and general manager of the corporation. The CEO shall preside at all meetings of the shareholders and, in the absence of the Chairman of the Board at all meetings of "the Board. The CEO has the general powers and duties of management usually vested in the chief executive officer and the general manager of a corporation and such other powers and duties as may be prescribed by the Board.

SECTION 7. **PRESIDENT.** In the absence or disability of the CEO, the President, shall perform all the duties of the CEO, and when so acting shall have all the powers of, and be subject to all the restrictions upon the CEO. The President shall have such other powers and perform such other duties as from time to time may be prescribed for them respectively by the CEO or the Board
.

SECTION 8. **SECRETARY.** The Secretary shall keep or cause to be kept, at the principal executive offices and such other place as the Board may order, a book of minutes of all meetings of shareholders, the Board, and its committees, with the time and place of holding, whether regular or special, and, if special, how authorized, the notice thereof given, the names of those present at Board and committee meetings, the number of shares present or represented at shareholders' meetings, and proceedings thereof. The Secretary shall keep, or cause to be kept, a copy of the bylaws of the corporation at the principal executive office of the corporation. The Secretary shall keep, or cause to be kept, at the principal executive office, a share register, or a duplicate share register, showing the names of the shareholders and their addresses, the number and classes of shares held by each, the number and date of certificates issued for the same, and the number and date of cancellation of every certificate surrendered for cancellation.
The Secretary shall give, or cause to be given, notice of all the meetings of the shareholders and of the Board and any committees thereof required by these bylaws or by law to be given, shall

keep the seal of the corporation in safe custody, and shall have such other powers and perform such other duties as may be prescribed by the Board.

SECTION 9. **TREASURER.** The Treasurer is the chief financial officer (CFO of the corporation and shall keep and maintain, or cause to be kept and maintained, adequate and correct accounts of the properties and financial-transactions of the corporation, and shall send or cause to be sent to the shareholders of the corporation such financial statements and reports as are by law or these bylaws required to be sent to them.
The Treasurer shall deposit all monies and other valuables in the name and to the credit of the corporation with such depositories as may be designated by the Board. The Treasurer shall disburse the funds of the corporation as may be ordered by the Board, shall render to the CEO and directors, whenever they request it, an account of all transactions as Treasurer and of the financial conditions of the corporation, and shall have such other powers and perform such other duties as may be prescribed by the Board.

SECTION 10. **AGENTS.** The CEO, President, the Secretary or Treasurer may appoint agents with power and authority, as defined or limited in their appointment, for and on behalf of the corporation to execute and deliver, and affix the seal of the corporation thereto, to bonds, undertakings, recognizance, consents of surety or other written obligations in the nature thereof and any said officers may remove any such agent and revoke the power and authority given to him.

## ARTICLE V
## OTHER PROVISIONS

SECTION 1. **DIVIDENDS.** The Board may from time to time declare, and the corporation may pay, dividends on its outstanding shares in the manner and on the terms and conditions provided by law, subject to any contractual restrictions on which the corporation is then subject.

SECTION 2. **INSPECTION OF BY-LAWS.** The Corporation shall keep in its Principal executive Office the original or a copy of these bylaws as amended to date which shall be open to inspection to shareholders at all reasonable times during office hours. If the Principal Executive Office of the corporation is outside the State of Nevada and the Corporation has no principal business office in such State, it shall upon the written notice of any shareholder furnish to such shareholder a copy of these bylaws as amended to date.

SECTION 3. **REPRESENTATION OF SHARES OF OTHER CORPORATIONS.** The CEO or any other officer or officers authorized by the Board or the CEO are each authorized to vote, represent, and exercise on behalf of the Corporation all rights incident to any and all shares of any other corporation or corporations standing in the name of the Corporation. The authority herein granted may be exercised either by any such officer in person or by any other person authorized to do so by proxy or power of attorney duly executed by said officer.

## ARTICLE VI
## INDEMNIFICATION

SECTION 1. **INDEMNIFICATION IN ACTIONS BY THIRD PARTIES.** Subject to the limitations of law, if any, the corporation shall have the Power to indemnify any director, officer, employee and agent of the corporation who was or is a party or is threatened to be made a party to any proceeding (other than an action by or in the right of to procure a judgment in its favor) against expenses, judgments, fines, settlements and other amounts actually and reasonably incurred in connection with such proceeding, provided that the Board shall find that the director, officer, employee or agent acted in good faith and in a manner which such person reasonably believed in the best interests of the corporation and, in the case of criminal proceedings, had no reasonable cause to believe the conduct was unlawful. The termination of any proceeding by judgment, order, settlement, conviction or upon a plea of nolo contendere shall not, of itself create a presumption that such person did not act in good faith and in a manner which the person reasonably believed to be in the best interests of the corporation or that such person had reasonable cause to believe such person's conduct was unlawful.

SECTION 2. **INDEMNIFICATION IN ACTIONS BY OR ON BEHALF OF THE CORPORATION.** Subject to the limitations of law, if any, the Corporation shall have the power to indemnify any director, officer, employee and agent of the corporation who was or is threatened to be made a party to any threatened, pending or completed legal action by or in the right of the Corporation to procure a judgment in its favor, against expenses actually and

---

reasonable incurred by such person in connection with the defense or settlement, if the Board of Directors determine that such person acted in good faith, in a manner such person believed to be in the best interests of the Corporation and with such care, including reasonable inquiry, as an ordinarily, prudent person would use under similar circumstances.

SECTION 3. **ADVANCE OF EXPENSES.** Expenses incurred in defending any proceeding may be advanced by the Corporation prior to the final disposition of such proceeding upon receipt of an undertaking by or on behalf of the officer, director, employee or agent to repay such amount unless it shall be determined ultimately that the officer or director is entitled to be indemnified as authorized by this Article.

SECTION 4. **INSURANCE.** The corporation shall have power to purchase and maintain insurance on behalf of any officer, director, employee or agent of the Corporation against any liability asserted against or incurred by the officer, director, employee or agent in such capacity or arising out of such person's status as such whether or not the corporation would have the power to indemnify the officer, or director, employee or agent against such liability under the provisions of this Article.

## ARTICLE VII
## AMENDMENTS

These bylaws may be altered, amended or repealed either by approval of a majority of the outstanding shares entitled to vote or by the approval of the Board; provided however that after

the issuance of shares, a bylaw specifying or changing a fixed number of directors or the maximum or minimum number or changing from a fixed to a flexible Board or vice versa may only be adopted by the approval by an affirmative vote of not less than two-thirds of the corporation's issued and outstanding shares entitled to vote.

EXHIBIT  B

## Paul Levine

| | |
|---|---|
| **From:** | Jennifer Reiter <jenreiter@reiterlawaz.com> |
| **Sent:** | Friday, July 19, 2024 10:22 AM |
| **To:** | Tom Zarro; Mike Holley; Paul Levine |
| **Subject:** | FW: Notice of Board Call |
| **Attachments:** | Notice of Meeeting of LTNC.pdf |

Jennifer A. Reiter
**Reiter Law, PLC**
4500 N. 32nd St. Suite 201H
Phoenix, Arizona 85018
602-840-3567
jenreiter@reiterlawaz.com
www.reiterlawaz.com

CAUTION:   THE INFORMATION CONTAINED IN THIS E-MAIL COMMUNICATION MAY BE CONFIDENTIAL AND IS INTENDED SOLELY FOR THE USE OF THE RECIPIENT NAME(S) ABOVE.  IF YOU ARE NOT THE INTENDED RECIPIENT, ANY READING, DISSEMINATION, DISTRIBUTION, COPYING OR OTHER USE OF THIS COMMUNICATION FOR ANY PURPOSE IS STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY THE SENDER IMMEDIATELY.  THANK YOU.

**From:** Toby McBride <toby@takeoverind.com>
**Sent:** Friday, November 4, 2022 4:07 PM
**To:** Jennifer Reiter <jenreiter@reiterlawaz.com>
**Subject:** Fwd: Notice of Board Call

Toby Mc Bride
Founder- CEO  Takeover Industries
209.933.1751
Www.takeoverind.com
Www.nxtlvlusa.com

**From:** Toby McBride <toby@takeoverind.com>
**Sent:** Friday, November 4, 2022 4:06 PM
**To:** Jason Tucker <jason@takeoverind.com>; Joe Pavlik <joe@takeoverind.com>; Mike Holley <mike@takeoverind.com>; mikeholley@cox.net <mikeholley@cox.net>; Jason Tucker <jason@battleshipstance.com>
**Subject:** Notice of Board Call

Toby Mc Bride
Founder- CEO  Takeover Industries
209.933.1751

Www.takeoverind.com
Www.nxtlvlusa.com

## NOTICE OF SPECIAL MEETING
## OF THE BOARD OF DIRECTORS OF LABOR SMART INC.

**NOTICE IS HEREBY GIVEN,** pursuant to Section 6 of the Bylaws of Labor Smart Inc. ("LTNC"), Wyoming Business Corporation Act § 17-16-822 and Nevada Private Corporation Law §§ 78.315 and 78.325, as applicable, to:

Toby McBride, director of LTNC, by e-mail.
Michael Holley, director of LTNC, by e-mail
Jason Tucker, director of LTNC, by e-mail
Joseph Pavlik, shareholder of LTNC and former director of LTNC, by e-mail

By motion of Toby McBride and Michael Holley a special meeting of the Board of Directors will be held by conference call at:
Date of Meeting: November 7, 2022
Time of Meeting: 9:00 a.m. MST

Participants should call the following number at the designated time:
**Dial-in number (978) 990-5201**
**Access code 6092998**

Given the current ongoing litigation as between the Board of Directors, personal counsel for the invitees will be appearing at the Special Meeting and all invitees are to have their personal counsel attend the Special Meeting.

The following topics shall be raised and voted upon at the Special Meeting:

1. Prior actions of the Board of Directors and Officers of LTNC and its wholly owned subsidiary Takeover Industries, Inc. ("Takeover") from August 2021 to the present.
2. The pending litigation commenced by Takeover in the United States District Court of the District of Arizona.
3. LTNC's plan to spin-off Takeover.
4. Takeover's financial records, status, and corporate and financial controls.
5. Whether the current Board of Directors of Takeover shall be retained.
6. Possible nomination and election of a new board of directors of Takeover.
7. Takeover's material contracts.
8. The retention of counsel by LTNC.

This Notice has been delivered by Toby McBride, director of LTNC, director of Takeover, and Chief Executive Officer of Takeover, by the method described above on this 4th day of November 2022 at or before 4:15 p.m. MST.

9295508

EXHIBIT  C

**Paul Levine**

| | |
|---|---|
| **From:** | Jennifer Reiter <jenreiter@reiterlawaz.com> |
| **Sent:** | Friday, July 19, 2024 10:20 AM |
| **To:** | Paul Levine; Tom Zarro; Mike Holley |
| **Subject:** | FW: Board Meeting Notice |

**Scroll down to the bottom**

Jennifer A. Reiter
**Reiter Law, PLC**
4500 N. 32nd St. Suite 201H
Phoenix, Arizona 85018
602-840-3567
jenreiter@reiterlawaz.com
www.reiterlawaz.com

CAUTION:   THE INFORMATION CONTAINED IN THIS E-MAIL COMMUNICATION MAY BE CONFIDENTIAL AND IS INTENDED SOLELY
FOR THE USE OF THE RECIPIENT NAME(S) ABOVE.  IF YOU ARE NOT THE INTENDED RECIPIENT, ANY READING, DISSEMINATION,
DISTRIBUTION, COPYING OR OTHER USE OF THIS COMMUNICATION FOR ANY PURPOSE IS STRICTLY PROHIBITED.  IF YOU HAVE
RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY THE SENDER IMMEDIATELY.  THANK YOU.

**From:** Matthew Canini <mcanini@sillscummis.com>
**Sent:** Monday, November 7, 2022 9:19 AM
**To:** Veronica L. Manolio <vmanolio@mf-firm.com>; Jennifer Reiter <jenreiter@reiterlawaz.com>
**Cc:** Robert McKirgan <rmckirgan@pswmlaw.com>
**Subject:** RE: Board Meeting Notice

Veronica:

You have no legal basis to stop a vote pending a Court order, and your panic indicates you understand such a vote would
be valid.

You client has apparently unilaterally put the company into default.  Please circulate these documents immediately.

Regards,

Matthew P. Canini
Of Counsel



Sills Cummis & Gross P.C.

website | bio | vCard | newsroom | email

101 Park Avenue, 28th Floor, New York, NY 10178
p (212) 500-1582 | f (212) 643-6500   map

**From:** Veronica L. Manolio <vmanolio@mf-firm.com>
**Sent:** Monday, November 7, 2022 10:58 AM
**To:** Matthew Canini <mcanini@sillscummis.com>; Jennifer Reiter <jenreiter@reiterlawaz.com>
**Cc:** Robert McKirgan <rmckirgan@pswmlaw.com>
**Subject:** RE: Board Meeting Notice

**\*\*\* External Email \*\*\***

Please read my latest email and include Mr. Deppoleto's counsel in your meeting.

Please understand, again, that no "votes" will be implemented without Court order.  We believe this is an improper move and will certainly need the Court to get involved.

*Veronica*

 **Manolio & Firestone**

8686 E. San Alberto Drive, Suite 200
Scottsdale, Arizona 85258
(480) 222-9100

**From:** Matthew Canini <mcanini@sillscummis.com>
**Sent:** Monday, November 7, 2022 8:55 AM
**To:** Veronica L. Manolio <vmanolio@mf-firm.com>; Jennifer Reiter <jenreiter@reiterlawaz.com>
**Cc:** Robert McKirgan <rmckirgan@pswmlaw.com>
**Subject:** RE: Board Meeting Notice

Veronica:

The meeting is proceeding, it is properly noticed and valid.  Your desire not engage in "email battle" notwithstanding, you have raised no non-conclusory assertion that the meeting is invalid.

Evidently your client Mr. Pavlik will be attending and you are choosing not to represent him with respect to the meeting despite the fact that notice indicates it will discuss a litigation in which he is a party.  I **STRONGLY** suggest consistent with his communication to you last night that you attend, in fact, as his attorney I do not see how you can refuse?

The meeting is convening in eight minutes. There were no plans to record it, there is now no time to set up recording and my understanding is that the parties are not consenting to a recording.

A record of the vote will be transmitted after, and we expect your client to comply.

Regards,

**Matthew P. Canini**
Of Counsel

 **Sills Cummis & Gross** P.C.

website | bio | vCard | newsroom | email

2

101 Park Avenue, 28th Floor, New York, NY 10178
p (212) 500-1582 | f (212) 643-6500  **map**

---

**From:** Veronica L. Manolio <vmanolio@mf-firm.com>
**Sent:** Monday, November 7, 2022 10:43 AM
**To:** Jennifer Reiter <jenreiter@reiterlawaz.com>; Matthew Canini <mcanini@sillscummis.com>
**Cc:** Robert McKirgan <rmckirgan@pswmlaw.com>
**Subject:** RE: Board Meeting Notice
**Importance:** High

## \*\*\* External Email \*\*\*

---

Counsel:

I will not waste time in an email battle.

If you choose to proceed with whatever "meeting" you think is appropriate, feel free.  It is not a proper meeting, and any votes will not be enacted without further court intervention.

Mr. Tucker will not participate; I will not participate; and, I am instructing Mr. Pavlik not to participate (though I cannot control if he chooses to do so).

**Please record the meeting** so there is a good record of the discussion and any alleged voting.


*Veronica*



8686 E. San Alberto Drive, Suite 200
Scottsdale, Arizona 85258
(480) 222-9100

---

**From:** Jennifer Reiter <jenreiter@reiterlawaz.com>
**Sent:** Sunday, November 6, 2022 7:38 PM
**To:** Matthew Canini <mcanini@sillscummis.com>; Veronica L. Manolio <vmanolio@mf-firm.com>
**Cc:** Robert McKirgan <rmckirgan@pswmlaw.com>
**Subject:** Re: Board Meeting Notice

Veronica,

I'll respond to your e-mail as well.

Regarding your comment of "improper notice issues," I looked at the notice requirements and it appears that notice was proper. Two days/48 hours' notice is sufficient, and this was more notice than that, sent by proper means to all persons required to be noticed. On the other hand, you/your client have, recently, held Special Meetings with far less notice than this and without compliance with other requirements for meeting notice.

Second, I concur with Matt Canini's analysis of the actions purportedly undertaken in December 2021 and the fact that legally, Mike Holley could **not** have been removed as a director of LTNC, and as such, he is still currently a director of LTNC. As you know, I have not been made aware of significant and material company information in connection with the lawsuit that was relevant to my representation of Toby. Toby, too, has been shut out of communications, and material information has been withheld from him by Jason Tucker, that Toby was entitled to receive, as CEO and Director of Takeover and a Director of Labor Smart. Only recently has new information come to light that has revealed the above, including wrongdoing by your client, Jason Tucker. Toby is acting in the best interests of Takeover, LTNC and its shareholders, as am I as his counsel.

Regarding your position that Toby cannot call a meeting or speak about the companies due to his "leave of absence," Toby is still a Director and can still take these actions. The "leave of absence" with its purported "gag rule" comes from minutes from a meeting which I was expressly forbidden to attend, at which Toby was coerced/threatened into signing the minutes after being given incorrect, incomplete information and/or misrepresentations, and with no consideration. I see no way that these minutes would be found to be a binding agreement requiring Toby to abstain from taking part in an important meeting being held in the best interests of Takeover, LTNC, and its shareholders. And, of course, the "leave" was from Takeover, not LTNC. In any event, Toby's can alter/revoke his agreed leave under these circumstances and especially because Jason Tucker has also not abided by the terms of it. Jason Tucker has called Toby several times about company matters during the "leave" period. (Finally, if there somehow was a claim by Tucker or the company against McBride for breach of his "leave" as a contract, there are no damages.)

Regarding your comment about paying counsel fees, this meeting has nothing to do with anything like that. Same as to the idea of getting early discovery outside of the litigation process. As the CEO and a Director, Toby is entitled to all relevant and material company information. Unfortunately, we have learned that a great deal of material information has been kept from Toby. This has nothing to do with the litigation. Further, neither the company nor Mr. Tucker **have ever stated any claims against Toby in the lawsuit**, and the pleadings are closed. Your comments are concerning in that they confirm that you/Mr. Tucker believe that there has been a basis to withhold material information from myself and Toby.

I'll talk to you at the meeting.

Jennifer

Jennifer A. Reiter
**Reiter Law, PLC**
4500 N. 32nd St. Suite 201H
Phoenix, Arizona 85018
602-840-3567
jenreiter@reiterlawaz.com
www.reiterlawaz.com

CAUTION:   THE INFORMATION CONTAINED IN THIS E-MAIL COMMUNICATION MAY BE CONFIDENTIAL AND IS INTENDED SOLELY FOR THE USE OF THE RECIPIENT NAME(S) ABOVE.  IF YOU ARE NOT THE INTENDED RECIPIENT, ANY READING, DISSEMINATION, DISTRIBUTION, COPYING OR OTHER USE OF THIS COMMUNICATION FOR ANY PURPOSE IS STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY THE SENDER IMMEDIATELY.  THANK YOU.

**From:** Matthew Canini <mcanini@sillscummis.com>
**Sent:** Sunday, November 6, 2022 4:31 PM
**To:** Veronica L. Manolio <vmanolio@mf-firm.com>
**Cc:** Robert McKirgan <rmckirgan@pswmlaw.com>; Jennifer Reiter <jenreiter@reiterlawaz.com>
**Subject:** RE: Board Meeting Notice


Veronica:

Your email does not require a response, particularly as all of these issues have been addressed before and numerous times.  Regardless, we would like to give your clients an opportunity to appear at Monday's meeting and do not want them to be under the misimpression that their appearance is not required by virtue of some technical defect.

First, regarding the notice, I see no notice issues.  Nevada law only requires reasonable notice, and Wyoming law requires two days' notice.  The Bylaws require two days' notice by telex or "other similar means." We don't use telex anymore as a society, but as both email and telex are essentially an electronic means of transmitting writing I think it is fair to say an email is an "other similar means."  The notice was sent to all board members, Toby, Mike and Jason and included the alleged board member Joseph Pavlik.  Therefore, the notice is sufficient and, in any event, your email indicates Jason received actual notice and knows of the meeting.  While you do not appear to write you email on behalf of Mr. Pavlik, I trust that as his counsel you have confirmed he received the notice.

Second, Mike is a board member of LTNC.
- On September 13, 2021 the shareholders filled LTNC's vacant board positions with Jason, Mike and Toby by exercise of the 51 series A preferred shares, and presumably their common.  Taking into account the enhanced voting rights of the Series A, the vote was 19,283,582,170 out of a total 29,282,150,656 available votes (66%).  Therefore, the Board of Directors of LTNC consists of Toby, Mike and Jason.
- Pursuant to N.R.S. 78.335 a director can, in most circumstances, only be removed by a two-thirds vote of the shareholders.
- Pursuant to Wyoming Stat. 17-16-808(d) a director may be removed by the shareholders only at a shareholder meeting called for that purpose.
- LTNC never called a shareholder meeting.
- On December 21, 2021, Toby, Jason and Joseph (**a non-board members**) held an alleged Board of Directors Meeting without notice to Mike to remove Mike as a Board member, **which cannot be done under the law.  Board members cannot remove other board members.**

- Even had Toby, Jason and Joseph voted all their shares at that meeting, they did not, it still would have only been 12,445,721,447 of the 29,282,150,656 available votes (42.54%), which is not enough to remove a director under either Nevada or Wyoming law by written consent.
- Therefore, Mike is a Board member of LTNC.

Third, I will let Jennifer speak as to whatever agreement you claim Toby entered into with Jason or Takeover. I have not seen it, but I fail to see how an agreement at the Takeover level would affect its parent company, particularly Board of Director activities because, as noted, only shareholders can remove board members and a leave of absence is not a resignation.

Fourth, there are indisputably adverse interest among the individual board members; however that does not alleviate their responsibilities to act as LTNC's Board or to manage the company. Toby and Mike seem to want to do that, Jason appears to want to use the lawsuit as pretext for a freeze out to benefit himself. The lawsuit does not give Jason the right not to conduct Board meetings and he has conducted several during the lead up to the lawsuit and its pendency. He cannot claim a meeting is improper because he disagrees only with this one, or it does not further his scheme. Nevertheless, in light of the adverse interests all counsel will attend the meeting.

Fifth, whatever the parties' discovery obligations are, those are separate from an officer's obligation to provide information to other officers and directors, or the company's obligation to provide information to its shareholders. The discovery process is not an excuse for Jason to breach his fiduciary duty by withholding information from other officers and directors.

Sixth, the notice does not mention legal fees, so I am not sure what prompted this. Even so, while we are on the topic, I have previously asked you to confirm whether Mr. Tucker would be taking advancement. My understanding is that he has been, and I would like you to produce evidence of the undertaking? See bylaws.

In terms of next steps for LTNC, they are as set forth in the notice. A meeting will be held on Monday at 9:00 a.m. I will speak with you then. In terms of next steps in the litigation the Court is well overdue to schedule a 16(f) conference, but by the same account we are well overdue to do our 26(f). I am available next Tuesday all day. I can circulate a dial in.

Finally, I note your email is just on behalf of Mr. Tucker. What of your other client Mr. Pavlik?

Talk to you Monday, and hopefully Tuesday.


Matthew P. Canini
Of Counsel
 **Sills Cummis & Gross** P.C.

6

website | bio | vCard | newsroom | email

101 Park Avenue, 28th Floor, New York, NY 10178
p (212) 500-1582 | f (212) 643-6500  map

**From:** Veronica L. Manolio <vmanolio@mf-firm.com>
**Sent:** Friday, November 4, 2022 8:32 PM
**To:** Matthew Canini <mcanini@sillscummis.com>; Jennifer Reiter <jenreiter@reiterlawaz.com>
**Cc:** Robert McKirgan <rmckirgan@pswmlaw.com>; Jason Tucker <jason@takeoverind.com>; 'Joe Pavlik'
<jpavlik@flexusinc.com>
**Subject:** Board Meeting Notice
**Importance:** High

## *** External Email ***

Counsel:

Mr. Tucker just received and forwarded me a "Notice of Meeting" sent by Toby McBride, attempting to conduct a LTNC Board of Directors Meeting on Monday morning at 9:00am. I am hopeful that neither of you saw this Notice and that it was done without your input or blessing.

Putting aside the improper notice issues, we all need to be on the same page here, or I need to know if court intervention is necessary.

1.  Michael Holley is not on the Board of Directors of LTNC, as he was removed by vote on December 21, 2022 and has been out of that Director position for nearly a year. This is part of the fight in ongoing litigation.
    Mr. Holley has neither an ability to make a "motion" for a Special Meeting nor an ability to participate in a Board of Directors meeting.

2.  Mr. McBride has been placed on a Leave of Absence and actually **agreed** to take that leave of absence while investigation was conducted. He is strictly prohibited from engaging in discussions or interactions regarding the business of Takeover <u>or its parent</u> (LTNC) while he remains on leave.

3.  Each of the gentlemen listed in the Notice are personally named Defendants in the lawsuit, and there are clearly adverse interests among them.

4.  We are in the initial pleading phase of litigation, yet this "Board Meeting" is being used to seek discovery of Takeover's financial records, status, and corporate and financial controls.

Messrs. Holley and McBride cannot force a meeting to discuss ongoing litigation and to attempt to get their personal attorneys' fees paid.

Please confirm for me that we (counsel) all understand this Board Meeting is not proper and will not go forward as noticed.  I am more than happy to discuss next steps with each of you (counsel), but we all need to be directing our clients that they cannot circumvent litigation protections and procedures.

*Veronica*

Veronica L. Manolio
*Attorney at Law*
MANOLIO & FIRESTONE, PLC
8686 E. San Alberto Drive, Suite 200
Scottsdale, Arizona 85258
(480) 222-9100
(480) 222-9106 - Fax
www.mf-firm.com

**NOTICE:**  The information contained in this e-mail message is attorney privileged and confidential information, intended only for the use of the individual or entity named above.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately by telephone at (480) 222-9100 or reply by e-mail and delete and/or discard the message.

Although this e-mail and any attachments are believed to be free of any virus or other defect that may affect any computer or computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus-free and no responsibility is accepted by MANOLIO & FIRESTONE, PLC for any loss or damage arising in any way from this communication.  Thank you.

NOTICE: The contents of this email and any attachments to it contain confidential and/or legally privileged information from the law firm of Sills Cummis & Gross P.C. This information is only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of the contained information is strictly prohibited and that the documents should be returned to this firm immediately. In this regard, if you have received this email in error, please notify us by email immediately.

**Although this email and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Sills Cummis & Gross P.C. for any loss or damage arising in any way from its use.

This email message has been scanned for viruses by Mimecast.

# EXHIBIT D

**Resolution of the Board of Directors**
**of**
**Labor Smart Inc.**

**WHEREAS**, a special meeting of the Board of Directors of Labor Smart Inc. (the "Company") was noticed to Toby McBride, Michael Holley, Jason Tucker and Joseph Pavlik on November 4, 2022 via email;

**WHEREAS**, on November 7, 2022 at 9:00 a.m. MST, Michael Holley, Toby McBride, and Joseph Pavlik appeared by conference call;

**WHEREAS**, Several minutes before the time of the call, Veronica Manolio, Esq., had communicated by e-mail to Matthew P. Canini, Esq., counsel for Mike Holley, and Jennifer Reiter, Esq., counsel for Toby McBride, that neither she nor her client Jason Tucker would be appearing at the meeting;

**WHEREAS**, Veronica Manolio also represents Joseph Pavlik and, as such, Mr. Canini and Ms. Reiter immediately departed the call before the meeting commenced and did not participate in any portion of the meeting;

**WHEREAS**, On September 13, 2021, pursuant to Section 10 of the Company's bylaws and by unanimous exercise of all 51 shares of the Company's Series A Preferred Stock of which Michael Holley owns 17 shares, Jason Tucker owns 17 shares, and Joseph Pavlik owns 17 shares, the Shareholders of the Company by a vote of 19,283,582,170 out of a total 29,282,150,656 available votes (66%) filled the Company's vacant director positions by appointing Toby McBride, Jason Tucker and Michael Holley as directors of the Company;

**WHEREAS**, on December 21, 2021, by motion of Jason Tucker the Board of Directors of the Company convened and by a vote of Toby McBride, Jason Tucker, and Joseph Pavlik resolved and did attempt to remove Michael Holley as a Director of the Company, and as a director and officer of the Company's wholly owned subsidiary Takeover Industries, Inc. ("TI") (the "December 2021 Meeting");

**WHEREAS**, Michael Holley was hospitalized with COVID-19 at the time of the December 2021 Meeting, and was known by Jason Tucker, Toby McBride and Joseph Pavlik to have been hospitalized, and he did not receive notice of the December 2021 Meeting, attend the Meeting, vote on the issues raised thereat, or subsequently ratify any actions taken at that Meeting;

**WHEREAS**, Joseph Pavlik was not a Director of the Company at the time of the December 2021 Meeting, but voted at the December 2021 Meeting;

**WHEREAS**, pursuant to N.R.S. 78.335 titled "Directors: Removal; filling vacancies," a director can, in most circumstances, only be removed by a two-thirds vote of the shareholders;

**WHEREAS**, pursuant to Wyoming Stat. 17-16-808(d) titled "Removal of Directors" a director may be removed by the shareholders only at a shareholder meeting called for that purpose;

**WHEREAS**, the Company never convened a shareholder meeting for the purpose of removing directors of the Company under either Nevada or Wyoming law;

**WHEREAS**, even had Jason Tucker, Joseph Pavlik and Toby McBride voted their Common and Series A Preferred shares at the December 21, 2021 Meeting, which they did not, their votes, including their exercise of 34 of the Company's Series A Preferred shares, would only have represented 12,445,721,447 of the 29,282,150,656 available votes (42.54%), which is not enough to remove a director under either Nevada or Wyoming law;

**WHEREAS**, based on the foregoing the actions taken at the December 2021 Meeting were unauthorized and not in conformity with the law or Company Bylaws;

**WHEREAS**, by virtue of Holley being unlawfully frozen out from the Board of Directors actions taken by the Board of Directors subsequent to the December 2021 Meeting are ultra-vires;

**WHEREAS**, during the December 2021 Meeting, Jason Tucker claimed Michael Holley had committed various improprieties, including theft and embezzlement;

**WHEREAS**, during the December 2021 meeting Jason Tucker attempted to cause the Company to transfer Holley's shares in the Company to other individuals, including himself;

**WHEREAS**, at the direction of Jason Tucker, TI commenced a lawsuit against Michael Holley in the Central District of California and later in the District of Arizona (the "Lawsuit");

**WHEREAS**, during the course and time frame of the Lawsuit information was made available to Jason Tucker, Toby McBride, and Joseph Pavlik based on which Toby McBride and Joseph Pavlik now understand that that their actions at the December 2021 Meeting were a nullity and not in conformity with the law and Company Bylaws;

**WHEREAS**, based on information on information obtained during the lawsuit, Toby McBride and Joseph Pavlik now understand that Jason Tucker's allegations against Michael Holley were wrong and for the purpose of attempting to personally enrich Jason Tucker;

**WHEREAS**, since Michael Holley was frozen out of the Company and TI, Tucker has engaged in wrongful conduct, and failed to meet his fiduciary duties, as President and Director of TI and a Director of the Company, including withholding information from undisputed officers and directors, subverting the directions of TI's CEO, hiring vendors without approval that only answer to Jason Tucker, and keeping secret TI's financial situation, which is not in the best interest of TI's shareholders;

**WHEREAS**, Jason Tucker has been untruthful to other Officers and Directors of the Company and TI concerning material information regarding investors, products, and sales, which is not in the best interests of TI and Company shareholders;

**WHEREAS**, Jason Tucker has instructed others at TI not to communicate with other TI Officers and Directors, which is not in the best interests of TI and Company shareholders;

**WHEREAS**, Jason Tucker has caused TI to fail to honor its contractual obligations, leading to potential, threatened, and/or actual claims and/or litigation against TI, which is not in the best interests of TI and Company shareholders;

**WHEREAS,** Eric Bjorgum has previously been retained to the do legal work for the Company;

**WHEREAS**, at the November 7, 2022 Meeting a quorum was present;

**WHEREAS**, at the November 7, 2022 Meeting the foregoing matters were discussed and all directors had a full and fair opportunity to ask questions and be heard;

**WHEREAS**, given the dispute in the Lawsuit and Joseph Pavlik's vote at the December 2021 Meeting, he was invited to attend and participate in the November 7, 2022 meeting and, although not a director of the Company, indicate what his vote would be were he a Director;

**THEREFORE, IT IS**:

**RESOLVED**, all actions Taken at the December 21, 2021 meeting to the extent they were ever effective are voided;

**RESOLVED**, Michael Costello is suspended from his position as CEO of the Company for a period of thirty days, with pay, and his authority to act on behalf of the Company is in all aspects revoked during this period;

**RESOLVED**, Michael Costello shall turn over to the Board of Directors of the Company all accounts, documents, passwords or other material belonging to the Company;

**RESOLVED,** the Board of Directors shall conduct a review of Michael Costello's actions from the period September 1, 2021 to the date hereof;

**RESOLVED,** the Board of Directors shall reconvene in thirty-days to discuss Michael Costello's position at LTNC;

**RESOLVED,** Michael Holley is appointed interim CEO of the Company until the Board Directors makes a determination with respect Michael Costello;

**RESOLVED**, Jason Tucker shall immediately turn over to the Board of Directors all contracts, documents, information, communications, passwords and financial accounts of the Company;

**RESOLVED**, Eric Bjorgum shall immediately turn over to the Board of Directors all contracts, documents, information, communications, passwords and financial accounts of the Company;

**REVOLVED**, the Board of Director will conduct a review of all actions taken by the Company since September 21, 2021 to the present;

**RESOLVED**, the Board of Directors shall conduct a review of all actions taken by Jason Tucker from September 21, 2021 to the present;

**RESOLVED,** Eric Bjorgum is terminated as the Company's counsel;

**RESOLVED,** the Board of Directors will conduct a review of the Lawsuit;

**RESOLVED**, the planned spinoff of Takeover is suspended for ninety days, while the Company undertakes a review of documents and information concerning the transaction, which have been withheld by Jason Tucker;

**RESOLVED**, effective immediately, by exercise of a vote of the shares of TI owned by the Company, which is between 97.345% and 100% of all issued and outstanding shares of TI, the Company hereby removes Jason Tucker from TI's board of directors and appoints Michael Holley to replace him.

**RESOLVED**, Joseph Pavlik and Toby McBride shall remain on TI's board of directors; and

**RESOLVED**, TI's board of directors is to meet immediately for the purpose of taking corrective action regarding the matters discussed at the November 7, 2022 meeting.

**IN WITNESS WHEREOF**, the undersigned, being two of the three Directors of the Company **Agree, Approve and Adopt** the foregoing resolutions as of November 7, 2022 following the duly noticed meeting of the Board of Directors held on this date.

_____
Joseph Pavlik, Observer

_____                    _____
Toby McBride, Director                              Michael Holley, Director

# EXHIBIT E

## AGREEMENT

This Agreement memorializes an Agreement made in Scottsdale, Arizona in July 2021 by and between Toby McBride, Michael Holley, Joseph "Joe" Pavlik, in their respective positions as shareholders of Labor Smart, Inc., a Georgia Corporation and/or Takeover Industries, Inc. a Nevada Corporation and/or in their individual capacities and Jason Tucker, an individual (collective the "Parties").

WHEREAS, the Parties acknowledge that each of them individually and collectively has formed various companies and held management positions with this current venture servicing the beverage industry including, but not limited to, the trademarked brand NXT LVL.

WHEREAS, the Parties desires to avail itself of the expertise and services of each other, in which they acknowledge the respective expertise of each Party.

NOW, THEREFORE, in consideration of the foregoing recitals, (which shall be deemed a part of this Agreement) and the covenants and conditions herein set forth, the parties hereto agreed as follows:

1. Takeover Industries Inc, is a Nevada Company, (Entity number E11605462021-2), located at 401 Ryland St, Ste 200-A, Reno, NV, 89502, USA (hereinafter "Takeover").
   a. The Parties shall receive and be assigned 25% of the shares in Takeover.
   b. Joseph Pavlik and Jason Tucker shall be named a Director of Takeover.
   c. The Parties shall be entitled to and receive monthly payments, draws and/or salary equal to each other or their assigns.

2. Labor Smart, Inc. (EIN 45-2433287) is a Georgia based Company trading on the OTC as LTNC (hereinafter "LTNC").
   a. Toby McBride, Michael Holley, and Joseph Pavlik hold 51 Preferred Shares in LTNC that equals 51% of the voting rights in LTNC.
   b. Toby McBride, Michael Holley, and Joseph Pavlik agree that 12 of those Preferred Shares in LTNC shall be released and issued to Jason Tucker or his assigns if/when LTNC receives a "current" status from OTC Markets or another market such as NASDAQ, NYSE or equivalent.
   c. Toby McBride, Michael Holley, and Joseph Pavlik will each retain 13 of the Preferred Shares in LTNC.
      i. As a matter of example, the preferred share division will be as follows:
         1. Toby McBride          13 Preferred Shares
         2. Michael Holley        13 Preferred Shares
         3. Joseph Pavlik         13 Preferred Shares
         4. Jason Tucker          12 Preferred Shares
   d. In addition, the Parties agree that Jason Tucker or his assigns shall receive 750M common shares valued at the same rate as Toby McBride or his assigns.
   e. None of Parties shares shall be diluted unless they collectively agree.

3. No amendment or waiver of any provision of this Agreement, or consent to any departure by either party from any such provision, shall be effective unless the same shall be in writing and

Takeover - LTNC Agreement Page 1 of 2



signed by the parties to this Agreement, and, in any case, such amendment, waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

4. This Agreement shall constitute the entire agreement between the parties with respect to the subject matter hereof, and shall supersede all previous oral and written (and all contemporaneous oral) negotiations, commitments, agreements and understandings relating hereto.

5. This Agreement shall be governed by, and enforced in accordance with, the laws of the State of Arizona (excluding the choice of law principles thereof). The parties to this Agreement hereby agree to submit to the non-exclusive jurisdiction of the federal and state courts located in Maricopa County in the state of Arizona in any action or proceeding arising out of or relating to this Agreement.

6. This Agreement may be executed in two or more counterparts, and by different parties on separate counterparts. Each set of counterparts showing execution by all parties shall be deemed an original, and shall constitute one and the same document.

7. The waiver by any party of any breach of this Agreement shall not operate as or be construed to be a waiver by such party of any subsequent breach.

8. To the extent that the terms set forth in this Agreement or any word, phrase, clause or sentence are found to be illegal or unenforceable for any reason, such word, phrase, clause or sentence shall be modified or deleted in such manner so as to afford the fullest protection commensurate with making this Agreement, as so modified, legal and enforceable under applicable laws, and the balance of this Agreement shall not be affected thereby, the balance being construed as severable and independent.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed and delivered by their duly authorized officers or agents as set forth below.

AGREED and ACCEPTED:

| | | |
|---|---|---|
| *Toby McBride* | 8/5/2021 | Address<br>Address: |
| *Michael Holley* | 8/5/2021 | Address<br>Address: 5137 E Armor St.<br>Cave Creek, AZ 85331 |
| *Joseph Pavlik*<br>Joseph "Joe" Pavlik | 8/5/2021 | 408 NE 6th Street #637<br>Address: Fort Lauderdale, FL 33304 |
| *Jason Tucker* | 8/4/2021 | 3104 E Camelback Road #2917, Phoenix, AZ 85016<br>Address: |

Takeover - LTNC Agreement Page 2 of 2