Paul M. Levine, Esq. (007202)
**PAUL M. LEVINE, P.C.**
8502 E. Via de Ventura, Suite 230
Scottsdale, Arizona 85258
Telephone: (480) 302.4102
Facsimile: (480) 300.4984
plevine@pmlevinepc.com
*Attorney for Labor Smart, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Labor Smart, Inc,<br><br>    Plaintiff,<br><br>v.<br><br>Jason Tucker et al.,<br><br>    Defendants. | Case No.  2:22-cv-00357-PHX-JJT<br><br>**THIRD PARTY DEFENDANT NEXT GEN BEVERAGES, LLC's MOTION TO SET ASIDE ENTRY OF DEFAULT**<br><br>(Before the Honorable J. Tuchi) |

Third-Party Defendant Next Gen Beverages, LLC ("Next Gen"), pursuant to Rule 55(c), Federal Rules of Civil Procedure, moves that the default entered on August 23, 2024, (Doc. 168), be set aside for the reason that good cause exists, as set forth below. This Motion is supported by the following Memorandum of Points and Authorities, the Declarations of Michael Holley and Tom Zarro, and the entire record in this case.

**MEMORANDUM OF POINTS AND AUTHORITIES**

### I. Procedural History.

As this court is undoubtedly aware, this case has a long procedural history, going back to March 8, 2022, when Defendants Jason and Melissa Tucker's current counsel (Ms. Manolio) filed the Complaint on behalf of Takeover Industries, Inc. (Doc. 1.) On July 8, 2024, Ms.

1

Manolio filed Defendant Tuckers' Answer, Counterclaims, and Third-Party Claims against numerous parties, including Next Gen. (Doc. 148.)

Next Gen did not even exist until June 14, 2023, when it was formed as a Wyoming corporation. (See Holley Declaration, attached as **Exhibit "A"**.) Next Gen was served through its statutory agent on July 30, 2024. (Doc. 163.) On August 22, 2024, the Tuckers filed their Application for Entry of Default. (Doc. 167.) The Clerk entered the default on August 23, 2024. (Doc. 168.)

In the 29 months since the Complaint was filed, no Rule 26 Disclosure Statements have been exchanged, there has been no written discovery, and no depositions. On July 30, 2024, Labor Smart, Inc. filed its Rule 12(b)(6) and Rule 13(a) Motion to Dismiss. (Doc. 158.) As of this date, the Tuckers have not filed their Response.

**II.     The Tuckers Claims. (Doc. 148, ¶'s 80 – 91.)**

**A.     Against Labor Smart.**

The Tuckers allege claims against Labor Smart for Breach of Contract (Counterclaim I) and Aiding and Abetting Tortious Misconduct (Counterclaim II).

**B.     Against Third-Party Defendants: Holley, McBride and Pavlik.**

The Tuckers allege claims against Holley, McBride and Pavlik for Breach of Fiduciary Duties (Third Party Claim I), Breach of Contract (Third Party Claim II) and Breach of the Covenant of Good Faith and Fair Dealing (Third Party Claim III).

**C.     Against Zarro and Next Gen.**

The Tuckers allege claims against Zarro and Next Gen for Aiding and Abetting Tortious Misconduct (Third Party Claim III [sic]).[1]

---

[1] The Tuckers also allege a Third-Party Claim against Third-Party Defendant McBride for Defamation *Per Se*.

The claim against NextGen does not plead with specificity what conduct Next Gen allegedly engaged in to "aid and abet" Takeover, Labor Smart, Holley, McBride or Pavlik with any alleged tortious conduct.  However, the only claim that Next Gen could have *possibly* aided and abetted is the tort claim for Breach of Fiduciary Duties alleged against Holley, McBride and Pavlik alleged in "Third Party Claim I" (¶'s 93 – 95). All the other claims against Takeover, Labor Smart, Holley, McBride and Pavlik are contract claims. As a matter of law, aiding and abetting only applies to tort claims.

"Third Party Claim I" (Breach of Fiduciary Duties against Holley, McBride and Pavlik) bears some similarity to "Counterclaim II" against Labor Smart (¶'s 86 – 91), which alleges "Aiding and Abetting Tortious Misconduct" against Labor Smart. Both of the "Aiding and Abetting" claims (against Labor Smart and Next Gen) rely upon the "actions described in this Complaint", (¶ 89), and "As fully described above", (¶ 109), respectively.

The "General and Factual Allegations" in the Counterclaim, (¶'s 14 – 79), consist of a lengthy set of allegations spanning the history of Takeover and Labor Smart from early 2021 through January 2023, upon which the tort claim (Breach of Fiduciary Duties) against Holley, McBride and Pavlik is based.  Although there are also some vague allegations that Third-Party Defendants worked to "hold a  'restriction' on the LTNC stock controlled by the Tuckers" that purportedly damaged the Tuckers, (*see* ¶'s 77, 111), any such claim would arise out of the alleged "restriction" in a written stock agreement, which is a contract claim, not a tort claim, and not subject to an "Aiding and Abetting claim."[2] This will require further discovery and proof.

---

[2] The most specific allegation on this point is contained in paragraph 77 of the Third-Party Complaint wherein the Tuckers allege:

> 77. Within the past 120 days (approximately), both LTNC and all of the Third-Party Defendants worked collectively to attempt to hold a "restriction" on the LTNC stock controlled by the Tuckers to ensure that they could not trade/sell the shares.

A claim that a person aided and abetted tortious misconduct has 3 elements: (1) the primary tortfeasor must commit a **tort** that causes injury to the plaintiff; (2) the defendant must know that the primary **tortfeasor's** conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary **tortfeasor** in the achievement of the breach. *Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 38 P. 3d 12 (Sup. Ct. 2002).

As explained above, the conduct that Next Gen is alleged to have aided and abetted occurred prior to June 14, 2023, the date when Next Gen came into existence. Therefore, on its face, this claim against Next Gen will likely be subject to early dismissal as it fails to state a claim.

### III. The Court Should Set Aside the Entry of Default Against Next Gen Pursuant to Rule 55(c).

Rule 55(c), Federal Rules of Civil Procedure, states the court may set aside an entry of default for good cause. This court is aware of the general principle that the policy of the law is to favor judgments on the merits. *Eitel v. McCool*, 782 F. 2d 1470, 1472 (9th Cir. 1986), ("Our starting point is the general rule that default judgments are ordinarily disfavored. Cases should be decided upon their merits whenever reasonably possible.")

The burden on a party seeking to vacate a default judgment is not extraordinarily heavy. *O'Connor v. State of Nevada*, 27 F. 3d 357 (9th Cir. 1994). Further, the question of whether the factual allegations are true is not to be determined by the court when it decides a motion to set aside a default. That question is subject to later litigation. *Aghanazari v. American Medical Response Ambulance Service*, 2024 WL 2330129 (E.D. Calif.)

To determine good cause pursuant to Rule 55(c), the court must consider 3 factors: (1) whether movant engaged in culpable conduct that led to the default; (2) whether a meritorious

defense exists; and (3) whether setting aside the default would prejudice the other party. *U.S. v. Signed Personal Check No. 730 of Yubran S. Mesle,* 615 F. 3d 1085, 1091 (9th Cir. 2010). The standard for setting aside an entry of default is less demanding than the standard for setting aside a default judgment. *Hawaii Carpenters' Trust Funds v. Capstone*, 794 F. 2d 508 (9th Cir. 1986). The trial court's discretion is especially broad where it is the entry of default that is being set aside, rather than a default judgment. *Brady v. U.S.*, 211 F. 3d 499 (9th Cir. 2000). However, even default judgments are disfavored. The trial court's discretion with respect to Rule 60(b) is limited by three policy considerations.

> First, since Rule 60(b) is remedial in nature, it must be liberally applied. [Citation omitted.] Second, default judgments are generally disfavored and "'[w]henever it is reasonably possible, cases should be decided upon their merits.'" [Citation omitted.] Third, where a defendant seeks timely relief from the judgment and has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the judgment."

*In re Hammer*, 940 F.2d 524, 525 (9th Cir. 1991).

### A.   Next Gen Did Not Engage In Any Culpable Conduct.

> '[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer.... As we have previously explained, in this context the term 'intentionally' means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith, such as an 'intention to take advantage of the opposing party, interfere with judicial decision-making, or otherwise manipulate the legal process.'

*Mesle, supra*, p. 1092.

As explained in the Holley Declaration, the failure to answer was due to a misunderstanding regarding service. Previously, Holley (and Takeover and other individuals, but **not** Next Gen) gave authority to undersigned counsel to accept service of the Third-Party Complaint. (Doc. 162.) Mr. Holley is the Next Gen Manager. When the Next Gen statutory

agent delivered a copy of the Third-Party Complaint to Mr. Holley, Mr. Holley assumed that undersigned counsel would timely file the Answer for Next Gen. Mr. Holley was under the mistaken belief that Mr. Levine accepted service for Next Gen and a timely Answer would be filed. There was never any intent or intentional or culpable conduct by Mr. Holley or Next Gen that Next Gen was not going to answer. Next Gen always intended to file an Answer to the Third-Party Complaint.

### B.  Next Gen Has a Meritorious Defense.

The burden on a party seeking to vacate a default is not extraordinarily high. "All that is necessary is to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense…." *Melse, supra*, p. 1094.

As noted above, Next Gen did not even come into existence until June 14, 2023. As a matter of law, it could not have "aided and abetted" any conduct by Holley, McBride or Pavlik prior to its existence. Whether there is any fiduciary duty owed by Holley, McBride or Pavlik to the Tuckers remains a question of law, just as whether Holley, McBride or Pavlik breached any fiduciary duty remains a question of fact.

Before NextGen can have any liability on and aiding and abetting theory, it must be shown that: (1) the primary tortfeasor (Holley, McBride or Pavlik) committed a tort causing injury to the Tuckers; (2) Next Gen knew that Holley, McBride or Pavlik's conduct was a breach of fiduciary duty; and (3) it substantially assisted or encouraged Holley, McBride or Pavlik in the achievement of the breach. *Wells Fargo Bank, supra.*

At the risk of stating the obvious, Next Gen could not be liable for aiding and abetting any conduct before it even came into existence. Even with respect to any alleged tort (rather than contract) based conduct after June 14, 2023, Next Gen denies that Tucker was a Director or Officer of Takeover or Labor Smart, that Takeover achieved success through Tucker's actions, that Takeover engaged in any wrongdoing or mismanagement of funds or that it

worked "to attempt to hold a 'restriction' on the LTNC stock controlled by the Tuckers to ensure the that they could not trade/sell the shares" (this claim purports to sound in contract, not tort). (Doc. 148, ¶77.) NexGen further alleges that Tucker sabotaged Takeover. (See Holley Declaration and Amended Complaint (Doc. 67).

### C. There Is No Prejudice to the Tuckers.

To be prejudicial, the setting aside of a default must result in greater harm than simply delaying a resolution of the case. The standard is whether his ability to pursue his claim will be hindered. *Falk v. Allen*, 739 F. 2d 461 (9th Cir. 1984).

This case is almost 2.5 years old. No party has conducted any discovery and there have been no disclosures. Granting this Motion will not result in any prejudice to the Tuckers. They will still be able to conduct discovery, and they will have the full opportunity to proceed with the prosecution of their claims. Also, the court still has to enter a ruling on CounterDefendant's Motion to Dismiss. (Doc. 158.) Setting aside the default will not result in any prejudice to the Tuckers.

### IV. Conclusion.

For all the foregoing reasons, Next Gen respectfully requests that the default entered on August 23, 2024 be vacated.

**RESPECTFULLY SUBMITTED** this 30th day of August, 2024.

**PAUL M. LEVINE, P.C.**

By /s/ Paul M. Levine
Paul M. Levine
*Attorney for Labor Smart, Inc.*

**ELECTRONICALLY FILED**
this 30th day of August, 2024.

1  **EMAILED** this 30th day of August, 2024

2  Veronica L. Manolio
   8686 E. San Alberto Dr., Suite 200
3  Scottsdale, Arizona 85258
   vmanolio@mf-firm.com
4  *Attorney for Defendants Tucker*

5

6   /s/ Sasha Bever