LAW OFFICES
**MANOLIO & FIRESTONE, PLC**
8686 E. San Alberto Dr., Suite 200
Scottsdale, Arizona  85258
(480) 222-9100
vmanolio@mf-firm.com
Veronica L. Manolio, SBN 020230
*Attorneys for Tucker Defendants, Counterclaimants,*
   *And Third-Party Claimants*

**IN THE UNITED STATES DISTRICT COURT**

**IN AND FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Labor Smart, Inc.<br><br>                                  Plaintiff,<br><br>v.<br><br>Jason and Melissa Tucker,<br><br>                                  Defendants.<br><br>And related Counterclaims<br> and Third-Party Claims. | Case No. 2:22-cv-00357-PHX-JJT<br><br>**COUNTERCLAIMANT TUCKERS' RESPONSE TO LABOR SMART'S MOTION TO DISMISS**<br><br>(Before the Honorable J. Tuchi) |

It is extremely difficult for Counterclaimants Jason and Melissa Tucker to respond to the Motion to Dismiss filed by Labor Smart, Inc. (Doc. 158)[1] because Labor Smart misrepresents the pleadings, misstates the timing on factual allegations, and asks this Court to determine the truthfulness of what are obviously material factual disputes.

Worse, Labor Smart makes a timeliness argument under Rule 13(a), Fed.R.Civ.P., claiming that the Tuckers did not file a compulsory counterclaim in May 2022, when the first Third-Party Claim was filed against them.  The offending (mis)conduct about which

---

[1] Importantly, Labor Smart filed its Motion to Dismiss (Doc. 158) inadvertently failing to include page 7 of the motion.  Two weeks later, Labor Smart filed a Notice of Errata (Doc. 161) claiming that it re-filed the proper/corrected motion as Doc. 160.  It did not.  Doc. 160 is an Order of this Court, and Labor Smart has never provided this Court a full and corrected copy of its Motion to Dismiss.  Undersigned counsel provides an unfiled copy of what Labor Smart emailed to her as the "real" motion.  *See*, **Exhibit A** here.

the Tuckers complain is alleged to have occurred beginning in **November 2022** – multiple months later. The allegations do not arise out of the same transaction or occurrence (it is not compulsory), and Rule 13(a)(1) does not apply here.

Labor Smart completely misses the mark on every argument, and dismissal is unwarranted for each reason asserted.

## I. FACTUAL ALLEGATIONS/BACKGROUND FACTS

Labor Smart misrepresents the fulsomeness of the allegations that were pled in the Tuckers' Counterclaims (Doc. 148).

### A. Allegations Regarding the "Special Meeting" Labor Smart's Bylaws

Labor Smart cites only ¶62 of the Tuckers' pleading, pretending that the sole allegation for breach of the Bylaws by Labor Smart is that the November 7, 2022 "Special Meeting" was improper. In reality, the Tuckers have pled:

- This lawsuit was originally filed by Takeover in early 2022, attempting to recover funds from Holley for his significant wrongdoing/misappropriation of Takeover funds and mismanagement of LTNC. This Court granted Takeover an injunction, making Holley cooperate to stop harming Takeover unnecessarily.

- By September 2022, Takeover discovered that McBride had been spending significant sums of Takeover funds on personal expenses. This had been a problem in 2021, but McBride signed an acknowledgement that he owed Takeover more than $243,000 for company funds he spent on personal expenses in 2021. Tucker then discovered at least an additional $30,000 taken by McBride in 2022.

- On or about September 20, 2022, McBride apologized profusely, admitting to spending Takeover funds, and promising to repay the Company.

- On September 21, 2022, McBride attended a Takeover Board of Directors meeting that was knowingly recorded, and McBride again apologized for lying and for taking company funds for his personal use.

- During the September 21, 2022 Board Meeting, all Takeover Directors (including McBride) agreed that McBride would be placed on a 60-day leave of absence to allow Takeover to investigate the misconduct and discuss findings.

- *McBride readily agreed to refrain from all Takeover and LTNC business during his 60-day leave.*

- Worse, and more importantly, Tucker discovered that Holley, McBride, (and likely Pavlik) committed wrongdoing by over-pledging the shares of Takeover.

- Preliminary evidence demonstrated that Holley and McBride sold, conveyed, offered, and/or committed 210% of Takeover's interest.  While Holley had "sold" to LTNC (and Takeover owns/votes 800M shares of LTNC's common stock), Holley, McBride, and Pavlik likewise conveyed 10% of Takeover to another party and also pledged/committed 25% each to Holley, McBride, Pavlik, and Tucker.

- Tucker did not know (and had no reason to know) that Holley, McBride, and Pavlik had over-pledged Takeover at the time he became involved in the entity.

- *By November 2022, Holley, McBride, and Pavlik all colluded (along with the help of legal counsel, Matthew Canini for Holley and Jennifer Reiter for McBride) to stage a "takeover" of Takeover.  Upon information and belief, this collusive effort was made because Holley, McBride, and Pavlik all knew that strong evidence existed to show their ongoing schemes and dishonesty in Takeover and LTNC business.*

- *On or about November 7, 2022, Holley (who was not a Director or Officer of Takeover at that time), McBride (who was on administrative leave from Takeover) and Pavlik (a collusive member of the group) all held a "Special Meeting of the Board of Directors of Labor Smart, Inc."*

- *Under the guise of conducting LTNC business, Holley, McBride, Pavlik, and legal counsel all discussed the "pending litigation" (this lawsuit), Takeover's financial records, and electing "a new board of directors of Takeover."*

- Counsel for Holley (Canini) and McBride (Reiter) refused to record the meeting, despite requests from the Tuckers' counsel.

- On November 8, 2022, Canini forwarded alleged "Resolutions" from both LTNC and Takeover, verifying that Holley, McBride, and Pavlik each decided to:

    a. "Terminate" McBride's leave of absence, despite his theft from Takeover;
    b. Suspend Jason Tucker as President of Takeover;
    c. Reappoint McBride as Takeover's CEO;
    d. Appoint Pavlik in Tucker's stead as President of Takeover.

- After improperly removing Tucker from Takeover and "freezing" him out of LTNC, Holley, McBride, and Pavlik continued collusive efforts with third-party Thomas ("Tom") Zarro to revamp Takeover and LTNC.

- By January 2023, Holley, McBride, and Pavlik were each sued personally in Florida by investors claiming that they had a long-term scheme to defraud investors into LTNC. *See*, Case No. 23-CV-60023-RS in the Southern District of Florida (the "Florida Lawsuit" herein).

- Upon information and belief, Holley, McBride, Pavlik, and Zarro (among others) negotiated the Florida Lawsuit into a Settlement Agreement by pledging LTNC preferred and common shares that are owned by Tucker. These men negotiated on behalf of Takeover and LTNC as one "Company," disregarding formalities.

- LTNC, along with the Third-Party Defendants, has conducted LTNC business throughout 2023-2024 without any regard to Tucker or the 17 Preferred Shares of LTNC owned by Tucker (and/or business entities that he owns).

- LTNC is subject to written Bylaws that govern its business endeavors, including the rights and procedures applicable to Shareholders and Directors.

- By taking the actions described above, including holding an improper "Special Meeting," removing Tucker from his LTNC positions, and depriving Tucker from voting the 17 Series A Preferred Shares he owned/controlled to conduct LTNC business, LTNC has breached the Bylaws.

(Doc. 148 at ¶¶52-66, 69, 72-73, 75.) (Emphasis added.)

**B.     Allegations Regarding the July 21, 2021 Agreement**

When it comes to the July 21, 2021 Agreement, the Tuckers have pled:

- On <u>June 10, 2021</u>, the Directors of Takeover (which included Holley, McBride and Pavlik) held a "Special Meeting" in Arizona and specifically resolved:
    a. The Company (Takeover) would have four Directors: Holley, McBride, Pavlik, and Tucker.
    b. Tucker would be appointed as the President of Takeover, while Holley would remain its Treasurer and be appointed as both the Chief Operating Officer and Chief Financial Officer;
    c. McBride would act as Takeover's Chief Executive Officer and Secretary; and
    d. The parties would cooperate to fulfill all paperwork requirements necessary to complete these elections and appointments.

- At the time of this meeting, McBride, Holley and Pavlik were the only Directors of LTNC and Takeover. Thus, this was a unanimous decision of all of the then-Directors [of LTNC and Takeover].

- With Tucker acting as President of Takeover, its success (and that of LTNC) was remarkable….

- It is fair to say Takeover had become very successful within its first year.

- In early August 2021, Holley, McBride, Pavlik and Tucker had put together a "Takeover – LTNC Agreement" to memorialize the discussions and agreements they made during the June 2021 Board Meeting. This document (hereafter "the July 2021 Agreement") was discussed thoroughly in a Special Meeting of the Board of Directors.

- On <u>August 6, 2021</u>, Holley, McBride, Pavlik and Tucker held their second Board of Directors Meeting and executed a Resolution that approved the July 2021 Agreement in its entirety, explicitly making it retroactive to July 1, 2021, and a fully-executed copy of the July 2021 Agreement was attached to the Resolution for clarity. The Resolution further specified that the decisions made were unanimous.

- In turn, the July 2021 Agreement specified the following terms:

    a. Holley, McBride, Pavlik, and Tucker were each to receive 25% of the shares in Takeover;
    b. Pavlik and Tucker were each to be named as Directors of Takeover;
    c. Holley, McBride, Pavlik, and Tucker were each entitled to receive monthly payments, draws and/or salary equal to each other;
    d. Holley, McBride, and Pavlik collectively held 51 Preferred Shares (17 shares each) in LTNC, which amounts equaled 51% of the voting rights in LTNC;
    e. 12 of the Preferred Shares were to be released to Tucker when LTNC received a "current" status from OTC Markets or another market, such as NASDAQ, NYSE, or an equivalent;
    f. In addition, when LTNC received a "current" status, Tucker was to receive 750M common shares of LTNC valued at the same rate as McBride's shares;
    g. None of the parties' LTNC shares could be diluted without "collective" agreement;
    h. Further changes to the Agreement had to be in writing; and
    i. The Agreement was governed by Arizona state law.

- LTNC is a party to the July 2021 Agreement, signed by all of the Board of Directors of LTNC and promising Tucker 12 Preferred Shares (4 from each Holley, McBride, and Pavlik) and 750M common shares once LTNC received a "current" status from OTC markets.

- Although LTNC has received "current" status on the OTC markets, and despite that the Tuckers made demand for the Preferred and Common Shares owed by Holley and McBride, LTNC has refused to honor the July 2021 Agreement.

(Doc. 148 at ¶¶22-23, 26-29, 83-84.)

**C.    Allegations Regarding the Aiding and Abetting Claim**

On their claim for Labor Smart aiding and abetting misconduct, the Tuckers have not limited the actions of Labor Smart to those taken by Holley, McBride, and Pavlik. Instead, the Tuckers pled a significant history of Labor Smart actions that give rise to the aiding and abetting claim:

- 6 -

- By November 2022, Holley, McBride, and Pavlik all colluded (along with the help of Labor Smart and Takeover's legal counsel) to stage a "takeover" of Takeover. This collusive effort was made because Holley, McBride, and Pavlik all knew that strong evidence existed to show their ongoing schemes and dishonesty in Takeover and LTNC business.

- On or about November 7, 2022, Holley (who was not a Director or Officer of Takeover at that time), McBride (who was on administrative leave from Takeover) and Pavlik (a collusive member of the group) all held a "Special Meeting of the Board of Directors of Labor Smart, Inc."

- After improperly removing Tucker from Takeover and "freezing" him out of LTNC, Holley, McBride, and Pavlik continued collusive efforts with third-party Thomas ("Tom") Zarro to revamp Takeover and LTNC.

- By January 2023, Holley, McBride, and Pavlik were each sued personally in Florida by investors claiming that they had a long-term scheme to defraud investors into LTNC. *See*, Case No. 23-CV-60023-RS in the Southern District of Florida (the "Florida Lawsuit" herein).

- Upon information and belief, Holley, McBride, Pavlik, and Zarro (among others) negotiated the Florida Lawsuit into a Settlement Agreement by pledging LTNC preferred and common shares that are owed to Tucker. These men negotiated on behalf of Takeover and LTNC as one "Company," disregarding formalities.

- Upon information and belief, Holley, McBride, Pavlik and Zarro (among others) colluded to "strip" Takeover of all of its rights/assets/liabilities, disregarding this ongoing lawsuit and the Nevada Lawsuit and start a new/competing entity, Next Gen, to carry on the identical business that Takeover conducted.

- LTNC, along with the Third-Party Defendants, has conducted LTNC business throughout 2023-2024 without any regard to Tucker or the 17 Preferred Shares of LTNC owned by Tucker (and/or business entities that he owns).

- Third-Party Defendants, including Zarro and Next Gen, have purposefully and repeatedly inserted themselves into this legal matter. By way of example, both before the "settlement" of the Florida Lawsuit and after, Tom Zarro has attempted to strongarm the Tuckers into resolving this lawsuit. Zarro (and others) have threatened the Tuckers with the loss of common shares and Preferred Shares of LTNC rightfully owned by them and/or their business entities.

- Within the past 120 days (approximately), both LTNC and the Third-Party Defendants worked collectively to attempt to hold a "restriction" on the LTNC stock controlled by the Tuckers to ensure that they could not trade/sell shares.

- Specifically, Pavlik provided the LTNC Transfer Agent (Clear Trust, LLC) with false representations and claiming he never sold his common and Preferred Shares in LTNC to Tucker. Upon information and belief, this was done with the assistance of the Third-Party Defendants and LTNC/its Board of Directors.

- Through the actions described in this Complaint, LTNC knowingly and intentionally assisted, encouraged, participated, or caused the Third-Party Defendants to: a) breach various fiduciary duties owed to Tucker; b) breach various agreements with Tucker, both written and implied; c) interfere with Tucker's voting and financial rights in Takeover and LTNC; d) deprive Tucker of payment(s) owed to him by Takeover; e) interfere with the Tuckers' shares/ability to sell shares of LTNC stock.

- Moreover, LTNC has substantially participated and assisted Takeover in shutting down its business, reopening under Next Gen, in an effort to avoid liabilities owed by Takeover to Jason Tucker (*i.e.*, assisting Takeover in committing a fraudulent transfer or avoidance).

(Doc. 148 at ¶¶61-62, 69, 72-79, 89-90.)

In addition to the allegations pled, this Court may take judicial notice of the public filing(s) by Labor Smart, filed with the OTC Markets for "Pink" (open market) trading. The current publicly-filed Quarterly Report (Corrected) for Labor Smart delineates the company's Officers, Directors, and Control Persons of the Company, specifying that Labor Smart is controlled by multiple persons *other* than Third-Party Defendants

Holley, McBride, and Pavlik.[2]  *See*, **Exhibit B**, incorporated here by this reference. Labor Smart is apparently being currently run by Directors Tom Zarro, Luis Sequeria, Tom Fitzgerald, Sr., and Emmanuel ("Manny") Pacquiao; Labor Smart has 77 Shareholders, all of whom are entitled to a "one for one voting right" and 3 "Preferred" Shareholders, who are entitled to heightened weight on their votes.  *Id*.

Labor Smart is **not** limited to Holley, McBride, and Pavlik as the Motion to Dismiss falsely infers.

## II. LAW AND ARGUMENT

### A.  Dismissal is Not Warranted on the Claim for Breach of Bylaws.

Labor Smart argues that the November 7, 2022 "Special Meeting" was proper because proper Notice was provided.  Labor Smart then argues that Holley and McBride were permitted to vote/approve all actions taken at this properly-noticed meeting.  These arguments completely ignore the allegations that:

- The Special Meeting was the result of collusion between Holley, McBride, Pavlik, and legal counsel;
- The Special Meeting was meant to avoid the improper actions of Holley, McBride, and Pavlik, conducted under the guise of Labor Smart business;
- Counsel for Holley (Matthew Canini) and McBride (Jennifer Reiter) refused to record the Meeting, despite a request from the Tuckers' counsel; and
- Jason Tucker was improperly removed from Takeover and "frozen" out of Labor Smart, and thereafter, Labor Smart, Holley, McBride, and Pavlik continued colluding with third parties to revamp Labor Smart.

---

[2] For purposes of considering this Response, this Court may take judicial notice of this public filing under Rule 201, Federal Rules of Evidence, without converting the issue to a motion for summary judgment (even if the fact is technically outside of the pleadings). *Lee v. City of Los Angeles*, 250 F.3d 668, 669 (9th Cir. 2001) (Internal citations omitted.)

In other words, the Tuckers pled that Labor Smart Bylaws were breached for a variety of reasons, not a mere failure of proper notice/proper quorum. Ample allegations are made that the November 7, 2022 "Special Meeting" was the effort of collusion; the collusive effort was made because Holley, McBride and Pavlik all knew there was strong evidence of their dishonesty; the "Special Meeting" was improper because McBride was on leave and agreed not to participate in Labor Smart business during his leave, and Holley was not an officer or director at the time of the meeting; and Labor Smart and its counsel refused to properly record this "Special Meeting" so that nobody could later challenge the propriety of what occurred during this improper meeting.

Maybe more importantly, the Tuckers' claim for Breach of Contract is not limited to breach of the Bylaws only by this "Special Meeting." The Tuckers also pled that after that meeting, Mr. Tucker was deprived from voting his 17 Series A Preferred Shares in conducting additional Labor Smart business.

Dismissal under Rule 12(b)(6) only considers whether a party has set forth well-plead factual allegations to support a cognizable legal theory. *See, e.g., Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). At this juncture, the Court is not to weigh the Tuckers' allegations against Labor Smart's version of the "truth" of such allegations; all well-pled factual allegations are taken as true and construed in the Tuckers' favor at this stage. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). So long as the Tuckers have set forth a plausible argument that the Bylaws were breached (and that Labor Smart is liable for the misconduct), the claim must move forward. *See, Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (The Tuckers must only have pled enough facts to state a claim for relief that is plausible on its face in order to survive dismissal.)

The allegations here are sufficient to move forward for breach of the Bylaws on multiple grounds. The Special Meeting is included but not dispositive of the claim.

**B.      Dismissal is Not Warranted on Breach of the July 2021 Agreement.**

In addition to pleading breach of contract for the Labor Smart Bylaws, the Tuckers set forth a claim that Labor Smart was a party to the July 2021 Agreement, which specified that it was being signed by all of the Board of Directors of LTNC and promising Tucker 12 Preferred Shares (4 from each Holley, McBride, and Pavlik) and 750M common shares once LTNC received a "current" status from OTC markets. The Tuckers pled that Labor Smart is bound by the July 2021 Agreement because it was agreed to by McBride, Holley, and Pavlik in their positions with Labor Smart and that the Agreement intended to ensure that Labor Smart would issue Jason Tucker preferred shares of Labor Smart once it became "current" on the OTC Markets.

Labor Smart now argues that it is not a party to the July 2021 Agreement and not bound by the Agreement, ignoring the allegations that Holley, McBride, and Pavlik all signed the Agreement intending to bind Labor Smart. This, again, is a factual question and not proper at this dismissal stage.[3] *Twombly, supra* (So long as the Tuckers have set forth a plausible argument that Labor Smart is bound by the July 2021 Agreement and that damages have arisen from breach of that Agreement, dismissal is not appropriate.)

**C.      Dismissal is Not Warranted on the Aiding and Abetting Claim.**

On the aiding and abetting claim, it appears that Labor Smart wants to limit the allegations made as well as limiting the officers/directors who make up Labor Smart. Moreover (as usual), Labor Smart wants to pretend that Labor Smart and Takeover are one company. These are separate entities with separate identities.

---

[3] It is important to note that Labor Smart complains about the July 2021 Agreement but only attached that Agreement to its Motion to Dismiss. Labor Smart intentionally omitted the "Minutes of Special Meeting of Directors" that was pled by the Tuckers as being incorporated the July 2021 Agreement (and, thus, making a fully integrated contract). A full copy is provided as **Exhibit C** here, incorporated by this reference.

The Tuckers agree that an aiding an abetting claim requires three elements, including: (1) the primary tortfeasors must commit a tort that causes injury to plaintiff(s); (2) the defendant must know that the primary tortfeasor's conduct constitutes a breach; and (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach. The Complaint here properly alleges each of these elements.

### 1. *Holley, McBride and Pavlik Committed Torts that Caused Injury.*

In this instance, the Tuckers have pled that Holley, McBride and Pavlik owed duties of care and loyalty to Jason Tucker, as he remained an Officer and Director of Takeover (and a Director of Labor Smart). Holley, McBride and Pavlik breached their fiduciary duties owed to Jason Tucker (and/or to Takeover) by:

- using/misusing takeover funds for personal use;
- hiding corporate waste in Takeover;
- misleading Tucker about the over-pledging of Takeover share ownership;
- improperly staging a "takeover" of Takeover;
- failing to pay salary to Tucker he earned while working for Takeover;
- freezing Tucker out of Labor Smart management decisions and voting of his preferred shares; and
- thwarting Tucker's ability to sell/transfer his stock by manufacturing a "restriction" on his Labor Smart stock.

(Doc. 148 at ¶¶93-94.)

These allegations suffice to demonstrate that Holley, McBride and Pavlik have each breached fiduciary duties owed to Tucker (and/or owed to Takeover).

### 2. *Labor Smart Knew of Holley, McBride and Pavlik's Misconduct.*

Labor Smart, which is a company made up of multiple shareholders, a Board of Directors, and various officers. At some point (the records are contradictory as to when), Labor Smart is run by Holley, Zarro, Sequeria, Tom Fitzgerald, Sr., and Manny Pacquiao.

Based on the allegations made in this lawsuit, the allegations made publicly, and the allegations raised in the Florida lawsuit (discussed above), there is zero doubt that Labor Smart (the entity) and all of its current Board of Directors knew of Holley, McBride and Pavlik's misconduct. In fact, the allegations are clear that Labor Smart's current directorship actually became in charge **because** of fraud/dishonesty/misconduct of Holley, McBride and Pavlik.

Thus, these allegations clearly suffice to demonstrate the second element, that Labor Smart knew of the tortious misconduct by Holley, McBride and Pavlik.

### *3. Labor Smart has Substantially Assisted and Participated in Breach.*

Labor Smart, as an entity guided through voting of its shareholders and/or direction by its Board of Directors, substantially assisted and participated in having Holley, McBride and Pavlik use/misuse ***Takeover*** funds for their personal use, causing harm to Tucker. Labor Smart substantially assisted and/or participated in helping Holley, McBride and Pavlik hide corporate waste of Takeover, stage a "takeover" of Takeover, and ensure that Tucker was not paid for monies he earned when working for Takeover. All of these actions caused harm to Tucker.

More recently, Labor Smart (through its current management/Board of Directors) ensured that Mr. Tucker was frozen out of Labor Smart entirely, thwarting Tucker's ability to sell Labor Smart shares based on a fabricated "restriction" on the shares. Evidence will prove that the fabricated restrictions were spearheaded by Holley and Pavlik, in breach of duties owed to Tucker, but Labor Smart as an entity substantially participated in thwarting Tucker's ability to sell stock, causing financial damage.

The allegations are sufficient, and this now becomes a question of ***evidence/***proof.

**D.    The Tuckers Request Leave to Amend in Lieu of Dismissal.**

Rule 15(a)(2) Fed.R.Civ.P. provides that a Court should freely grant leave to amend "when justice so requires," and if a defective complaint can be cured, the

plaintiff(s) is/are entitled to amend before an action can be dismissed. *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000). The power to grant leave to amend is "entrusted to the discretion of the district court," but the court should grant leave unless it finds bad faith, undue delay, prejudice to the opposing party, or that an amendment would be futile. *Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010) (internal citations omitted).

### *1. Leave to Amend is Requested on the Breach of Contract Claim(s).*

In this instance, Labor Smart *seems* to argue that the Tuckers' allegations of Breach of Contract (for both the Bylaws and the July 2021 Agreement) are limited. While the Tuckers' disagree that the allegations are as simple as Labor Smart's motion states, if there is any question that the Tuckers need more specificity in their pleadings, they hereby request leave to amend. Particularly, the Tuckers request to amend to add:

a) additional facts to demonstrate how the November 2022 Special Meeting violated the written terms of the Bylaws;

b) that the offending conduct for Breach of Contract (the Bylaws) overlaps with tortious misconduct (Breach of Fiduciary Duties, Conspiracy to Commit Tort(s), Fraudulent Conveyance and/or Fraudulent Avoidance); and

c) factual and legal discussions of how the July 2021 Agreement implicates Labor Smart as a party.

Such an amendment would be proffered in good faith, since Labor Smart seems to misunderstand the pleading(s) made thus far. There is also no undue delay asserted, and the Tuckers are willing to move forward promptly on amending. Finally, there cannot be any argument that an amendment would be futile, since the arguments Labor Smart raised on Breach of Contract are *factual*, not based on lack of a cognizable legal theory.

### *2. Leave to Amend is Requested on the Aiding and Abetting Claim.*

On the Aiding and Abetting claim, Labor Smart argues that allegations of its misconduct are limited to the conduct of Directors Holley, McBride and Pavlik. While the Tuckers, again, disagree that the pleading is so limited, if there is any question of

sufficiency/specificity on this claim, the Tuckers request leave to amend to add additional elements of tortious misconduct that has been aided and abetting, including:

 a) Labor Smart (whether via Shareholders and/or via non-Directors/Officers) substantially participated and assisted Holley, McBride and Pavlik to "settle" the Florida Lawsuit by pledging director and officer positions to third parties who sued Labor Smart;

 b) Labor Smart's current Officers/Directors continued to assist and encourage misconduct for Takeover Industries to commit a fraudulent transfer/fraudulent avoidance. In other words, Labor Smart (under its current Directors/leadership) substantially assisted, participated, and/or encouraged Takeover and NextGen to ignore debt owed by Takeover and to transfer ownership of assets into NextGen;[4] and

 c) Labor Smart's current Officers/Directors substantially assisted, encouraged, and participated in falsifying a "restriction" on the Tuckers' Labor Smart stock.[5]

Again, these requested amendments would cure Labor Smart's current arguments and would be made in good faith, without delay. The amendments would not be futile, as evidence will prove that Labor Smart and its current leadership is taking tortious acts.

**E. Dismissal is Not Warranted Under Rule 13(a)(1).**

In its final argument, Labor Smart suggests that the Tuckers were required to file their Counterclaims in August 2022 because the claims are compulsory under Rule 13(a).

While Labor Smart is correct that undersigned counsel filed this matter early on (in March 2022), and that a Third-Party Complaint was filed in May 2022 (Doc. 38), Labor Smart ignores the **full** procedural history. First, the Tuckers did not simply "answer" the Third-Party Complaint against them. The Tuckers answered and

---

[4] The Tuckers agree to add an additional/independent claim for Fraudulent Avoidance or Fraudulent Transfer against Takeover Industries, Inc. and to more fully state the claims against Labor Smart, NextGen, and Zarro for aiding and abetting this misconduct.

[5] The Tuckers agree to add an additional/independent claim for Tortious Interference by Labor Smart in lieu of the claim for Aiding and Abetting regarding Labor Smart's involvement on restricting the Tuckers' stock "restriction." Such an amendment would then require the Tuckers to add additional parties, *i.e.,* personally naming/identifying all of the current Directors of Labor Smart as parties who have aided and abetted the misconduct by Labor Smart in its Tortious Interference.

- 15 -

simultaneously filed a Motion to Dismiss. (Docs. 58, 60.) Labor Smart also ignores that Labor Smart was not the original "plaintiff" in the third-party claims; Michael Holley was the original pleader. (*See, e.g.,* Docs. 38, 61, 67.) The Tuckers then timely filed a Motion to Dismiss the claims against them (Doc. 75). It was not until March 10, 2023 that Labor Smart asked to be a "party" to this lawsuit (Doc. 123), and it was not until **_May 1, 2023_** that Labor Smart was actually permitted to become a party (Third-Party Complainant) in this matter. (Doc. 129.)

Promptly upon this Court's permission for Labor Smart to proceed as a plaintiff, the Tuckers timely filed a Motion to Dismiss the claims against them. (Doc. 134). That motion was filed on June 5, 2023, and this Court was able to rule on October 6, 2023. (Doc. 140.) The Court ordered the Tuckers to file a responsive pleading (*Id.*), a subsequent request for a status was requested (Doc. 141), Labor Smart filed an Application for Default (Doc. 142), and after the Clerk entered default, the Court set aside the default and ordered the Tuckers to file a first responsive pleading to the claims (now being prosecuted by Labor Smart) within fourteen (14) days of June 24, 2024. (Doc. 147.) On July 8, 2024, the Tuckers filed a **timely** first responsive pleading, answering the claims by Labor Smart but also filing Counterclaims. (Doc. 148.) There is no doubt that the July 8, 2024 filing comports with the Court's deadline of "14 days") issued on June 24, 2024. *See*, Rule 6(a)(1)(A)-(C), Fed.R.Civ.P.

The operative pleading (Complaint) in this case is that which was filed in September 2022 (Doc. 67). (Doc. 129, permitting Labor Smart to proceed with Doc. 67 as the operative "Amended Complaint.") Then, Claim I of the "Amended Complaint" was dismissed with prejudice on October 6, 2023, meaning that Labor Smart's only remaining claims against the Tuckers are for:

a) Breach of Fiduciary Duty Against Mr. Tucker for a failure to turn over funds owed to Labor Smart (for Luis Sequeria's private placement funds);

   b)  Conversion for Mr. Tucker for an alleged failure to turn over funds from Mr. Sequeria to Labor Smart; and

   c)  Contribution by Mr. Tucker, if the Holley Defendants were found to be liable for the acts and/or omissions by Takeover.

(Doc. 140 (Order setting forth the operative pleadings and dismissing certain claims).)

  By the time the Tuckers answered and counterclaimed against Labor Smart, they complained about misconduct of Labor Smart starting in November 2022. (Doc. 148 at ¶¶62-75, 77-101.) None of the allegations relate to anything that was known to the Tuckers as **Labor Smart** misconduct (nor conduct attributable to Labor Smart) when the initial Counterclaim was filed by Defendant Michael Holley back in August 2022. Certainly, nothing of November 2022 misconduct could have been filed in August, since August clearly pre-dates November (2022).

  Simply put, Labor Smart is mistaken (if not trying to intentionally mislead this Court) that claims arising in late (November) 2022 must have been filed by August 2022. Labor Smart is mistaken (or intentional) in claiming that conduct from November 2022 was required to be filed in March 2022, which predated this lawsuit. Labor Smart's misleading history and/or factual mistakes are egregious, if not sanctionable misleading. Nonetheless, this Court cannot possibly find that the Tuckers were required to file a <u>compulsory</u> counterclaim under Rule 13(a)(1) that did not exist when Doc. 67 was filed.

### III. CONCLUSION

  For each of the reasons stated above, Labor Smart's Motion to Dismiss should be denied in its entirety. If there is any dispute about the nature of the pleadings, the Tuckers should be granted leave to amend. Nothing in this matter can be found to be untimely and/or ripe for dismissal under Rule 13(a)(1) as a "compulsory" counterclaim.

  The Tuckers should be fully entitled to proceed to discover the ***<u>facts</u>*** of this case.

1       RESPECTFULLY SUBMITTED this 3rd day of September, 2024.

**MANOLIO & FIRESTONE, PLC**

By: /s/ Veronica L. Manolio
     Veronica L. Manolio
     8686 E. San Alberto Dr., Suite 200
     Scottsdale, Arizona 85258
     *Attorneys for the Tucker Defendants,
Counterclaimants, and Third-Party Claimants*