# EXHIBIT A

Paul M. Levine, Esq. (007202)
**PAUL M. LEVINE, P.C.**
8502 E. Via de Ventura, Suite 230
Scottsdale, Arizona 85258
Telephone:  (480) 302-4102
plevine@pmlevinepc.com
*Attorney for Labor Smart, Inc,*

# IN THE UNITED STATES DISTRICT COURT
# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Labor Smart, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Jason and Melissa Tucker, <br><br> Defendants. | Case No. 2:22-cv-00357-PHX-JJT <br><br> **LABOR SMART INC.'S RULE 12(b)(6) AND RULE 13(a) MOTION TO DISMISS**[1] |

Plaintiff/Counterclaimant Labor Smart, Inc., through its counsel, pursuant to Rules 12(b)(6) and 13(a)(1), Federal Rules of Civil Procedure, moves to dismiss the Counterclaim. This Motion is supported by the attached Memorandum of Points and Authorities and the entire record in this case.

## MEMORANDUM OF POINTS AND AUTHORITIES
### Rule 12(b)(6) Motion

**I.     Allegations in Counterclaim I: Breach of Contract.**

Counterclaim I alleges breach of 2 contracts: *first*, the Labor Smart Bylaws, and *second*, a July 2021 Agreement. (Doc. 148, ¶'s 81 – 85.)[2]

**A.     Allegations Re: Labor Smart Bylaws.**

---

[1] Undersigned counsel certifies that before filing the Motion, he notified opposing counsel of the issues asserted in the Motion. Opposing counsel responded. The parties were unable to agree that the Counterclaim was curable in any part by a permissible amendment.

[2] Counterclaimants have not attached either the Bylaws or the July 2021 Agreement to the Counterclaim. They are attached to this Motion.

The Tuckers allege on November 7, 2022, Third-Party Defendants Holley, McBride and Pavlik "held a 'Special Meeting of the Board of Directors of Labor Smart, Inc.'" (Doc. 148, ¶ 62.) The Tuckers allege Labor Smart breached the Bylaws by taking certain actions, i.e., "an improper 'Special Meeting,' removing Tucker from his LTNC positions, and depriving Tucker from voting the 17 Series A Preferred Shares he owned to conduct LTNC business". (Doc. 148, ¶ 82.)

### B. Allegations Re: July 2021 Agreement.

The Tuckers allege:

83. Additionally, LTNC is a party to the July 2021 agreement, signed by all of the Board of Directors of LTNC and promising Tucker 12 Preferred Shares (4 from each Holley, McBride, and Pavlik) and 750M common shares once LTNC received a "current" status from OTC markets.

84. Although LTNC has received "current' status on the OTC markets, and despite that the Tuckers made demand for the Preferred and Common Shares owed [sic] by Holley and McBride, LTNC has refused to honor the July 2021 Agreement.

### II. Allegations in Counterclaim II: Aiding and Abetting Tortious Misconduct.

The Tuckers allege:

10. The Tuckers are informed and believe that each of the individual Third-Party Defendants [Holley, McBride, Pavlik and Zarro] took actions as agent(s), employee(s), and/or representatives of LTNC and/or Takeover and/or Next Gen. In taking such actions, each individual was acting within the course and scope of the agency, employment, and/or representation with knowledge, acquiescence, and/or ratification by each and every other Defendant for the acts taken.

.          .          .

89. Through the actions described in this Complaint, LTNC knowingly and intentionally assisted, encouraged, participated, or cause the Third-Party Defendants [Takeover, Next Gen, Holley, McBride, Pavlik and Zarro] to: a) breach various fiduciary duties owed to Tucker; b) breach various agreements with Tucker, both written and implied; c) interfere with Tucker's voting and financial rights in Takeover and LTNC; d) deprive Tucker of payment(s) owed to him by Takeover; e) interfere with the Tuckers' shares/ability to sell shares of LTNC stock.

90. Moreover, LTNC has substantially participated in assisted Takeover in shutting down its business, reopening under Next Gen, in an effort to avoid liabilities owed by Takeover to Jason Tucker (i.e., assisting Takeover and committing a fraudulent transfer or avoidance).

There are no allegations in the Counterclaim or Third-Party Complaint of any alleged conduct by Labor Smart that was not also the conduct of either Holley, McBride or Pavlik. Stated differently, all of the conduct of Holley, McBride and Pavlik was as an "agent, employee or representative" of Labor Smart or Takeover.

### III.     Labor Smart Complied With Its Bylaws.

#### A.     Requirements For a Special Meeting of the Board of Directors in the Labor Smart Bylaws.[3]

The Labor Smart Bylaws contain specific requirements for Special Meetings of the Board of Directors. In Article III (Directors), the Bylaws state:

> SECTION 2. **NUMBER AND QUALIFICATION OF DIRECTORS**. The authorized number of directors shall be three (3) until changed by amendment of the Articles or by a bylaw duly adopted by approval of the outstanding shares amending this Section 2.
>
> .     .     .

---

[3] A copy of the Bylaws is attached as **Exhibit "A"**.

- 3 -

SECTION 6. **SPECIAL MEETINGS**. Special meetings of the Board for any purposes may be called at any time by the Chairman of the Board, the President, or the Secretary or a majority of the directors. Special meetings of the Board shall be held upon at least four (4) days written notice or forty-eight (48) hours' notice given personally or by telephone, telegraph, telex or other similar means of communication. Any such notice shall be addressed or delivered to each director at such director's address as it is shown upon the records of the Corporation or as may have been given to the Corporation by the director for the purposes of notice.

SECTION 7. **QUORUM**. A majority of the authorized number of directors constitutes a quorum of the Board for the transaction of business, except to adjourn as hereinafter provided. Every act or decision done or made by a majority of the directors present at a meeting duly held at which a quorum is present shall be regarded as the act of the Board, unless a greater number be required by law or by the Articles of Incorporation. A meeting at which a quorum is initially present may continue to transact business notwithstanding the withdrawal of directors, if any action taken is approved by at least a majority of the number of directors required as noted above to constitute a quorum for such meeting.

   **B.** **Labor Smart Complied with the Bylaws Re: Notice and Voting at the November 7, 2022 Special Meeting of the Board of Directors.**

On November 4, 2022, Jason Tucker was given "NOTICE OF SPECIAL MEETING OF THE BOARD OF DIRECTORS OF LABOR SMART INC."[4] Mr. Tucker's counsel, Ms. Manolio, confirmed receipt of the email and notice.[5] Despite having the Notice of the meeting, neither Mr. Tucker nor his attorney attended.

Both Board members attended: Holley and McBride.[6] The quorum requirement was satisfied. Both Mr. McBride and Mr. Holley approved all of the Resolutions adopted at the Meeting.[7]

---

[4] A copy of the email to all of the Board members, dated November 4, 2022 at 4:06 PM, with the Notice, is attached as **Exhibit "B"**.

[5] Ms. Manolio's November 4, 2022 email, acknowledging receipt of the Notice, as well as emails back and forth between attorneys Jennifer Reiter, Matthew Canini and Ms. Manolio are attached collectively as **Exhibit "C"**.

[6] Mr. Pavlik attended but was not a Board member.

[7] A copy of the November 7, 2022 Resolution of the Board of Directors of Labor Smart Inc. is attached as **Exhibit**

As set forth above, a majority of the authorized number of Directors constitutes a quorum for purposes of a Special Meeting. If a quorum is present, a decision by a majority of the Directors is "regarded as the act of the Board". There is no question that at the November 7, 2022 Special Meeting of the Board of Directors a quorum was present and a majority of those present voted in favor of the Resolutions. Labor Smart complied with the terms of its Bylaws for the November 7, 2022 Special Meeting of the Directors. There was no "improper 'Special Meeting,'". Tucker was properly removed from his LTNC positions. No one "deprived Tucker from voting". Mr. Tucker (and his counsel) voluntarily chose not to attend the meeting after acknowledging receipt of proper notice.[8]

The Tuckers have failed to state a claim that Labor Smart breached the Bylaws and the portion of the Counterclaim alleging a breach of the Bylaws should be dismissed.

### IV. Labor Smart Is Not a Party to the July 2021 Agreement.[9]

The July 2021 Agreement states:

> This Agreement memorializes an Agreement made in Scottsdale, Arizona in July 2021 by and between Toby McBride, Michael Holley, Joseph "Joe" Pavlik, in their respective positions as shareholders of Labor Smart, Inc., a Georgia Corporation and/or Takeover Industries, Inc. a Nevada Corporation and/or in their individual capacities and Jason Tucker, an individual (collectively the "Parties").

The Agreement was signed by Holley, McBride, Pavlik and Tucker. Labor Smart is ***not*** a party to the Agreement and ***no one signed on behalf of Labor Smart***.[10]

---

"D".
[8] After Mr. Tucker and Ms. Manolio acknowledged receipt of the November 4, 2022 meeting (Exhibit "B"), Mr. Canini emailed a detailed response to Ms. Manolio, stating in part: "[W]e would like to give your clients an opportunity to appear at Mondays meeting and do not want them to be under the misimpression that their appearance is not required by virtue of some technical defect." (See Exhibit "C".) In response to both Mr. Canini and Ms. Reiter, Ms. Manolio wrote: "Mr. Tucker will not participate; I will not participate; and I am instructing Mr. Pavlik not to participate (though I cannot control if he chooses to do so)." (See Exhibit "C".)
[9] A copy of the July 2021 Agreement is attached as **Exhibit "E"**.
[10] The Tuckers separately allege the same claim for breach of contract against Third-Part Defendants Holley,

- 5 -

In order to assert a claim for breach of contract, a party must allege the existence of a contract, breach and resulting damages. *First American Title Insurance Company v. Johnson Bank*, 239 Ariz. 348, 372 P. 3d 292 (Sup. Ct. 2016). Here, the breach of contract claim against Labor Smart fails as a matter of law because there is no contract between Labor Smart and the Tuckers.

The court should dismiss the breach of contract claim based on the alleged breach of the July 2021 Agreement because it fails to set forth a claim for which relief can be granted.

### V. Labor Smart Is Not Liable for Aiding and Abetting its Directors.

The Tuckers allege Third-Party Defendants Holley, McBride and Pavlik are liable for Breach of Fiduciary Duties (Claim I), Breach of Contract (Claim II) and Breach of Covenant of Good Faith and Fair Dealing (Claim III). (Doc. 148, ¶'s 92 – 107.) Only Claim I is a tort claim. The Tuckers allege Takeover and Labor Smart aided and abetted the Third-Party Defendants with respect to all of these claims.

Pursuant to Arizona law, a claim that a person aided and abetted tortious misconduct has three elements: (1) the primary tortfeasor must commit a tort that causes injury to the plaintiff; (2) the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach. *Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 38 P. 3d 12 (Sup. Ct. 2002). The Tuckers allege Labor Smart aided and abetted its own Directors (Holley, McBride and Pavlik) in the commission of the alleged claims.

The Tuckers allege that "each of the individual Third-Party Defendants took

---

McBride and Pavlik.  The Tuckers allege: "Holley, McBride and Pavlik each entered the July 2021 Agreement…" (Doc. 148, ¶'s 97-101.)

- 6 -

actions as agent(s), employee(s), and/or representatives of LTNC…. In taking such actions, each individual was acting within the course and scope of the agency, employment, and/or representation with knowledge, acquiescence, and/or ratification by each and every other Defendant for the acts taken." (Doc. 148, ¶ 10.) The Tuckers do not allege any conduct by Labor Smart that is distinct or separate and apart from the alleged conduct of Holley, McBride and Pavlik. All of the alleged conduct by Labor Smart was by and through the conduct of Holley, McBride and Pavlik, the "agents, employees or representatives of Labor Smart."

A claim for aiding and abetting requires at least two actors engaging in ***separate conduct***. The Restatement clearly contemplates two actors engaging in separate conduct. "[f]or harm resulting to a third person from the tortious *conduct of another,* one is subject to liability if he … knows that the *other's conduct* constitutes a breach of duty and gives substantial assistance or encouragement *to the others so to conduct himself.*" *Kubli v. AmTrust Insurance Company of Kansas*, 2019 WL 13196105 (D. Ariz.), citing Restatement (Second) of Torts § 876(b).

In *Kubli*, the issue was whether the insurance company was liable for aiding and abetting its insurance adjuster. The defendant insurance company filed a motion to dismiss, arguing the insurance company cannot be liable for aiding and abetting where the conduct of the insurance company is predicated entirely on the conduct of its insurance adjuster. "It would make little sense to say that the adjuster's conduct substantially assisted or encouraged the insurer's breach of duty when that very conduct *was* the breach of duty." *Id.*, *3.

> [T]he Court agrees with Defendants that an aiding and abetting claim in the insurance bad faith context requires 'some action taken by [the adjuster] separate and apart from the facts giving rise to the [bad faith] claim against' the insurer. [Citation omitted.] In this case, Plaintiff has not argued that there is any separate conduct. Review of the complaint reveals

- 7 -

> that Plaintiff's bad faith claim against AmTrust is predicated entirely on the conduct of Greer.… Because that same conduct is the basis for Plaintiff's aiding and abetting claim against Greer, Plaintiff has failed to state a claim for aiding and abetting.

*Id*., *3. See also, *Aguado v. XL Insurance America*, --- F. Supp. 3d ---, *5 (D. Ariz. 2024), which held as follows:

> Because the complaint alleges no action 'taken by [Intercare] that is separate and apart from the facts giving rise to the claim against [XL Insurance], Plaintiff has failed to state a claim for aiding and abetting against [Intercare].'

In *Swift v. Wesco Insurance Company*, 2018 WL 11323085, *2 (D. Ariz.), the issue was "whether Plaintiff's aiding and abetting claim is viable when it arises from the same actions upon which the principal tort is based." The court granted a motion to dismiss because the plaintiff alleged the same actions gave rise to both the bad faith claim and the aiding and abetting claim.. See also, *Young v. Liberty Mut. Group, Inc*., 2013 WL 840618 (D. Ariz.).

> In order for Mr. Dumas and Liberty Mutual to have committed 'tortious *acts* in concert,' there must be some factual allegation showing a separate tortious act was committed by Mr. Dumas. Because the Complaint alleges no such facts, Plaintiff has failed to state a claim against Mr. Dumas.

To state a claim for aiding and abetting tortious conduct, "[t]here must be some distinction between the primary tort and the aiding and abetting conduct." *Counts v. Technology Insurance Company Inc*., 2019 WL 13195132, *2 (D. Ariz.). "Numerous cases in this District reinforce the determination that in order for Plaintiff's aiding and abetting claim against Defendants S&C and Kerner to survive, she must allege some action taken by these defendants separate and apart from the facts giving rise to the claim against ALIC." *Centeno v. American Liberty Insurance Company*, 2019 WL 568926 (D. Ariz.).

- 8 -

Here, the Tuckers do not allege any conduct by Labor Smart beyond that which is alleged against Third Party Defendants Holley, McBride and Pavlik. Therefore, Count II must be dismissed.

### Rule 13(a)(1) Motion

Rule 13(a)(1), Federal Rules of Civil Procedure, states: "A pleading *must* state as a counterclaim any claim that-at the time of its service-the pleader has against an opposing party if the claim: **(A)** arises out of the transaction or occurrence that is the subject matter of the opposing party's claim;"

### VI.   Factual and Procedural Background.

The Tuckers' counsel, Ms. Manolio, has been involved in this case from its original filing date, when she filed the Complaint against Holley on behalf of then Plaintiff Takeover Industries, Inc. (Doc. 1.) On **May 20, 2022**, the Tuckers were served with the Labor Smart Third-Party Complaint. (Doc. 38.) On **August 15, 2022**, the Tuckers filed their Answer to the Third-Party Complaint. (Doc. 58.) No Counterclaim was alleged. Now, more than two years after service of the Labor Smart Complaint and almost two years after the Tuckers filed their Answer to the Labor Smart Complaint, the Tuckers are attempting to assert a Counterclaim against Labor Smart.[11]

Virtually all the allegations in the Counterclaim and Third-Party Complaint are identical to the allegations made in the original Complaint filed by Takeover (through Ms. Manolio) against Holley. For example, compare Counterclaim and Third-Party Complaint (Doc. 148), ¶'s 2, 3, 4, 5, 6, 7, 8, 10, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 34, 35, 36, 37, 38, 39, 40, 47, 48, 49 and 50, to the Complaint (Doc. 1), ¶'s 4, 5, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 25, 26, 27, 28, 29, 30, 31, 33, 34, 36, 37,

---

[11] The Tuckers are also seeking to add Third-Party claims against Takeover, Next Gen Beverages, LLC, Holley, McBride, Pavlik and Zarro.

- 9 -

38 and 39.[12] The Tuckers waited more than two years to assert the Counterclaim and Third-Party Complaint, contrary to the requirements of Rule 13.

On May 1, 2023, this court entered an Order (Doc. 129) denying the Motion to Realign Parties and Amend the Third-Party Complaint because it found Takeover failed to meet the threshold requirement of timeliness pursuant to Rule 24(a)(2). It is respectfully urged that the timeliness standard applies equally to Rule 13(a), which requires that a party *must* state as a counterclaim any claim that, at the time of its service, the pleader has against an opposing party.

As is evident from the allegations in the original Complaint and the recently filed Counterclaim and Third-Party Complaint, the factual allegations against Labor Smart (and Takeover) were known to the Tuckers as early as March 8, 2022, when the original Complaint was filed. Mr. Tucker is the individual who retained Ms. Manolio to represent Takeover. The facts were also well known to the Tuckers when they filed their Answer on August 15, 2022. The Tuckers have not satisfied the Rule 13(a) requirement because, at the time of service of the Labor Smart Complaint (May 20, 2022), they had knowledge of the allegations in support of the Counterclaim but failed to assert the Counterclaim. Rule 13(a) requires that: "A pleading *must* state as a counterclaim any claim that-at the time of its service-the pleader has against an opposing party if the claim: **(A)** arises out of the transaction or occurrence that is the subject matter of the opposing party's claim;"

## VI.  Conclusion.

For all the foregoing reasons, the court should dismiss the Counterclaim pursuant to Rule 12(b)(6) because it fails to set forth a claim upon which relief can be granted, and because it is not timely pursuant to Rule 13(a)(1).

---

[12] In the original Complaint, Ms. Manolio alleged Takeover was damaged by the alleged conduct of Holley. Now, more than two years later, Ms. Manolio alleges the Tuckers are the party damaged by virtually the same alleged conduct.

- 10 -

1  Respectively submitted this 30th day of July, 2024

**PAUL M. LEVINE, P.C.**

By: /s/ *Paul M. Levine*
Paul M. Levine
8502 E. Via de Ventura, Suite 230
Scottsdale, Arizona 85258
*Attorneys for Labor Smart, Inc.*

**ELECTRONICALLY filed**
this 30th day of July, 2024

*/s /Libby S. Dwyer*

- 11 -