LAW OFFICES
**MANOLIO & FIRESTONE, PLC**
8686 E. San Alberto Dr., Suite 200
Scottsdale, Arizona  85258
(480) 222-9100
vmanolio@mf-firm.com
Veronica L. Manolio, SBN 020230
*Attorneys for Tucker Defendants, Counterclaimants,*
   *And Third-Party Claimants*

# IN THE UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Labor Smart, Inc. <br><br> Plaintiff, <br><br> v. <br><br> Jason and Melissa Tucker, <br><br> Defendants. <br><br> And related Counterclaims and Third-Party Claims. | Case No. 2:22-cv-00357-PHX-JJT <br><br> **COUNTERCLAIMANT TUCKERS' RESPONSE TO LABOR SMART'S MOTION TO DISMISS** <br><br> (Before the Honorable J. Tuchi) |

It is extremely difficult for Counterclaimants Jason and Melissa Tucker to respond to the Motion to Dismiss filed by Labor Smart, Inc. (Doc. 180) because Labor Smart misrepresents the pleadings, misstates the timing on factual allegations, and asks this Court to determine the truthfulness of what are obvious material <u>factual</u> disputes.

Worse, Labor Smart makes a timeliness argument under Rule 13(a), Fed.R.Civ.P., claiming that the Tuckers did not file a compulsory counterclaim in August 2022, when they answered the Third-Party Claim filed against them.  The offending (mis)conduct about which the Tuckers complain is alleged to have begun in **November 2022** – multiple months later.  The allegations do not arise out of the same transaction or occurrence (it is not compulsory), and Rule 13(a)(1) does not apply here.

Labor Smart misses the mark on every argument, and dismissal is unwarranted for each reason asserted.

## I. FACTUAL ALLEGATIONS/BACKGROUND FACTS

Labor Smart misrepresents the fulsomeness of the allegations that were pled in the Tuckers' First Amended Counterclaims (Doc. 179).

### A. Allegations Regarding the "Special Meeting" Labor Smart's Bylaws

Labor Smart cites only ¶62 of the Tuckers' pleading, pretending that the sole allegation for breach of the Bylaws by Labor Smart is that the November 7, 2022 "Special Meeting" was improper. In reality, the Tuckers have pled:

- This lawsuit was originally filed by Takeover in early 2022, attempting to recover funds from Holley for his significant wrongdoing/misappropriation of Takeover funds and mismanagement of LTNC. This Court granted Takeover an injunction, making Holley cooperate to stop harming Takeover unnecessarily.

- By September 2022, Takeover discovered that McBride had been spending significant sums of Takeover funds on personal expenses. This had been a problem in 2021, but McBride signed an acknowledgement that he owed Takeover more than $243,000 for company funds he spent on personal expenses in 2021. Tucker then discovered at least an additional $30,000 taken by McBride in 2022.

- On or about September 20, 2022, McBride apologized profusely, admitting to spending Takeover funds, and promising to repay the Company.

- On September 21, 2022, McBride attended a Takeover Board of Directors meeting that was knowingly recorded, and McBride again apologized for lying and for taking company funds for his personal use.

- During the September 21, 2022 Board Meeting, all Takeover Directors (including McBride) agreed that McBride would be placed on a 60-day leave of absence to allow Takeover to investigate the misconduct and discuss findings.

- ***McBride readily agreed to refrain from all Takeover and LTNC business during his 60-day leave.***

- Worse, and more importantly, Tucker discovered that Holley, McBride, (and likely Pavlik) committed wrongdoing by over-pledging the shares of Takeover.

- Preliminary evidence demonstrated that Holley and McBride sold, conveyed, offered, and/or committed 210% of Takeover's interest. While Holley had "sold" to LTNC (and Takeover owns/votes 800M shares of LTNC's common stock), Holley, McBride, and Pavlik likewise conveyed 10% of Takeover to another party and also pledged/committed 25% each to Holley, McBride, Pavlik, and Tucker.

- Tucker did not know (and had no reason to know) that Holley, McBride, and Pavlik had over-pledged Takeover at the time he became involved in the entity.

- *By November 2022, Holley, McBride, and Pavlik all colluded (along with the help of legal counsel, Matthew Canini for Holley and Jennifer Reiter for McBride) to stage a "takeover" of Takeover. Upon information and belief, this collusive effort was made because Holley, McBride, and Pavlik all knew that strong evidence existed to show their ongoing schemes and dishonesty in Takeover and LTNC business.*

- *On or about November 7, 2022, Holley (who was not a Director or Officer of Takeover at that time), McBride (who was on administrative leave from Takeover) and Pavlik (a collusive member of the group) all held a "Special Meeting of the Board of Directors of Labor Smart, Inc."*

- *Under the guise of conducting LTNC business, Holley, McBride, Pavlik, and legal counsel all discussed the "pending litigation" (this lawsuit), Takeover's financial records, and electing "a new board of directors of Takeover."*

- Counsel for Holley (Canini) and McBride (Reiter) refused to record the meeting, despite requests from the Tuckers' counsel.

- On November 8, 2022, Canini forwarded alleged "Resolutions" from both LTNC and Takeover, verifying that Holley, McBride, and Pavlik each decided to:
    a. "Terminate" McBride's leave of absence, despite his theft from Takeover;
    b. Suspend Jason Tucker as President of Takeover;
    c. Reappoint McBride as Takeover's CEO;
    d. Appoint Pavlik in Tucker's stead as President of Takeover.

- 3 -

- After improperly removing Tucker from Takeover and "freezing" him out of LTNC, Holley, McBride, and Pavlik continued collusive efforts with third-party Thomas ("Tom") Zarro to revamp Takeover and LTNC.

- By January 2023, Holley, McBride, and Pavlik were each sued personally in Florida by investors claiming that they had a long-term scheme to defraud investors into LTNC. *See*, Case No. 23-CV-60023-RS in the Southern District of Florida (the "Florida Lawsuit" herein).

- Upon information and belief, Holley, McBride, Pavlik, and Zarro (among others) negotiated the Florida Lawsuit into a Settlement Agreement by pledging LTNC preferred and common shares that are owned by Tucker. These men negotiated on behalf of Takeover and LTNC as one "Company," disregarding formalities.

- LTNC, along with the Third-Party Defendants, has conducted LTNC business throughout 2023-2024 without any regard to Tucker or the 17 Preferred Shares of LTNC owned by Tucker (and/or business entities that he owns).

- LTNC is subject to written Bylaws that govern its business endeavors, including the rights and procedures applicable to Shareholders and Directors.

- By taking the actions described above, including holding an improper "Special Meeting," removing Tucker from his LTNC positions, and depriving Tucker from voting the 17 Series A Preferred Shares he owned/controlled to conduct LTNC business, LTNC has breached the Bylaws.

(Doc. 148 at ¶¶52-66, 69, 72-73, 75.) (Emphasis added.)

**B.     Allegations Regarding the July 21, 2021 Agreement**

When it comes to the July 21, 2021 Agreement, the Tuckers have pled:

- On June 10, 2021, the Directors of Takeover (which included Holley, McBride and Pavlik) held a "Special Meeting" in Arizona and specifically resolved:

    a. The Company (Takeover) would have four Directors: Holley, McBride, Pavlik, and Tucker.
    b. Tucker would be appointed as the President of Takeover, while Holley would remain its Treasurer and be appointed as both the Chief Operating Officer and Chief Financial Officer;

- 4 -

- c. McBride would act as Takeover's Chief Executive Officer and Secretary; and
- d. The parties would cooperate to fulfill all paperwork requirements necessary to complete these elections and appointments.

• At the time of this meeting, McBride, Holley and Pavlik were the only Directors of LTNC and Takeover. Thus, this was a unanimous decision of all of the then-Directors [of LTNC and Takeover].

• With Tucker acting as President of Takeover, its success (and that of LTNC) was remarkable….

• It is fair to say Takeover had become very successful within its first year.

• In early August 2021, Holley, McBride, Pavlik and Tucker had put together a "Takeover – LTNC Agreement" to memorialize the discussions and agreements they made during the June 2021 Board Meeting. This document (hereafter "the July 2021 Agreement") was discussed thoroughly in a Special Meeting of the Board of Directors.

• On <u>August 6, 2021</u>, Holley, McBride, Pavlik and Tucker held their second Board of Directors Meeting and executed a Resolution that approved the July 2021 Agreement in its entirety, explicitly making it retroactive to July 1, 2021, and a fully-executed copy of the July 2021 Agreement was attached to the Resolution for clarity. The Resolution further specified that the decisions made were unanimous.

• In turn, the July 2021 Agreement specified the following terms:

- a. Holley, McBride, Pavlik, and Tucker were each to receive 25% of the shares in Takeover;
- b. Pavlik and Tucker were each to be named as Directors of Takeover;
- c. Holley, McBride, Pavlik, and Tucker were each entitled to receive monthly payments, draws and/or salary equal to each other;
- d. Holley, McBride, and Pavlik collectively held 51 Preferred Shares (17 shares each) in LTNC, which amounts equaled 51% of the voting rights in LTNC;
- e. 12 of the Preferred Shares were to be released to Tucker when LTNC received a "current" status from OTC Markets or another market, such as NASDAQ, NYSE, or an equivalent;

    f. In addition, when LTNC received a "current" status, Tucker was to receive 750M common shares of LTNC valued at the same rate as McBride's shares;
    g. None of the parties' LTNC shares could be diluted without "collective" agreement;
    h. Further changes to the Agreement had to be in writing; and
    i. The Agreement was governed by Arizona state law.

- LTNC is a party to the July 2021 Agreement, signed by all of the Board of Directors of LTNC and promising Tucker 12 Preferred Shares (4 from each Holley, McBride, and Pavlik) and 750M common shares once LTNC received a "current" status from OTC markets.

- Although LTNC has received "current" status on the OTC markets, and despite that the Tuckers made demand for the Preferred and Common Shares owed by Holley and McBride, LTNC has refused to honor the July 2021 Agreement.

(Doc. 179 at ¶¶22-23, 26-29, 83-84.)

### C. Allegations Regarding Abuse of Process

Labor Smart grossly misstates the allegations on the Tuckers' Abuse of Process claim.[1] The Tuckers provided a slew of actions by Labor Smart that constitute (mis)using legal processes in improper ways. Many of those allegations are cited above, but the highlights are reiterated here by inference in the actual allegations:

- The officers of Labor Smart colluded with the help of Labor Smart legal counsel to stage a "takeover" of Takeover and Labor Smart, to hide the ongoing schemes and dishonesty in the Labor Smart business;

- Labor Smart used the guise of "conducting [Labor Smart] business" to discuss this pending litigation;

---

[1] Labor Smart also ignores that counsel had a multiple-communication good faith conferral on this issue, both telephonic and in analysis-based written correspondence. Undersigned pointed to multiple allegations in the First Amended Counterclaim (which were incorporated into the Abuse of Process claim) as part of this claim, but Labor Smart contends that it is legally entitled to judgment. This is a legal argument, not an issue for the sufficiency of pleading/dismissal stage.

- 6 -

- Labor Smart decided to "terminate" McBride's leave of absence (which was implemented in the first place to avoid his further spending of company funds for personal use);

- Labor Smart then sought to "realign" the parties in this lawsuit (and make Labor Smart the actual Plaintiff);

- Labor Smart used this lawsuit to cover the fact that Holley and McBride had sold, conveyed, offered, and/or committed 210% of Takeover's interest (i.e., Labor Smart had to control this lawsuit to avoid Labor Smart shareholders learning of the Labor Smart bad acts);

- Labor Smart continued conducting Labor Smart business while ignoring that Jason Tucker owned 17 Preferred Shares and had the right to vote for all Labor Smart business;

- Labor Smart then involved itself in a lawsuit where Holley, McBride, and Pavlik were sued personally (Case No. 23-CV-60023-RS in the Southern District of Florida), and Labor Smart pledged Labor Smart stock to resolve that case for personal claims;

- Labor Smart then used this lawsuit as a means to threaten the Tuckers, even trying to restrict the sale of their Labor Smart stock; conversely, Labor Smart tried to "settle" this lawsuit by removing the stock restrictions Labor Smart fabricated.

*See, e.g.*, Doc. 179 at ¶¶59-72-73, 75-79.

Based on the foregoing factual allegations, the Tuckers pled legal claims that Labor Smart had "willfully used processes in this matter" and that it has continued to pursue claims "in a wrongful manner," which are "not proper in the regular course of proceedings." *Id*. at ¶87. The Tuckers further pled that Labor Smart is using this Court and the legal process "for an improper purpose" and "with an ulterior motive." *Id*. at 89.

    **D.**    **Allegations Regarding the Aiding and Abetting Claim**

On their claim for Labor Smart aiding and abetting misconduct, the Tuckers have not limited the actions of Labor Smart to those taken by Holley, McBride, and Pavlik. Instead, the Tuckers pled a significant history of Labor Smart actions that give rise to the aiding and abetting claim:

- By November 2022, Holley, McBride, and Pavlik all colluded (along with the help of Labor Smart and Takeover's legal counsel) to stage a "takeover" of Takeover. This collusive effort was made because Holley, McBride, and Pavlik all knew that strong evidence existed to show their ongoing schemes and dishonesty in Takeover and Labor Smart business.

- On or about November 7, 2022, Holley (who was not a Director or Officer of Takeover at that time), McBride (who was on administrative leave from Takeover) and Pavlik (a collusive member of the group) all held a "Special Meeting of the Board of Directors of Labor Smart, Inc."

- After improperly removing Tucker from Takeover and "freezing" him out of LTNC, Holley, McBride, and Pavlik continued collusive efforts with third-party Thomas ("Tom") Zarro to reorganize Takeover and Labor Smart.

- By <u>January 2023</u>, Holley, McBride, and Pavlik were each sued personally in Florida by investors claiming that they had a long-term scheme to defraud investors into Labor Smart. *See*, Case No. 23-CV-60023-RS in the Southern District of Florida (the "Florida Lawsuit").

- Upon information and belief, Holley, McBride, Pavlik, and Zarro (among others) negotiated the Florida Lawsuit into a Settlement Agreement by pledging LTNC preferred and common shares that are owed to Tucker. These men negotiated on behalf of Takeover and Labor Smart as one "Company," disregarding formalities.

- Upon information and belief, Holley, McBride, Pavlik and Zarro (among others) colluded to "strip" Takeover of all its rights/assets/liabilities, disregarding this ongoing lawsuit and the Nevada Lawsuit and start a new/competing entity, Next Gen, to carry on the identical business that Takeover conducted.

- Labor Smart, along with the Third-Party Defendants, conducted Labor Smart business throughout 2023 without any regard to Tucker or the 17 Preferred Shares of LTNC owned by Tucker (and/or business entities that he owns).

- Third-Party Defendants, including Zarro and Next Gen, have purposefully and repeatedly inserted themselves into this legal matter. By way of example, both before the "settlement" of the Florida Lawsuit and after, Tom Zarro has attempted to strongarm the Tuckers into resolving this lawsuit. Zarro (and others) have

- 8 -

threatened the Tuckers with the loss of common shares and Preferred Shares of LTNC rightfully owned by them and/or their business entities.

- Within the past 120 days (approximately), both Labor Smart and the Third-Party Defendants worked collectively to attempt to hold a "restriction" on the LTNC stock controlled by the Tuckers to ensure that they could not trade/sell.

- Specifically, Pavlik provided the LTNC Transfer Agent (Clear Trust, LLC) with false representations and claiming he never sold his common and Preferred Shares of LTNC to Tucker. Upon information and belief, this was done with the assistance of the Third-Party Defendants and Labor Smart/its Board of Directors.

- Labor Smart was fully aware of the financial obligations of Takeover, including knowledge that Takeover owed Tucker significant (but unpaid) compensation.

(Doc. 179 at ¶¶61-62, 69, 72-78, 93)

Based on the factual allegations, the Tuckers amply pled:

- Through the actions described in this Complaint, LTNC knowingly and intentionally assisted, encouraged, participated, or caused:

    a. Third-Party Defendants Holley, McBride, and Pavlik to breach fiduciary duties owed to Tucker;
    b. Third-Party Defendants Holley, McBride, and Pavlik to interfere with Tucker's voting rights in Takeover;
    c. Third-Party Defendants Holley, McBride, Pavlik, and Takeover to deprive Tucker of payments owed to him by Takeover;
    d. Third-Party Defendants Holley, McBride, Pavlik, and Takeover to commit fraud/enter a fraudulent Settlement Agreement in the Florida litigation;
    e. Third-Party Defendant Zarro to purposefully interfere with the Tuckers' shares/ability to sell shares of LTNC stock.

- Labor Smart has substantially participated and assisted Takeover in shutting down its business, reopening under Next Gen, in an effort to avoid liabilities owed by Takeover to Jason Tucker (i.e., assisting Takeover in committing a fraudulent transfer or avoidance).

*Id.* at ¶¶94-45.

In addition to the allegations pled, this Court may take judicial notice of the public filing(s) by Labor Smart, filed with the OTC Markets for "Pink" (open market) trading. The current publicly-filed Quarterly Report (Corrected) for Labor Smart delineates the company's Officers, Directors, and Control Persons of the Company, specifying that Labor Smart is controlled by multiple persons *other* than Third-Party Defendants Holley, McBride, and Pavlik.[2] *See*, **Exhibit B**, incorporated here by this reference. Labor Smart is apparently being currently run by Directors Tom Zarro, Luis Sequeria, Tom Fitzgerald, Sr., and Emmanuel ("Manny") Pacquiao; Labor Smart has 77 Shareholders, all of whom are entitled to a "one for one voting right" and 3 "Preferred" Shareholders, who are entitled to heightened weight on their votes. *Id*.

## II.   LAW AND ARGUMENT

### A.   Dismissal is Not Warranted on the Claim for Breach of Bylaws.

To be clear, Labor Smart is not complaining about the form of the Tuckers' pleading; Labor Smart asks this Court to interpret the Bylaws and apply the facts of what happened under the Bylaws to rule that no breach of contract occurred.[3]  Labor Smart seeks a definitive decision that its actions were **factually** proper.

First, Labor Smart argues that the November 7, 2022 "Special Meeting" was proper because proper Notice was provided. Labor Smart then argues that Holley and McBride were permitted to vote/approve all actions taken at this meeting. These arguments completely ignore the allegations that:

---

[2] For purposes of considering this Response, this Court may take judicial notice of this public filing under Rule 201, Federal Rules of Evidence, without converting the issue to a motion for summary judgment (even if the fact is technically outside of the pleadings*)*. *Lee v. City of Los Angeles*, 250 F.3d 668, 669 (9th Cir. 2001) (Internal citations omitted.)

[3] The Tuckers do not even agree that Labor Smart attached the correct version of the Bylaws to its motion; there appear to be varied versions, and only through discovery will the parties be able to factually decide which version was in effect.

- 10 -

- The Special Meeting was the result of collusion between Holley, McBride, Pavlik, and legal counsel;
- The Special Meeting was meant to avoid the improper actions of Holley, McBride, and Pavlik, conducted under the guise of Labor Smart business;
- Counsel for Holley (Matthew Canini) and McBride (Jennifer Reiter) refused to record the Meeting, despite a request from the Tuckers' counsel; and
- Jason Tucker was improperly removed from Takeover and "frozen" out of Labor Smart, and thereafter, Labor Smart, Holley, McBride, and Pavlik continued colluding with third parties to revamp Labor Smart.

In other words, the Tuckers pled that Labor Smart Bylaws were breached for a variety of reasons, not a mere failure of proper notice/quorum. Maybe more importantly, the Tuckers' Breach of Contract is not limited to breach by this "Special Meeting." The Tuckers also pled that after that meeting, Mr. Tucker was deprived from voting his 17 Series A Preferred Shares in conducting Labor Smart business. Doc. 179 at ¶75. That is a separate and distinct breach. While Labor Smart contends that the Resolution from the "Special Meeting" did not remove Jason Tucker from voting his 17 Series A Preferred Shares, that is not relevant. Labor Smart cannot avoid what it **did** simply because it did not record its bad acts in a Resolution.

Dismissal under Rule 12(b)(6) only considers whether a party has set forth well-plead factual allegations to support a cognizable legal theory. *See, e.g., Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). At this juncture, the Court is not to weigh the Tuckers' allegations against Labor Smart's version of the "truth" of such allegations; all well-pled factual allegations are taken as true and construed in the Tuckers' favor at this stage. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). So long as the Tuckers have set forth a plausible argument that the Bylaws were breached (and that Labor Smart is liable for the misconduct), the claim must move forward. *See, Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (The Tuckers must only have pled enough facts to state a claim that is plausible on its face.)

**B.     Dismissal is Not Warranted on Breach of the July 2021 Agreement.**

In addition to pleading breach of contract for the Labor Smart Bylaws, the Tuckers set forth a claim that Labor Smart was a party to the July 2021 Agreement, which specified that it was being signed by all of the Board of Directors of LTNC and promising Tucker 12 Preferred Shares (4 from each Holley, McBride, and Pavlik) and 750M common shares once LTNC received a "current" status from OTC markets. The Tuckers pled that Labor Smart is bound by the July 2021 Agreement because it was agreed to by McBride, Holley, and Pavlik <u>in their positions with Labor Smart</u> and that the Agreement intended to ensure that Labor Smart would make sure Jason Tucker received his preferred shares of Labor Smart once it became "current" on the OTC Markets.

Labor Smart now argues that it is not a party to the July 2021 Agreement and not bound by the Agreement, ignoring the allegations that <u>Holley, McBride, and Pavlik all signed the Agreement **intending** to bind Labor Smart</u>. This, again, is a factual question and not proper at this dismissal stage.[4] *Twombly, supra* (So long as the Tuckers have set forth a plausible argument that Labor Smart is bound by the July 2021 Agreement and that damages have arisen from breach of that Agreement, dismissal is not appropriate.)

**C.     Dismissal is Not Warranted on the Abuse of Process Claim.**

Once again, Labor Smart confuses the level of **proof** needed to avoid judgment from the level of allegations needed to set forth a viable cause of action sufficient to withstand Rule 12(b)(6) scrutiny. The Tuckers do not dispute the elements needed to state an abuse of process claim under Arizona law, including a "willful act in the use of a

---

[4] It is important to note that Labor Smart complains about the July 2021 Agreement but only attached that Agreement to its Motion to Dismiss. Labor Smart intentionally omitted the "Minutes of Special Meeting of Directors" that was pled by the Tuckers as being incorporated the July 2021 Agreement (and, thus, making a fully integrated contract). A full copy is provided as **Exhibit A** here, incorporated by this reference.

judicial process" and "an ulterior purpose not proper in the regular conduct of the proceedings." *See, Crackel v. Allstate Ins. Co.*, 208 Ariz. 252 (App. 2004).

To meet the pleading standards, the Tuckers amply pled that Labor Smart was motivated by ulterior motives to "take over" this lawsuit. Labor Smart and its counsel colluded to stage a "Special Meeting" and then colluded to "Realign" the parties in this lawsuit, to hide the fact that Holley, McBride and Pavlik over-pledged Takeover and Labor Smart stock and did not want shareholders to know. The Tuckers pled that this collusion was important because Labor Smart was afraid of its shareholders finding the "strong evidence" of ongoing schemes and dishonesty in Labor Smart business. Allegations are that Labor Smart then inserted itself into other ongoing litigation (the Florida lawsuit), and Labor Smart "settled" that lawsuit (by further over-pledging Labor Smart stock), solely to avoid dishonest acts from coming to light of the Labor Smart shareholders. Labor Smart most recently used this lawsuit as a <u>threat</u> to keep the Tuckers from freely trading/selling their Labor Smart stock.

By these allegations, it is more than clear that the Tuckers have set forth Labor Smart's (mis)use of this judicial proceeding primarily for the ulterior purpose of hiding financial dishonesty from LTNC Shareholders. There are valid allegations that Labor Smart used this litigation as a shield to disavow Jason Tucker's right to vote 17 preferred shares in conducting Labor Smart business; Labor Smart used this lawsuit to thwart the Tuckers from selling stock/shares to fund their defense in this lawsuit. Each of these allegations are sufficient to state a claim for Abuse of Process at this pleading phase.

### D. Dismissal is Not Warranted on the Aiding and Abetting Claim.

On the aiding and abetting claim, it appears that Labor Smart wants to limit the allegations made as well as limiting the officers/directors who make up Labor Smart.[5],[6]

---

[5] Again, Labor Smart fails to inform this Court that counsel had multiple communications in a good faith conferral on this issue. Because Labor Smart already argued that the

Labor Smart first (again) ignores that Takeover and Labor Smart are **distinct** entities. Labor Smart then ignores that Third-Party Claims are set forth against Holley, McBride, and Pavlik, *but also* against Takeover, Zarro, and NexGen, and the Aiding and Abetting claim alleges Labor Smart's substantial participation and assistance to all of these Third-Party Defendants, not just Holley, McBride, and Pavlik. The Tucker easily meet the test that "aiding and abetting requires at least two actors engaging in separate conduct."

The Tuckers agree that an aiding and abetting claim requires three elements, including: (1) the primary tortfeasors must commit a tort that causes injury to plaintiff(s); (2) the defendant must know that the primary tortfeasor's conduct constitutes a breach; and (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach. The Complaint here properly alleges each of these elements.

First, the Tuckers allege that Labor Smart was not run solely by Holley, McBride, and Pavlik, because those "Directors" of Labor Smart changed when Zarro inserted himself and negotiated settlement of the Florida Lawsuit on behalf of Labor Smart. We know that thereafter, the Labor Smart Directors changed to include Zarro, Sequeria, and Manny Pacquiao (at least).

Second, it is alleged that Labor Smart (under its "new" leadership) assisted *Takeover* in breaching obligations owed to Tucker. The Tuckers allege that Labor Smart

---

Aiding and Abetting claim was not fulsome enough, the Tuckers filed their Amended Counterclaim and further specified/clarified all the different parties that Labor Smart aided and abetted. (Compare Docs. 148, 179.)

[6] Labor Smart is apparently being currently run by Directors Tom Zarro, Luis Sequeria, Tom Fitzgerald, Sr., and Emmanuel ("Manny") Pacquiao; Labor Smart has 77 Shareholders, all of whom are entitled to a "one for one voting right" and 3 "Preferred" Shareholders, who are entitled to heightened weight on their votes. *See,* **Exhibit B.** Labor Smart is not solely made up of Holley, McBride, and Pavlik as it states throughout its briefing.

was fully aware of the financial obligations of **Takeover** (a separate entity), and Labor Smart knew that **Takeover** owed Jason Tucker significant (but unpaid compensation.) Labor Smart, regardless of who its Directors were at the time, assisted and participated in having **Takeover** deprive Tucker of payments owed to him by **Takeover**.

Third, we know that Holley, McBride, and Pavlik were all Directors in **Takeover**, and each of them owed fiduciary duties to Tucker via their positions in **Takeover**. Labor Smart, regardless of who its Directors were at the time, assisted and participated in having each Holley, McBride and Pavlik deprive Tucker of his voting rights in **Takeover**.

Fourth, it is alleged that Labor Smart (including direction from Zarro, at least), assisted and participated in having Holley, McBride, Pavlik, and Takeover enter into a fraudulent Settlement Agreement in the Florida Lawsuit.

Fifth, the Tuckers allege that Labor Smart (under its current iteration of Directorship) assisted and participated in having Zarro purposefully interfere with the Tuckers' right to sell/trade shares of its stock; and

Finally, the Tuckers make very detailed allegations that Labor Smart substantially assisted and participated in **Takeover** shutting down its business, reopening under NextGen, and helping Takeover commit fraudulent transfer (actual **and** constructive). While other third parties played a part in this fraudulent transfer, Labor Smart is alleged to have knowledge and substantial participation in these actions.

There is no doubt that the Tuckers have amply pled torts that caused injury, that Labor Smart assisted <u>multiple</u> Third-Party Defendants in completing tortious actions, and that the Tuckers have financial losses from Labor Smart having assisted and participated in the tortious (mis)conduct. These allegations suffice to defeat Labor Smart's argument that "only" Holley, McBride, and Pavlik committed wrongdoing. The level and extent of participation by Labor Smart and its current Directorship is a factual question, which now becomes a question of **evidence/**proof.

### E. The Tuckers Request Leave to Amend in Lieu of Dismissal.

Rule 15(a)(2) Fed.R.Civ.P. provides that a Court should freely grant leave to amend "when justice so requires," and if a defective complaint can be cured, the plaintiff(s) is/are entitled to amend before an action can be dismissed. *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000). The power to grant leave to amend is "entrusted to the discretion of the district court," but the court should grant leave unless it finds bad faith, undue delay, prejudice to the opposing party, or that an amendment would be futile. *Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010) (internal citations omitted).

Based on this tenet, if this Court finds that any of the Tuckers' claims require more specificity, the Tuckers seek leave to amend in lieu of dismissal.

### F. Dismissal is Not Warranted Under Rule 13(a)(1).

In its final argument, Labor Smart suggests that the Tuckers were required to file their Counterclaims in August 2022 because the claims are compulsory under Rule 13(a).

While Labor Smart is correct that undersigned counsel filed this matter early on (in March 2022), and that a Third-Party Complaint was filed in May 2022 (Doc. 38), Labor Smart ignores the **full** procedural history. Labor Smart ignores that the Tuckers originally moved to dismiss the Third-Party Complaint (Doc. 60); Labor Smart ignores that an Amended Third-Party Complaint was filed (Doc. 67) and that the Tuckers again moved to dismiss (Doc. 75). It was not until March 10, 2023 that Labor Smart asked to be a "party" to this lawsuit (Doc. 123), and it was not until ***May 1, 2023*** that Labor Smart was actually permitted to become a party in this matter. (Doc. 129.)

Promptly upon this Court's permission for Labor Smart to proceed as a plaintiff, the Tuckers timely filed a Motion to Dismiss the claims against them. (Doc. 134). That motion was filed on June 5, 2023, and this Court was able to rule on October 6, 2023. (Doc. 140.) The Court ordered the Tuckers to file a responsive pleading (*Id*.), a subsequent request for a status was requested (Doc. 141), Labor Smart filed an

Application for Default (Doc. 142), and after the Clerk entered default, the Court set aside the default and ordered the Tuckers to file a first responsive pleading to the claims (now being prosecuted by Labor Smart) within fourteen (14) days of June 24, 2024. (Doc. 147.)  On July 8, 2024, the Tuckers filed a **timely** first responsive pleading, answering the claims by Labor Smart but also filing Counterclaims. (Doc. 148.) <u>There is no doubt that the July 8, 2024 filing comports with the Court's deadline of "14 days" issued on June 24, 2024</u>. *See*, Rule 6(a)(1)(A)-(C), Fed.R.Civ.P.

By the time the Tuckers answered and counterclaimed against Labor Smart, they complained about misconduct of Labor Smart starting in November 2022. (Doc. 148 at ¶¶62-75, 77-101.)  None of the allegations relate to anything that was known to the Tuckers as **Labor Smart** misconduct (nor conduct attributable to Labor Smart) when the initial Counterclaim was filed by Defendant Michael Holley back in August 2022. Certainly, nothing of November 2022 misconduct could have been filed in August, since August clearly pre-dates November (2022).

Simply put, Labor Smart is mistaken (if not intentionally misleading this Court) that claims arising in November 2022 must have been filed by August 2022.  The misleading history/factual mistakes are egregious, if not sanctionable.  Nonetheless, this Court cannot possibly find that the Tuckers were required to file a <u>compulsory</u> counterclaim under Rule 13(a)(1) that did not exist when Doc. 67 was filed.

### III.    CONCLUSION

For each of the reasons stated above, Labor Smart's Motion to Dismiss should be denied in its entirety.  If there is any dispute about the nature of the pleadings, the Tuckers should be granted leave to amend.  Nothing in this matter can be found to be untimely and/or ripe for dismissal under Rule 13(a)(1) as a "compulsory" counterclaim.

The Tuckers should be fully entitled to proceed to discover the truthfulness of the ***<u>facts</u>*** that support their claims.

1  RESPECTFULLY SUBMITTED this 12th day of November, 2024.

**MANOLIO & FIRESTONE, PLC**

By: /s/ Veronica L. Manolio
  Veronica L. Manolio
  8686 E. San Alberto Dr., Suite 200
  Scottsdale, Arizona 85258
  *Attorneys for the Tucker Defendants,
  Counterclaimants, and Third-Party Claimants*