1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                       **FOR THE DISTRICT OF ARIZONA**

8

9    Labor Smart Inc.,                          No. CV-22-00357-PHX-JJT

10                    Plaintiff,                **ORDER**

11   v.

12   Jason Tucker, *et al.*,

13                    Defendants.

14          At issue is Plaintiff/Counter-Defendant Labor Smart Inc.'s (LTNC[1]) Motion to

15   Dismiss (Doc. 180, MTD), to which Defendants/Counterclaimants/Third-Party Claimants

16   Jason and Melissa Tucker filed a Response (Doc. 187, Response) and LTNC filed a Reply

17   (Doc. 188). The Court finds this matter appropriate for resolution without oral argument.

18   *See* LRCiv 7.2(f). For the reasons set forth below, the Court grants in part and denies in

19   part LTNC's Motion to Dismiss.

20   **I.    Procedural Background**

21          What follows is a truncated version of this case's procedural history. A more

22   thorough summary can be found in the Court's prior orders. (*See, e.g.*, Doc. 129.)

23          This lawsuit was initiated in March 2022 by Takeover Industries, Inc. (Takeover),

24   which is an entity that was founded by Michael Holley and Toby McBride and later joined

25   by Jason Tucker and Joseph Pavlik. (Doc. 1.) Shortly after its creation, Takeover became

26   a subsidiary of LTNC, which is another entity controlled to one extent or another by Holley,

27   McBride, Tucker, and Pavlik. The original complaint filed by Takeover sought relief

28          [1] This appellation, which the Tuckers use in their pleading and which the Court has
     used in the past, is the over-the-counter stock ticker symbol of Labor Smart, Inc.

against Holley for alleged breach of fiduciary duty, conversion, and unjust enrichment.[2] In May of 2022 Holley filed a responsive pleading, and in September of 2022 he filed an amended responsive pleading. (Doc. 67.) This amended pleading consisted of an answer, four counterclaims against Takeover, and four third-party claims against differing combinations of Tucker, McBride, and Pavlik. The counterclaims and one of the third-party claims were brought by Holley in his individual capacity, but the other three third-party claims were brought by Holley both individually and derivatively on behalf of LTNC. Holley's filing against Pavlik, McBride, and Tucker mirrored Takeover's filing against Holley in that both pleadings asserted claims for breach of fiduciary duty and conversion.

In February 2023, Takeover and Holley reached an accord and agreed to dismiss the claims and counterclaims against one another. (Doc. 120.) Thus, Takeover exited the litigation entirely, and all that remained were Holley's third-party claims against McBride, Pavlik, and Tucker. The newfound understanding between Takeover and Holley was a prelude to the motion for realignment which followed shortly thereafter. In brief, the majority of the parties sought to realign themselves such that Holley, McBride, Pavlick, Takeover, and LTNC would present a unified front against Tucker. The Court granted the motion for realignment in part and denied it in part. (Doc. 129.) LTNC replaced Holley as the operative plaintiff. Thus, the third-party claims brought by Holley in his individual capacity ceased to exist, and the derivative third-party claims that Holley had brought on LTNC's behalf were no longer derivative or third-party in nature. Accordingly, the Court ordered that the pleading previously styled as a set of counterclaims and third-party claims would thenceforth be referred to as the Amended Complaint. At the parties' request, the Court dismissed the claims against Pavlik and McBride, leaving only Tucker as a defendant. However, the Court denied both (1) Takeover's motion to reenter the litigation and (2) LTNC's motion to file an amended pleading against Tucker. Thus, the pleading at

---

[2] The pleadings in this case routinely name Chirine Holley, Melissa Tucker, and Kimberly Zarro (introduced *infra*) as parties for the purpose of reaching the marital estates of their respective husbands. (*See, e.g.*, Doc. 179 ¶ 9.) As none of these women are alleged to have engaged in any act relevant to the merits of any claim, the Court will disregard them and instead refer singularly to Holley, Tucker, and Zarro.

1    docket number 67 remained (and remains to this day) the operative complaint, but LTNC

2    had become the plaintiff and only the claims against Tucker survived. (*See* Doc. 129.)

3          Tucker then filed a partial motion to dismiss, which the Court granted in October

4    2023. (Doc. 140.) As a result, only claims II and III of the Amended Complaint remain

5    outstanding, which are for breach of fiduciary duty and conversion, respectively. After

6    almost a year of largely fruitless motion practice, Tucker filed an amended responsive

7    pleading in September of 2024 asserting three counterclaims against LTNC for breach of

8    contract, abuse of process, and aiding and abetting tortious misconduct, as well as nine

9    third-party claims for a variety of wrongs against differing combinations of Holley,

10   McBride, Pavlik, LTNC, Takeover, Next Gen Beverages, LLC (Next Gen), and an

11   individual named Thomas Zarro. (Doc. 179.) The Court will refer to this pleading as the

12   Amended Responsive Pleading (ARP).[3] Holley, McBride, Pavlik, Zarro, Takeover, and

13   Next Gen filed a joint answer to the third-party claims against them. (Doc. 184.) In lieu of

14   joining that filing or filing its own answer, LTNC filed the instant Motion, which seeks

15   dismissal of the Amended Responsive Pleading's three counterclaims. LTNC's Motion

16   does not address the "third-party" claim against it for conspiracy to commit fraudulent

17   transfer, which is so styled not because LTNC is a third party but instead because Tucker

18   brought this claim against all the adverse parties, the majority of whom are in fact third

19   parties. (Doc. 179, ARP ¶¶ 118–122.) Accordingly, the Court confines its analysis to the

20   three counterclaims against LTNC and does not consider any of the third-party claims.

21   Having summarized the relevant procedural history, the Court turns to the factual

22   allegations contained in the Amended Responsive Pleading.

23   **II.    Factual Background**

24         There are now two competing versions of the facts: that contained in the Amended

25   Complaint (Doc. 67 at 16–24 ¶¶ 10–54) and that contained in the Amended Responsive

26   Pleading (ARP ¶¶ 14–79). As the instant Motion is a motion to dismiss the counterclaims

27
28
      [3] Tucker's original responsive pleading (Doc. 148), although replaced by his Amended Responsive Pleading for purposes of his counterclaims and third-party claims, remains his operative answer to the two surviving claims in LTNC's Amended Complaint. (*See* Doc. 178.)

1    contained in the Amended Responsive Pleading, the Court must consider only those facts

2    pled therein, ignoring any inconsistency between such facts and those of the Amended

3    Complaint. Focusing on the allegations relevant to the counterclaims and disregarding

4    those allegations that only bear upon the third-party claims, the Amended Responsive

5    Pleading alleges as follows.

6           In early 2021, Holley and McBride founded Takeover, a Nevada company that

7    would operate in the "performance water" and energy drink industry and whose products

8    would be marketed under the brand "NXT LVL." (ARP ¶¶ 15–16.) The founders then

9    "sold" Takeover to LTNC, a preexisting over-the-counter publicly traded company. (*Id.*

10   ¶ 16.) The terms of this sale are unclear, but when all was said and done Holley and

11   McBride somehow controlled both LTNC and Takeover. (*Id.* ¶ 17.) Both men served as

12   directors and officers for both entities. (*Id.*) Pavlik joined the enterprise shortly thereafter,

13   and he too became an officer and director of Takeover and an officer (but not a director)

14   of LTNC. (*Id.* ¶ 18.) The team developed NXT LVL's product line, including an energy

15   shot and hydrogen-infused water. (*Id.* ¶¶ 18–19.) A short while later, Tucker came onboard.

16   (*Id.* ¶¶ 20–21.) On June 10, 2021, at a meeting of the board of directors of Takeover, Tucker

17   was made an officer and director of Takeover. (*Id.* ¶ 22.) Under Tucker's stewardship,

18   Takeover thrived. (*Id.* ¶¶ 23–26.) Several celebrities agreed to marketing deals, and

19   Takeover's product line enjoyed strong critical reception and sales. (*Id.* ¶¶ 23–26, 32.) On

20   August 6, 2021, at a meeting of the board of directors of Takeover, the four men adopted

21   a corporate resolution formalizing their prior agreement naming Tucker an officer and

22   director and specifying that the four men would each own 25% of Takeover[4] and that each

23   man would be entitled to an equal salary. (*Id.* ¶¶ 27–29.) Additionally, the four men agreed

24   that "Holley, McBride, and Pavlik collectively [would hold] 51 Preferred Shares (17 shares

25   each) in LTNC, which amounts equaled 51% of the voting rights in LTNC" and that "12

26           [4] The co-equal ownership contemplated by this agreement is inconsistent with the
27   fact that Takeover was nominally a wholly owned subsidiary of LTNC. This discrepancy
     is emblematic of all four men's recurring failure or refusal to observe the corporate form
28   and bylaws, which the Court has noted multiple times in its rulings throughout this
     litigation, including as its basis for denying their requests for injunctive relief, among other
     things.

1    of the Preferred Shares were to be released to Tucker when LTNC received a 'current'

2    status from OTC Markets or another market, such as NASDAQ, NYSE, or an equivalent"

3    and finally that "when LTNC received a 'current' status, Tucker was to receive 750M

4    common shares of LTNC valued at the same rate as McBride's shares." (*Id.*) This

5    agreement was backdated to July 1, and the parties accordingly refer to it as the July 2021

6    Agreement. (*See id.*) In a side deal, Tucker purchased seventeen preferred shares and close

7    to two billion common shares of LTNC from Pavlik for the price of $5,000. (*Id.* ¶ 31.)

8        Tucker eventually concluded that Takeover would need to "spin off" from LTNC.

9    (*Id.* ¶¶ 34–35.) Around the same time, Tucker discovered serious financial problems with

10   Takeover, whose bank accounts were at that time only accessible by Holley. (*Id.* ¶¶ 36–39.)

11   After a variety of financial maneuvers and internal and external auditing, it was determined

12   that Holley had seriously mismanaged and embezzled Takeover's resources. (*Id.*

13   ¶¶ 47–48.) McBride, Pavlik, and Tucker therefore aligned to divest Holley of his titles and

14   authority relating to Takeover and filed suit against him in early 2022. (*Id.* ¶¶ 48–51.) It

15   then was discovered that McBride had also been engaging in financial and managerial

16   malfeasance, which actions McBride fully acknowledged and apologized for. (*Id.* ¶¶ 47,

17   53–55.) The remaining directors of Takeover therefore agreed to place McBride on

18   temporary suspension. (*Id.* ¶ 56.) McBride consented to this disciplinary measure and

19   agreed to also refrain from conducting any affairs relating to his role at LTNC. (*Id.* ¶ 57.)

20   Tucker then discovered that Holley, McBride, and "likely" Pavlik had over-pledged the

21   shares of Takeover by 110%, including by selling Takeover to LTNC. (*Id.* ¶¶ 58–60.)

22   Despite having negotiated for the personal receipt of LTNC stock upon the occurrence of

23   certain specified events, Tucker maintains that he was not aware that his erstwhile

24   colleagues had over-pledged Takeover's shares. (*Id.* ¶ 60.) Holley, McBride, and Pavlik

25   then realigned and staged a "takeover" of Takeover for the purpose of concealing their

26   wrongdoing regarding the management of Takeover and LTNC. (*Id.* ¶ 61.) On

27   November 7, 2022, the three men convened a meeting of the board of directors of LTNC

28   and agreed to remove Tucker as an officer of Takeover and reinstate McBride. (*Id.* ¶¶

62–65.) The three men then allied with Zarro for the purpose of "freezing" Tucker out of Takeover and LTNC and "stripping" Takeover of its assets in favor of the newly formed entity Next Gen. (*Id.* ¶¶ 69–74.) Those four men have operated LTNC and Takeover in complete disregard of the shares of each entity that Tucker owns and/or is entitled to own. (*Id.* ¶¶ 75–79.)

Tucker's first counterclaim against LTNC is for breach of contract. (*Id.* ¶¶ 80–85.) He alleges that the LTNC board convened the November 7 meeting in derogation of the relevant bylaws and that the board also illegitimately prevented him from voting in a manner commensurate with the seventeen preferred shares that he owns by virtue of his transaction with Pavlik and the twelve additional preferred shares that he is contractually entitled to own under the July 2021 Agreement as a result of LTNC receiving "current" status on the over-the-counter markets. (*Id.*) Tucker's second counterclaim is for abuse of process. (*Id.* ¶¶ 86–89.) He alleges that LTNC has used the instant lawsuit for wrongful, improper, harmful, and ulterior purposes. (*Id.*) Tucker's third counterclaim is for aiding and abetting the tortious misconduct of the various third-party defendants. (*Id.* ¶¶ 90–96.) LTNC has moved for dismissal of all three counterclaims pursuant to Federal Rules of Civil Procedure 12(b)(6) and 13(a)(1).

## III. Discussion

### A. Rule 13(a)(1)

As LTNC's argument under Rule 13 is a preliminary procedural argument attacking the timeliness of Tucker's counterclaims, the Court addresses it first. Rule 13(a)(1) requires a pleading to set forth all counterclaims that (1) exist at the time of the pleading's service and (2) arise out of the same transaction or occurrence that forms the basis of the lawsuit's primary claims. LTNC asserts that the relevant "pleading" is not Tucker's responsive pleading to LTNC's Amended Complaint but is instead Tucker's responsive pleading to Holley's original, unamended third-party complaint. (MTD at 11–12.) Thus, according to LTNC, Tucker waived his counterclaims by not asserting them in his answer to Holley's

1    initial third-party complaint. (MTD at 11–12.) This argument is unavailing for more than

2    one reason.

3         First, LTNC fails to show or otherwise persuade that a claim against a non-party

4    corporation in a derivative lawsuit is a compulsory counterclaim within the meaning of

5    Rule 13(a)(1). At the time Tucker answered Holley's original third-party complaint, LTNC

6    was not a party to this case. Nor was LTNC made a party upon the filing of Holley's

7    amended third-party complaint. Although that document would later become LTNC's

8    Amended Complaint, at the time of its filing it was merely a set of claims brought by

9    Holley, some of which were brought derivatively on behalf of LTNC. But LTNC did not

10   itself become a party until much later, after the Court granted the motion for realignment.

11   (*See* Doc. 129.) LTNC adduces no authority indicating that Rule 13(a)(1) mandates that a

12   party sued derivatively on behalf of a corporation must assert counterclaims *against the*

13   *corporation* in his responsive pleading served upon the representative individual.

14        Although it is well-settled that a defendant may not assert counterclaims against a

15   plaintiff in his individual capacity when the plaintiff has brought suit solely in a

16   representative capacity, *see, e.g.*, *Tryforos v. Icarian Dev. Co. S.A.*, 49 F.R.D. 1, 2 (N.D.

17   Ill. 1970), the Court is aware of no cases addressing the inverse question, namely whether

18   a defendant must assert counterclaims against an entity that is the nominal basis of a

19   derivative claim but that is not itself a party to the lawsuit. The Court is skeptical of that

20   proposition, as under such a holding a bad-faith litigant who files a meritless lawsuit

21   nominally on behalf of a corporation could compel the defendant to bring claims against

22   the corporation that the defendant does not actually wish to bring, lest he lose them. In that

23   world, as may have occurred here, a plaintiff who merely *claims* authority to sue on behalf

24   of a corporation could compel the corporation's legitimate officers and directors to state

25   counterclaims against the entity, even if the plaintiff lacked actual authority to act on behalf

26   of the corporation. The more logical rule would seem to be that a defendant is not

27   compelled to submit counterclaims against a corporation unless and until the corporation

28   becomes a party to the lawsuit. But the Court need not definitively decide that issue

1   because, even if a party is required to assert compulsory counterclaims against a non-party

2   corporation in circumstances such as these, Tucker complied with the rule.

3       It remains a somewhat open question of law in the Ninth Circuit whether the relevant

4   "pleading" under Rule 13(a)(1) is an initial answer to an initial complaint or instead an

5   amended answer filed in response to an amended complaint. "The Federal Rules of Civil

6   Procedure and Ninth Circuit precedent do not directly address whether a defendant may,

7   as a matter of right, assert new counterclaims in response to an amended complaint, or

8   whether the defendant must first seek leave of court." *Neuropathy Sols., Inc. v.*

9   *Massachusetts Bay Ins. Co.*, No. SA CV 22-01263-DOC-JDE, 2022 WL 6589002, at \*5

10  (C.D. Cal. Sept. 7, 2022). "The majority view in the Ninth Circuit is to apply a moderate

11  approach, allowing newly alleged counterclaims as of right only to the extent they directly

12  relate to changes in the amended complaint." *Id.* Here, there can be no analysis of whether

13  Tucker's counterclaims pertain to Holley's amendment to his third-party complaint,

14  because Tucker's counterclaims arise out of facts that did not occur until well after the

15  filing of Holley's amended third-party complaint. Holley's original third-party complaint

16  was filed in May 2022, and Tucker answered that pleading in August 2022. Holley then

17  filed an amended third-party complaint in September 2022. Crucially, however, Tucker's

18  claims against LTNC did not accrue until November 2022, which is when he was ousted

19  from his positions of authority by the newly formed alliance of Holley, McBride, and

20  Pavlik. All of Tucker's counterclaims relate to facts occurring concurrently with or

21  subsequent to his ouster. Therefore, to the extent that Tucker was required to bring any

22  compulsory counterclaims against LTNC in his original answer to Holley's third-party

23  complaint, that set of compulsory counterclaims could not possibly have encompassed the

24  counterclaims that Tucker asserts in his Amended Responsive Pleading, as those

25  counterclaims did not yet exist. LTNC's timeliness argument fails.[5]

26

27

28      [5] For the same reasons, the Court rejects LTNC's facile comparison of the timeliness of Tucker's counterclaims with Takeover's unsuccessful attempt to intervene against Tucker. (*See* MTD at 12.)

- 8 -

1    As Tucker's claims against LTNC did not accrue until November 2022 at the

2 earliest, the first opportunity that Tucker had to assert those claims as counterclaims was

3 in his responsive pleading to the filing located at docket number 67, which was previously

4 Holley's amended third-party complaint but which has been rechristened as LTNC's

5 Amended Complaint. And indeed, Tucker *did* assert his counterclaims against LTNC in

6 his answer to the Amended Complaint. (*See* Doc. 148.) The fact that almost two years

7 elapsed between the filing of the Amended Complaint and the filing of Tucker's answer

8 thereto is immaterial, and in any event such delay is the fault of all the parties collectively.

9 This nearly three-year-old case has thus far consisted of little more than an endless cascade

10 of party-initiated delays. Since the filing of the Amended Complaint, the Court has granted

11 no fewer than thirteen stipulations to extend various deadlines, only some of which have

12 benefitted Tucker. The motion for realignment, the various entries of default and

13 withdrawals of the same, and the numerous changes of attorneys have also severely

14 hampered the progression of this case, and Tucker is no more to blame for those

15 obstructions than is any other party. The Court rejects LTNC's attempt to misrepresent the

16 nature of these delays in the guise of a Rule 13 argument, just as it rejected the attempts by

17 individual parties aligned with LTNC to misrepresent the status of this matter to two other

18 federal courts. (*See* Doc. 129 at 5–6.) As Tucker's counterclaims are timely under Rule

19 13(a)(1), the Court proceeds to LTNC's argument predicated upon Rule 12(b)(6).

20    **B.**    **Rule 12(b)(6)**

21        **1.**    **Legal Standard**

22    Rule 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v.*

23 *Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to

24 state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the

25 absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v.*

26 *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for

27 failure to state a claim, the well-pled factual allegations are taken as true and construed in

28 the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067

1   (9th Cir. 2009). A plaintiff must allege "enough facts to state a claim to relief that is

2   plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has

3   facial plausibility when the plaintiff pleads factual content that allows the court to draw the

4   reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

5   *Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility

6   standard is not akin to a 'probability requirement,' but it asks for more than a sheer

7   possibility that a defendant has acted unlawfully." *Id*.

8          "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed

9   factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief

10  requires more than labels and conclusions, and a formulaic recitation of the elements of a

11  cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up and citations omitted).

12  Legal conclusions couched as factual allegations are not entitled to the assumption of truth

13  and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*,

14  556 U.S. at 679–80. However, "a well-pleaded complaint may proceed even if it strikes a

15  savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote

16  and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236

17  (1974)).

18                    **2.      Analysis**

19                    **i.      Counterclaim I: Breach of Contract**

20         Tucker's first counterclaim alleges that LTNC breached two contracts, namely its

21  own bylaws and the July 2021 Agreement. LTNC responds that it did not breach its bylaws

22  and that it is not a party to the July 2021 Agreement. The Court disagrees with LTNC's

23  reasoning but nevertheless concludes that Tucker's first counterclaim is subject to

24  dismissal.

25         In arguing that it did not violate its own bylaws at the November 2022 meeting,

26  LTNC directs the Court's attention to what it claims were its then-operative bylaws. (MTD

27  at 3–4.) However, Tucker's counterclaim does not expressly incorporate (or even describe)

28  LTNC's bylaws. "Generally, district courts may not consider material outside the pleadings

1   when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of

2   Civil Procedure." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

3   One exception to this rule is the doctrine of incorporation by reference, pursuant to which

4   a court may deem an extraneous document to be part of a pleading where the pleading

5   refers extensively to the document or the document forms the basis of a claim. *Id.* at 1002.

6   Here, the bylaws do indeed form the basis of one half of Tucker's first counterclaim.

7   However, Tucker alleges that the bylaws adduced by LTNC are not the correct version

8   thereof. (Response at 10 n.3.) This objection is well taken. The record of this case makes

9   clear that all of the parties have, to one extent or another, treated Takeover and LTNC as

10  their own personal playthings. Thus, the Court finds it creditable that multiple versions of

11  the same bylaws may exist and that there may be a question of fact as to which version is

12  controlling. Nevertheless, dismissal is still appropriate because the counterclaim fails

13  independently.

14          Tucker's Amended Responsive Pleading does not contain even the barest

15  description of what LTNC's bylaws were, much less a description of how LTNC is alleged

16  to have breached them. Even under the federal judiciary's relatively lax notice-pleading

17  standard, it is not enough to simply plead a "formulaic recitation" of a cause of action.

18  *Twombly*, 550 U.S. at 555. Thus, absent a description of *how* LTNC violated its bylaws,

19  Tucker's first counterclaim must be dismissed insofar as it relies upon an alleged breach of

20  bylaws.

21          The Court is unpersuaded by the argument in Tucker's Response. Tucker highlights

22  his allegations that, at the time of the November 2022 meeting of the LTNC board of

23  directors, McBride was still subject to his ancillary agreement with the Takeover board

24  members to refrain from conducting LTNC business. (Response at 2.) But, regardless of

25  whether McBride may have breached a side agreement entered into in his personal capacity

26  and/or his capacity as a board member of Takeover, nothing in the Amended Responsive

27  Pleading indicates that McBride was formally divested of his authority to participate in an

28  LTNC board meeting. Thus, although McBride's actions may have been personally

1    wrongful, there is no indication that LTNC's actions at the November 2022 meeting

2    violated its bylaws or any other contractual duty that LTNC had assumed *as an entity*.

3    Tucker also highlights his allegations that LTNC's actions at the November 2022 meeting

4    and beyond were the product of wrongful motives by its board members. (Response at 3).

5    But, once again, Tucker fails to allege that any of LTNC's actions violated any of its

6    bylaws. To the extent that his allegations have merit, they appear to be simply another, less

7    effective way of pleading his third counterclaim for aiding and abetting. Therefore, for

8    more than one reason, the Court will dismiss the first counterclaim for breach of LTNC's

9    bylaws.

10          The second half of Tucker's first counterclaim pertains to an alleged breach of the

11   July 2021 Agreement. In arguing that it was not a party to this agreement and therefore

12   could not have breached it, LTNC once again directs the Court's attention to the text of the

13   relevant contract, which expressly states that it is an agreement between, on the one hand,

14   Tucker, and on the other hand, McBride, Holley, and Pavlik in their individual capacities

15   and/or in their capacities as *shareholders* of LTNC, not directors thereof. (MTD, Ex. 2

16   at 1.) Tucker does not contest the accuracy of this agreement, but instead argues that it is

17   incomplete. (Response at 12 n.4.) In so arguing, Tucker purports to attach the "Minutes of

18   Special Meeting of Directors" as Exhibit A to his Response, but he appears to have

19   committed a clerical error. What is actually attached as Exhibit A is LTNC's public filings,

20   which Tucker apparently intended to attach as Exhibit B. (*See* Response at 10, 14 n.6.) The

21   Minutes, which were supposed to be Exhibit A, are simply missing. Unfortunately, the

22   Response contains no quotations or detailed descriptions of what these Minutes contained.

23   Although the Court acknowledges Tucker's clerical error and therefore does not assign

24   dispositive weight to LTNC's argument, the Court nevertheless agrees that the first

25   counterclaim is subject to dismissal. To the extent that Holley and McBride have withheld

26   the shares of LTNC properly belonging to Tucker under the July 2021 Agreement, it is

27   unclear how LTNC is the culprit of this unjust act. Indeed, to the extent that Holley and

28   McBride are wrongfully arrogating the shares of LTNC to themselves, it would appear that

1    LTNC is a *victim* of that malfeasance, not a perpetrator. The Amended Responsive

2    Pleading does not explain in what way LTNC has ratified or approved the actions of its

3    rogue shareholders, and indeed Tucker has separately sued McBride, Holley, and Pavlik

4    for breach of the July 2021 Agreement. (*See* ARP ¶¶ 106–111.) Absent additional facts,

5    the Amended Responsive Pleading does not contain sufficient allegations to tie LTNC *as*

6    *an entity* to the contractual breaches of its shareholders. This component of the

7    counterclaim therefore appears to be a redundant means of pleading the breach-of-contract

8    claim against McBride, Holley, and Pavlik—one that improperly conflates LTNC's

9    corporate form with the personages of its shareholders. Therefore, the Court will dismiss

10   the first counterclaim in its entirety.

11                            **ii.        Counterclaim II: Abuse of Process**

12        In Arizona, "[t]he elements of an abuse-of-process claim are '(1) a willful act in the

13   use of judicial process; (2) for an ulterior purpose not proper in the regular conduct of the

14   proceedings.'" *Crackel v. Allstate Ins. Co.*, 208 Ariz. 252, 257 ¶ 11 (Ct. App. 2004)

15   (quoting *Nienstedt v. Wetzel*, 133 Ariz. 348, 353 (Ct. App. 1982)). "[A] plaintiff must prove

16   that one or more specific judicially sanctioned processes have been abused to establish an

17   abuse-of-process claim." *Id.* ¶ 14. A plaintiff must do more than simply "establish that the

18   defendant [] possessed an improper purpose in sustaining the overall litigation." *Id.* at 258

19   ¶ 14. The Arizona judiciary specifically rejects the "contention that a generalized allegation

20   that a defendant has misused the litigation process as a whole can support a claim of abuse

21   of process." *Id.* ¶ 15. "Rather, it must be based on something more than the opposing party's

22   mere persistence in the litigation." *Id.* Nevertheless, the range of processes that may be

23   abused is broad, encompassing the "entire range of court procedures incident to the

24   litigation," including, *inter alia*, motions for continuances. *Id.* ¶ 16 (quoting *Nienstedt*, 133

25   Ariz. at 353).

26        LTNC argues that Tucker's counterclaim must be dismissed because it fails to

27   identify a specific process that LTNC has abused in this litigation. (MTD at 8.) LTNC is

28   correct that Tucker's Amended Responsive Pleading, if read literally, does not identify any

1  specific process that LTNC has used for an ulterior and improper purpose. Instead, it
2  merely alleges that LTNC "used processes in this matter," "has continued to pursue
3  claims," and "used this Court and the legal process." (ARP ¶¶ 87–88.) These allegations,
4  standing alone, collectively embody a mere "generalized allegation that a [party] has
5  misused the litigation process has a whole," which is insufficient to state a claim for abuse
6  of process. *See Crackel*, 208 Ariz. at 258 ¶ 15. However, when read as a whole, particularly
7  in light of the clarification provided in his Response, Tucker's counterclaim just barely
8  manages to constitute a *prima facie* claim for abuse of process.

9      Tucker's Response is nearly self-defeating insofar as it continues to allege improper
10  use of the litigation process as a whole. (Response at 13 (stating that LTNC misused "this
11  judicial proceeding," "this litigation," and "this lawsuit" for the purpose of concealing the
12  wrongdoing of its board members from investors).) However, Tucker also writes that
13  LTNC "colluded to 'Realign' the parties in this lawsuit, to hide the fact that Holley,
14  McBride and Pavlik over-pledged Takeover and Labor Smart stock and did not want
15  shareholders to know." (Response at 13.) This argument tracks the allegations in the
16  Amended Responsive Pleading, which aver that the collusive "takeover" of Takeover was
17  conducted "with the help of legal counsel" "because Holley, McBride, and Pavlik all knew
18  that strong evidence existed to show their ongoing schemes and dishonesty in Takeover
19  and LTNC business." (ARP ¶ 61.) Therefore, construing the Amended Responsive
20  Pleading in the light most favorable to Tucker, and drawing all reasonable inferences in his
21  favor, the Court interprets the counterclaim as asserting that LTNC abused a particularized
22  judicial process by filing (and partially prevailing upon) the motion for realignment.
23  Indeed, in ruling upon that motion, the Court noted that LTNC and the parties aligned with
24  it appeared to be acting in furtherance of an ulterior and improper motive connected to
25  litigation in a related proceeding before a federal court in Nevada. (Doc. 129 at 5–6.)
26      Whether LTNC's participation in the motion for realignment constituted abuse of
27  process is not yet at issue. The Court simply holds that, construed liberally as required by
28

- 14 -

1  Rule 12(b)(6), Tucker's second counterclaim states a claim for abuse of process upon

2  which relief could be granted. Dismissal is therefore inappropriate.

3

4  ### iii.    Counterclaim III: Aiding and Abetting

5  Tucker's third counterclaim alleges that LTNC aided and abetted the tortious actions

6  of the various third-party defendants. The elements of a civil claim for aiding and abetting

7  are (1) that the primary tortfeasor committed an injurious tort against the plaintiff, (2) that

8  the defendant knew of the wrongfulness of the primary tortfeasor's conduct, and (3) that

9  the defendant substantially assisted or encouraged the primary tortfeasor's tort. *Wells*

10 *Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr.*

11 *Fund*, 201 Ariz. 474, 23 ¶ 34 (2002). Thus, in examining the sufficiency of Tucker's claim

12 for aiding and abetting, the Court must carefully consider the nature of the primary torts

13 that form the basis of Tucker's allegations. The third-party torts that Tucker alleges LTNC

14 aided and abetted can be separated into two broad categories. First, there are the torts

15 predicated upon the backroom dealings of LTNC's shareholders, such as the disposition of

16 LTNC's stock. These torts include aspects of Tucker's third-party claims for breach of

17 fiduciary duty, breach of contract, and breach of the covenant of good faith and fair dealing.

18 (*See* ARP ¶¶ 97–100, 106–117.) Second, there are the torts predicated upon the

19 management and alleged asset-stripping of Takeover. These torts include Tucker's

20 third-party claims for conspiracy to commit fraudulent transfer, actual fraudulent transfer,

21 and constructive fraudulent transfer. (*See* ARP ¶¶ 118–132.) The Court concludes that

22 Tucker's counterclaim for aiding and abetting must be dismissed insofar as it relies on the

23 first category of underlying torts, but not as it concerns the second category.

24 LTNC cites numerous cases for the proposition that a claim for aiding and abetting

25 cannot lie where the conduct of the alleged abettor is coterminous with the conduct of the

26 third party who committed the underlying tort. (MTD at 8–11.) These cases normally arise

27 in the insurance context. *See, e.g.*, *Kubli v. AmTrust Ins. Co. of Kansas*, No. CV-18-02053-

28 PHX-JGZ (MSD), 2019 WL 13196105, at *3 (D. Ariz. Oct. 30, 2019). Thus, a plaintiff

cannot plead that an insurance adjuster aided and abetted the bad faith of his employer where the employer's bad faith flows exclusively from the actions of the adjuster. *Id.* Where there is no allegation of "separate conduct" committed by the primary tortfeasor and the abettor, the claim is subject to dismissal. *Id.* Although these cases are instructive, they are not dispositive. In all of the cases cited by LTNC, the relevant conduct of the employees was official conduct. Here, however, the allegedly tortious conduct committed by Pavlik, McBride, and Holley was personal conduct, at least with respect to the first category of underlying torts identified above. Thus, to the extent that Tucker's claim for aiding and abetting rests upon allegations that Pavlik, McBride, and Holley breached contracts entered into in their personal and/or shareholder capacities regarding the sale and distribution of LTNC stock, Tucker's claim does not run afoul of the "separate conduct" requirement. For instance, as LTNC itself argues with regard to the July 2021 Agreement, "[t]he Agreement was signed by Holley, McBride, Pavlik and Tucker. Labor Smart is not a party to the Agreement, and no one signed on behalf of Labor Smart." (MTD at 6.) LTNC cannot eat its cake and have it too. If, as LTNC argues and the Court agrees, much of the complained-of conduct in Tucker's Amended Responsive Pleading pertains to actions taken by Pavlick, McBride, and Holley in their personal and/or shareholder capacities, then that conduct is "separate" from LTNC's corporate conduct for purposes of an aiding and abetting claim. Nevertheless, Tucker's counterclaim still must be dismissed in part.

Tucker's counterclaim does not explain how LTNC *as an entity* aided and abetted torts allegedly committed by its shareholders regarding the improper withholding of its stock. To the extent that Pavlik, Holley, and McBride have harmed Tucker by wrongfully retaining shares of LTNC, the entity would appear to be an abused object that is incidental to the tort, not an aider or abettor thereof. Insofar as it is even possible for LTNC to aid or abet such a tort, Tucker has failed to plead facts explaining what actions LTNC undertook as an entity that would constitute aiding and abetting. Tucker has not provided sufficient information that would permit the Court to connect the dots between his allegations and his claim. However, the same is not true of other aspects of his third counterclaim.

LTNC incorrectly contends that "the Tuckers do not allege any conduct by Labor Smart beyond that which is alleged against Third Party Defendants Holley, McBride and Pavlik." (MTD at 11.) In fact, Tucker alleges that LTNC also aided and abetted Takeover in depriving Tucker of monetary payments and in fraudulently transferring its assets to Next Gen for the purpose of evading obligations owed to Tucker. (ARP ¶¶ 94(c), 95.) This is unquestionably "separate" conduct, and it is also allegedly wrongful conduct that is supported by adequate factual assertions. Unlike Tucker's averments regarding LTNC's alleged aiding and abetting of illegitimate shareholder conduct, for which Tucker did not satisfactorily connect the dots, Tucker's Amended Responsive Pleading states a *prima facie* claim that LTNC aided and abetted Takeover's allegedly tortious transfers. Although the pleadings in this case do not paint a clear picture of the corporate interrelationship between LTNC and Takeover, *see supra* pp. 4–5, the parties seem to agree that Takeover is owned by LTNC. Thus, LTNC exercises control over Takeover. To the extent that Takeover, Next Gen, Holley, McBride, Pavlik, and Zarro have conspired to effect and/or have actually effected a fraudulent transfer of Takeover's assets, then, Tucker has pled sufficient facts to satisfy the notice pleading standard of the federal courts. Indeed, Tucker explicitly alleges that LTNC is liable for conspiracy to commit a fraudulent transfer, which allegation LTNC does not dispute in its MTD. It therefore does not require a logical leap to understand the basis of Tucker's claim that LTNC also aided and abetted in the actual and constructive fraudulent transfers allegedly committed by Takeover and Next Gen. Although there remain numerous outstanding questions of fact regarding the alleged fraudulent transfer, the Court cannot say that Tucker's counterclaim is so lacking in factual support that it fails to state a claim that LTNC aided and abetted Takeover and Next Gen in the commission of that transfer. Therefore, dismissal of this portion of Tucker's third counterclaim is inappropriate.

In sum, the Court will dismiss Tucker's first counterclaim and part of his third counterclaim. Tucker has requested leave to further amend his Amended Responsive Pleading. Although Rule 15 of the Federal Rules of Civil Procedure dictates that leave to

1    amend should be liberally granted, the applicability of that general principle has a limit. In

2    particular, "the district court's discretion to deny leave to amend is particularly broad where

3    plaintiff has previously amended the complaint." *City of Los Angeles v. San Pedro Boat*

4    *Works*, 635 F.3d 440, 454 (9th Cir. 2011) (quoting *Ascon Properties, Inc. v. Mobil Oil Co.*,

5    866 F.2d 1149, 1160 (9th Cir. 1989)). Tucker has already amended the counterclaims in

6    his Amended Responsive Pleading once before. Crucially, that amendment followed on the

7    heels of a motion to dismiss that attacked what are now his first and third counterclaims

8    for precisely the same defects as those identified in the instant Motion. (*See* Doc. 158

9    at 3–8.) These circumstances militate strongly against permitting additional amendment.

10   More generally, this case has already suffered an exorbitant amount of delay. If the Court

11   were to permit indefinite motion practice to the extent desired by the parties, discovery

12   would never commence. The time for each faction's efforts to "shock-and-awe" each other

13   with aggressive claims, counterclaims, third-party claims, party realignment and other

14   maneuvering in their pleading has now passed. The parties must turn to demonstrating the

15   merits of the pleadings whose *prima facie* validity they have spent the better part of three

16   years contesting. This case now will proceed to discovery.

17         Tucker's second counterclaim survives, and his third counterclaim survives insofar

18   as it concerns alleged aiding and abetting of torts related to the management of Takeover.

19   As noted, the "third-party" claim against LTNC for conspiracy to commit fraudulent

20   transfer is not at issue and thus also survives.

21         **IT IS THEREFORE ORDERED** granting in part and denying in part LTNC's

22   Motion to Dismiss (Doc. 180).

23         **IT IS FURTHER ORDERED** dismissing the Amended Responsive Pleading's

24   (Doc. 179) first counterclaim and its third counterclaim except insofar as that counterclaim

25   concerns the alleged aiding and abetting of torts related to the management of Takeover.

26         **IT IS FURTHER ORDERED** that LTNC shall file an answer to Tucker's

27   Amended Responsive Pleading (Doc. 179) as required by the Federal Rules of Civil

28   Procedure. Upon closure of the pleadings, the Court will promptly set a Rule 16 scheduling

1    conference at which it will establish an aggressive discovery and dispositive motion

2    schedule; the parties and counsel will then litigate the matter to its conclusion apace and

3    without further delay. It is time for the parties to put up.

4          Dated this 10th day of December, 2024.

5    

6              Honorable John J. Tuchi
          United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28