Paul M. Levine, Esq. (007202)
**PAUL M. LEVINE, P.C.**
8502 E. Via de Ventura, Suite 230
Scottsdale, Arizona 85258
Telephone: (480) 302-4102
Facsimile: (480) 300-4984
plevine@pmlevinepc.com
*Attorney for Plaintiff Labor Smart, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Labor Smart, Inc., <br>     Plaintiff, <br> v. <br> Jason Tucker, et al., <br><br>     Defendants. | Case No. 2:22-cv-00357-PHX-JJT <br><br> **JOINT** <br> **CASE MANAGEMENT REPORT** |

Pursuant to Rule 26(f), Federal Rules of Civil Procedure, Plaintiff/Counterdefendant Labor Smart, Inc., Defendants/Counterclaimants/Third-Party Claimants Jason and Melissa Tucker, Third-Party Defendants Takeover Industries, Inc., Next Gen Beverages, Inc., Michael and Chirine Holley, Toby McBride, Joseph Pavlik, and Thomas and Kimberly Zarro, by and through their respective counsel, have met and conferred and hereby submit this Joint Case Management Report.

**1.　The Nature of the Case.**

**Plaintiff Labor Smart, Inc.** Against Jason and Melissa Tucker: Breach of Fiduciary Duty (pursuant to Wyoming or Nevada law); and Conversion. Plaintiff alleges Defendants failed to deliver to Labor Smart monies received from Luis Sequeira in connection with the sale of Labor Smart common stock to Mr. Sequeira.

1

**Tucker's[1] Position:**

Tucker's remaining claims against Labor Smart are for Abuse of Process (misuse of the litigation process of "realignment" to assert false claims) and Aiding and Abetting Tortious Conduct (aiding/substantially encouraging and participating in torts by Holley, McBride, Pavlik, Zarro, Takeover, and NextGen). Tucker's Third-Party Claims against Holley, McBride and Pavlik are for Breach of Fiduciary Duties, Aiding and Abetting Tortious Conduct, Breach of Contract, Breach of the Covenant of Good Faith & Fair Dealing, and Conspiracy to Commit Fraudulent Transfer. Tucker's claims against Takeover and NextGen are for Actual Fraudulent Transfer and Constructive Fraudulent Transfer. The claim against Zarro alleges Aiding and Abetting Tortious Misconduct for his instrumental role in the torts committed by Holley, McBride, Pavlik, Takeover, and NextGen. Finally, Tucker has a claim against McBride for Defamation *Per Se*.

**2.     List of Elements of Proof.**

**Plaintiff Labor Smart, Inc. Breach of Fiduciary Duty**: Labor Smart alleges Defendants breached their duty of loyalty by not acting in the best interests of Labor Smart. Defendants' conduct involved intentional misconduct. Defendants did not act in good faith.

**Conversion**: Defendants wrongfully exercised dominion and control over Labor Smart's property in denial of, or inconsistent with, Labor Smart's rights, or in derogation, exclusion or defiance of such rights. Labor Smart has been damaged. N.R.S. 78.138; *Guzman v.*

---

[1] Although Jason and Melissa Tucker are both named Defendants/Counterclaimants/Third-Party Claimants, the Court properly concluded in its recent Order (Doc. 189) that the spouses of Tucker, Holley, and Zarro are named as parties solely for the purpose of reaching marital estates and not based on any direct (mis)conduct. Therefore, just as the Court has done, Tucker will limit his input here singularly. This is meant to comport with the Court's understanding, not to avoid community rights.

2

*Johnson*, 137 Nev. 126 (Sup. Ct. 2021); *Brinkerhoff v. Foote*, 132 Nev. 950 (Sup. Ct. 2016); *Gowdy v. Cook*, 455 P. 3d 1201 (Wyo. Sup. Ct. 2020); *Satterfield v. Sunny Day Resources, Inc.*, 581 P. 2d 1386 (Wyo. Sup. Ct. 1978).

**Tucker's Claims:**

<u>Abuse of Process</u> – this claim requires: (1) a willful act in the use of judicial process, (2) for an ulterior purpose not proper in the regular conduct of the proceedings. *Crackel v. Allstate Insurance Co.*, 208 Ariz. 252, 257 ¶11 (App. 2004)(internal citation omitted).

<u>Breach of Fiduciary Duties</u> – whether the Court applies Wyoming or Nevada law, the claim requires the same elements: (1) existence of a fiduciary duty, (2) breach of the duty, and (3) damages that result from the breach. *Guzman v. Johnson*, 438 P.3d 531, 538 (Nev. 2021); *In re J. Kent Kinniburgh Revocable Trust Dated Jan. 27, 1992, as Amended and Restated*, 530 P.3d 579, 587 (Wyo. 2023).

<u>Aiding and Abetting Tortious Conduct</u> – this claim requires: (1) that the primary tortfeasor committed an injurious tort against the plaintiff, (2) that the defendant knew of the wrongfulness of the primary tortfeasor's conduct, and (3) that the defendant substantially assisted or encouraged the primary tortfeasor's tort. *Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Trust Fund*, 201 Ariz. 474, 23 ¶34 (2002).

<u>Breach of Contract</u> – this claim requires: (1) the existence of a contract, (2) breach of a term of the contract, and (3) resultant damages. *Graham v. Asbury*, 112 Ariz. 184, 185 (1975).

Breach of the Covenant of Good Faith & Fair Dealing – this claim requires Tucker to prove that the defendant(s) performed acts that prohibited Tucker from receiving the benefits and entitlements of his agreement(s) with them. *Wells Fargo, supra*, at 490, ¶59. Breach of this implied covenant may be demonstrated regardless whether an actual term of the parties' underlying contract was breached, if the defendants manipulated bargaining power to their own advantage. *Id*. at ¶64 (internal citations omitted).

Conspiracy to Commit Fraudulent Transfer – a conspiracy claim requires: (1) two or more people making an agreement to accomplish an unlawful purpose or to accomplish a lawful objective by unlawful means, and (2) causing damages. *Wells Fargo, supra* at ¶99 citing *Baker v. Stewart Title & Trust of Phoenix*, 197 Ariz. 535, 542 (App. 2000).

Actual Fraudulent Transfer – this claim requires a showing that a transfer was made, or an obligation was incurred by a debtor with actual intent to hinder, delay or defraud any creditor. Actual intent is to be considered by multiple "badges of fraud," which can include (but are not limited to): (a) whether the transfer was made to an insider; (b) whether the debtor retained possession of the property transferred, (c) whether the transfer was concealed, (d) whether the debtor had been sued or threatened with suit before the transfer was made, (e) whether the transfer was substantially all of the debtor's assets, (f) the debtor absconded, or (g) the debtor removed or concealed assets. A.R.S. § 44-1004(A)(1), (B).

Constructive Fraudulent Transfer – this claim is established when a debtor makes a transfer or incurs an obligation without receiving a reasonably equivalent value in exchange for the transfer, and the debtor was either:

4

**i** – engaged or about to engage in a business transaction for which the remaining assets of the debtor were reasonably small in relation to the business or transaction; or

**ii** – intended to incur, or believe or reasonably should have believed that it would incur debts beyond the ability to pay as they become due (becomes insolvent).

A.R.S. § 44-1004(A)(2); 44-1005.

<u>Defamation *Per Se*</u> – this tort can be demonstrated when one publishes statements with accusations that would tend to injure a person is his profession, trade or business, or when one makes statements that impute the commission of a crime involving moral turpitude. *Boswell v. Phoenix Newspapers*, 152 Ariz. 1, 5-6, fn. 4, citing *Modla v. Parker*, 17 Ariz. App. 54, fn. 4 (App. 1972). Defamation *per se* is actionable without proof of pecuniary damages. *Boswell* at fn. 8 (internal citations omitted).

**3.    Factual and Legal Issues in Dispute.**

**Plaintiff Labor Smart, Inc.** It is believed Defendants deny they breached any fiduciary duty and did not convert any funds received from Mr. Sequeira. The issues may be narrowed if Defendants can show that the funds received from Mr. Sequeira were actually delivered to Labor Smart.

**Tucker's Position**:

With regard to the Claims against Tucker, Tucker has already (repeatedly) provided proof that the claimed funds he "stole" or "converted" from Mr. Sequeria were, in fact, used to pay debts of Takeover Industries, Inc. There is evidence disproving the claim, and Plaintiff has had that evidence in hand since prior to filing the suit/claims against Tucker.

With regard to the claims asserted by Tucker, the central disputes will focus on:

**(a)** any alleged justification for not paying Tucker sums that were earned, due and owed by Takeover;

**(b)** the decision to take Takeover funds/assets and "shut down" Takeover, opening NextGen in its stead;

**(c)** actions to stage a "takeover" of Takeover and then "realign" the parties in this lawsuit; and

**(d)** actions to involve/participate with Zarro in creating NextGen, closing Takeover, "spinning off" Labor Smart, thwarting the Tuckers' ability to transfer/sell stock, and divesting Tucker his ability to vote as a Labor Smart preferred Shareholder.

Tucker does not see it not likely that these issues will be resolved by stipulation but anticipates that several issues will be resolved by motion based on indisputable evidence.

**4. Jurisdiction.**

**Plaintiff Labor Smart, Inc.** The court has jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiff Labor Smart, Inc. is a Wyoming corporation. Defendants are domiciled in Mexico and, upon information and belief, United States citizens.

**Tucker's Position**:

This case was originally filed (by Takeover Industries, Inc., a Nevada corporation) based on diversity jurisdiction pursuant to 28 U.S.C. § 1332 because it involved a Nevada entity, with a place of business in California, and was against Holley, a citizen of Arizona.[2] The amount in controversy exceeded $75,000 from inception.

---

[2] At the time of filing, the Complaint also named David Eisenberg, a resident of Indiana. Though Mr. Eisenberg has since been dismissed, diversity existed at the time of filing.

The Tuckers filed their claims as United States citizens living abroad (in Mexico).[3] At present, Labor Smart, Inc. purports to be a Wyoming entity (though it is still registered and in good standing in Nevada and was acting as a Nevada entity when this case began). Takeover Industries, Inc. remains a Nevada entity, and Zarro is also a citizen of Nevada. NextGen Beverages, LLC is a Wyoming entity; Holley is a citizen of Arizona; McBride is a citizen of California; and, Pavlik is a citizen of Ohio.

Though the Counter/Third-Party Defendants are not completely diverse, the pleadings demonstrate diversity between the Tuckers and each of the Counterdefendants/Third-Party Defendants.

**5.     Parties.**

All parties have been served and have entered an appearance.

**6.     Parties Not Subject to the Court's Jurisdiction.**

There are no disputes over the Court's jurisdiction.

**7.     Dispositive Motions.**

**Plaintiff Labor Smart, Inc.** Upon completion of discovery, Labor Smart believes its claims for Breach of Fiduciary Duty and Conversion should be resolved on summary judgment. Labor Smart believes Defendant's Counterclaim for Abuse of Process and the Third-Party Claims for Conspiracy to Commit Fraudulent Transfer, (Actual) Fraudulent

---

[3] The Tuckers have since returned from Mexico and are living in Nevada, but diversity is determined at the time the action commences, and the Court is not divested of jurisdiction if a party subsequently moves to another state. *Hill v. Blind Indus. & Servs.*, 179 F.3d 754, 757 (9th Cir. 1999), citing *Freeport-McMoRan Inc. v. KN Energy, Inc.*, 498 U.S. 426, 428 (1991).

7

Transfer under A.R.S. § 14 – 1004 and (Constructive) fraudulent transfer under A.R.S. § 44 – 1004 should also be resolved on summary judgment.

**Tucker's Position:**

The Tuckers anticipate filing motions for summary judgment to dispose of the claims against them, based on indisputable evidence that the $75,000 allegedly "converted" was, in fact, used for debts of Takeover Industries, Inc. With such evidence, the claims for both Conversion and Breach of Fiduciary Duties will fail.

The Tuckers further anticipate that the claims for Breach of Fiduciary Duties by Holley, McBride and Pavlik as well as Breach of Contract against each of them will be resolved on dispositive motion. They anticipate that the claim for Defamation *Per Se* will also be subject to summary judgment, as will the Constructive Fraudulent Transfer.

At this time, without the benefit of any discovery, it is more difficult to determine whether factual questions will exist on the claims of Conspiracy, Aiding and Abetting, and Actual (Intentional) Fraudulent Transfer.

**8. Referral to United States Magistrate Judge or Special Master.**

At this time, the parties do not agree to a Magistrate Judge and do not believe appointment of a Special Master is required.

**9. Related Cases.**

The parties agree that *James V. Deppoleto Jr. v. Takeover Industries Incorporated*, *et al.*, No. 2:22-CV-02013-GMN-BNW, in the U.S. District Court of Nevada is related.

**Tucker's Position:**

Although Takeover Industries, Inc. is a party to the related Nevada case, it has not provided any substantive background information/update/status on the matter, leaving the Tucker counsel to conduct online research. From the public docket, it appears that Deppoleto must have added claims in the Nevada case against Holley, Zarro, and NextGen in the Nevada case for Fraudulent Transfer (in addition to the Breach of Contract claims against Takeover). A Motion for Summary Judgment appears to have been filed just days ago, on January 10, 2025, where Deppoleto seeks a dispositive ruling on the contract and fraudulent transfer claims. Tucker does not have any additional information or update to provide but notes that the briefing in the Nevada case appears to overlap with multiple of the factual allegations at issue in this case.

**10.    Initial Disclosures under Rule 26(A), Federal Rules of Civil Procedure.**

Due to Plaintiff attorney's trial schedule, including a six-day jury trial beginning January 27 through February 4, 2025 (Maricopa County Superior Court, Case No. 2021 – 010550), and a 3 day AAA arbitration beginning February 24 through February 27, 2025 (Case No. 01 – 23 – 0004 – 7644), and health (surgery on January 3, 2025 and impairment to his voice) the parties will make their initial disclosures no later than March 14, 2025.

**Tucker's Position:**

Tucker has no objection to accommodating Mr. Levine's current trial schedule and was more than understanding about Mr. Levine's prior time off for health issues. There is no dispute about pushing disclosures to March 14, 2025, as the Tucker's new counsel

(Spencer Freeman) also needs a bit of time to be caught up to speed on the claims against Takeover Industries.[4]

**11. Proposed Deadlines.**

(a) **Motions to Amend or Join Additional Parties**: The parties do not anticipate any such filing but agree the deadline for such filing should be May 2, 2025.

(b) **Completion of All Fact Discovery**: The parties propose discovery to be completed in phases, in hopes that early discovery may avoid unnecessary or duplicative matters.

First and foremost, the parties respectfully ask this Court to refer this matter to a Magistrate Judge for purposes of an early settlement conference, as they believe an early (and relatively soon) conference may avoid the expense of discovery/depositions.

If the case is not resolved upon an early settlement conference, the parties suggest to "phase" depositions, with Phase I to be completed within 120 after completion of the Settlement Conference. Phase I depositions would be limited to Holley, McBride, Pavlik, Tucker, and Zarro.

If the parties are not prepared to resolve difference after those depositions, Phase II would permit any additional depositions (third parties or fact witnesses) and would be completed within 210 days after completion of the Settlement Conference.

The parties agree that written discovery need not be "phased" and may be propounded in accordance with the Fed. R. Civ. P., with all written discovery to be

---

[4] As the Court knows, Takeover Industries recently raised that Ms. Manolio could not represent against Takeover Industries because that entity was formerly her client. To avoid any dispute, the Tuckers voluntarily hired independent counsel, Spencer Freeman, who has now been admitted *pro hac vice,* to proceed on the claims against Takeover.

completed no later than 210 days after completion of the Settlement Conference.

(c) **Disclosure of Expert Testimony**: It is unknown if expert testimony will be required. Nevertheless, the parties agree initial expert disclosures should be made no later than 120 days after completion of the Settlement Conference (and within Phase I).

(d) **Disclosure of Rebuttal Expert Testimony**: If initial expert disclosures are made, rebuttal expert disclosures should be made no later than 45 days after initial expert disclosures.

(e) **Disclosure of All Witnesses and Exhibits:** No later than 180 days after completion of the Settlement Conference.

(f) **Closure of All Discovery**: 210 days after completion of the Settlement Conference.

(g) **Completion of Settlement Conference**: All parties agree this case should be submitted for a Settlement Conference as soon as possible.

(h) **Dispositive Motions Including Dogbert Motions**: 90 days after completion of all discovery.

12. **Scope of Discovery.**

As outlined above, the parties believe discovery should be conducted in phases, after an early mandated settlement conference is held. The parties agree presently to limit deponents to the parties with an agreement to revisit whether additional depositions are necessary after Phase I depositions are completed, and they further agree to "fast track" Phase II of depositions if they become needed.

**13. Estimated Length of Trial.**

If this matter proceeds to trial, it is presently anticipated that the parties will need 7-10 days before a jury. The parties agree to revisit this estimation when/if issues are resolved on summary judgment.

**14. The Parties Have Requested a Jury Trial.**

**15. Prospects for Settlement.**

The parties request a referral to a Magistrate/Judge for a Settlement Conference as soon as possible, hoping that a neutral party may assist in "closing the gap" on private settlement discussions the parties have had to date.

**16. Other Matters.**

Mr. Freeman, attorney for the Tuckers on all of the Third-Party Claims, is physically located in the state of Washington. The parties agree Mr. Freeman may appear virtually for depositions and, with the Court's permission, any pretrial court appearances. The parties have further agreed to cooperate in conducting as many depositions virtually as needed, recognizing that the parties/witnesses reside in multiple different locations.

Labor Smart has only recently raised that Ms. Manolio's representation of the Tuckers is a conflict of interest. Labor Smart has consulted with Attorney Scott Rhodes. Mr. Rhodes has prepared and delivered to Ms. Manolio a letter detailing why he believes Ms. Manolio has a conflict of interest which prohibits her continued representation of the Tuckers. Mr. Rhodes also has concerns about whether Mr. Freeman has a conflict of interest.

**Tucker's Position:**

As this Court knows, Holley previously raised that Ms. Manolio should be disqualified from representing the Tuckers and McBride raised a conflict of interest. *See, e.g.,* Docs. 90, 99, 100. This Court conducted a thorough analysis, after having allowed Ms. Manolio to withdraw from representing Takeover and Pavlik, that no conflict existed to allow Ms. Manolio to continue representing the Tuckers. Doc. 118. The Court considered all applicable Rules of Professional Conduct set forth in the Rules of the Supreme Court of the State of Arizona, which apply here because the U.S. District Court District of Arizona ("Local Rules") incorporate them. L.R.Civ. 83.2(e). Importantly, this Court determined that the disqualification was being sought based on "speculation" and not any real evidence that Ms. Manolio's prior representation of either Takeover or Pavlik yielded information that could be used to their disadvantage in the matters before the Court. (Doc. 118 at fn. 5).

Nothing about this Court's prior analysis has changed except that the Tuckers have now alleged Third-Party Claims against Takeover and others. Once that pleading was filed, Takeover counsel (Mr. Levine) discussed the conflict issue with Ms. Manolio, and the Tuckers voluntarily agreed to have independent counsel (Spencer Freeman) prosecute their claims against Takeover. Recognizing that even a ***potential*** conflict argument should be avoided, Ms. Manolio very immediately stepped back. Mr. Freeman has no prior involvement in this case and no possible conflict with representing against any of the Counterdefendants/ Third-Party Defendants.

13

Even after Tucker voluntarily retained Mr. Freeman to pursue the claims against Takeover, Mr. Levine hired a "consultant," Scott Rhodes, to draft a letter purporting to set forth conflict(s) of interest that prohibit Ms. Manolio's continued representation of the Tuckers. Mr. Rhodes went so far as to claim that the conflict was imputed to Mr. Freeman because Ms. Manolio could not have informed him about the case "without imparting to him confidential information of Takeover and/or Pavlik." The position is totally false.

Tucker believes the current "conflict" and "disqualification" discussion is a mere strategic move. Labor Smart and the Third-Party Defendants believe that if Ms. Manolio is disqualified, the Tuckers will not be able to afford to hire replacement counsel to start anew in this 3-year-old lawsuit. This is tactical, not factual. Ms. Manolio has met and conferred with Mr. Levine (more than once) on the topic, and yet no party has filed any Motion for Disqualification. There have only been blanket allegations and thinly-veiled threats of bar complaint(s) made.

Tucker requests that this Court make an immediate determination on representation, requiring Takeover to present **actual evidence** to support its claims that Mr. Freeman cannot represent against Takeover and/or that Ms. Manolio has an ongoing conflict in continuing to represent the Tuckers. This issue should not be used as an ongoing threat and/or with an indeterminate timeframe.

///

///

///

**RESPECTFULLY SUBMITTED** this 16th day of January, 2025.

**PAUL M. LEVINE, P.C.**

By: */s/ Paul M. Levine*
    Paul M. Levine, Esq.
    8502 E. Via de Ventura, Suite 230
    Scottsdale, Arizona 85258
    *Attorney for Labor Smart*

**MANOLIO & FIRESTONE, PLC.**

By: */s/ Veronica L. Manolio (with permission)*
    Veronica L. Manolio, Esq.
    8686 E. San Alberto Dr., Suite 200
    Scottsdale, Arizona 85258
    *Attorney for Defendants/ Counterclaimants/*
    *Third-Party Plaintiffs*

**FREEMAN LAW FIRM, INC.**

By: */s/ Spencer D. Freeman (with permission)*
    Spencer D. Freeman, Esq.
    1107 1/2 Tacoma Ave S
    Tacoma, Washington 98402
    *Attorney for Jason Tucker and*
    *Melissa Tucker*

# CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been electronically served on all counsel of record on the 16th day of January 2025 via CM/ECF filing system.

Veronica L. Manolio
**MANOLIO & FIRESTONE, PLC**
8686 E. San Alberto Dr., Suite 200
Scottsdale, Arizona 85258
VManolio@MF-Firm.com

Spencer D. Freeman, Esq.
**FREEMAN LAW FIRM, INC.**
1107 1/2 Tacoma Ave S
Tacoma, Washington 98402
SFreeman@FreemanLawFirm.org
Reception@FreemanLawFirm.org
Sierra@FreemanLawFirm.org
*Attorney for Jason Tucker and Melissa Tucker*