# EXHIBIT A



Scott Rhodes
Direct Dial: 602-333-5442
srhodes@spencerfane.com

File No. 5521589.0001

December 12, 2024

**VIA E-MAIL (VMANOLIO@MF-FIRM.COM)**

Veronica L. Manolio, Esq.
Manolio & Firestone, PLC
8686 E. San Alberto Dr.
Scottsdale, AZ 85258

    Re:    Labor Smart, Inc. v. Jason and Melissa Tucker: Analysis of Disqualifying Conflict of Interest

Dear Ms. Manolio:

    Paul M. Levine retained me as an expert to review the above-referenced case and provide my opinion regarding whether you have a conflict of interest and, if so, whether such conflict requires you to withdraw as counsel. As I do not believe we have met or communicated in the past, I am enclosing a copy of my CV for your information. For the reasons stated below, I have concluded that you have a disqualifying conflict. I am providing you with my analysis at Mr. Levine's request, in order to give you an opportunity to reflect on it, and with the hope that this letter will avoid the need to file a motion to disqualify. If anything stated in this letter is, in your opinion, factually or legally wrong, I will welcome a responsive letter.

    You were originally retained to represent Takeover Industries ("Takeover"), in which capacity you filed suit on March 8, 2022, against Michael Holley, Chirine Holley, and David Eisenberg. On May 20, 2022, the Holley parties filed an answer with counterclaims against Takeover and a third-party complaint against Jason and Melissa Tucker, Toby McBride and Joseph Pavlik. On or about June 14, 2022, you entered into a Joint Defense and/or Conflict of Interest agreement to undertake the common representation of Takeover, the Tuckers, and Pavlik. You continued in your capacity as counsel of record for those parties for approximately five months, until you filed a Motion to Withdraw from your representation of Pavlik on November 11, 2022, and another motion on November 22, 2022, seeking to withdraw as counsel for Takeover but to remain as counsel for the Tuckers. The Court granted both motions on December 6, 2022. You have remained as counsel for the Tuckers to this date.

    Nearly two years later, on September 27, 2024, on behalf of the Tuckers, you filed your First Amended Counterclaims and Third-Party Claims against Takeover, Pavlik, Holley, McBride, a company



named Next Gen, and an individual named Zarro. You thus have now sued your former clients, Takeover and Pavlik, in the same litigation for which you once represented both of them.[1]

Not only did you sue your former clients in September 2024, in your Motion to Withdraw of November 22, 2022, you also revealed confidential information of Pavlik against his interests by stating: "… undersigned will not work with/take direction from Mr. Pavlik, who refused legal advice he was given (while making false accusations of lack of communication) but refusing to sign a consent for withdrawal." (11/22/22 Motion, at 2:17-20.) When you made this statement, Pavlik was still your client because the Court had not yet granted your motion to withdraw as his counsel. Moreover, as you stated in the motion, Pavlik had not consented to your withdrawal as his counsel. This transgression of your duties of loyalty and confidentiality to Pavlik illustrates the extent to which your judgment had been materially affected by your reaction to actions taken during the course of this litigation. A lawyer whose personal interests materially affect her judgment has a conflict of interest. (*See* ER 1.7(a)(2). Neither Takeover nor Pavlik waived that conflict.

Whenever a lawyer undertakes a joint representation, if events develop that reveal a conflict among the jointly represented clients, the lawyer must withdraw from representing *all of the clients* when the lawyer has confidential information of any of the clients that the lawyer could use to the detriment of those clients. This concept is encapsulated in comment 27 to ER 1.7, which provides:

> Ordinarily, the lawyer will be forced to withdraw from representing all of the clients if the common representation fails. In some situations, the risk of failure is so great that multiple representation is plainly impossible. For example, a lawyer cannot undertake common representation of clients where contentious litigation or negotiations between them are imminent or contemplated. Moreover, because the lawyer is required to be impartial between commonly represented clients, representation of multiple clients is improper when it is unlikely that impartiality can be maintained. Generally, if the relationship between the parties has already assumed antagonism, the possibility that the clients' interests can be adequately served by common representation is not very good.

In your November 22, 2022 Motion to Withdraw, you described "the complete chaos and upheaval" that you claim resulted from a November 7, 2022 Takeover Board meeting. (11/22/22 Motion, at 2:10.) You then proceeded to describe information related to the participants at that meeting, your view of the impact of the meeting on Takeover, and your inability or unwillingness to remain as counsel for either Takeover or Pavlik. I previously discussed how this discussion in your motion revealed confidential information about Pavlik. The same is true of Takeover. Your motion demonstrated that you had encountered the quintessential circumstance, as described in comment 27 to ER 1.7 (quoted above), where antagonism among your clients not only was foreseeable, it was actual and active. Your ethical obligation,

---

[1] I am aware of the party realignments in the case, but it is the same litigation about the same general set of underlying facts.



therefore, was not merely to withdraw from representing Takeover and Pavlik, but to withdraw from the case entirely.

Even if you did not have a duty to withdraw entirely from the case in November 2022 (which I believe you had), such a duty became patently obvious when you filed your First Amended Counterclaims and Third-Party Claims on September 27, 2024. Following termination of a representation, a lawyer retains her duties of loyalty and confidentiality to the former client absent client consent, which has not been given. (*See* ER 1.7, cmt. [9].) Under ER 1.9, a lawyer cannot undertake the representation of a client in "the same or substantially related matter" for which the lawyer previously represented another client with adverse interests, absent the former client's informed consent. Here, you have continued to represent the Tuckers in *the same litigation* for which you later sued Takeover and Pavlik. You neither requested nor received a waiver from Takeover or Pavlik to be sued by you on behalf of the Tuckers.

I am aware you have recently provided notice that another lawyer will represent the Tuckers for the counterclaims and third-party claims. That, however, neither forgives nor cures your violations of your duties of confidentiality and loyalty. In addition to prohibiting conflicts of interest with former clients absent waivers, ER 1.9 also prohibits a lawyer from revealing or using a former client's confidential information against the former client's interests. (ER 1.9(c).) This prohibition cannot be avoided by retaining separate counsel, because your knowledge of confidential information of Takeover and Pavlik exists and cannot be excised from your brain. "Humans cannot partition their brains so that they only use particular knowledge for particular purposes." *Hyde Park Venture Partners Funds III, L.P. v. FairXchange, LLC*, 292 A. 3d 178, 196 (Del. Ch. 2022).

That you have confidential information of both Takeover and Pavlik is undeniable. For the approximately eight months in which you represented Takeover, and the approximately five months in which you jointly represented Pavlik and the Tuckers, you became privy to in-depth knowledge, not only about Takeover and its business, but about Pavlik and the other persons with interests in Takeover. Review of your billing invoice of November 16, 2002, reveals that, between June and November 2022, you conferred with both Tucker and Pavlik about issues related to McBride, whom you later sued on behalf of the Tuckers. Your knowledge of confidential information during this time period extended beyond Tucker and Pavlik to the entire Board of Directors. On September 21, 2022, for example, you recorded time for reviewing "all communications back and forth among BOD re: accounting of Toby [McBride]'s personal charges, each person's version of what occurred, and necessity of protecting Takeover." Your duty of confidentiality to Takeover encompasses information about its Board members, investors, and other interested parties.

You also engaged in email communications with Pavlik while you represented him, including emails in November 2022 which, given the context of other activities at the time, undoubtedly concerned Takeover's strategy related to your TRO petition, in which you sought the appointment of a Receiver for Takeover. This timing is of particular concern, because on November 8 and 11, 2022, you also recorded time for preparing a motion to withdraw from your representation of Pavlik, which you filed on November 11. You thus were conferring with Pavlik in preparation for the TRO while simultaneously preparing to withdraw from representing him. You revealed information about this series of confidential

Veronica L. Manolio, Esq.
December 12, 2024
Page 4



communications with Pavlik to his detriment in your November 22, 2022 Motion to Withdraw from your representation of Takeover, which I have quoted and discussed above.

    The record is therefore remarkably clear that, when adversity arose among some of your jointly represented clients, you not only failed to withdraw immediately from representing all of the clients, you picked your preferred clients (the Tuckers), then nearly two years later, you switched sides and sued Takeover and Pavlik without requesting or obtaining either their consent to sue them or their consent that you may reveal or use their confidential information to their detriment.

    I again ask you to give careful consideration to the contents of this letter. In my opinion, based on my experience and knowledge of the ethical obligations of Arizona lawyers, (1) you must immediately move to withdraw from representing the Tuckers or any other party in the pending lawsuit, and (2) because you could not have informed Spencer Freemen about the case without imparting to him confidential information of Takeover and/or Pavlik, Mr. Freeman must withdraw as well.

    Cordially,

    Spencer Fane LLP

    Scott Rhodes

SR/jsr

Enclosure

**J. SCOTT RHODES**
2415 E. Camelback Road, Suite 600
Phoenix, Arizona 85016
**P** 602.333.5442  |  **F** 602.333.5431
srhodes@spencerfane.com  |  spencerfane.com



# J. SCOTT RHODES
Chair, Legal Ethics

## Overview

Scott Rhodes provides trusted counsel to attorneys, law firms, legal departments, in-house counsel, and government agencies on highly sensitive ethical, professional responsibility, and business matters to identify and address any legal issues related to professional conduct.

With an extensive and distinguished background in legal ethics, Scott regularly advises clients in matters relating to state bar complaints, fee disputes and arbitrations, disciplinary matters, bar admission, and other licensing, ethics, and professional responsibility issues. His previous experience includes serving as managing attorney and general counsel for a Phoenix law firm in addition to his private practice.

Scott also serves as an expert witness in legal malpractice and other cases related to the practice of law.

In addition to his work in professional conduct, Scott has experience in the areas of general commercial, local government, and professional corporate governance and structure litigation. He provides collaborative legal services to advocate for clients in front of mediators, arbitration panels, judges, and juries utilizing all manners of traditional and alternative dispute resolution.

Even in professional conduct matters, Scott understands that legal strategy and tactical decisions must incorporate a business perspective and align with each client's goals.

Prior to entering private practice, Scott served as a law clerk for the Hon. Robert Corcoran and the Hon. Charles E. Jones in the Arizona Supreme Court. He also previously owned and operated a private business in Paris for nine years.

**J. SCOTT RHODES**
2415 E. Camelback Road, Suite 600
Phoenix, Arizona 85016
**P** 602.333.5442 | **F** 602.333.5431
srhodes@spencerfane.com | spencerfane.com

## Admissions

### Admitted to Practice
- Arizona (1995)

### Court Admission
- U.S. District Court, District of Arizona (2000)
- U.S. Court of Appeals, Ninth Circuit

## Representative Experience

### Lawyer Professional Responsibility
- Regularly represents public and private lawyers in defense of Bar complaints and fee arbitrations
- Regularly provides ethics counsel to lawyers and law firms
- Expert witness in legal malpractice cases and other cases related to the practice of law

## Recent Media and Presentations

### Blogs
- "Arizona Supreme Court Rules that Lawyer Seeking Reinstatement Need Not Identify 'Root Cause' of Weakness that Led to Suspension," (April 29, 2013)

### Interviews
- "J. Scott Rhodes Discusses Arizona Town Hall's Report on Vulnerable Populations in Arizona," Arizona Horizon (May 7, 2014)

### Videos
- "Considerations For Lawyers Starting Careers as Sole Practitioners," (September 24, 2013)
- "Why Sole Practitioners and Small Firms Should Seek Out Ethics Counsel," (September 24, 2013)
- "Client Selection: Considerations For Identifying a Worthy Client from an Unworthy Client," (September 24, 2013)

### Podcasts
- "Before The Show #150 - Ethics Guide For Lawyers," The Knowledge Group (April 23, 2020)
- "What an Arizona Attorney Should Do When They Receive a Bar Complaint," (July 2, 2012)
- "What a Law Firm Should Do When an Attorney Has a Substance Abuse Problem," (July 6, 2012)
- "What Attorneys Should Know About Having a Virtual Law Office in Arizona," (July 6, 2012)

### Presentations
- "Current Events in Legal Ethics" City of Phoenix Law Department (June 14, 2024)
- "Government Lawyer Ethics and You – What to Know " State Bar of Arizona (June 12, 2024)
- "Reminders and Current Events in Legal Ethics" Jones Skelton & Huchuli Retreat (June 8, 2024)



**J. SCOTT RHODES**
2415 E. Camelback Road, Suite 600
Phoenix, Arizona 85016
**P**  602.333.5442  |  **F**  602.333.5431
**srhodes@spencerfane.com**  |  spencerfane.com

- "Ethics CLE: Hints on How to Avoid a Bar Charge" Rafi Law Group ACC (June 6, 2024)
- "Ethically Representing a Public Organization" Salt River Project Legal Department (June 5, 2024)
- "Current Issues in Legal Ethics Discussion," Association of Corporate Counsel (May 16, 2024)
- "Lawyer Regulation and Artificial Intelligence," Arizona Association of Defense Counsel (May 9, 2024)
- "CLE at the Movies," Spencer Fane LLP (May 2, 2024)
- "Ethics Tune-Up: Reminders and Recent Developments," Yavapai County Bar Association (February 27, 2024)
- "Ethical and Professional Conduct Challenges Faced by Administrative Lawyers," Presenter, State Bar of Arizona Webinar (March 24, 2023)
- "Advanced Legal Ethics: Thorny Issues and Current Events," Presenter, Banner Health Annual Defense Counsel Seminar (January 20, 2023)
- "The Ethics of Difficult Times: Common Opportunities and Facing Challenges if They Occur," Presenter, Association of Legal Administrators – AZ Chapter (January 17, 2023)
- "Managing the Conflict of Interest Maze for Public Lawyers," Arizona Attorney General's Office (February 16, 2022)
- "Ethics Challenges No One Ever Wants to Think About-But Should,' Jennings Strouss & Salmon (December 15, 2021)
- "10 Deadly Sins of Conflicts," State Bar of Arizona (November 18, 2021)
- "Arizona Water Law – Water Shortages, Replacement Supplies & Emerging Policies," CLE International (August 27, 2021)
- "Advancing Social Justice – Bankruptcy in 2021," State Bar of Arizona (June 18, 2021)
- "Practical Risk Management Tips," Ahem Insurance Brokerage (May 12, 2021)
- "Does My Local Walmart Offer Legal Services," American Inn of Court (January 14, 2021)
- "Braving the Storm – Dealing with Opposing Counsel and Court," State Bar of Arizona (December 10, 2020)
- "How Not to Commit Malpractice During a Pandemic," Arizona Association for Justice (August 6, 2020)
- "Ethics Guide for Lawyers: Significant Trends and Best Practices," The Knowledge Group Webinar (May 20, 2020)
- "The Ethics of Legal Advertising," C4 Luncheon Presentation, Jennings Strouss & Salmon (2019)
- "Representing an Entity in an Internal Investigation: Ethical and Practical Issues," Arizona Society of Healthcare Attorneys (2019)
- "Regulation Year in Review," College of Estate Planning Attorneys (2018)
- "Ethical Morning at the Movies," State Bar of Arizona (2018)
- "Braving the Storm: Dealing with Opposing Counsel and the Court," State Bar of Arizona (2018)
- "Lawyers and Non-Profit Boards: An Ethical Review," Planned Giving Roundtable of Arizona (2018)
- "Twenty-First Annual Public Practice Legal Seminar/HR Summit," Arizona Counties Insurance Pool, the Arizona State Civil Deputies and AMRRP (2018)
- "Lawyer Regulation in Arizona; A Review of Recent Trends," West Maricopa County Bar Association (2018)

## Community Involvement

### Arizona State University, Sandra Day O'Connor College of Law
- Adjunct Professor, Professional Responsibility (Fall 2015, Fall 2016, Spring 2019, Spring 2020)

**Arizona Town Hall**
- Chair (2013 – 2015)

**Acting Honorary Consul for France** (2001 – 2003)

## Honors and Awards

- AV Preeminent® Peer Review Rated™
- Recognized as a Top Lawyer by *Phoenix magazine* in the category of Professional Malpractice – Defense & Plaintiff (2022)
- Selected, *The Best Lawyers in America*© Phoenix "Lawyer of the Year" for Ethics and Professional Responsibility Law (2013, 2018, 2020, 2022)
- Listed, *The Best Lawyers in America*© in the categories of Administrative/Regulatory Law, Arbitration, Ethics and Professional Responsibility Law, Legal Malpractice Law - Defendants, Litigation - Municipal, Mediation, Municipal Law, and Professional Malpractice Law - Defendants (2009 – 2022)
- Selected, *The Best Lawyers in America*© Phoenix "Lawyer of the Year" for Litigation – Municipal (2021)
- Selected, Volunteer of the Month, State Bar of Arizona CLE Department (February 2019)
- Listed, *Southwest Super Lawyers*® in the categories of Administrative Law, and Politics (2007), Professional Liability: Defense; State, Local & Municipal Law; and Utilities Law (2011 – 2019)
- Selected, *The Best Lawyers in America*© Phoenix "Lawyer of the Year" for Legal Malpractice Law - Defendants (2019)
- *Arizona State Law Journal*, John S. Lancy Distinguished Alumni Award (2018)
- Selected, *The Best Lawyers in America*© Phoenix "Lawyer of the Year" for Administrative/Regulatory Law (2011)
- Co-recipient, Member of the Year Award, State Bar of Arizona (2010)
- Chevalier de l'Ordre du Mérite National (Knight of the Order of National Merit, Republic of France)

## Education

- J.D., Arizona State University College of Law, cum laude (1995)

    - Executive Managing Editor, Arizona State Law Journal
    - Sandra Day O'Connor Award
    - Alan A. Matheson Award

- B.A., English, Yale University (1980)

    - cum laude
    - Distinction in the English Major

## Foreign Languages

- French (Fluent)