LAW OFFICES
**MANOLIO & FIRESTONE, PLC**
8686 E. San Alberto Dr., Suite 200
Scottsdale, Arizona  85258
(480) 222-9100
vmanolio@mf-firm.com
Veronica L. Manolio, SBN 020230
*Attorneys for Tucker Defendants, Counterclaimants,
    and Third-Party Claimants*

# IN THE UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Labor Smart, Inc.<br><br>Plaintiff,<br><br>v.<br><br>Jason and Melissa Tucker,<br><br>Defendants.<br><br>And related Counterclaims<br>and Third-Party Claims. | Case No. 2:22-cv-00357-PHX-DJH<br><br>**DECLARATION OF COUNSEL IN SUPPORT OF RESPONSE ON DISQUALIFICATION** |

Veronica L. Manolio, subject to the penalty of perjury, affirms and states:

1. I am the attorney for Defendants/Counterclaimants/Third-Party Claimants Jason and Melissa Tucker and make this Declaration in support of the Response filed to the Motion to Disqualify Counsel (against myself and Spencer Freeman) (Doc. 195).

2. I have had a long working history with Jason Tucker, and I first began working with him as a litigation consultant in matters wholly unrelated to this case.

3. I also met attorney Spencer Freeman years ago, in a matter wholly unrelated to this case, and I have worked with Mr. Freeman as co-counsel in another matter since that time, where he needed local counsel in Arizona.

4. My firm was originally hired in 2022 by Takeover Industries, Inc. (through Jason Tucker, as he was the President at that time) to file this suit against Michael Holley.

5. Any and all information I learned about Takeover was through Tucker, as he was the company's President at that time. There were no personal claims against Tucker (or Pavlik or McBride) when this case began.

6. When I filed this lawsuit, Takeover applied for injunctive relief against Holley (which was granted in part). We then spent the remainder of 2022 litigating over enforcement of the TRO, Mr. Holley attempting to have himself removed from company debt, and other peripheral issues. There was no formal disclosures, no discovery taken, and this case did not proceed in any normal or substantive fashion.

7. However, in the summer of 2022, Mr. Holley lodged third-party claims against each Tucker, Pavlik and McBride. By that time, Takeover already had reason to suspect that it may get "adverse" to McBride, so I declined to jointly represent McBride along with Takeover. We had no knowledge and no reason to believe that Tucker or Pavlik had interests other than those that aligned with Takeover, so I agreed to take on joint representation of those individuals in the third-party defense.

8. We entered into a written Joint Conflict and Defense Agreement, which the Court has been provided.

9. I never had a single substantive discussion with Pavlik and learned nothing about any substantive defenses or evidence from him.

10. My discussions with Pavlik were only procedural (and with joint calls) to discuss the hiring for joint representation purposes.

11. I had enough information to file blanket denials of the claims against Tucker and Pavlik, and it was my goal to meet with them and learn more once we needed to begin the disclosure and discovery process. That never happened.

12. By September 2022, Takeover and Tucker learned that McBride had also been engaged in financial and managerial malfeasance, which McBride admitted and apologized for (and promised to repay Takeover for the funds he took for personal gain).

13. McBride accepted a voluntary leave of absence from Takeover, while the company investigated the depth of his personal spending, and he agreed not to conduct any Takeover business while the leave was pending.

14. But, in early November 2022, Holley, McBride, and Pavlik all met together (with Holley and McBride's personal counsel in attendance and providing instruction), and these gentlemen realigned and staged a "takeover" of Takeover for the purpose of hiding all the wrongdoing they had committed earlier.

15. Holley, McBride and Pavlik ousted Tucker from his role at Takeover and stripped him of monies due/owed to him from Takeover (as well as they conspired to harm Tucker in the Labor Smart entity).

16. I filed a Motion to Withdraw from representing Joseph Pavlik (Doc. 81), and shortly thereafter filed to withdraw from representing Takeover (Doc. 96). The Court granted both of my motions (Doc. 102).

17. Both Holley and McBride raised issues of a "conflict" for my continued legal representation of the Tuckers in this case, given my prior representation of Takeover and Pavlik. (Doc. 99, 100)

18. After performing a lengthy analysis, Judge Tuchi ruled that I would not be disqualified from continuing to represent the Tuckers in this matter, specifically relying on ER's 1.7 and 1.9 (along with ER 1.13, though that rule is not raised now). (Doc. 118).

19. By February 2023, Takeover stopped running as a legitimate business producing hydrogen water and "gamer shots," as it had done under Tucker's direction – Holley and McBride turned Takeover into a shell used only to pay themselves.

20. I have learned this information directly from public filings in the related case, *Deppoleto Jr. v. Takeover Industries Incorporated*, et al., No. 2:22-CV-02013-GMN-BNW, in the U.S. District Court of Nevada. Both Holley and McBride provided sworn testimony that has been publicly filed and is a matter of public record in that case.

21. Once Holley and McBride took over Takeover, I had no knowledge of the company, did not continue representing the company, and had no information.

22. Likewise, since November 2022, Jason Tucker was locked out of Takeover and had no access to Takeover records, financials, emails, documents, etc. These undisputed facts were noted by Judge Tuchi. (Doc. 129)

23. After removing Tucker from Takeover, Holley and McBride voted to have Takeover dismiss the claims and counterclaims against one another and solely pursue Tucker in this lawsuit. This was the height of gamesmanship (again).

24. Holley, McBride, Takeover, and Labor Smart then all filed a motion to "realign" the parties and to substitute Labor Smart as the sole Plaintiff against Tucker.

25. After significant motion practice on the Tuckers' Motion(s) to Dismiss (where several claims were, indeed, dismissed), the Tuckers were forced to defend and plead. In September 2024, the Tuckers filed their Answer, the Counterclaims against Labor Smart, and Third-Party Claims against Takeover, Pavlik, Holley, McBride, Zarro and NextGen.

26. The claims the Tuckers now assert against Takeover are for actions taken by the Company in November 2022 and later. This is nothing about the time when Takeover was my client; the claims are based on actions of Holley and McBride running Takeover into the ground after Tucker left the company. (*See, e.g.*, Doc. 189, p. 8, lines 17-25. Judge Tuchi found "crucially" that the Tuckers' claims against Takeover did not accrue until November 2022, and they were based on the "newly formed alliance of Holley, McBride and Pavlik.") All of the claims by the Tuckers against Takeover relate to facts about his "ouster" – the claims by the Tuckers are not based on anything I could have learned while I was representing Takeover.

27. Nonetheless, when Paul Levine raised an issue of "conflict" with me in September 2024, I promptly discussed it with the Tuckers.

28. The Tuckers hired Spencer Freeman as replacement counsel to pursue the claims against Takeover, and I agreed to voluntarily withdraw from representing against Takeover.

29. When we originally spoke, Mr. Levine did not represent Joseph Pavlik (or so he told me), so we discussed Mr. Pavlik peripherally, but there was no assertion that Mr. Levine would file a motion to disqualify as to Pavlik.

30. On December 10, 2024, my office filed the Motion to Substitute to have Spencer Freeman take over the Tuckers' claims against Takeover. (Doc. 190). Two days later, I received the letter from J. Scott Rhodes, claiming I had a "conflict of interest" and had to wholly remove myself from representing in this lawsuit.

31. I reviewed Mr. Rhodes' correspondence and immediately wrote to him, telling him I needed some time to digest the matter and letting him know I took it seriously. I did so because my ethical obligations are paramount to me; I take pride in candor and professionalism.

32. After reviewing the letter, the cases and the ER's cited, and re-reading the prior rulings by Judge Tuchi, I reached out to Mr. Rhodes to ask if we could set up a call to discuss the matter. I wanted to explain some glaring **factual** issues that made his analysis erroneous. In essence, I wanted to meet and confer.

33. Mr. Rhodes told me he would need to get Paul Levine's permission to talk with me by phone. He reported back to me that he was not allowed to speak with me, and my response needed to be in writing.

34. More than a month later, Mr. Levine filed the instant motion. While he relies on Mr. Rhodes' letter as "evidence" of conflict, this Court should be very clear that J. Scott Rhodes developed his opinions based solely on the one-sided discussions with Paul Levine and/or based on a review of records. Mr. Rhodes did not learn all information or discuss the matters with me, and his facts are wrong.

35. I have never had any substantive discussions with Spencer Freeman about this lawsuit. When the Tuckers were informed they needed to hire independent counsel to avoid any potential or appearance of conflict, Mr. Tucker must have reached out to counsel Freeman directly. Mr. Freeman and I **only** spoke about the procedural issues/motion practice that had occurred recently, what the *pro hac vice* process was in this Court, and what we needed to file to get the Tuckers adequately represented. That was it.

36. Any and all factual information Mr. Freeman has about this case would have come from public filings or his conversations with his clients. No such discussions have been had with me, and I have not (and would not) disclose anything "confidential" that I learned from any client.

37. I truly believe that the Motion for Disqualification is a tactical move, meant only to force the Tuckers into hiring new counsel (at a significant financial detriment).

38. The moving parties have not established any harm they may suffer if I continue to represent the Tuckers against Holley, McBride, Zarro, Labor Smart, and NextGen. They certainly do not establish any harm if Spencer Freeman represents the claims against Takeover and Pavlik.

39. I believe the Court should deny the disqualification and allow the Tuckers to be represented by Spencer Freeman as against my former clients (Takeover and Pavlik) while I am permitted to continue representation as to all other Third-Party Defendants and the Counter-Defendant, Labor Smart. Any other result would be severely prejudicial to the Tuckers and wholly unwarranted.

 /s/ Veronica L. Manolio
Veronica L. Manolio