Paul M. Levine, Esq. (007202)
**PAUL M. LEVINE, P.C.**
8502 E. Via de Ventura, Suite 230
Scottsdale, Arizona 85258
Telephone: (480) 302.4102
Facsimile: (480) 300.4984
plevine@pmlevinepc.com
*Attorney for Plaintiff/Counterclaimant*
*Labor Smart, Inc. and Third-Party Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**IN AND FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Labor Smart, Inc, | Case No.  2:22-cv-00357-PHX-JJT |
| Plaintiff, | |
| v. | **REPLY IN SUPPORT OF MOTION TO DISQUALIFY ATTORNEYS'** |
| Jason Tucker et al., | **VERONICA L. MANOLIO AND SPENCER FREEMAN AS ATTORNEYS FOR PARTIES** |
| Defendants. | **JASON AND MELISSA TUCKER** |

Plaintiff/Counterdefendant Labor Smart, Inc. and Third-Party Defendants (the "Moving Parties"), through their counsel, submit their Reply in support of their Motion to Disqualify Counsel (Doc. 195). This Reply is supported by the attached Memorandum of Points and Authorities and the entire record in this case.

**MEMORANDUM OF POINTS AND AUTHORITIES[1]**

---

[1] Ms. Manolio's credibility is clearly at issue in this matter. On November 22, 2022, Ms. Manolio filed her Motion to Withdraw As Counsel for Takeover Industries, Inc. (Doc. 96.) In the Motion and her Declaration in support of the Motion (Doc. 96-3), Ms. Manolio stated: "Jason Tucker has **not** been a 'long-term client' of mine (or my firm). This is the first and only case where I have ever represented Mr. Tucker, and that representation was only established after the Third-Party Claim was filed (within the last 6 months). I have never prioritized Mr. Tucker, individually, over the Company,…" Then, as part of her Response to the pending Motion, Ms. Manolio filed a Declaration, stating: "I have had a long working history with Jason Tucker, and I first began working with him as a litigation consultant in matters wholly unrelated to this case." (Doc 203-1, p. 1, ¶ 2.) In Mr. Freeman's Declaration (Doc. 202), he states that in a 2016 Arizona District Court case, he "involved Ms. Manolio as local counsel and co-counsel. I was introduced to Ms. Manolio by Mr. Tucker for purpose of that litigation. The Arizona intellectual property litigation went from early 2016 until early 2021." (Doc. 202, p. 2, ¶'s 4, 5.) Ms. Manolio's claim that Mr. Tucker is not a long-term client is highly suspect.

**I.        Preliminary Statement.**

Ms. Manolio argues the pending Motion "is a mere tactical move", "strategic", and the moving parties have "colluded". (Doc. 203, p. 1.) Counsel is wrong. Directly and indirectly, counsel argues ERs 1.7 and 1.9 do not apply, which they obviously do. It is not "tactical" or "strategic" to enforce the Arizona Rules of Professional Responsibility and the ethical obligations of attorneys, or request Ms. Manolio be disqualified because she is suing her former client (Mr. Pavlik) in the same case in which she represented him.

Counsel voluntarily withdrew from representing Takeover. (Doc 96.) In the Motion to Withdraw, Ms. Manolio stated:

> As this Court is well aware, an alleged 'conflict of interest' between Takeover and Jason Tucker only arose as of a few weeks ago, and the allegations that counsel had conflicts in joint legal representation was only raised last week. Based on the complete chaos and upheaval caused by the 'Board Meeting' of November 7, 2022 and the detriment caused to the Company following that Board Meeting and the 'Resolutions' by Messrs. Holley, McBride, and ***Pavlik***, undersigned counsel no longer believes she can represent Takeover.… [U]ndersigned will not work with/take direction from ***Mr. Pavlik, who refused legal advice he was given*** (while making false accusations of lack of communication) but refusing to sign a consent for withdrawal. (Emphasis added.)

(Doc.  96, p. 2.) Thus, in her Motion to Withdraw, Ms. Manolio admitted that she gave legal advice to Mr. Pavlik concerning the November 7, 2022 Board Meeting (and that Mr. Pavlik "refused [to follow] legal advice he was given"), which is contrary to Ms. Manolio's current claim that she "never had a single substantive discussion with Pavlik". (Doc 203, p. 4.)

Ms. Manolio then argues there is nothing that prohibits her continuing to prosecute the Tuckers' claims against Mr. Pavlik. This argument is directly contrary to ERs 1.7 and 1.9. There is no meaningful distinction between counsel's prior representation of Takeover, the Tuckers and Mr. Pavlik, and the conflicts created when Ms. Manolio decided to sue Takeover and Mr. Pavlik on behalf of the Tuckers in the same case in which she previously represented them. Where there

was a conflict between Ms. Manolio's representation of Takeover and the Tuckers that she believed required her to withdraw from representing any party but the Tuckers, there now also is a conflict between Ms. Manolio's representation of the Tuckers and Mr. Pavlik. Ms. Manolio recognized that conflict when she sued her former client (Takeover). The same conflict required her not to sue and pursue Third-Party Claims against Mr. Pavlik.

Instead of recognizing her conflicts, Ms. Manolio chose to align herself with one of her three former clients, and then sue both of her former clients in the same case. This is not permitted and complete withdrawal is required pursuant to ER's 1.7 and 1.9.

As stated in the Motion, ER 1.9 does not require that confidences and secrets be actually divulged in order for a conflict to exist or for disqualification to be proper. However, Ms. Manolio admitted she had meaningful and confidential discussions with Mr. Pavlik about the November 2022 Board Meeting. She also disclosed confidential communication with Mr. Pavlik in Doc. 96 (*supra*, p. 2) and Doc. 79 (*infra*, p. 9).

The Arizona Ethical Rules are an absolute bar to subsequent representation of an individual (Mr. Tucker) whose interests are substantially adverse to those of the former clients (Takeover and Mr. Pavlik) without the consent of the former clients, which has neither been requested nor given. (Doc. 195, p. 8.) The fact that Ms. Manolio claims that there was no meaningful discussion with Mr. Pavlik during her representation of him (which is false) is not a factor for this Court to consider. Nevertheless, the record and Ms. Manolio's billing records (*infra*, p. 10) are clear that she did have privileged and meaningful communications with Mr. Pavlik regarding the same facts and issues alleged on behalf of the Tuckers against the Third-Party Defendants.

Counsel also references Judge Tuchi's prior Orders, entered on January 27, 2023 (Doc. 118) and May 1, 2023 (Doc. 129). Counsel does not address, however, that the status of this case has substantially changed since those Orders were entered, specifically that Ms. Manolio, on behalf of the Tuckers, filed Third-Party Claims against Takeover and Mr. Pavlik.[2]

## II.        Procedural History of the Case.

While it is true this case has a lengthy history (originally filed by Ms. Manolio on behalf of Takeover), there has been no substantive history. As this Court has already noted, there is no Order for a Joint Case Management Plan, and the Joint Case Management Report was just filed on January 16, 2025 (Doc. 194). No Rule 26(A) disclosures have been made, no discovery has been propounded and no depositions taken. The case did not become fully at issue until the Moving Parties filed their Answer to the Third-Party Complaint on October 25, 2024. (Doc. 184.)

## III.        The Tuckers' Allegations In the Third-Party Claims.

---

[2] In its January 27, 2023 Order (Doc. 118), the court analyzed whether Ms. Manolio had a conflict in representing the Tuckers against Mr. Holley only:

> The matter before this Court – and the only matter over which the Court may exercise its authority to enforce the professional responsibility obligations of the attorneys appearing before it – is now comprised of 3 sets of claims: 1) the claims brought by Takeover against Holley for breach of fiduciary duty, conversion and unjust enrichment (Doc. 1); 2) Holley's counterclaims against Takeover for declaratory judgment, unjust enrichment, unpaid employment compensation and mandatory indemnification (Doc. 38); and 3) third-party claims brought by Labor Smart derivatively through Holley, and by Holley on his own behalf, against Tucker, Pavlik and McBride for breach of fiduciary duty and contribution, and against Tucker only for breach of fiduciary duty and conversion (Doc. 38).

(Doc. 118, p. 4, l: 11-20.) All of these claims were made *before* the operative Complaint in this case (Doc. 67), and *before* the Third-Party Claims (Doc. 179). At the time the court entered its Order, neither Takeover nor Pavlik raised any concerns. (Doc. 118, p.5, F: 5.) In the May 1, 2023 Order (Doc. 129), Judge Tuchi's references to purported misrepresentations and gamesmanship were to Nevada counsel and the "Nevada Action", not undersigned counsel. (Doc. 129, pp. 5, 9.)

Ms. Manolio argues the conduct supporting the claims against **Takeover** occurred "after Tucker was 'ousted' from Takeover and based on the 'newly formed alliance of Holley, McBride and Pavlik.'" (Doc. 203, p. 6.)[3] That is not the case. The conduct Ms. Manolio alleges to support the Tuckers' claims goes back to June 2021, when Mr. Tucker was appointed Takeover's President. (Doc. 179, ¶'s 22, 23,47, 48.) The alleged conduct supporting the claims against Mr. Pavlik began in June 2021 and continued through November 2022, when ***Ms. Manolio was still representing Mr. Pavlik and when she gave specific legal advice to Mr. Pavlik about his attendance at the November 7, 2022 Board Meeting, "who refused legal advice he was given".***

In the Third-Party Claims, the Tuckers allege Holley, McBride and Pavlik breached fiduciary duties "when the relationship began with Tucker"[4] and they each "owed Tucker fiduciary duties of care and loyalty as he was a shareholder in each entity [Labor Smart and Takeover]. Moreover, Tucker was entitled to receive the duties of loyalty owed to Takeover and LTNC [Labor Smart] as he remained an Officer and Director of Takeover and a Director of LTNC." (Doc. 179, p. 17, ¶'s 98, 99.) All of these relationships begin no later than June 2021, when "Tucker was appointed to act as the President of Takeover." (Doc. 179, p. 5, ¶ 22; Doc. 203, p. 4.)

In the Third-Party Claims (Doc. 179), Ms. Manolio further alleges:

58. Worse, and more importantly [in September 2022], Tucker discovered that Holley, McBride, (and likely **Pavlik**) committed wrongdoing by over pledging the shares of Takeover.

61. By November 2022, Holley, McBride, and **Pavlik** all colluded (along with the help of legal counsel, Matthew Canini for Holley and Jennifer Reeder for

---

[3] Even if it was true that the facts supporting the claims against Takeover occurred after Tucker was ousted, ER's 1.7 and 1.9 still require disqualification.

[4] Ms. Manolio alleges the relationship between Holley, McBride, Pavlik and Tucker began prior to June 10, 2021, when Takeover, Holley, McBride and Pavlik began to work with Mr. Tucker. (Doc. 179, ¶'s 20, 21, 22.)

McBride) to stage a 'takeover' of Takeover. Upon information and belief, this collusive effort was made because Holley, McBride and *Pavlik* all knew that strong evidence existed to show their ongoing schemes and dishonesty in Takeover and LTNC business.[5]

62. On or about November 7, 2022, Holley (who was not a Director or Officer of Takeover at that time), McBride (who was on administrative leave from Takeover) and *Pavlik* (the collusive member of the group) all held a 'Special Meeting of the Board of Directors of Labor Smart, Inc.'

65. On <u>November 8, 2022</u>, Canini forwarded alleged 'Resolutions' from both LTNC and Takeover, verifying that Holley, McBride, and *Pavlik* each decided to:

  a. 'Terminate' McBride's leave of absence, despite his theft from Takeover;
  b. Suspend Jason Tucker as President of Takeover;
  c. Reappoint McBride as Takeover's CEO;
  d. Appoint Pavlik in Tucker's stead as President of Takeover.

102. As fully described above, Holley, McBride and *Pavlik* were each aware of the relationship and contracts Takeover had with Tucker, including that they knew of Tucker's position as President of Takeover and his right to compensation.

103. Holley, McBride, and *Pavlik* further knew of the LTNC grants of common stock to the Tuckers and/or their business entities and Tucker's standing as Director of LTNC.

104. Through the actions described in this Complaint, Holley, McBride, and *Pavlik* each knowingly and intentionally assisted, encouraged, participated, or caused:

  a. Third-Party Defendant Takeover to withhold payments to Tucker (and others) and then to fraudulently complete a transfer of Takeover assets to avoid paying debt/obligations;

  .                    .                    .

  c. LTNC to interfere with and/or thwart the Tuckers' ability to sell LTNC stock/shares.

---

[5] Ms. Manolio continued to represent Mr. Pavlik until December 6, 2022. (Doc. 102.)

The Tuckers also allege Holley, McBride and Pavlik breached a July 2021 Agreement "by failing to provide Tucker 'equal' payments and, instead, authorizing that Holley and McBride would receive exponentially more each month than Tucker while Holley and McBride hid charges from and payments to themselves from Tucker." (Doc. 179, p. 19, ¶ 108.) The same allegations support the Tuckers' claim against Holley, McBride **and Pavlik** for breach of the covenant of good faith and fair dealing. (Doc. 179, pp. 19, 20, ¶'s 112-117.)

The alleged conduct supporting the Third-Party Claims against Takeover and Pavlik thus clearly began in June 2021 and occurred through November 7, 2022, when Ms. Manolio was still representing and giving legal advice to Mr. Pavlik.

## IV.    Ms. Manolio's Admissions and Prior Statements.

In Takeover's Emergency Motion for Injunctive Relief (Doc. 79), filed November 10, 2022, Ms. Manolio states:

> [Mr. Holley and Mr. McBride] collaborated with their legal counsel to conduct a self-serving "Board Meeting" this week to put themselves back in control of Takeover. They used Third-Party **Joseph Pavlik** in this game, despite that he is **represented by undersigned counsel and was advised not to participate in this scheme.** (Emphasis added.)

(Doc. 79, p. 3.) **There is no question that Ms. Manolio gave legal advice to Mr. Pavlik. She admits she specifically told Mr. Pavlik "not to participate in this scheme."**[6] Ms. Manolio continues:

> By 3:00 p.m. on November 8th, Mr. Canini forwarded 'Resolutions' from both Labor Smart and Takeover. See, **Exhibit F**. In lengthy recitals, obviously written by legal counsel, Messrs. Holley, McBride and **Pavlik** made the legal conclusion that last year's Board of Directors Meeting for LTNC was improper, and they decided among themselves to disregard the prior

---

[6] In the Motion, Ms. Manolio writes: "Based on Mr. Pavlik's actions, undersigned will be moving to withdraw as counsel for Pavlik; a client Consent has already been requested." (Doc. 79, p. 8, F: 6.) The Order granting Ms. Manolio's Motion to Withdraw was signed December 6, 2022. (Doc. 102.) Until then, Ms. Manolio continued to owe Mr. Pavlik her duties of loyalty and confidentiality as his attorney, and a duty not to sue him in the very same case.

Resolutions and insist that Michael Holley is still on the board for LTNC. *Id*. The gentlemen then pretended that they, as Directors of LTNC, could vote on behalf of all shareholders of LTNC to remove Jason Tucker as a director of Takeover and to put Michael Holley back onto the Board by these means. *Id*.

After having 'removed' Jason Tucker as a Director of Takeover, these gentlemen pretended they had a unanimous consent of 'all' Takeover Directors and proceeded to:

1. 'Terminate' Mr. McBride's leave of absence for his misuse of funds;[7]
2. Suspend Jason Tucker from his President position;
3. Suspend Melissa Tucker from her positions at Takeover;
4. Reappoint Mr. McBride as Takeover's CEO;
5. Appoint Mr. Pavlik and Mr. Tucker's stead as president;
6. Instruct undersigned counsel to turn over all of Takeover's financial and business information to them.

The Recitals listed in this document create obvious (and intentional) conflicts of interest between Takeover and Mr. Tucker,…

(Doc. 79, p. 9.) "Collectively, Takeover is highly likely to succeed in proving that these gentlemen [Holley, McBride and ***Pavlik***] have acted with a total and willful disregard of the detriment being caused to Takeover." (Doc. 79, p. 13.) It is obvious that conflicts of interest were created between Takeover and Mr. Tucker, and between Mr. Tucker and Mr. Pavlik.

In her Declaration in support of the Motion (Doc. 79-1), Ms. Manolio stated she was "litigation counsel" for Mr. Pavlik.

> 10. ***I also wrote to my client, Joe Pavlik, to inform him that the meeting was improperly called and should not be attended.*** Mr. Pavlik is not even on the Board of Labor Smart and should never have been given this notice or an ability to participate.

(Doc. 79-1, p. 3.)

---

[7] The claims made in the November 10, 2022 Emergency Motion (when Ms. Manolio was still representing Mr. Pavlik) are exactly the same as the allegations in the Third-Party Complaint against Mr. Pavlik and other Moving Parties. (See Doc. 179, p. 12, ¶ 65.)

In the same Motion, Ms. Manolio references the Takeover Board of Directors: Messrs. Tucker, McBride and *Pavlik*. She states: "Those gentlemen, with the team of employees and consultants, have continued to run Takeover,…" (Doc. 79, pp. 4, 5.) Ms. Manolio attaches Takeover Board of Directors Resolutions dated July 1, 2022, September 21, 2022 and November 7, 2022, all of which were signed by Mr. Pavlik and during the time Ms. Manolio was representing Mr. Pavlik. (Docs. 79-1, 79-4, 79-6.)

### V.  Ms. Manolio's Billing Records.

Ms. Manolio references Mr. Pavlik in numerous entries submitted in Invoices to Takeover.

| | |
|---|---|
| 06/06/2022 | Received and reviewed additional request to represent *Joseph Pavlik* and Board Resolution permitting joint representation of him. |
| 06/14/2022 | Updated Conflict Letter and Joint Defense Memorandum for Tucker's and *Pavlik*; circulated to all clients. Follow-up emails with Jason Tucker and *Joe Pavlik*. |
| 09/19/2022 | Conference with Jason Tucker and *Joseph Pavlik* re: McBride spending issues in seeking a meeting to discuss/resolve with McBride. |
| 09/20/2022 | Conference/meeting (in an 'open discussion forum requested by Jennifer') with – Jason Tucker and *Joe Pavlik* and McBride and his counsel. Follow-up telephone conference with Messrs. Tucker and *Pavlik* re: meeting and how to proceed in light of Toby's spending and James' threat to call the Note(s). |
| 09/22/2022 | Received and reviewed communications from *Joe Pavlik* re: McBride. |
| 11/04/2022 | Received and reviewed Notice of Board Meeting from Jason (sent by Toby); email to Matt Canini and Jennifer Reiter regarding Meeting and best way to proceed; emails with *Joe Pavlik* regarding same. |
| 11/08/2022 | Perform research on LR's for motion to withdraw as counsel for *Joseph Pavlik*; drafted consent form. |

(A redacted copy of Ms. Manolio's Invoice is attached as Exhibit "A".)

Notwithstanding these clear substantive communications with Mr. Pavlik, Ms. Manolio states:

> 9. I never had a single substantive discussion with Pavlik and learned nothing about any substantive defenses or evidence from him.

> 10. My discussions with Pavlik were only procedural (and with joint calls) to discuss the hiring for joint representation purposes.

26. The claims the Tuckers now assert against Takeover are for actions taken by the company in November 2022 and later.

(Doc. 203-1, pp. 2, 4.) Clearly, Ms. Manolio's statements (that the conversations with Pavlik were not "substantive" and were only "procedural) are false.

**VI.    All Relevant Factors Weigh in Favor of Disqualification.**

**A.    The Motion is not made for purposes of harassing Mr. Tucker.**

Notwithstanding her representations to the contrary, Ms. Manolio had substantive conversations with, and gave legal advice to, Mr. Pavlik about the November 2022 Board Meeting. The November 2022 Board Meeting is a substantive part of the Third-Party Claim against Mr. Pavlik. Mr. Pavlik is simply trying to enforce Ms. Manolio's ethical obligations. This is not harassment. His former counsel, who gave him legal advice, is now switching sides and using that advice as a basis for asserting claims against him in the very same litigation. ERs 1.7 and 1.9 prohibit Ms. Manolio's continued representation.

**B.    Mr. Pavlik (and the Moving Parties) Will Be Harmed If the Motion Is Not Granted.**

There is no question that Mr. Pavlik will be harmed if the Motion is not granted. Ms. Manolio has already breached her duty of confidentiality by disclosing the legal advice she gave Mr. Pavlik in November 2022. Advising Mr. Pavlik not to attend the November 2022 Board meeting will undoubtedly be used by Ms. Manolio in the prosecution of the Third-Party Claims (although it should be prohibited by virtue of the attorney/client privilege).[8]

**C.    There are no Alternative Solutions.**

---

[8] It also raises the possibility that Ms. Manolio will be a witness.

10

Ms. Manolio suggests Mr. Freeman can substitute as counsel for Ms. Manolio on the claims against Mr. Pavlik. This does not solve the problem. There is no way to create a wall between Ms. Manolio and Mr. Freeman with respect to Ms. Manolio's knowledge of confidential information and communications with both Takeover and Mr. Pavlik. If Ms. Manolio remains in the case, she still has the right to cross-examine witnesses and propound discovery relating to Mr. Pavlik and her communications with him. ER's 1.7 and 1.9 are absolute. This is a problem created by Ms. Manolio and no one else. She decided to align her representation with the Tuckers, adverse to both Takeover and Mr. Pavlik.

### D. Public Suspicion and Policy Outweigh Any Potential Benefits of Continued Representation.

The Arizona Rules of Professional Conduct are policy statements by the State Bar applying to all Arizona attorneys. Ignoring the Ethical Rules will damage the public's trust in the confidentiality of communications between an attorney and a client and the relationships between an attorney and client. Here, Mr. Pavlik will understandably question the fairness of this proceeding if his former counsel is left in the case with no way to safeguard against her use or disclosure of his confidential information. His former ally, in other words, is now his adversary. This is a matter of paramount importance. While attorney discipline is not the issue here, the purpose of the ethical rules is to instill public confidence in the bars integrity. *Matter of Horwitz*, 180 Ariz. 20, 881 P. 2d 352 (Sup. Ct. 1994).

///

///

///

**VII.    Conclusion.**

For all the foregoing reasons, the Motion to Disqualify Ms. Manolio and Mr. Freeman should be granted.[9]

**RESPECTFULLY SUBMITTED** this 3rd day of February, 2025.

**PAUL M. LEVINE, P.C.**

By  */s/ Paul M. Levine*
       Paul M. Levine, Esq.
       8502 E. Via de Ventura, Suite 230
       Scottsdale, Arizona 85258
       *Attorney for Plaintiff/Counterdefendant*
       *Labor Smart, Inc. and Third-Party Defendants*
       *(including Joseph Pavlik)*

**ELECTRONICALLY FILED**
this 3rd day of February, 2025.

**EMAILED** this 3rd day of February, 2025 to:
Veronica L. Manolio

**MANOLIO & FIRESTONE, PLC**
8686 E. San Alberto Dr., Suite 200
Scottsdale, Arizona 85258
VManolio@MF-Firm.com
*Attorney for Defendants/ Counterclaimants/*
*Third-Party Plaintiffs*

Spencer D. Freeman, Esq.
**FREEMAN LAW FIRM, INC.**
1107 1/2 Tacoma Ave S
Tacoma, Washington 98402
SFreeman@FreemanLawFirm.org
Reception@FreemanLawFirm.org
Sierra@FreemanLawFirm.org
*Attorney for Jason Tucker and*
*Melissa Tucker*

 */s/ Sasha Bever*

---

[9] Mr. Freeman claims there has been no communication from Ms. Manolio to him regarding ***Takeover***. (Doc. 201, p. 2.) Mr. Freeman has not made any similar statement with respect to communication from Ms. Manolio to him regarding ***Mr. Pavlik***.