**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Takeover Industries Incorporated, et al.,

Plaintiffs,

v.

Michael Holley, et al.,

Defendants.

No. CV-22-00357-PHX-DJH

**REPORT AND RECOMMENDATION**

**TO HON. DIANE J. HUMETEWA, UNITED STATES DISTRICT JUDGE:**

Before the Court and ripe for disposition the Motion to Disqualify Attorneys[] Veronica L. Manolio and Spencer Freeman as Attorneys for Parties Jason and Melissa Tucker, filed by Plaintiff/Counterdefendant Labor Smart, Inc. ("LTNC"[1]) and Third-Party Defendants Takeover Industries, Inc. ("Takeover"), Joseph Pavlik, Next Gen Beverages, LLC ("Next Gen") Michael Holley and Chirine Holley, Thomas Zarro and Kimberly Zarro and Toby McBride (Doc. 195). The Motion was referred to undersigned on March 6, 2025 (Doc. 206). Undersigned held oral argument on the Motion on April 7, 2025. (Doc. 208.) For the reasons that follow, the undersigned recommends the Motion be denied.

## I. BACKGROUND

### A. Procedural History

This matter is over three years old, has seen the parties re-aligned, and has only recently progressed past the responsive pleading phase. Thus, the procedural history is

[1] "This appellation, which […] the Court has used in the past, is the over-the-counter stock ticker symbol of Labor Smart, Inc." (Doc. 189 n.1.)

quite complex. Given the subject matter of the instant Motion, i.e., whether a conflict of interest regarding counsel exists such that disqualification is required, it is necessary to provide that history. Where possible, undersigned will utilize this Court's previous summary of salient facts and background, in order to maintain a clear record.

In May 2023, Hon. John J. Tuchi provided the following synopsis of the beginnings of the instant litigation:

> This case concerns various allegations of mismanagement and improper use of corporate assets amongst the officers and directors of two entities, Takeover and LTNC. Takeover was originally formed in January 2021 by Messrs. Holley and McBride and incorporated in Nevada. Later in 2021, Messrs. Pavlik and Tucker joined Takeover's board of directors alongside Messrs. Holley and McBride. Also in 2021, Takeover was acquired by LTNC, which is a publicly traded company originally formed under Nevada law and of which Takeover became a wholly owned subsidiary. The composition of the boards of directors of Takeover and LTNC has been disputed at various times since the end of 2021.
>
> Takeover initiated this lawsuit in March 2022, seeking relief principally against Mr. Holley for alleged breach of fiduciary duties, conversion, and unjust enrichment. (Doc. 1, Compl.)[2] The same day it filed this lawsuit, Takeover also filed an Application for Temporary Restraining Order (Doc. 2) to require Mr. Holley to provide certain information and access to Takeover's credit card accounts, domains, and email accounts, which the Court granted in part and denied in part on March 22, 2022. (Doc. 22.)
>
> On May 20, 2022, Mr. Holley filed his Answer to Takeover's claims against him and filed counterclaims against Takeover and third-party claims against Jason and Melissa Tucker and Messrs. McBride and Pavlik "individually and derivatively on behalf of LTNC." (Doc. 38.) Mr. Holley subsequently amended his Answer with counterclaims and thirty-party claims. (Doc. 67.) Mr. Holley alleged, *inter alia*, that the Tuckers and Messrs. McBride and Pavlik breached the fiduciary duties they owed to LTNC by improperly freezing out Mr. Holley from LTNC's management. (*E.g., id.* ¶¶ 40–52.) Mr. Holley also filed a direct third-party claim, which he voluntarily dismissed. (Doc. 124.)

---

[2] As Judge Tuchi observed, the Complaint also named Mr. Holley's spouse, Chirine Holley, to reach the marital community. *Id.* (citing Doc. 1).

The Tuckers filed a Motion to Dismiss the third-party claims against them (Doc. 75), arguing that Mr. Holley lacked standing to act in a derivative capacity on behalf of LTNC because he did not fairly and adequately represent its shareholders' interests and was really seeking to further his own personal interests. At the time, Takeover and the Tuckers were represented by counsel Veronica L. Manolio. Mr. Pavlik—also initially represented by Ms. Manolio—joined in the Tucker's Motion to Dismiss, but later withdrew from it and took no subsequent action to respond to the claims against him. (*See* Doc. 122.) After seeking multiple extensions of time to respond, and the deadline to do so eventually passing, Mr. McBride did not respond to the claims against him. (*See id.*) For its part, Takeover filed an Answer to Mr. Holley's counterclaims against it. (Doc. 77.)

The parties note that no discovery took place between May 2022 and November 2022. During this time, the parties litigated various disputes, including enforcement of the Court's March 22, 2022 TRO; disqualification of counsel for Mr. Holley, Matthew Canini; and Mr. Holley's request to be relieved from guaranteeing a credit card for Takeover.

In early November 2022, Takeover filed an Emergency Motion for Injunctive Relief, including for the appointment of a temporary receiver, asserting that "Defendant Michael Holley and Third-Party Defendant Toby McBride staged a complete takeover" of Takeover's business operations. (Doc. 79 at 1.) The Tuckers now assert—and the Moving Parties do not dispute—that they "have not had any access to, rights of, or involvement with Takeover or [LTNC] business since last year." (Resp. at 3.) At a hearing on Takeover's Emergency Motion on November 15, 2022, the Court noted serious problems pertaining to the observation of corporate form and proper corporate governance by the principals of Takeover and LTNC. (Doc. 103 at 4:7–5:25.) Accordingly, the Court denied Takeover's Emergency Motion, taking under advisement an issue regarding whether there was a conflict of interest as to Ms. Manolio's representation of Takeover and the Tuckers. (Doc. 92.) Ms. Manolio subsequently moved to withdraw from representing Takeover (Doc. 96), which motion the Court granted. (Doc. 102.) The Court declined to disqualify Ms. Manolio from representing the Tuckers. (Doc. 118.)

On January 3, 2023, a Notice of Appearance was filed on behalf of Takeover by Paul M. Levine, P.C. (Doc. 111.)

(Doc. 129 at 2-4.)

In his December 2024 Order, Judge Tuchi's historical summary continued:

> In February 2023, Takeover and Holley reached an accord and agreed to dismiss the claims and counterclaims against one another. (Doc. 120.) Thus, Takeover exited the litigation entirely, and all that remained were Holley's third-party claims against McBride, Pavlik, and Tucker. The newfound understanding between Takeover and Holley was a prelude to the motion for realignment which followed shortly thereafter. In brief, the majority of the parties sought to realign themselves such that Holley, McBride, Pavlick, Takeover, and LTNC would present a unified front against Tucker. The Court granted the motion for realignment in part and denied it in part. (Doc. 129.) LTNC replaced Holley as the operative plaintiff. Thus, the third-party claims brought by Holley in his individual capacity ceased to exist, and the derivative third-party claims that Holley had brought on LTNC's behalf were no longer derivative or third-party in nature. Accordingly, the Court ordered that the pleading previously styled as a set of counterclaims and third-party claims would thenceforth be referred to as the Amended Complaint. At the parties' request, the Court dismissed the claims against Pavlik and McBride, leaving only Tucker as a defendant. However, the Court denied both (1) Takeover's motion to reenter the litigation and (2) LTNC's motion to file an amended pleading against Tucker. Thus, the pleading at docket number 67 remained (and remains to this day) the operative complaint, but LTNC had become the plaintiff and only the claims against Tucker survived. (*See* Doc. 129.)
>
> Tucker then filed a partial motion to dismiss, which the Court granted in October 2023. (Doc. 140.) As a result, only claims II and III of the Amended Complaint remain outstanding, which are for breach of fiduciary duty and conversion, respectively. After almost a year of largely fruitless motion practice, Tucker filed an amended responsive pleading in September of 2024 asserting three counterclaims against LTNC for breach of contract, abuse of process, and aiding and abetting tortious misconduct, as well as nine third-party claims for a variety of wrongs against differing combinations of Holley, McBride, Pavlik, LTNC, Takeover, Next Gen Beverages, LLC (Next Gen), and an individual named Thomas Zarro. (Doc. 179.) … Holley, McBride, Pavlik, Zarro, Takeover, and Next Gen filed a joint answer to the third-party claims against them. (Doc. 184.) In lieu of joining that filing or filing its own answer, LTNC filed [a] Motion [to Dismiss, Doc. 180], which seeks dismissal of the Amended Responsive Pleading's three counterclaims.

(Doc. 189 at 2-3.)

Judge Tuchi granted in part and denied in part LTNC's Motion to Dismiss Tucker's counterclaims. (*Id.* at 17-18.) Specifically, the Court dismissed the Amended Responsive Pleading's (Doc. 179) first counterclaim and third counterclaim except insofar as the third

counterclaim concerns the alleged aiding and abetting of torts related to the management of Takeover. (*Id.* at 18.) The Court further expressed dismay at the "exorbitant amount of delay" in this matter, and the Court indicated that it would promptly set a Rule 16 conference after LTNC filed its answer to Tucker's Amended Responsive Pleading. (*Id.*) The Court stated it would set "an aggressive discovery and dispositive motion schedule" and direct the parties and counsel to "litigate the matter to its conclusion apace and without further delay." (*Id.* at 19.) The Court concluded, "It is time for the parties to put up." (*Id.*)

A Rule 16 conference was scheduled. (Doc. 193.) The parties' Rule 26(f) report was filed. (Doc. 194.) Days before the scheduling conference was to occur, the instant Motion to Disqualify was filed. (Doc. 195.) Subsequently, Judge Tuchi vacated the Rule 16 conference, entered an order of recusal, and Hon. Diane J. Humetewa was reassigned the case. (Docs. 196, 197.) The Court ordered expedited briefing on the Motion to Disqualify, and the Motion was fully briefed. (Docs. 198, 201-04.) The Motion was referred to undersigned, and undersigned heard oral argument. (Docs. 206, 208.)

**B. History of Representation by Ms. Manolio and Mr. Freeman**

Because a timeline of when counsel represented which parties is germane to resolution of the pending Motion, undersigned includes that separately from the above procedural history of this case.

Ms. Manolio filed the original Complaint in this matter on behalf of Takeover in March 2022. (Doc. 1.)

In May 2022, Michael Holley and Chirine Holley answered the Complaint and filed counterclaims against Takeover. (Doc. 38.) Third-party claims by Michael Holley (individually and derivatively on behalf of LTNC) against the Tuckers, McBride, and Pavlik were also included. (*Id.*) Ms. Manolio filed Takeover's Answer to the counterclaims in June 2022. (Doc. 42.) She further filed a motion to dismiss the third-party claims, along with a "Reply/Answer to Third-Party Claims against Pavlik and the Tucker Defendants" in August 2022. (Doc. 58.) In the motion to dismiss, she listed herself as counsel to Takeover, Pavlik, and the Tuckers. (*Id.*)

The Holleys amended their Answer, Counterclaims, and Third-Party Complaint in September 2022. (Doc. 67.) In November 2022, Ms. Manolio filed an Answer on behalf of Takeover (Doc. 77) and a motion to dismiss on behalf of Pavlik and the Tuckers (Docs. 74-76). In each of those filings, she listed herself as counsel to Takeover, Pavlik, and the Tuckers. (Docs. 74-77.)

Shortly thereafter, Ms. Manolio moved for emergency injunctive relief and to withdraw as counsel for Mr. Pavlik. (Docs. 79-81.) In her motion to withdraw, she outlined actions by Mr. Pavlik that she alleged had created a conflict of interest between him and Takeover. (Doc. 81.) In support of her Motion, she submitted a declaration in which she avowed she undertook the joint representation of Mr. Pavlik and Takeover only after explaining to Mr. Pavlik that if any conflict of interest arose between Mr. Pavlik and Takeover, her continued representation of Takeover would prevail. (Doc. 82.) She further averred that she and Mr. Pavlik "entered into a very robust written Joint Representation Agreement" and that Mr. Pavlik had taken actions against her advice "and against the best interests" of Takeover. (*Id.*) Therefore, she moved with withdraw from representation of Mr. Pavlik, with Mr. Pavlik's consent. (Doc. 81.)

In response to the motion for emergency injunctive relief, counsel for Third-Party Defendant McBride alleged Ms. Manolio had a significant conflict of interest, was representing adverse parties, and had taken Takeover funds. (Doc. 90.) At a November 2022 hearing on the motion for emergency injunctive relief, the Court ordered further briefing on the conflict-of-interest issue. (Doc. 92.)

Days later, in November 2022, Ms. Manolio moved to withdraw from representation of Takeover. (Doc 96.) She emphasized that any potential conflicts of interests had been discussed and disclosed prior to the executive of the joint representation agreement. (*Id.* at 3.) She argued that Mr. McBride and Mr. Pavlik had each taken actions that created an actual or potential conflict of interest, and therefore she had continued with representation of Takeover and the Tuckers. (*Id.*) She denied the allegation that the emergency motion for injunctive relief was made to also benefit Mr. Tucker, as well as the allegation that she

had taken $75,000 from Takeover. (*Id.*) With the consent of Mssrs. Tucker, Pavlik, McBride, and Holley, Ms. Manolio moved to withdraw as counsel for Takeover. (*Id.*, Doc. 96-1, Doc. 96-2.) Thus, she sought to remain in the case as counsel for only the Tuckers. (Doc. 96 at 4.) For their part, the Holleys argued in supplemental briefing that Ms. Manolio should not be permitted to represent any party in the case, including the Tuckers. (Doc. 99.) Mr. McBride deferred to the Court on the issue. (Doc. 100.)

In December 2022, the Court granted Ms. Manolio's motions to withdraw as counsel for Pavlik and Takeover, respectively. (Doc. 102.) Consequently, Ms. Manolio remained as counsel only for the Tuckers, who were (at that time, as the claims were constituted) Third-Party Defendants. The Court therefore turned its attention to the remaining argument that Ms. Manolio should be disqualified from representing the Tuckers due to conflict-of-interest issues. (Doc. 118.) The Court analyzed the pertinent Rules of Professional Conduct, ER 1.7, 1.9, and 1.13, and denied the request to disqualify Ms. Manolio. (*Id.*) Of particular note, the Court found that ER 1.9(c) did not create a conflict for Ms. Manolio. (*Id.* at 5 n.1.) The Court observed that the only former clients of Ms. Manolio's in this case (Mr. Pavlik and Takeover) had not raised the issue with the Court, and the Court did not "find that any specific evidence or allegations have been adduced from any source that provide more than speculation that Manolio's prior representations of either yielded information that could be used to their disadvantage in the matter before the Court, which is solely Tucker's defense of Holley's third party claims against him." (*Id.*) The Court further found no violation of ER 1.7, which, in turn, meant there was no violation of ER 1.13(g). (*Id.* at 6.)

The Court concluded its analysis with the following warning to the parties:

> There may well be actual or potential conflicts of interest in aspects of Manolio's continued representation of Mr. Tucker in his many disagreements with those also vying to control Takeover, and as a result, with Takeover itself. But those are of no moment to this Court, whose only responsibility—and indeed its only authority—is to police the ethical conduct of attorneys *in the matter actually before it*, which matter it has

> clearly identified as strictly limited to the claims, counterclaims and third-party claims pleaded.
>
> The Court observes that the positions of the parties and third parties relative to each other have shifted since the filing of this case, and those shifts have resulted in new disputes among the individuals and entities involved about control of Takeover, the progression of business going forward, and many related financial issues including shareholder relations, debt and contractual obligations. But those new disputes are not part of the case before the Court as set forth above. Various parties, both in the past, in seeking emergency appointment of a receiver, and now, in seeking to disqualify Manolio, have demonstrated confusion about the limits of the Court's authority, which it clarifies here—the machinations of the parties in the making, breaking or shifting of allegiances, the realignment of voting blocks, and other actions or omissions beyond the claims made in Docs. 1 and 38, are not part of this matter. They will not be shoehorned into the matter for the Court to resolve; nor will alleged attorney conflicts or other attorney conduct issues associated with these new disputes that are outside the purview of the matter itself as pleaded. The Court is not a one-stop shop for all the parties' refereeing needs, whether part of the case at bar or not.

(Doc. 118 at 6-7) (italics in original). Accordingly, the Court declined to disqualify Ms. Manolio "from continuing representation of Tucker in this matter as it is currently constituted." (*Id.* at 7.)

After the claims in the matter were re-aligned in May 2023, the Tuckers filed their responsive pleading to the Amended Complaint (formerly the Third-Party Complaint, Doc. 67) as directed by the Court, through Ms. Manolio, in June 2023. (Docs. 129, 134.) After default was entered and set aside, Ms. Manolio filed an Answer, Counterclaims, and Third-Party Claims on the Tuckers' behalf in July 2024. (Docs. 143-148.) In that pleading, the Tuckers filed counterclaims against LTNC and third-party claims against Takeover, Next Gen, the Holleys, Mr. McBride, Mr. Pavlik, and the Zarros. (Doc. 148.) Following stipulation by the parties, the Tuckers (again through Ms. Manolio) filed their First Amended Counterclaims and Third-Party Claims in September 2024. (Doc. 179.) Ms. Manolio litigated a motion to dismiss the counterclaims on the Tuckers' behalf; that motion was granted in part and denied in part in December 2024. (Docs. 187, 189.)

In December 2024, the Tuckers (through Ms. Manolio) requested to substitute Spencer Freeman as their counsel as to their Third-Party Claims only. (Doc. 190.) The filing stated, "This request for substitution is made because counsel for Takeover has raised an issue of conflict by Ms. Manolio continuing representation when she previously represented Takeover. Rather than fighting about whether actual conflicts exist, Ms. Manolio agreed to have replacement counsel prosecute the claims against Takeover, and the Tuckers hired Mr. Freeman as independent counsel." (*Id.*) It continued, "Ms. Manolio will continue to act as lead counsel for the Tuckers." (*Id.*) The filing contained the Tuckers' consent. (*Id.*) The Court granted the substitution. (Doc. 191.)

In January 2025, Counterdefendant LTNC and Third-Party Defendants Takeover, Pavlik, Next Gen, Holley, Zarro, and McBride (collectively, "Movants") filed the instant Motion to Disqualify both Ms. Manolio and Mr. Freeman. (Doc. 195.) Mr. Freeman filed the Response to the Motion, to which he attached a Declaration. (Docs. 201, 202.) Ms. Manolio filed a separate Response to the Motion and attached her own Declaration. (Docs. 203, 203-1.) The moving parties filed their Reply, to which it attached a billing statement by Ms. Manolio. (Doc. 204.)

At oral argument on April 7, 2025, Movants seemed to walk back or withdraw their Motion as to Mr. Freeman. However, when directly asked by the Court whether Movants continued to seek disqualification of Mr. Freeman, Movants equivocated and focused instead on what limitations should be placed on Mr. Freeman if he undertook continued representation in this matter.[3] Therefore, for purposes of resolving the Motion, undersigned assumes Movants continue to seek disqualification of both Ms. Manolio and Mr. Freeman.

## II. MOTION TO DISQUALIFY MS. MANOLIO AND MR. FREEMAN

### A. The Parties' Filings

Movants move to disqualify Ms. Manolio and Mr. Freeman under the Arizona Supreme Court's Rules of Professional Conduct, Ethical Rule ("ER") 1.7, Conflict of

---

[3] The basis for those proposed limitations was based purely on speculation and conjecture on the part of Movants.

Interest: Current Clients, and ER 1.9, Duties to Former Clients. (Doc. 195 at 6.) They emphasize that Ms. Manolio formerly represented Takeover and Mr. Pavlik, along with the Tuckers, from June 2022 to December 2022. (*Id.* at 5.) They further underscore that Ms. Manolio now represents the Tuckers against Mr. Pavlik, and Mr. Pavlik has not consented to that representation. (*Id.*) They argue Ms. Manolio engaged in the same course of conduct vis-à-vis Takeover, because she first represented Takeover in this litigation, withdrew as Takeover's counsel, and then brought Third-Party Claims against Takeover in the same litigation. (*Id.* at 5-6.) They acknowledge Mr. Freeman has been substituted in place of Ms. Manolio, but they contend that Mr. Freeman, too, must be disqualified "because of potential improper disclosures made by Ms. Manolio to Mr. Freeman." (*Id.* at 11.) They further argue that Ms. Manolio has violated her Professional Services Agreement with Takeover. (*Id.* at 9-11.) Underpinning the Motion is a letter written by Mr. Scott Rhodes, who was hired at movants' request to analyze potential ethical issues. (*See* Docs. 195, 195-1.)

In Response, Ms. Manolio makes various arguments. First, she notes that many of the moving parties have no prior relationship with her, and therefore "no standing/legal basis to assert conflict." (Doc. 203 n.1.) Rather, she observes, "Only Takeover [… and] Pavlik could have any standing to complain." (*Id.*) Ms. Manolio emphasizes that Judge Tuchi previously denied a similar motion to disqualify her, and she maintains that "[t]his Court should follow Judge Tuchi's lead, understanding that the moving parties are engaged in more gamesmanship and delay tactics" and that there is no cause to grant the Motion. (*Id.* at 2.) Ms. Manolio goes on to state, in bold font, that she "never had a single substantive discussion with Pavlik and learned nothing from him about his defenses/the claims asserted." (*Id.* at 4.) In her Declaration accompanying her Response, Ms. Manolio repeats that assertion: "I never had a single substantive discussion with Pavlik and learned nothing about any substantive defenses or evidence from him. My discussions with Pavlik were only procedural (and with joint calls) to discuss the hiring for joint representative purposes." (Doc. 203-1 at 2.) She goes on to contend that the Tuckers' claims against

Takeover "are not based on anything [she] could have learned while [she] was representing Takeover," and points out that Judge Tuchi made a finding that the Tuckers' claims against Takeover did not accrue until November 2022. (*Id.* at 4.) She further argues that the letter written by Mr. Rhodes was based on a one-sided recitation of facts from the opposing side only, without her input because Mr. Rhodes would not "meet and confer" with her as she requested. (*See id.* at 5.)

In her Response, Ms. Manolio further notes that opposing counsel raised the conflict-of-interest issue with her only regarding Takeover, which is why she contacted Mr. Freeman; Mr. Freeman then undertook representation of the Turners regarding their third-party claims against Takeover only. (Doc. 203 at 6.) She states that "Mr. Freeman is ready and willing to represent against both Takeover and Pavlik, to avoid any further discussion of conflict with a former client." (*Id.* at 7 n. 5.) Ms. Manolio goes on to argue that the Motion should be denied because no factor under *Burch & Cracchiolo, P.A. v. Myers*, 351 P.3d 376 (Ariz. Ct. App. 2015) weighs in favor of disqualification, and because disqualification is not warranted under either ER 1.7 or ER 1.9. (*Id.* at 7-13.)

Mr. Freeman also opposes the Motion. Specifically, he attacks the Motion as speculative regarding him and his role. (Doc. 201 at 2-3.) He underscores that the Motion fails to state what, if any, "improper disclosure" he was privy to, and how such information would require his disqualification. (*Id.*) He refers the Court to Judge Tuchi's prior denial of a similar motion to disqualify Ms. Manolio. In so doing, he acknowledges "that some claims have changed since that time," but states "it does not appear that anything has changed which would alter Judge Tuchi's analysis." (*Id.* at n.1.) In support of his Response, Mr. Freeman provides a Declaration in which he avows that Mr. Tucker contacted him about representation in this matter in November 2024. (Doc. 202 at 2.) He further avows that he contacted Ms. Manolio, who told him "about the procedural posture of the case and the process of [his] substitution as attorney for the Tuckers as Third-Party Claimants." (*Id.* at 3.) He continues by averring that his "factual knowledge of [this] case has come from discussions with Mr. Tucker, both recent and historic, and from [his] review

of certain filings in the action and certain Orders by The Honorable John J. Tuchi." (*Id.*) He declares, "Ms. Manolio has not provided me with any information regarding Takeover." (*Id.*)

In Reply, Movants call out inconsistencies in Ms. Manolio's filings with this Court and argue that she must be disqualified. (Doc. 204.) They attach a billing statement of Ms. Manolio's in support of their arguments regarding Mr. Pavlik. (Doc. 204-1.) They stress that the landscape of this litigation has changed since Judge Tuchi's first order on a motion to disqualify Ms. Manolio. (Doc. 204 at 4.) They further argue Mr. Freeman must be similarly disqualified. (*Id.* at 11-12.)

**B. Analysis**

1. <u>Applicable Law/Rules</u>

When considering a motion to disqualify counsel, the Court applies state law. *In re Cnty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000). This Court has adopted the Rules of Professional Conduct of the Arizona Supreme Court as its ethical standards. LRCiv 83.2(e). "Accordingly, this Court applies the Arizona ethical rules when evaluating motions to disqualify counsel." *Roosevelt Irr. Dist. v. Salt River Agr. Imp. and Power Dist.*, 810 F. Supp. 2d 929, 944 (D. Ariz. 2011).

"As the Ninth Circuit has noted, disqualification motions should be subjected to 'particularly strict scrutiny' because of their potential for abuse." *Roosevelt Irr. Dist.*, 810 F. Supp. 2d at 944 (quoting *Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985)); *Amparano v. ASARCO, Inc.*, 93 P.3d 1086, 1092 (Ariz. Ct. App. 2004) ("[T]he rules of professional responsibility are for ethical enforcement and are not designed to be used as a means to disqualify counsel. The courts have, of course, looked to the ethical rules for guidance on disqualification issues."). Thus, "[t]he moving parties have the burden of sufficiently showing why the Court should disqualify an attorney from representing its client." *Id.* at 944-45 (citations omitted).

In Arizona, "when ruling on a motion to disqualify opposing counsel, the trial court is directed to consider four factors:

> (1) whether the motion is being made for the purposes of harassing the [opposing party],
> (2) whether the party bringing the motion will be damaged in some way if the motion is not granted,
> (3) whether there are any alternative solutions, or is the proposed solution the least damaging possible under the circumstances, and
> (4) whether the possibility of public suspicion will outweigh any benefits that might accrue due to continued representation.

*Burch & Cracchiolo*, 351 P.3d at 384 (quoting *Alexander v. D'Angelo*, 685 P.2d 1309, 1317 (1984) (brackets in original) and noting the test was used in the conflict-of-interest context by *Sellers v. Superior Court*, 742 P.2d 292 (Ariz. Ct. App. 1987)).

The instant Motion is based on purported violations of ERs 1.7 and 1.9. (Doc. 195 at 6.) ER 1.7 concerns current clients, and it provides, in pertinent part:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
> (1) the representation of one client will be directly adverse to another client; or
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

A.R.S. Sup. Ct. Rules, Rule 42, Rules of Prof. Conduct, ER 1.7(a).

ER 1.9 concerns a lawyer's duties to former clients; it provides:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
> b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client:
> (1) whose interests are materially adverse to that person; and
> (2) about whom the lawyer had acquired information protected by ERs 1.6 and 1.9(c) that is material to the matter;
> (c) A lawyer who has formerly represented a client in a matter shall not thereafter:
> (1) use information relating to the representation to the disadvantage

> of the former client [except as permitted by the rules]; or
>
> (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

A.R.S. Sup. Ct. Rules, Rule 42, Rules of Prof. Conduct, ER 1.9(a), (c).

2. Application

At the outset, the Court notes that ER 1.7 is not implicated. As noted above, ER 1.7 concerns current clients. None of the Movants allege that they are current clients of Ms. Manolio or Mr. Freeman. Thus, they are "not, in other words, the party this rule is mean to protect." *Gesell v. City of Cottonwood*, 2024 WL 5008627, *9 (D. Ariz. Dec. 6, 2024) (citing *Roosevelt Irr. Dist.*, 810 F. Supp. 2d at 976 ("Arvin and Cooper are not Derouin's current clients, and therefore they simply are not the parties meant to be protected by this rule.")). Therefore, there can be no violation of ER 1.7. *Id.* Hence, the Court considers ER 1.9.

For a conflict to exist under ER 1.9, "the moving party must show: (1) the existence of an attorney-client relationship; (2) that the former representation was 'the same or substantially related' to the current litigation; and (3) that the current client's interests are 'materially adverse' to the former client's interests." *Roosevelt Irr. Dist.*, 810 F. Supp. 2d at 945 (quoting *Foulke v. Knuck*, 784 P.2d 723, 726-27 (Ariz. Ct. App. 1989)).

As to the first requirement, Movants do not allege that Ms. Manolio (or Mr. Freeman, for that matter) ever represented Movants Next Gen Beverages, the Holleys, the Zarros, or Mr. McBride. Rather, they allege, and it is undisputed, that Ms. Manolio formerly represented Movants Takeover and Mr. Pavlik. Therefore, ER 1.9, which concerns former clients, is not meant to protect any Movant other than Takeover or Pavlik. *See Roosevelt Irr. Dist.*, 810 F. Supp. 2d at 976-77 (finding where there was no attorney-client relationship in the past, ER 1.9 did not apply). Indeed, Judge Tuchi similarly observed this limitation when considering the first request to disqualify Ms. Manolio that was made by the Holleys. (*See* Doc. 118 at 5-6) (rejecting argument by the Holleys under ER 1.9 and noting they were not former clients of Ms. Manolio). Consequently, the Court continues its analysis of ER 1.9 as it relates to the only former clients of Ms. Manolio who

are Movants: Takeover and Mr. Pavlik. It is undisputed that Mr. Freeman has not represented any Movant in this matter; thus, ER 1.9 would not protect any Movant regarding Mr. Freeman.

Next, Movants must establish that Ms. Manolio's former representation of Takeover and Pavlik was "the same or substantially related" to the current litigation. *Roosevelt Irr. Dist.*, 810 F. Supp. 2d at 945. "Arizona applies the 'substantial relationship' test to determine when an attorney should be disqualified from appearing on behalf of a former client's adversary. *D. Stadtler Trust 2015 Trust, et al. v. Gorrie*, 2023 WL 355887, *7 (D. Ariz. Jan. 23, 2023) (citing *Alexander v. Superior Court*, 685 P.2d 1309, 1315-16 (Ariz. 1984)). "This test protects attorney-client relationships by promoting the 'preservation of secrets and confidences communicated to the lawyer by the client.'" *Id.* (quoting *Christensen v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 844 F.2d 694, 698 (9th Cir. 1988). However, in Arizona, it is presumed that "[a]s between joint clients ordinarily there is no expectation of confidentiality." *Alexander*, 685 P.2d at 1315. "This presumption is further supported by an ethics opinion from the Arizona State Bar Association, which provides that 'there is no individual confidentiality when a joint representation exists.'" *Gorrie* (quoting Ariz. Ethics Op. 07-04, available at https://tools.azbar.org/RulesofProfessionalConduct/ViewEthicsOpinion.aspx?); *see also* ER 1.7, cmt. 28 ("[A]s between commonly represented clients, the [attorney-client] privilege does not attach. Hence, it must be assumed that if litigation eventuates between the clients, the privilege will not protect any such communications....")

Here, it is undisputed in the record, and counsel confirmed at oral argument, joint representation by Ms. Manolio of Takeover, Mr. Pavlik, and the Tuckers occurred. Accordingly, under Arizona law, it is presumed there was no expectation of confidentiality. When asked by the Court at oral argument about the issue of confidentiality, Movants pointed the Court to the original Professional Services Agreement ("Agreement") between Ms. Manolio and Takeover (Doc. 195-3) and the Memorandum Concerning Joint Defense and/or Conflict of Interest between Ms. Manolio, Takeover, Mr. Pavlik, and the Tuckers

("Joint Defense Memo") (Doc. 195-2). And in their papers, Movants emphasize certain portions of those documents. For example, they highlight this language in the Joint Defense Memo: "[W]e cannot represent the client if the representation of that client would be directly adverse to another client, without your consent after discussing the same." (Doc. 195 at 10.) That language, however, concerns ER 1.7. Movants further emphasize this portion of the Joint Defense Memo: "[I]nformation or knowledge obtained by an attorney from a client and, in turn, client relationships, shall be kept confidential and shall not be used to the disadvantage of that client while representing another. This always poses a potential problem if it is learned in the course of this lawsuit that one of you has essentially done something that is damaging to the case and/or to the other defendants." (*Id.*) They also highlight this excerpt of that same document: "[T]he firm does not intend to waive the clients' rights and does not intend to use information to better any party's position by information obtained under the attorney/client privilege." (*Id.* at 11.)

However, when the entire Joint Defense Memo, rather than only an excerpt in the Motion, is considered, additional context is provided. (*See* Doc. 195-2.) In that Joint Defense Memo, Ms. Manolio continued by laying out the parties and how it was believed at the time that the interests of Takeover, the Tuckers, and Mr. Pavlik, were aligned. (*Id.*) Various qualifications regarding the uncertainty of the future of the litigation and party alignments followed throughout the document. (*See id.*) Similarly, Movants' excerpted portion of the original Agreement, which concerns disclosure of personal information, is unavailing to Movants. (*See* Doc. 195 at 10, block quoting Doc. 195-3 at 6.) The excerpt and the paragraph from which it is excised are qualified with language regarding the ethical rules, which have been interpreted in the context of joint representation as detailed above. (*See id.*) Additionally, Ms. Manolio's billing statements, which were attached to Movants' Reply, indicate that Mssrs. Tucker and Pavlik jointly conferred with Ms. Manolio (*see* Doc. 204-1 at 5); such joint conferences would be indicative of those parties' expectations of lack of individual confidentiality.

Based on a full reading of the record before it, the Court does not conclude the

presumption under Arizona law that there is no expectation of individual confidentiality in a joint representation has been undermined. Thus, the Court's analysis could end there (and the Motion could be denied) because the second requirement is not established as to either remaining Movant. But if the Court were to move to the third requirement, the Court could find that Ms. Manolio's current clients' interests are materially adverse to those of Takeover and Pavlik, as they now have claims against each other. If the Court were to so conclude, the Court could continue to the four factors under *Burch & Cracchiolo*. *See SinglePoint Solar*, 2022 WL 17418428 at *5-6 (considering the four factors under the auspices of "appearance of impropriety" concerns after conducting ER 1.9 analysis). Undersigned will analyze those four factors, in the event the District Judge were inclined to further analyze the disqualification motion.

First, the Court considers whether the instant Motion to Disqualify is made for the purposes of harassing the Tuckers. *Burch & Cracchiolo*, 351 P.3d at 384. At first blush, this could appear to be a close call as to Ms. Manolio. This is not the first time a request to disqualify Manolio has been in this litigation. (*See* Doc. 90.) However, the landscape of this case has changed since Judge Tuchi first considered such a motion. When Judge Tuchi denied the first request to disqualify, Ms. Manolio had not yet brought claims against her former clients. Indeed, Judge Tuchi was careful to qualify his previous disqualification ruling, emphasizing that his decision was based on the litigation as it was then composed. (*See* Doc. 118 at 6-7.) Thus, undersigned does not find the instant Motion to Disqualify against Ms. Manolio is made for purposes of harassment.[4] That being said, undersigned

[4] Although the Court does not find the Motion was brought for harassing purposes regarding Ms. Manolio, the Court must convey its concern regarding Movants' papers. For example, Movants directly call into question Ms. Manolio's candor (Doc. 204 at 1 n.1), but their basis for doing so is faulty. In their Reply, Movants cite Ms. Manolio's 2022 declaration that Mr. Tucker was not a long-standing client of hers and argue that her later declaration in 2025 contradicted it. (*See id.*) While Ms. Manolio's 2022 declaration in support of her motion to withdraw as Takeover's counsel stated Mr. Tucker was not a long-standing client of hers (Doc. 96-3 at 4), her 2025 declaration does not contradict the 2022 declaration as Movants argue. Rather, her 2025 declaration states she has "a long working history with" Mr. Tucker, as he worked with her "as a litigation consultant in matters wholly related to this case." (Doc. 203-1 at 1.) As the Court observed at oral argument, working as a litigation consultant does <u>not</u> create an attorney-client relationship. The Court expresses its dismay at such sweeping, inflammatory, and unsupported allegations made in Movant's papers.

would be remiss to ignore the equivocation of Movants regarding Mr. Freeman's representation in this case. There is nothing in the record to show that Mr. Freeman ever represented any party previously in this case. There is nothing in the record to show Mr. Freeman has received privileged or confidential information from Ms. Manolio. It is unclear what basis, if any, has ever existed to support the Motion regarding Mr. Freeman's continued representation. Thus, the Court could find that the instant Motion is being made for purposes of harassing the Tuckers vis-à-vis Mr. Freeman.

Moving to the second factor, the Court considers whether Movants will be damaged in some way if their current disqualification motion is not granted. *Burch & Cracchiolo*, 351 P.3d at 384. Because the Movants and the Tuckers have claims adverse to each other in this litigation, damage may occur and this factor weighs in favor of Movants.

Under the third factor, the Court determines "whether there are any alternative solutions" to disqualification and whether disqualification of both of Tuckers' counsel is "the least damaging possible under the circumstances." *Burch & Cracchiolo*, 351 P.3d at 384. This factor clearly weighs against Movants. There are certainly alternative solutions. Ms. Manolio could be disqualified and Mr. Freeman could continue in the litigation. And Movants would be "free to bring this issue before the state bar and seek disciplinary action." *SinglePoint Direct Solar, LLC v. Curiel*, 2022 WL 17418428, *2 (D. Ariz. Dec. 5, 2022).[5] The Court does not find that disqualification of both of Tuckers' counsel is the least damaging possible under the circumstances.

The fourth factor calls on the Court to consider "whether the possibility of public suspicion will outweigh any benefits that might accrue due to continued representation." *Burch & Cracchiolo*, 351 P.3d at 384. The Court does not find the specter of public suspicion outweighs the benefits of continued representation, particularly in light of how long this litigation has already been ongoing with Ms. Manolio involved (over three years).

Therefore, after considering the four factors regarding disqualification, undersigned

---

[5] At oral argument, Ms. Manolio offered another alternative. She suggested the Tuckers could dismiss their claims against Takeover and Pavlik. Indeed they could, but such a severe alternative is unnecessary given the above analysis.

recommends that the Court deny the Motion as to both Ms. Manolio and Mr. Freeman. If the Court were to conclude disqualification of Ms. Manolio were warranted, though, there is no basis to disqualify Mr. Freeman.

## III. CONCLUSION

For the reasons described above, the Motion fails as all Movants under ER 1.7 because none of the Movants are current clients of either Ms. Manolio or Mr. Freeman. The Motion further fails by all Movants as to Mr. Freeman under ER 1.9 because no Movant is a former client of Mr. Freeman's. With respect the remaining, applicable Movants as to Ms. Manolio (Takeover and Mr. Pavlik) under ER 1.9, undersigned recommends the Motion be denied for the reasons outlined above. If, however, the Court were to grant the Motion as to Ms. Manolio, Mr. Freeman could represent the Tuckers within the parameters of the Rules of Professional Conduct as the litigation is currently composed.

For the foregoing reasons,

**IT IS THEREFORE RECOMMENDED** that the Motion to Disqualify Attorneys[] Veronica L. Manolio and Spencer Freeman as Attorneys for Parties Jason and Melissa Tucker, filed by Plaintiff/Counterdefendant Labor Smart, Inc. ("LTNC" ) and Third-Party Defendants Takeover Industries, Inc. ("Takeover"), Joseph Pavlik, Next Gen Beverages, LLC ("Next Gen") Michael Holley and Chirine Holley, Thomas Zarro and Kimberly Zarro and Toby McBride (Doc. 195) be **DENIED.**

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to timely file objections to the Magistrate Judge's Report and

Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 9th day of April, 2025.

Honorable Alison S. Bachus
United States Magistrate Judge