Paul M. Levine, Esq. (007202)
**PAUL M. LEVINE, P.C.**
8502 E. Via de Ventura, Suite 230
Scottsdale, Arizona 85258
Telephone: (480) 302.4102
Facsimile: (480) 300.4984
plevine@pmlevinepc.com
*Attorney for Plaintiff/Counterdefendant*
*Labor Smart, Inc. and Third-Party Defendants*

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| LABOR SMART, INC.[1] | Case No: 2:22-cv-00357-PHX-DJH |
| Plaintiff, | **COUNTERDEFENDANT AND THIRD PARTY DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| vs. | |
| JASON AND MELISSA TUCKER. | |
| Defendants. | (Oral Argument Requested) |
| And related Counterclaims and Third-Party Claims. | (Assigned to the Hon. D. Humetewa) |

Counterdefendant Labor Smart, Inc. ("LTNC") and Third-Party Defendants Holley, McBride, Pavlik ("HMP"), Next Gen Beverages, LLC ("NGB") and Zarro (HMP, NGB and Zarro collectively "3PD"), pursuant to Rule 56, Federal Rules of Civil Procedure, move for partial summary judgment on the *Counterclaims* against: *LTNC*: (*a*) Abuse of Process and (*b*) Aiding and Abetting Tortious Misconduct, and the *Third-Party Claims* against: *HMP:* (*a*) Breach of Fiduciary Duties, (*b*) Aiding and Abetting Tortious Conduct, (*c*) Breach of Contract and (*d*) Breach of Covenant of Good Faith and Fair Dealing; *LTNC and 3PD:* Conspiracy to Commit Fraudulent Transfer; *NGB:* (*a*) Actual Fraudulent Transfer and (*b*) Constructive Fraudulent Transfer; and *Zarro:* (*a*) Aiding and Abetting

---

[1] Labor Smart, Inc. is now known as Kultura Brands, Inc. (Doc. 220.) For purposes of the Motion for Partial Summary Judgment, Plaintiff will continue to be referred to as Labor Smart, Inc.

Tortious Misconduct. No genuine issues of material fact exist and LTNC and 3PD are entitled to judgment as a matter of law. This Motion is supported by the attached Memorandum of Points and Authorities, LTNC and 3PD's Statement of Facts, and the entire record in this case.

**Memorandum of Points and Authorities**

### I. Procedural Background.

**A. The *TAKEOVER* Complaint.**[2] On March 8, 2022, Takeover Industries, Inc. ("Takeover") filed its Verified Complaint against Holley and David Eisenberg.[3] Takeover alleged claims against Holley for: **(i)** Breach of Fiduciary Duties, **(ii)** Conversion, and **(iii)** Unjust Enrichment. The claims against Holley all arose out of alleged actions by Holley "[a]s a Director and Officer of Takeover…." (SOF, ¶ 11.) Takeover alleged that Holley's actions "caused *Takeover* significant financial damages." ( SOF, ¶ 10.)[4]

**B. The *TUCKER'S* Counterclaim and Third-Party Complaint.** On July 8, 2024, the Tuckers filed their Counterclaim against LTNC and Third-Party Complaint against 3PD (the "Original Tucker Complaint"). (Doc. 148.) On September 27, 2024, the Tuckers filed their First Amended Counterclaim and Third-Party Complaint against 3PD (the "Amended Tucker Complaint"). (Doc. 179.)

In both Complaints, the Tuckers allege many identical facts and claims. *First*, the Tuckers allege *LTNC* was a party to, and breached, a July 2021 Agreement because it failed to deliver to the Tuckers 12 LTNC Preferred Shares and 750M LTNC Common Shares once LTNC received a "current" status from OTC markets. (SOF, ¶ 15,

---

[2] The Takeover Complaint was verified by Jason Tucker, Takeover's President at the time. In his Verification, Mr. Tucker confirmed that he also "read and granted authority" for the January 5, 2022 Takeover California Complaint against Holley and Eisenberg filed in the Central District Court of California.

3 Takeover's claim against David Eisenberg for Aiding and Abetting Tortious Misconduct was dismissed. Mr. Eisenberg is no longer a party to this action. (Doc. 118.)

4 The Takeover attorney was Veronica Manolio. Ms. Manolio is now representing the Tuckers on their Counterclaims and Third-Party Claims.

subparagraphs 83, 84; SOF, ¶ 17, subparagraphs 83, 84.) "***LTNC*** has refused to honor the July 2021 Agreement. ***LTNC's*** actions have caused the Tuckers financial damage." (SOF, ¶ 15, subparagraph 85; SOF, ¶ 17, subparagraph 85.)[5] ***Second***, the Tuckers allege HMP "owed Tucker fiduciary duties of care and loyalty, as he was a shareholder in each entity.[6] Moreover, Tucker was entitled to receive the duties of loyalty owed to ***Takeover*** and ***LTNC*** as he [Tucker] remained an Officer and Director of Takeover and a Director of LTNC." (SOF, ¶ 15, subparagraph 93; SOF, ¶ 17, subparagraph 98.)[7] The Tuckers do not distinguish HMP's alleged duties to Mr. Tucker arising out of his status as a *shareholder, director or officer* of Takeover or LTNC.[8] Mr. Tucker became a Takeover shareholder in May 2022. Neither of the Tuckers were ever LTNC shareholders. (SOF, ¶ 22.)

The only claims against Takeover are in the Amended Tucker Complaint, i.e., claims for Conspiracy to Commit Fraudulent Transfer, Actual Fraudulent Transfer and Constructive Fraudulent Transfer. (Doc. 179.) With respect to the July 2021 Agreement and the claim for unpaid compensation, the Tuckers allege LTNC and HMP breached the Agreement, ***not Takeover***.

## II. LTNC is Not Liable for Abuse of Process.

The elements of an abuse of process claim are "(1) a willful act in the use of judicial process; (2) for an ulterior purpose not proper in the regular conduct of the proceedings." *Nienstedt v. Wetzel*, 133 Ariz. 348, 651 P. 2d 876, 881 (App. 1982). "[T]here is no action for abuse of process when the defendant uses the process for its authorized or intended

---

[5] The Breach of Contract Counterclaim was dismissed on December 10, 2024. (Doc. 189.)

6 Contrary to the claim, the Tuckers were never LTNC shareholders. *Infra*, pp. 8, 9.

[7] Officers and Directors do not owe duties of loyalty to other Officers or Directors. *Infra*, p. 5.

[8] Although Tucker and Pavlik entered into a Preferred Stock Purchase Agreement, dated September 20, 2021, pursuant to which Pavlik agreed to sell Tucker 17 LTNC Preferred Series A Shares and 1,850,000,000 LTNC Common Shares, Mr. Tucker admits the Stock Purchase Agreement was not fully executed until October 13, 2021. (Doc. 179, ¶ 31.) The transfer did not take place until May 2022. (SOF, ¶ 20.) The transfer of the LTNC shares was made to Battleship Stance, Inc., not Mr. Tucker. *Infra*, pp. 8, 9.

purpose, 'even though with bad intentions,' or if 'there is an incidental motive of spite.'" *Morn v. City of Phoenix*, 152 Ariz. 164, 730 P. 2d 873, 875 (App. 1986). "An ulterior purpose alone cannot constitute abuse of process." *Bird v. Rothman*, 128 Ariz. 599, 627 P. 2d 1097, 1100 (App. 1981).

In this Court's December 10, 2024 Order on LTNC's Motion to Dismiss (Doc. 189, pp. 14, 15), with respect to the Abuse of Process claim the court stated:

> [T]he Court interprets the counterclaim as asserting that LTNC abused a particularized judicial process by filing (and partially prevailing upon) the motion for realignment…. "Whether LTNC's participation in the motion for realignment constituted abuse of process is not yet at issue. The Court simply holds that, construed liberally as required by Rule 12(b)(6), Tucker's second counterclaim states a claim for abuse of process upon which relief could be granted."

On the Motion to Realign (Doc. 129), this court entered its Order on May 1, 2023, granting the Motion and stating as follows:

> [T]he Tuckers do not dispute that LTNC is the real party in interest with respect to the claims Mr. Holley initiated against them; nor do they argue LTNC is currently antagonistic to Mr. Holley. In light of the authorities discussed above, Rule 21 would seem to provide the relief the Moving Parties seek. See Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party.") Further, while the Tuckers question whether the Moving Parties have actual authority to sue on LTNC's behalf, they cite no authority that producing evidence of actual authority to sue on behalf of the corporation is a procedural requirement. Finally, as to the Tuckers' pending Motion to Dismiss, which challenges whether Mr. Holley has standing to sue on behalf of LTNC, it is true the Court had not adjudicated that issue prior to the filing of the Joint Motion, in significant part because of the numerous satellite disputes that consumed judicial resources. As it stands now, however, LTNC wishes to pursue the claims on its own behalf and in Mr. Holley's place, which it will be permitted to do. For the same reason, the Tuckers' Motion to Dismiss for lack of standing is now moot.

(Doc. 129, p. 7.)

The abuse of process claim is based on LTNC's Motion to Realign. The Motion was filed (and granted) pursuant to a legally recognized process, i.e., Rule 21, Fed. R. Civ. P. Because "there is no action for abuse of process when the defendant uses the process for

its authorized or intended purpose," there is no abuse of process. "[T]here is no action for abuse of process when the process is used for the purpose for which it is intended,…" *Crackel v. Allstate Ins. Co*., 208 Ariz. 252, 92 P. 3d 882, 889 (App. 2004).

### III. Third Party Claim I: Breach of Fiduciary Duties (against HMP).[9]

### A. The Tuckers Do Not Have Standing To Allege HMP Breached Fiduciary Duties Where The Alleged Damage is Only to Takeover or LTNC.

"In Nevada, directors and officers owe the fiduciary duties of care and loyalty to the corporation." *Chur v. Eighth Judicial District*, 136 Nev. 68, 458 P. 3d 336, 340 (Sup. Ct. 2020). Directors and officers of a corporation do ***not*** owe fiduciary duties to other directors and officers.

If a corporation does not bring a claim for breach of fiduciary duty, then a shareholder has a right to file a derivative action. Rule 23.1 (Derivative Actions by Shareholders), Nevada Rules of Court, states, in pertinent part, as follows:

> In a derivative action brought by one or more shareholders or members to enforce a right of a corporation…, the corporation … having failed to enforce a right that may properly be asserted by it, the complaint must be verified and must allege that the plaintiff was a shareholder or member at the time of the transaction of which the plaintiff complains, or that the plaintiff's share or membership thereafter devolved on the plaintiff by operation of law. The complaint must also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiffs failure to obtain the action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association.

See also, N.R.S. § 41.520. There is nothing in the Tuckers' Third-Party Complaint against HMP that even remotely establishes compliance with Rule 23.1 or N.R.S. § 41.520. The claims against HMP for breach of fiduciary duty where the only alleged damage was to

---

[9] The parties have agreed that Nevada law governs the claims for breach of fiduciary duties.

either Takeover or LTNC fail as a matter of law because the Tuckers do not have standing.[10]

The specific allegations against HMP regarding the breach of fiduciary duties are as follows:

a) *using/misusing **Takeover** funds for personal use;*
b) *hiding corporate [**Takeover**] waste;*
c) misleading Tucker about the over-pledging of **Takeover** share ownership before he joined Takeover;
d) *improperly staging a "takeover" of **Takeover**;*
e) failing to pay Tucker funds/salary he had earned while working for **Takeover**;
f) freezing Tucker out of **LTNC** management decisions and voting of his **LTNC** Preferred Shares;
g) *using this lawsuit for improper purposes and with ulterior motives;[11]*
h) *assisting in the fraudulent avoidance of **Takeover** debt by creating a new company to shield assets and avoid debt;* and
i) assisting in thwarting **Tucker's** ability to sell/transfer his [**LTNC**] stock by manufacturing a "restriction."

(SOF, ¶ 17, subparagraph 99.) The allegations in subparagraphs *a*, *b*, *d* and *h* all concern alleged damage to **Takeover**. Those claims, if they exist, are claims by Takeover only. If the Tuckers wanted to assert these claims on behalf of Takeover, they had to comply with Rule 23.1, Nevada Rules of Court, and N.R.S. § 41.520. They did not.

> A derivative claim is one brought by a shareholder on behalf of the corporation to recover for harm done to the corporation. Because a derivative claim is brought on behalf of the corporation, a former shareholder does not have standing to assert a derivative claim.

*Cohen v. Mirage Resorts, Inc.*, 119 Nev. 1, 62 P. 3d 720, 732 (Sup. Ct. 2003).

---

[10] In this Court's December 10, 2024 Order (Doc. 189), the Court dismissed the Tuckers' Counterclaim against LTNC as it relates to "the torts predicated upon the backroom dealings of LTNC's shareholders, such as the disposition of LTNC's stock. These torts include aspects of Tucker's third-party claims for breach of fiduciary duty, breach of contract, and breach of the covenant of good faith and fair dealing." (Doc. 189, p. 15.)

[11] This can only be a reference to LTNC, since Takeover has not made any claim against the Tuckers.

Whether a claim is direct or derivative must be resolved solely based on two questions, '(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?'

.              .              .

In answering the first question – who suffered the harm – the relevant inquiry is: 'Looking at the body of the complaint and considering the nature of the wrong alleged and the relief requested, has the plaintiff demonstrated that he or she can prevail without showing an injury to the corporation?' [Citation omitted.] The second prong of the analysis is logically related and should follow; the inquiry is, if the plaintiff prevails, will the recovery benefit the corporation or the shareholders individually.

*Parametric Sound Corporation v. Eighth Judicial District*, 133 Nev. 417, 401 P. 3d 1100, 1107, 1108 (Sup. Ct. 2017). Any damages allegedly occurring as a result of the claims made in paragraph 179, subparagraphs *a*, *b*, *d* and *h* would benefit the corporation (Takeover). Accordingly, as to the allege claim for breach of fiduciary duties arising out of the allegations in subparagraphs *a*, *b*, *d* and *h*, HMP are entitled to summary judgment.

**B.      The Tuckers Have Not Alleged Damages Re: Subparagraphs *c* and *f*.**

*Shareholders* have standing to bring suit for direct injuries they have suffered and that are separate from any injury the corporation may have suffered. *Parametric*, p. 1105. With respect to the claims in subparagraphs *c* (misleading Tucker about the over-pledging of Takeover share ownership before he joined Takeover) and *f* (freezing Tucker out of LTNC management decisions and voting of his LTNC Preferred Shares), the Tuckers have not disclosed any damages. (SOF, ¶ 29.)[12] "A claim for breach of fiduciary duty customarily has three elements: (1) existence of a fiduciary duty, (2) breach of the duty, and (3) damages as a result of the breach." *Guzman v. Johnson*, 137 Nev. 126, 483 P.3d 531 (Sup. Ct. 2021). Also, Mr. Tucker does not have standing. The claims based on those allegations should be dismissed.

---

[12] Mr. Tucker was never a LTNC shareholder. *Infra*, pp. 8, 9.

### C. The Allegation in Subparagraph *e* Arises Out of Contract, Not a Fiduciary Duty.

With respect to subparagraph *e* (failing to pay Tucker salary he earned while working for ***Takeover***), this is not a claim for breach of fiduciary duty because it is not arising out of any duty owed by HMP to Takeover or its shareholders. At best, it is a claim Mr. Tucker has against Takeover that it breached its agreement with him. Repeatedly, Mr. Tucker alleges his salary/compensation was due from Takeover. *Infra*, p. 11.

### D. Mr. Tucker Was Never a LTNC Shareholder and Does Not Have Standing to Allege Claims Arising Out of Subparagraphs *g* and *i*.

With respect to subparagraph ***g*** (using the lawsuit for improper purposes) and ***i*** (assisting in thwarting Tucker's ability to sell/transfer his LTNC stock by manufacturing a "restriction"), the Tuckers do not have standing because they were never LTNC shareholders.[13] Only shareholders have standing to bring suit for direct injuries. *Parametric*, *supra*, p. 1105.

On April 29 and 30, 2024, David E. Wise, an attorney for corporations *Battleship* and *Oak Creek Wellness, Inc.* ("OCW"*)*, not the Tuckers' attorney, sent opinion letters to ClearTrust (LTNC's Transfer Agent) stating his opinion that the LTNC shares held by ***Battleship*** (350M shares of common stock) and ***OCW*** (10M shares of common stock) "are not restricted securities, the Shares are freely tradable and may be publicly sold by the Seller…. ***Seller [Battleship] acquired the Shares*** in a private transaction with the Issuer on or about September 21, 2021, pursuant to the Preferred Stock Purchase Agreement…." (SOF, ¶'s 24, 25.)

On May 17, 2024, Mr. Wise sent an email to ClearTrust stating: "*[T]he Federal Court litigation between Labor Smart, Inc. and Jason Tucker does not involve Battleship Stance, Inc. or Oak Creek Wellness, Inc. as parties thereto.*" (SOF, ¶ 26.) On May 20, 2024, Mr. Wise sent another email to ClearTrust stating: *"[N]either Battleship Stance, Inc.*

---

[13] Melissa Tucker admits she was never a Takeover or LTNC shareholder. (SOF, ¶ 22)

*nor Oak Creek Wellness is a party to the litigation. You will also notice that* **the stock currently owned by Battleship Stance and/or Oak Creek Wellness** *is not a subject of the litigation."* (SOF, ¶ 27.) Copies of both of the emails were sent to Mr. Tucker. The Tuckers were fully aware they were **not** LTNC shareholders. Neither Battleship nor OCW has ever made a claim in this case.

It is clear the Tuckers have never owned any LTNC shares. At the time of the alleged "thwarting" of the right to sell LTNC shares, Battleship and OCW (not the Tuckers) were the owners of the LTNC shares. As such, the Tuckers do not have standing.[14]

### IV. LTNC, HMP and Zarro Are Not Liable for Aiding and Abetting Tortious Conduct.

The Tuckers allege LTNC, HMP and Zarro assisted, encouraged, participated, or caused: "a. Third-Party Defendant *Takeover* to withhold payments to Tucker (and others) and then to fraudulently complete a transfer of Takeover assets to avoid paying debt/obligation;… and c. *LTNC* to interfere with and/or thwart the Tuckers' ability to sell LTNC stock/shares." (SOF, ¶ 17, subparagraph 104.)

### A. "Withhold [Takeover] payments to Tucker."[15] This claim arises out of the alleged contract between Takeover and Tucker. It is not a tort claim. By definition, neither LTNC, HMP nor Zarro can be liable for aiding and abetting this alleged breach of contract.

Claims of aiding and abetting tortious conduct require proof of 3 elements: (**i**) the primary **tortfeasor** must commit a tort that causes injury to the plaintiff; (**ii**) the defendant must know that the primary **tortfeasor's** conduct constitutes a breach of duty; and (**iii**) the defendant must substantially assist or encourage the primary **tortfeasor** in the achievement of the breach. *Wells Fargo Bank v. Arizona Laborers*, 201 Ariz. 474, 38 P. 2d 12 (Sup. Ct.

---

[14] For the same reason, Melissa Tucker and her counsel withdrew the claim against LTNC for damages to OCW because Melissa Tucker had no contractual agreement with LTNC. (SOF, ¶ 22.)

[15] This is just one of many judicial admissions made by the Tuckers admitting the payments owed to them pursuant to the July 2021 Agreement were to come from *Takeover*, not HMP.

2002). The Tuckers' claim for alleged  aiding and abetting withholding payments fails as a matter of law because there is no tortfeasor. The claim that payments were withheld arises out of the alleged contract between Mr. Tucker and Takeover.

**B.** **"Fraudulently complete a transfer of Takeover assets."** Even though Mr. Tucker claims it is Takeover that owes him unpaid compensation, he has not alleged any claim against Takeover which, if proven, would make him a Takeover creditor. If Tucker is not a Takeover creditor, there is no fraudulent conveyance by Takeover. *Infra*, p. 13.

**C.** **"Thwarting the Tuckers' ability to sell LTNC stock/shares."** As discussed above, neither LTNC, HMP nor Zarro interfered with or thwarted the ***Tuckers'*** ability to sell LTNC stock because the Tuckers never owned any LTNC stock. The stock at issue was owned by ***Battleship*** and ***OCW***. Because this claim fails as a matter of law, so do the aiding and abetting claims against LTNC, HMP and Zarro arising out of the alleged fraudulent conveyance.

### V.    HMP Are Not Liable for Breach of Contract or Breach of the Covenant of Good Faith and Fair Dealing.

The Tuckers allege HMP breached a July 2021 Agreement in two separate ways: ***First***, "by failing to provide Tucker 'equal' payments and, instead, authorizing that Holley and McBride would receive exponentially more each month than Tucker while Holley and McBride hid charges from and payments [from Takeover] to themselves from Tucker" (the "Unpaid Compensation Claim"). (SOF, ¶ 17, subparagraph 108.) ***Second***, HMP failed "to give Tucker 12 Preferred Shares (4 from each Holley, McBride, and Pavlik) and 750M common shares once LTNC received a 'current' status from OTC markets" (the "LTNC Stock Claim"). (SOF, ¶ 15, subparagraphs 99 100; SOF, ¶ 17, subparagraphs 109, 110.)

However, in both the Original Tucker Complaint and the Amended Tucker Complaint, the Tuckers admit: **(i)** ***Takeover*** was the party that withheld and owes Tucker unpaid compensation; and **(ii)** ***LTNC*** was the party to deliver to the Tuckers 12 Preferred Shares and 750M common shares. These judicial admissions are as follows:

**A.**   **Mr. Tucker Admits Takeover (not HMP) Owes Him Compensation.**

i.   Pursuant to the ***Takeover*** - LTNC Agreement… "Holley, McBride, Pavlik, and Tucker were each entitled to receive monthly payments, draws and/or salary equal to each other;" (SOF, ¶ 15, subparagraph 29c; SOF, ¶ 17, subparagraph 29c.)

ii.   LTNC aided and abetted Third-Party Defendants to "deprive Tucker of payment(s) owed to him by ***Takeover***;" (SOF, ¶ 15, subparagraph 89d; SOF, ¶ 17, subparagraph 94c.)

iii.   HMP breached fiduciary duties by "failing to pay Tucker funds/salary he had earned while working for ***Takeover***;" (SOF, ¶ 15, subparagraph 94e; SOF, 17, subparagraph 99e.)

iv.   "***Takeover*** owed Tucker significant (but unpaid) compensation." (SOF, ¶ 17, subparagraph 93.)

v.   LTNC aided and abetted "***Takeover*** to deprive Tucker of payments owed to him by ***Takeover***;" (SOF, ¶ 15, subparagraph 89d.)

vi.   LTNC aided and abetted Takeover "in an effort to avoid liabilities owed by ***Takeover*** to Jason Tucker…." (SOF, ¶ 17, subparagraph 95.)

vii.   HMP "knew of Tucker's position as President of ***Takeover*** and his right to compensation." (SOF, ¶ 17, *See* subparagraph 102.)

viii.   HMP aided and abetted "***Takeover*** to withhold payments to Tucker…." (SOF, ¶ 17, subparagraph 104a.)

ix.   Zarro aided and abetted Takeover to "controvert the liabilities owed by ***Takeover*** to Tucker…." (SOF, ¶ 17, subparagraph 136.)

x.   At his deposition, Mr. Tucker admitted it was Takeover that was to make the monthly payments. (SOF, ¶ 35.)

**B.**   **LTNC (not HMP) failed to deliver to the Tuckers 12 LTNC Preferred Shares and 750M LTNC Common Shares.**

1.   Pursuant to the "Takeover-***LTNC*** Agreement…when LTNC received a 'current' status, Tucker was to receive 750M common shares of LTNC valued at the same rate as McBride's shares;" (SOF, ¶ 15, subparagraph 29f; SOF, ¶ 17, subparagraph 29f.)

2.   "***LTNC*** is a party to the July 2021 Agreement, signed by all of the Board of Directors of LTNC and promising Tucker 12 Preferred

Shares (4 from each Holly, McBride, and Pavlik) and 750M common shares once LTNC received a 'current' status from OTC markets.… *LTNC* has refused to honor the July 2021 Agreement. *LTNC's* actions have caused the Tuckers financial damages.…" (SOF, ¶ 15, subparagraphs 83, 84; SOF, ¶17, subparagraphs 83, 84.)

After alleging: (a) *Takeover* owed Tucker for unpaid compensation (but never bringing a claim against Takeover), and (b) *LTNC* owed Tucker 12 Preferred Shares and 750M Common Shares, the Tuckers are now pivoting and claiming these were personal obligations of HMP. They are not.

The statements made in the Original Tucker Complaint (Doc. 148) and the Amended Tucker Complaint (Doc. 179) are judicial admissions. Factual allegations in a complaint are evidentiary admissions. "The time has passed when allegations in a pleading will be treated as mere fictions, rather than 'as statements of the real issues in the cause and hence as admissions of the parties." *Henry ex rel. Estate of Wilson v. Health Partners of Southern Arizona*, 203 Ariz. 393, 55  P. 3d 87, 90 (App. 2002), citing *Dreier v. Upjohn Co*., 196 Conn. 242, 492  A. 2d 164, 168 (1985).

> When a party by pleading or stipulation has agreed to a certain set of facts, he may not contradict them. This is a rule not of evidence but of pleading. When the parties have framed the issues for resolution, they may not change them absent an amendment of the pleadings or trial of the issue by consent. A party so bound is often said to have made a judicial admission.

*Black v. Perkins*, 163 Ariz. 292, 787 P. 2d 1088, 1089 (App. 1989).

There was no agreement between the Tuckers and HMP whereby HMP agreed to individually pay compensation for Mr. Tucker's work at Takeover.[16] Logically, the claim makes no sense. Why would HMP agree to pay Mr. Tucker for work at Takeover when it was Takeover that was paying Mr. Tucker (and HMP)? Mr. Tucker admits the unpaid compensation was owed by Takeover, not HMP.

---

[16] Mr. Tucker admitted he would have no personal liability to HMP if he were paid more per month then they were. (SOF, ¶ 36.)

### C.  Mr. Tucker Admits the LTNC Shares Were Transferred.

Mr. Tucker admitted he received all of the LTNC shares he was entitled to. As a result of the Preferred Stock Purchase Agreement between Mr. Tucker (Purchaser) and Mr. Pavlik (Seller), 17 LTNC shares of Series A Preferred Stock and 1,850,000,000 LTNC shares of Common Stock were transferred to *Battleship*. (SOF, ¶ 20.) Mr. Tucker admitted that as long as he received the shares, he did not care where they came from.

> I didn't even contemplate it, whether it came from the company or them as individuals. As long as – again, as long as I got my 12 preferred shares and my 750 million shares of Labor Smart and my 25% of Takeover, I didn't care how they did the math to get there."

(SOF, ¶ 21.)

### VI.  The Tuckers Are Not Takeover Creditors and Do Not Have Standing To Make a Claim for Fraudulent Conveyance.

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation under any of the following:

1. With actual intent to hinder, delay or defraud any creditor of the debtor.
2. Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
   (a) Was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.
   (b) Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

A.R.S. §44-1004(A). A *creditor* means a person who has a claim. A.R.S. § 44-1001(3). "'*Claim*' means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." A.R.S. § 44-1001(2).

The Tuckers have not alleged any *claim* against Takeover for unpaid compensation, and the Tuckers are not Takeover *creditors*. Because the Tuckers are not Takeover creditors, they do not have standing to make any claim for an alleged fraudulent conveyance. "[A] claim must be an enforceable obligation." *Hullett v. Cousin*, 204 Ariz.

292, 63 P. 3d 1029, 1034 (Sup. Ct. 2003). See also, *Pacesetter Consulting LLC v. Kapreilian*, 2019 WL 6464659, *8 (D. Ariz.). ("'Right to payment,' in turn, means 'nothing more nor less than an enforceable obligation.' [Citation omitted.] 'Without a debt against the transferor, a creditor has no claim against the transferee.'")

## VII. The Tuckers' Claim for Conspiracy to Commit Fraudulent Transfer Fails Because the Tuckers Do Not Allege UFCA Damages Are Inadequate.

"[T]here is no such thing as a civil action for conspiracy. The action is one for damages arising out of the acts committed pursuant to the conspiracy." *Tovrea Land & Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 412 P. 2d 47, 63, Sup. Ct. 1966). "However, the action for damages arising from conspiracy to commit a fraudulent conveyance is a remedy that should be used only where the remedies under the UFCA are inadequate." *McElhanon v. Hing*, 151 Ariz. 386, 728 P. 2d 256, 263 (App. 1985). The Tuckers have not alleged damages potentially recoverable under the UFCA are in adequate. Therefore, the claim for Conspiracy to Commit Fraudulent Transfer fails as a matter of law.[17]

## VIII. There Was No Fraudulent Conveyance by Takeover to Next Gen.[18]

The Tuckers allege "Takeover transferred its assets, rights and intellectual property to NextGen…." (SOF, ¶ 17, subparagraph 124.) According to Mr. Tucker, the assets transferred by Takeover are: (**i**) hydrogen water formula, (**ii**) website and online accounts/online presence, (**iii**) copyright and trademark rights, (**iv**) money to cover NextGen legal expenses, and (**v**) a total of $25,000 from July 7-September 1, 2023. (SOF, ¶ 44.)

---

[17] Even assuming, *arguendo*, damages under the UFCA are inadequate, "[d]amages for conspiracy are limited to the amount of the judgment creditor's judgment or the value of the property at the time of transfer, whichever is less along with incidental expenses. Damages, therefore, are not speculative." *McElhanon*, p. 273.

[18] As discussed above, *supra*, p. 13, the Tuckers have not alleged any claims against Takeover and, therefore, they are not Takeover creditors. Accordingly, the claim for fraudulent conveyance fails as a matter of law.

**(i) Hydrogen Water**. Takeover never owned (or transferred) a hydrogen water formula. The hydrogen water formula was (and still is) owned by H2ForLife. (SOF, ¶ 60.) Furthermore, Takeover stopped selling its hydrogen water in September 2022. (SOF ¶ 42.)

**(ii) Website**. NextGen's website is completely different from the Takeover website. The Takeover website was not used to create NextGen's website and was never transferred to NextGen. (SOF ¶ 58.)

**(iii) Copyrights and Trademarks**. Mr. Tucker admits Takeover never owned any trademarks. (SOF, ¶ 45.) The only copyright Mr. Tucker claims Takeover owns is a copyright for the "can art" used on cans of Takeover product. (SOF, ¶ 46.) The Tuckers are not claiming Takeover transferred the copyright for the "can art" to NGB.

**(iv) Money**. In 2023 and 2024, NGB loaned Takeover $74,000. (SOF ¶ 62.) In 2023 and 2024, Takeover paid back NGB $25,000 and $26,500, respectively. (SOF ¶ 63.) The money allegedly "fraudulently transferred" from Takeover to NGB were loan repayments.

## IX. Conclusion.

*LTNC* is entitled to summary judgment on the Tuckers' claim against LTNC for Abuse of Process, because LTNC's Motion to Realign was granted pursuant to a legally recognized process. (Rule 21, F.R.C.P.)

*LTNC, HMP, NGB and Zarro* are entitled to summary judgment on the Tucker's claims for Aiding and Abetting because: (i) the claim relating to withholding of payments is a contract claim, not a tort; (ii) the claim relating to Fraudulent Transfer of Takeover assets fails because Mr. Tucker is not a Takeover creditor and does not have a claim against Takeover; (iii) the claim relating to "Thwarting The Tuckers Ability to Sell LTNC Stock" fails because neither of the Tuckers were ever LTNC see shareholders.

**HMP** is entitled to summary judgment on the Tuckers claims for Breach of Fiduciary Duties, Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing because (i) the Tuckers do not have standing where the alleged damage is to Takeover or LTNC only; (ii) the Tuckers have not filed a derivative action on behalf of either Takeover or LTNC; (iii) the Tuckers have not alleged any damages with respect to

the allegations re: misleading Tucker about the over pledging of Takeover share ownership or freezing Tucker out of LTNC see management and voting; (iv) the claim regarding failing to pay Tucker salary does not arise out of a fiduciary duty owed to Takeover or its shareholders; (v) the Tuckers were never LTNC shareholders; (vi) Mr. Tucker admits Takeover (not HMP) is the party that allegedly owes him unpaid compensation; (vii) Mr. Tucker admits LTNC (not HMP) is the party that allegedly owes him the LTNC Preferred and Common shares; and (viii) Mr. Tucker admits he received 17 LTNC Series A Preferred Stock and 1,850,000,000 LTNC Common Stock.

**LTNC, HMP, NGB and Zarro** are entitled to summary judgment on all of the claims arising out of the alleged fraudulent transfer because: (i) neither of the Tuckers has made any claim against Takeover and is not a Takeover creditor; (ii) with respect to the claim for Conspiracy to Commit Fraudulent Transfer, the Tuckers do not allege UFCA damages are inadequate; (iii) there was no fraudulent transfer of any assets by Takeover to NGB.

Respectfully submitted this 9th of January 2026.

**PAUL M. LEVINE, P.C.**


By: */s/ Paul M. Levine*
       Paul M. Levine, Esq.
       8502 E. Via de Ventura, Suite 230
       Scottsdale, Arizona 85258
       *Attorney for Plaintiff/Counterdefendant*
       *Labor Smart, Inc. and Third-Party Defendants*

## CERTIFICATE OF MAILING

I hereby certify that the foregoing *Motion for Partial Summary Judgment* was served by and through the CM/ECF filing system of the United States District Court, District of Arizona, on January 9, 2026, to the following parties:

Veronica L. Manolio, Esq.
**MANOLIO & FIRESTONE, PLC**
8674 E. San Alberto Drive
Scottsdale, Arizona 85258
VManolio@MF-Firm.com
*Attorney for Tucker Defendants/*
*Counterclaimants/Third-Party Claimants*

Spencer D. Freeman, Esq.
**FREEMAN LAW FIRM, INC**
1107 1/2 Tacoma Ave S
Tacoma, Washington 98402
SFreeman@FreemanLawFirm.org
Reception@FreemanLawFirm.org
Sierra@FreemanLawFirm.org
*Attorney for Jason Tucker and*
*Melissa Tucker*

By: *Kathleen Mohr*