Paul M. Levine, Esq. (007202)
**PAUL M. LEVINE, P.C.**
8502 E. Via de Ventura, Suite 230
Scottsdale, Arizona 85258
Telephone: (480) 302.4102
Facsimile: (480) 300.4984
plevine@pmlevinepc.com
*Attorney for Plaintiff/Counterdefendant*
*Labor Smart, Inc. and Third-Party Defendants*

# IN THE UNITED STATES DISTRICT COURT
# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| LABOR SMART, INC.[1]<br><br>Plaintiff,<br><br>vs.<br><br>JASON AND MELISSA TUCKER.<br><br>Defendants.<br><br>And related Counterclaims and Third-Party Claims. | Case No: 2:22-cv-00357-PHX-DJH<br><br>**COUNTERDEFENDANT LABOR SMART, INC. AND THIRD-PARTY DEFENDANTS NEXT GEN BEVERAGES, LLC, HOLLEY, MCBRIDE, PAVLIK AND ZARRO'S STATEMENT OF FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>(Before the Hon. D. Humetewa) |

Counterdefendant Labor Smart, Inc. ("LTNC") and Third-Party Defendants Next Gen Beverages, LLC ("NGB"), Holley, McBride, Pavlik ("HMP") and Zarro (collectively the "3PD") submit the following as their Statement of Facts in support of their Motion for Partial Summary Judgment.

**The Takeover California Complaint**

1. On January 5, 2022, Takeover Industries, Inc. ("Takeover") filed a Complaint in United States District Court, Central District of California (the "Takeover

---

[1] Labor Smart, Inc. is now known as Kultura Brands, Inc. (Doc. 220.) For purposes of the Motion for Partial Summary Judgment, Plaintiff will continue to be referred to as Labor Smart, Inc.

California Complaint")[2], seeking damages against Defendant Holley, alleging claims for Breach of Fiduciary Duty under both Nevada and California law, Breach of Contract, Breach of Covenant of Good Faith and Fair Dealing, Conversion, Fraud and Intentional Interference with Contract.

2. At the time the Takeover California Complaint was filed, Jason Tucker was Takeover's President, Chief Operating Officer and Chief Financial Officer. (Doc. 148, ¶ 22.b.)

3. On the claim for Breach of Fiduciary Duty, the Takeover California Complaint alleges: (**a**) "Holley owed *Takeover* a fiduciary duty to exercise his powers in good faith and with a view to the interests of the corporation." and (**b**) "Holley owed *Takeover* a duty to act with the utmost good faith in the best interests of Takeover." (**Exhibit "A"**, ¶'s 35, 41.) *Takeover* alleged it was damaged in at least the amount of $800,000 or $700,000. (**Exhibit "A",** ¶'s 38, 44.)

4. On the claim for Breach of Contract, the Takeover California Complaint alleges Holley breached his contract with *Takeover* "by taking more money for himself than was allowed under his agreement with *Takeover*." (**Exhibit "A"**, ¶ 55.) *Takeover* alleged it was damaged "in excess of $300,000, which reflects the minimum amount taken from *Takeover* in excess of any possible reasonable compensation to Holley." (**Exhibit "A"**, ¶ 58.)

5. The Takeover California Complaint was dismissed on March 8, 2022.

### The Takeover Arizona Complaint

6. On March 8, 2022, Takeover filed a Complaint (the "Takeover Arizona Complaint") in this court against Holley and Eisenberg, alleging claims for Breach of Fiduciary Duties, Conversion and Unjust Enrichment (against Holley) and Aiding and

---

[2] Pursuant to Rule 201(c), Federal Rules of Evidence, LTNC and 3PD request that the court take judicial notice of the Takeover California Complaint because the existence and content of the Complaint can be determined from sources whose accuracy cannot reasonably be questioned, i.e., the Docket in Case No. 2:22-CV-00102-ODW-KS, and because a copy is attached as **Exhibit "A"**.

Abetting Tortious Misconduct (against David Eisenberg). (Doc. 1.) Mr. Eisenberg was dismissed on January 27, 2023. (Doc. 118.)

7. The Takeover Arizona Complaint was verified by Jason Tucker, who also confirmed that he "read and granted authority for the previous pleadings (filed in California)….", i.e., the Takeover California Complaint. (Doc. 1.)

8. The Takeover Arizona Complaint alleges Takeover's "four principals unanimously agreed that they would not distribute profits to any of them unless distributions were made evenly and with unanimous consent." (Doc. 1, ¶ 24.)

9. The Takeover Arizona Complaint alleges Holley engaged in misconduct, including that: "Distributions were not made evenly, as the owners had agreed;". (Doc. 1, ¶ 34(b).)

10. The Takeover Arizona Complaint alleges the acts and omissions by Holley have caused "*Takeover* significant financial damages…." (Doc. 1, ¶'s 48, 54, 61.)

11. The Takeover Arizona Complaint alleges: "As a Director and Officer of Takeover, Defendant Holley owed fiduciary duties to the Company, his fellow Officers/Directors and the Shareholders 2 (at least) act in good faith in the best interest of the Company, putting aside his own personal gain." (Doc. 1, ¶ 50.)

12. On February 15, 2023, the Takeover claims against Holley were dismissed. (Doc. 120.)

### The Tuckers' Arizona Complaint

13. On July 8, 2024, the Tuckers filed their Counterclaims and Third-Party Claims (the "Tucker Arizona Complaint"). (Doc. 148.)

14. The Tucker Arizona Complaint makes many of the same allegations against Holley that *Takeover* made against Holley in the Takeover California Complaint and the Takeover Arizona Complaint. For example, see Doc. 1 (Takeover Arizona Complaint, ¶'s 33, 34, 36 and 37) and compare to Doc. 148 (Tuckers' Arizona Complaint, ¶'s 47 and 48).

15. Tuckers' Arizona Complaint alleges:

    27. In early August 2021, Holley, McBride, Pavlik and Tucker had put together a "***Takeover – LTNC*** Agreement" to memorialize the discussions and agreements they made during the June 2021 Board Meeting. This document (hereafter "the July 2021 Agreement") was discussed thoroughly in a Special Meeting of the Board of Directors.

    29. In turn, the July 2021 Agreement specified the following terms:

        a. Holley, McBride, Pavlik, and Tucker were each to receive 25% of the shares in Takeover;

        b. Pavlik and Tucker were each to be named as Directors of Takeover;

        c. Holley, McBride, Pavlik, and Tucker were each entitled to receive monthly payments, draws and/or salary equal to each other;

        d. Holley, McBride, and Pavlik collectively held 51 Preferred Shares (17 shares each) in LTNC, which amounts equaled 51% of the voting rights in LTNC;

        e. 12 of the Preferred Shares were to be released to Tucker when LTNC received a "current" status from OTC Markets or another market, such as NASDAQ, NYSE, or an equivalent;

        f. In addition, when LTNC received a "current" status, Tucker was to receive 750M common shares of LTNC valued at the same rate as McBride's shares;

    83. Additionally, ***LTNC is a party to the July 2021 Agreement***, signed by all of the Board of Directors of LTNC and promising Tucker 12 Preferred Shares (4 from each Holley, McBride, and Pavlik) and 750M common shares once LTNC received a "current" status from OTC markets.

    84. Although LTNC has received "current" status on the OTC markets, and despite that the Tuckers made demand for the Preferred and Common Shares owed by Holley and McBride, ***LTNC has refused to honor the July 2021 Agreement***.

85. ***LTNC's actions have caused the Tuckers financial damages*** in an amount to be proven at trial but, in no event, less than the jurisdictional minimum of this Court.

89. Through the actions described in this Complaint, LTNC knowingly and intentionally assisted, encouraged, participated, or caused the Third-Party Defendants to:

   a) breach various fiduciary duties owed to Tucker; b) breach various agreements with Tucker, both written and implied; c) interfere with Tucker's voting and financial rights in Takeover and LTNC; d) deprive Tucker of payment(s) owed to him by ***Takeover***; e) interfere with the Tuckers' shares/ability to sell shares of LTNC stock.

93. HMP "owed Tucker fiduciary duties of care and loyalty, as he was a shareholder in each entity."[3] Moreover, Tucker was entitled to receive the duties of loyalty owed to Takeover and LTNC as he remained an Officer and Director of Takeover and a Director of LTNC.

94. Third-Party Defendants Holley, McBride, and Pavlik each breached their fiduciary duties by taking the actions described in this Complaint, including but not limited to: a) using/misusing Takeover funds for personal use; b) hiding corporate waste; c) misleading Tucker about the over-pledging of Takeover share ownership before he joined Takeover; d) improperly staging a "takeover" of Takeover; e) failing to pay Tucker funds/salary he had earned while working for ***Takeover***; f) freezing Tucker out of LTNC management decisions and voting of his LTNC Preferred Shares; and g) thwarting Tucker's ability to sell/transfer his stock by manufacturing a "restriction."

99. The July 2021 Agreement further obligated Holley, McBride and Pavlik to give Tucker 12 Preferred Shares (4 from each Holley, McBride, and Pavlik) and 750M common shares once LTNC received a 'current' status from OTC markets.

---

[3] Mr. Tucker was never an LTNC shareholder. See ¶'s 22, 43 below.

> 100. Although LTNC has received 'current' status on the OTC markets, and despite that the Tuckers made demand for the Preferred Shares owned by Holley and McBride and the 750M common shares, each Holley, McBride, and Pavlik have ignored the July 2021 Agreement and have refused to ensure that Tucker receive his promised shares.

(Doc. 148, ¶'s 27, 29, 83, 84, 85, 89, 93, 94, 99 and 100.) The allegations in paragraphs 83, 84, 85, 93 and 99 are repeated in paragraphs 83, 84, 85, 98 and 109 of the Tuckers' First Amended Counterclaims and Third-Party Claims. (Doc. 179.)

**The Tuckers' Amended Arizona Complaint**

16. On September 27, 2024, the Tuckers filed their First Amended Counterclaims and Third-Party Claims (the "Tucker Amended Arizona Complaint"). (Doc. 179.)

17. In the Tucker Amended Arizona Complaint, the Tuckers allege:

> 27. In early August 2021, Holley, McBride, Pavlik and Tucker had put together a **"Takeover – LTNC Agreement"** to memorialize the discussions and agreements they made during the June 2021 Board Meeting.
>
> 29. In turn, the July 2021 Agreement specified the following terms:
>
> c. Holley, McBride, Pavlik, and Tucker were each entitled to receive monthly payments, draws and/or salary equal to each other;
>
> d. Holley, McBride, and Pavlik collectively held 51 Preferred Shares (17 shares each) in LTNC, which amounts equaled 51% of the voting rights in LTNC;
>
> f. In addition, when LTNC received a "current" status, Tucker was to receive 750M common shares of LTNC valued at the same rate as McBride's shares;
>
> 83. Additionally, ***LTNC is a party to the July 2021 Agreement***, signed by all of the Board of Directors of LTNC and promising Tucker 12 Preferred Shares (4 from each Holley, McBride, and Pavlik) and 750M common shares once LTNC received a "current" status from OTC markets.

6

84. Although LTNC has received "current" status on the OTC markets, and despite that the Tuckers made demand for the Preferred and Common Shares owed by Holley and McBride, ***LTNC has refused to honor the July 2021 Agreement.***

85. ***LTNC's actions have caused the Tuckers financial damages*** in an amount to be proven at trial but, in no event, less than the jurisdictional minimum of this Court.

93. LTNC was fully aware of ***the financial obligations of Takeover, including knowledge that Takeover owed Tucker significant (but unpaid) compensation.***

94. Through the actions described in this Complaint, LTNC knowingly and intentionally assisted, encouraged, participated, or caused:

   c. Third-Party Defendants Holley, McBride, Pavlik, and Takeover to ***deprive Tucker of payments owed to him by Takeover***;

95. Moreover, LTNC has substantially participated and assisted Takeover… in an effort to avoid liabilities owed by Takeover to Jason Tucker….

98. HMP "owed Tucker fiduciary duties of care and loyalty, as he was a shareholder in each entity." Moreover, Tucker was entitled to receive the duties of loyalty owed to Takeover and LTNC as he remained an Officer and Director of Takeover and a Director of LTNC.

99. Third-Party Defendants Holley, McBride, and Pavlik each breached their fiduciary duties by taking the actions described in this Complaint, including but not limited to: …a) using/misusing Takeover funds for personal use; b) hiding corporate waste; c) misleading Tucker about the over-pledging of Takeover share ownership before he joined Takeover; d) improperly staging a "takeover" of Takeover; e) failing to pay Tucker funds/salary he had earned while working for ***Takeover***; f) freezing Tucker out of LTNC management decisions and voting of his LTNC Preferred Shares; g) using this lawsuit for improper purposes and with ulterior motives; h) assisting in the fraudulent avoidance of Takeover debt by creating a new company to shield assets and avoid debt; and i) assisting in thwarting Tucker's ability to sell/transfer his stock by manufacturing a 'restriction.'

102. Holley, McBride and Pavlik were each aware of the relationship and contracts Takeover had with Tucker, including that they knew of **Tucker's position as President of Takeover and his right to compensation.**

104. Through the actions described in this Complaint, Holley, McBride, and Pavlik each knowingly and intentionally assisted, encouraged, participated, or caused:

a. Third-Party Defendant **Takeover to withhold payments to Tucker** (and others) and then to fraudulently complete a transfer of Takeover assets to avoid paying debt/obligation;

c. LTNC to interfere with and/or thwart the Tuckers' ability to sell LTNC see stock/shares.

108. Holley, McBride and Pavlik breached the July 2021 Agreement by failing to provide Tucker 'equal' payments and, instead, authorizing that Holley and McBride would receive exponentially more each month than Tucker while Holley and McBride hid charges from and payments to themselves from Tucker.

109. The July 2021 Agreement further obligated Holley, McBride and Pavlik to give Tucker 12 Preferred Shares (4 from each Holley, McBride, and Pavlik) and 750M common shares once LTNC received a 'current' status from OTC markets.

110. Although LTNC has received 'current' status on the OTC markets, and despite that the Tuckers made demand for the Preferred Shares owned by Holley and McBride and the 750M common shares, each Holley, McBride, and Pavlik have ignored the July 2021 Agreement and have refused to ensure that Tucker receive his promised shares.

124. Takeover transferred its assets, rights and intellectual property to NextGen with the intent to delay and/or hinder the Tuckers (and others) from collecting debt owed by the entity.

136. Through the actions described in this Complaint, Zarro was intentional and instrumental and substantially participated and encouraged Takeover, LTNC, Holley, McBride, and Pavlik to commit multiple wrongdoings, including but not limited to: a) **controvert the liabilities owed by Takeover to Tucker…**.

(Doc. 179, ¶'s 27, 29, 83, 84, 85, 93, 94, 95, 98, 99, 102, 104, 108, 109, 110, 124 and 136.)

**The Pavlik/Tucker Preferred Stock Purchase Agreement**

18. On September 20, 2021, Joseph Pavlik (Seller) and Jason Tucker (Purchaser) entered into a Preferred Stock Purchase Agreement pursuant to which Seller agreed to sell to Purchaser 17 LTNC shares of Series A Preferred Stock and 1,850,000,000 LTNC shares of Common Stock for $5,000. (See Preferred Stock Purchase Agreement, attached as **Exhibit "B"**.)

19. Mr. Tucker (Purchaser) was aware there were restrictions on the transferability of the LTNC shares. The Preferred Stock Purchase Agreement stated:

> **(a) THESE SECURITIES HAVE NOT BEEN REGISTERED WITH THE SECURITIES AND EXCHANGE COMMISSION UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), IN RELIANCE UPON THE EXEMPTION FROM REGISTRATION PROVIDED IN SECTIONS 4(a)(1) AND 4(a)(2) AND REGULATION D UNDER THE ACT. AS SUCH, THE PURCHASE OF THIS SECURITY WAS MADE WITH THE INTENT OF INVESTMENT AND NOT WITH A VIEW FOR DISTRIBUTION. THEREFORE, ANY SUBSEQUENT TRANSFER OF THIS SECURITY OR ANY INTEREST THEREIN WILL BE UNLAWFUL UNLESS IT IS REGISTERED UNDER THE ACT OR UNLESS AN EXEMPTION FROM REGISTRATION IS AVAILABLE.**

(**Exhibit "B"**, Section 4.05.)

20. In May 2022, Mr. Pavlik transferred his 17 LTNC shares of Series A Preferred Stock and 1,850,000,000 LTNC shares of Common Stock to **Battleship Stance, Inc.** (see **Exhibit "C"**, Tucker deposition, p. 195, L: 17-20. All portions of Mr. Tucker's deposition are attached collectively as **Exhibit "C"**.)

21. Mr. Tucker admitted as long as he got the 12 LTNC Preferred Shares and 750M LTNC Common Shares, he did not care where they came from as long as he received the shares.

> **Q.** And were you supposed to receive 4 preferred shares from each of Toby, Mike and Joe?
>
> **A.** I don't think we defined it in here. I was just supposed to receive 12 preferred shares. My understanding was, is they were coming from Toby,

Mike and Joe. But if they would have cut a different deal amongst each other as to how many shares they were going to transfer, similar to the previous question of Takeover, as long as I got 12 preferred shares from them, it didn't matter the order.

.   .   .

**Q**. Now let's talk about 2 D, as in David. Jason shall receive 750 common shares. I assume it's common shares in Labor Smart. Is that correct?

**A**. 750 million common shares in Labor Smart.

**Q**. All right. And who was to deliver those shares?

**A**. My understanding was, is that they amongst each other had 6 billion common shares and that I was to receive 750 million common shares.

**Q**. And did you care where they came from, whether equal from Toby, Joe and Mike, or all from one or a different proportion? Did you care?

**A**. As I – I didn't even contemplate it, whether it came from the company or them as individuals. As long as – again, as long as I got my 12 preferred shares and my 750 million shares of Labor Smart and my 25% of Takeover, I didn't care how they did the math to get there.

(**Exhibit "C"**, pp. 62, L: 21-63: L: 4; 63, L: 17-64, L: 9.)

### Mr. Tucker Was Never a LTNC Shareholder

22. Mr. Tucker was never an LTNC shareholder. Battleship Stance, Inc. ("Battleship") became an LTNC shareholder as of May 10, 2022. (See ClearTrust LTNC Account Statements, attached as **Exhibit "D"; Exhibit "C"**, p. 163, L: 15-18.) Ms. Tucker admits she was never a shareholder of either Takeover or LNTC. (See Ms. Tucker deposition, p. 54, L: 1-13, attached as **Exhibit "E"**.) Melissa Tucker and her counsel withdrew the claim against LTNC for damages to OCW because Melissa Tucker had no contractual agreement with LTNC. (**Exhibit "E"** p. 53 L: 5-17.)

23. On November 30, 2023, **Battleship** entered into a Stock Transfer Agreement with Luis Sequeira, pursuant to which **Battleship** agreed to sell to Mr. Sequeira 17 LTNC

Series A Preferred Shares and 1,500,000,000 LTNC Common Shares for $150,000. (See November 30, 2023 Stock Transfer Agreement, attached as **Exhibit "F"**.)

24. In April 2023, **Battleship** wanted to sell its LTNC shares. On April 29 and 30, 2024, attorney David E. Wise sent letters to ClearTrust (LTNC's Transfer Agent) on behalf of his clients Oak Creek Wellness, Inc. ("OCW")[4] and Battleship, respectively. (See Mr. Wise's letters attached collectively as **Exhibit "G"**.)

25. In the letters, Mr. Wise gave his legal opinion with respect to OCW and Battleship's proposed sale of its "shares of common stock ("Shares") of Labor Smart, Inc., a non-reporting company ("Issuer"), pursuant to Section 4.(a)(1) of the Securities Act of 1933, as amended ("Act")." (**Exhibit "G"**.)

26. On May 17, 2024, Mr. Wise sent an email to ClearTrust stating: "[T]he Federal Court litigation between Labor Smart, Inc. and Jason Tucker does not involve Battleship Stance, Inc. or Oak Creek Wellness, Inc. as parties thereto." (See May 17, 2024 email from Mr. Wise to ClearTrust, attached as **Exhibit "H"**.)

27. On May 20, 2024, Mr. Wise sent another email to ClearTrust stating: "[N]either Battleship Stance, Inc. nor Oak Creek Wellness is a party to the litigation. You will also notice that *the stock currently owned by Battleship Stance and/or Oak Creek Wellness* is not a subject of the litigation." (See May 20, 2024 email from Mr. Wise to ClearTrust, attached as **Exhibit "I"**.)

28. The Tuckers have withdrawn their claim that OCW was damaged by any alleged breach of contract by any of the Defendants. (**Exhibit "C",** p 159, L: 6-12.)

**Takeover's (not HMP) Obligation to Pay Equal Compensation to Tucker**

29. In LTNC Non-Uniform Interrogatory No. 13, the Tuckers were asked to state with specificity the amount of the "financial obligations" and "compensation" ***Takeover allegedly owed Tucker***. Mr. Tucker responded: ***"[T]he amounts are $60,000 for the calendar year 2021 (see, TUCKER 001016) and $175,000 for the calendar year 2022***

---
[4] OCW owned 10 million LTNC Common Shares.

11

*(see, TUCKER 000994-001006, 001015)."* (See Jason Tucker's Response to LTNC NUI No. 13, attached as **Exhibit "J".**) The Tuckers have not disclosed any damages for alleged breach of fiduciary duties for the allegations at paragraph 99 (c) and (f). (**Exhibit "J".**)

30. In LTNC Non-Uniform Interrogatory No. 14, the Tuckers were asked to state with specificity the factual basis for the claims that LTNC assisted Holley, McBride and Pavlik to breach fiduciary duties owed to Tucker. Mr. Tucker responded: "[LTNC],… aided Holley, McBride and Pavlik (and Takeover) in the following ways:… C) to *fail paying known debt of Takeover when due, including the significant earned salary/compensation that was known to be due to Tucker (at least $60,000 + $175,000,…)*;" (**Exhibit "J".**)

31. In Zarro's Non-Uniform Interrogatory No. 2, the Tuckers were asked to state with specificity all facts to support the allegation that Takeover engaged in concerted actions to accomplish the purpose of hindering or delaying the payment or collection of debt. Mr. Tucker responded: LTNC, Holley, McBride, Pavlik, Zarro, Takeover and Next Gen "acted to hinder and delay collections of Takeover debt by assisting as follows:…c) *To fail paying known debt of Takeover when due, including the significant earned salary/compensation that was known to be due to Tucker (at least $60,000 + $175,000);*" (See Jason Tucker's Response to Zarro NUI No. 2, attached as **Exhibit "K".**)

32. For his claims against Holley, McBride and Pavlik for Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing, Mr. Tucker is seeking "at least an additional $750,000 in damages, and maybe as much as $1,000,000,…" (See Tuckers' Third Supplemental Rule 26(a) Disclosure Statement, p. 10, attached as **Exhibit "L".**)

### The November 2021 Agreement

33. In June 2021, Mr. Tucker claims he and HMP entered into an oral agreement concerning Takeover and LTNC, which he admits was not signed until November 2021 (the "November 2021 Agreement"). (See November 2021 Agreement, attached as **Exhibit "M"**; **Exhibit "C"**, pp. 40, L: 16-21; 43, L: 16- 24; 47, L: 15-19.)

34. Pursuant to the November 2021 Agreement, Mr. Tucker and HMP agreed that they "shall be entitled to an receive monthly payments, draws and/or salary equal to each other or their assigns." (**Exhibit "M",** Section 1.c.)

35. Mr. Tucker admits Takeover was to make the payments for the "monthly payments, draws and/or salary." (**Exhibit "C"**, pp. 57, L: 4-6, 14- 16; 58, L:3-5.)

36. In the event Mr. Tucker's monthly payments were more than the monthly payments to HMP, Mr. Tucker did not believe he had any personal liability to HMP to make the payments equal. (**Exhibit "C"**, p. 61 L: 4-12.)

37. The November 2021 Agreement states, in part: "The Parties shall receive and be assigned 25% of the shares in Takeover." (**Exhibit "M"**, Section 1.a.)

38. Mr. Tucker admits it was Takeover's obligation to deliver him his 25% ownership of Takeover. (**Exhibit "C"**, p. 142, L: 3-7, 17-18.)

39. The November 2021 agreement states Mr. Tucker "shall receive 750M common shares" of LTNC. (**Exhibit "M"**, Section 2.d.)

40. Mr. Tucker admits it was LTNC's obligation to deliver the 750M LTNC common shares. (Doc. 148, ¶'s 83, 84, 85; Doc. 179, ¶'s 83, 84, 85.)

41. At his deposition, Mr. Tucker stated the November 2021 Agreement was not clear where the 12 LTNC Preferred Shares and 750M LTNC Common Shares were to come from and he did not care, as long as he received the shares.

42. While serving as Takeover's President, Mr. Tucker announced that Takeover was cutting/eliminating its hydrogen water product. Mr. Tucker wrote to Manny Pacquiao: "Due to a lack of quality by our manufacturer and their ability to scale and other issues, we need to cut the water." (See Mr. Tucker's text message to Manny Pacquiao, attached as **Exhibit "N".**) Mr. Tucker also admitted at a September 21, 2022 Takeover Board of Directors' meeting that Takeover was "dropping water." (See Transcript from a portion of the September 21, 2022 Board meeting, attached as **Exhibit "O".**)

43. Mr. Tucker became a Takeover shareholder on May 16, 2022. (See ClearTrust Takeover Certified Shareholder List, attached as **Exhibit "P".**)

**The Alleged Fraudulent Conveyance**

44. Mr. Tucker claims Takeover fraudulently transferred to Next Gen its: (**i**) formula (recipe) for the Hydrogen Water, (**ii**) website and online accounts/online presence, (**iii**) copyright and trademark rights, (**iv**) sums of money to cover NextGen's legal expenses, and (**v**) $25,000 between July 7 and September 21, 2023. (See Jason Tucker's Response to Zarro's First Set of Non-Uniform Interrogatories No. 3, attached as **Exhibit "K"**.)

45. Mr. Tucker admits Takeover does not own any trademarks. (**Exhibit "C"**, p. 26.)

46. According to Mr. Tucker, the only copyright Takeover has is for the "can art" for its cans used to sell products. (**Exhibit "C"**, p. 26: L: 24-27, L: 1-4.)

47. Takeover initially advertised and sold its hydrogen water as "NXT LVL" hydrogen water. (See Mike Holley Declaration, ¶ 11, attached as **Exhibit "Q"**.)

48. On April 14, 2021, Takeover filed with the United States Patent and Trademark Office its Application for Registration of the Trademark "NXT LVL UP." After Takeover filed its Application, Next Level Fitness Water, Inc. ("Next Level") filed its Opposition, based on its ownership in the *mark* "NEXT LEVEL FITNESS WATER." (**Exhibit "Q"**, ¶ 12.)

49. On March 11, 2022, Next Level filed a Notice of Opposition with the United States Patent and Trademark Office. (**Exhibit "Q"**, ¶ 13.)

50. On May 4, 2023, Takeover and Next Level entered into a "Trademark Phase-Out Agreement." Pursuant to the Phase-Out Agreement, Takeover agreed to cease using "NXT LVL," except as specifically set forth in the Phase-Out Agreement. (See Phase-Out Agreement, attached as **Exhibit "R"**; **Exhibit "Q"**, ¶ 14.)

51. NGB has not used the mark "NXT LVL" in connection with any of its advertising or products. (**Exhibit "Q"**, ¶ 17.)

52. Takeover contracted with H2ForLife for the manufacturing of its hydrogen water products. Danny Day is the founder and principal owner of H2ForLife. (See Danny Day Declaration attached as **Exhibit "S"**, ¶ 1.)

53. Takeover's hydrogen water contained 5 ingredients: spring water, colloidal platinum, colloidal gold, colloidal zinc and colloidal copper. Takeover did not own any formula or recipe for its H Water. The formula was owned by H2ForLife. **(Exhibit "Q"**, ¶ 5.)

54. Takeover's hydrogen water was sold in cans. The hydrogen water ingredients were on the can and on the Takeover website. Takeover made no effort to keep the ingredients for its hydrogen water secret or confidential. **(Exhibit "Q"**, ¶ 6.)

55. Takeover did not sell its hydrogen water in different flavors. There was only one flavor sold, which was unflavored H Water. **(Exhibit "Q"**, ¶ 7.)

56. Takeover did not own the formula or process for making its hydrogen water. For example, Takeover did not know the amount of each ingredient in its hydrogen water, nor did it know the manufacturing method for making the hydrogen water, such as temperature, mixing, stirring, or the amount of hydrogen to be added to make the hydrogen water. These were things that were known only by H2ForLife. The particulars of both the formula and process for manufacturing the H Water were known only to H2ForLife. **(Exhibit "Q"**, ¶ 8; **Exhibit "S"**, ¶ 4, 5.)

57. Takeover never sold a nootropic beverage. **(Exhibit "Q"**, ¶ 9.)

58. NextGen Beverages ("NGB") did not use any of the photos, images or any other information on the Takeover website when NGB created its own website. **(**See Declaration of David Anderson, attached as **Exhibit "T",** ¶ 6.)

59. NGB has not used the mark "NXT LVL" in connection with any of its advertising or products. **(Exhibit "Q"**, ¶ 17.)

60. NGB sells a hydrogen water product that is different from the Takeover hydrogen water. NGB does not own any formula or recipe for its hydrogen water. The formula is owned by H2ForLife. **(Exhibit " S"**, ¶ 7.)

61. From June 2021 through September 2025, Takeover had two bank accounts, accounts ending 4362 and 8537, both at Bank of America. **(Exhibit "Q"**, ¶ 19.)

62. Between June 29, 2023 and August 7, 2024, NGB loaned Takeover $74,000. All of the NGB funds were wired to Takeover account ending 8537. (See Loan Agreements attached as **Exhibit "V"**, See Tom Zarro Declaration, attached as **Exhibit "U"**, Takeover Bank of America account ending 8537 June and September 2023 and February, March, April, May and December 2024 bank statements, attached collectively as **Exhibit "W"**.)

63. From July 1 through September 30, 2023, there were no transfers from Takeover to NGB from account ending *4362*. From July 1 through September 30, 2023, there were 3 transfers (total of $25,000) from Takeover to NGB, and in 2024, there were 2 transfers (total of $26,500) from Takeover to NGB from account ending *8537*. (**Exhibit "Q"** ¶ 21), and Takeover Bank of America account ending *8537* July- September 2023 bank statements, attached as **Exhibit "X"**.)

Respectfully submitted this 9th day of January, 2026.

**PAUL M. LEVINE, P.C.**

By: */s/ Paul M. Levine*
Paul M. Levine, Esq.
8502 E. Via de Ventura, Suite 230
Scottsdale, Arizona 85258
*Attorney for Plaintiff/Counterdefendant*
*Labor Smart, Inc. and Third-Party Defendants*

16

# CERTIFICATE OF MAILING

I hereby certify that the foregoing was served by and through the CM/ECF filing system of the United States District Court, District of Arizona, on January 9, 2026, to the following parties:

>Veronica L. Manolio, Esq.
**MANOLIO & FIRESTONE, PLC**
8674 E. San Alberto Drive
Scottsdale, Arizona 85258
VManolio@MF-Firm.com
*Attorney for Tucker Defendants/
Counterclaimants/Third-Party Claimants*

>Spencer D. Freeman, Esq.
**FREEMAN LAW FIRM, INC**
1107 1/2 Tacoma Ave S
Tacoma, Washington 98402
SFreeman@FreemanLawFirm.org
Reception@FreemanLawFirm.org
Sierra@FreemanLawFirm.org
*Attorney for Jason Tucker and
Melissa Tucker*

By: */s/ Kathleen Mohr*