EXHIBIT A

**KARISH & BJORGUM, PC**
A. Eric Bjorgum (SBN 198392)
119 E. Union St., Suite B
Pasadena, CA  91103
Phone: (213) 785-8070
Fax:    (213) 995-5010
eric.bjorgum@kb-ip.com

Attorneys for Plaintiff
TAKEOVER INDUSTRIES, INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| TAKEOVER INDUSTRIES, INC., a Nevada corporation, | Case No: |
|---|---|
| Plaintiff, | **COMPLAINT FOR:** |
| vs. | 1. **BREACH OF FIDUCIARY DUTY UNDER NEVADA LAW** |
| MICHAEL HOLLEY, an individual, DAVID EISENBERG, an individual, and DOES 1-10, inclusive | 2. **BREACH OF FIDUCIARY DUTY UNDER CALIFORNIA LAW** |
| | 3. **AIDING AND ABETTING BREACH OF FIDUCIARY DUTY** |
| Defendants, | 4. **BREACH OF CONTRACT** |
| | 5. **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** |
| | 6. **CONVERSION BY EMBEZZLEMENT** |
| | 7. **FRAUD** |
| | 8. **INTENTIONAL INTERFERENCE WITH CONTRACT** |
| | **JURY TRIAL REQUESTED** |

SMRH:490007883.1

Plaintiff Takeover Industries, Inc. ("Takeover" or "Plaintiff") brings this matter against Defendants Michael Holley and David Eisenberg and DOES 1-10, inclusive, for breach of fiduciary duty, breach of contract, embezzlement, fraud and related claims as follows:

## I. THE PARTIES

1. Plaintiff Takeover Industries, Inc. ("Takeover") is a Nevada corporation with offices in California and Nevada and its principal place of business in this District.

2. Defendant Michael Holley is an individual residing in Cave Creek, Arizona.

3. Defendant Eisenberg is an individual, on information and belief, residing in Carmel, Indiana.

4. Does 1-10 are unknown parties that are believed to live in Arizona. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as Does 1-10 and therefore sues those defendants by those fictitious names. Plaintiff will amend this complaint to include their true names and capacities when ascertained.

5. Plaintiff is informed and believes, and based thereon alleges that in doing the acts and things hereinafter alleged, each Defendant acted individually for himself or itself, and as the agent, employee, and/or representative of each of the other defendants and, in doing the things hereinafter alleged, each was at all times acting within the course and scope of said agency, representation or employment relationship with the advance knowledge, acquiescence, or subsequent ratification of each and every other Defendant.

## II. JURISDICTION AND VENUE

6. This action arises under the laws of the United States and the State of California and invokes the diversity jurisdiction provisions of this Court, pursuant to

28 U.S.C. section 1332. Plaintiff in incorporated in Nevada, and its primary place of business is in California. All Defendants live outside of California. The parties to this action are diverse and the amount in controversy exceeds $75,000, so the prerequisites of diversity jurisdiction have been met. Specifically, Plaintiff alleges that Defendants have wrongfully taken over $700,000 from Plaintiff.

7. Venue is proper in this District under 28 U.S.C. section 1391 because Plaintiff has offices in this District, and Defendants are engaged in activities that directly affect residents of this District, and Defendants are subject to personal jurisdiction in this District.

## III. GENERAL ALLEGATIONS

8. Defendant Michael Holley ("Defendant" or "Holley") is a sales professional specializing in the sports and nutraceutical fields.

9. Defendant Holley has been involved in several companies including Ignite International, Inc., that have developed or promoted sports beverages and related branded products. On information and belief, Holley has experience in management, accounting, and corporate issues.

10. On information and belief, Defendant Eisenberg has experience in management, accounting, and corporate issues.

11. In or about 2020, Holley working with former colleagues and associates put together a company and brand based upon performance water products and energy drinks. The products were to be marketed under the brand NXT LVL. Holley and his colleagues incorporated in Nevada under the name Takeover Industries, Inc. ("Takeover").

12. The owners of Takeover wished to operate the company as a publicly traded company. The company was acquired and became a wholly owned subsidiary of a small public company known as Labor Smart, Inc. ("Labor Smart"), trading on OTC Markets under the symbol LTNC. Until recently, Holley had been a Director,

the Treasurer, and Chief Operating Officer of Takeover and a Director of Takeover's parent Labor Smart. Holley was recently removed from his positions at Takeover and from the Board of Directors of Labor Smart where he is a substantial shareholder.

13. Upon starting Takeover, the management of Takeover quickly put together a brand that developed an industry buzz. The flagship products were NXT LVL Hydrogen-infused water and an energy shot developed by a well-known fitness and nutrition advocate Joseph Pavlik, who was also on the Board and an officer of Takeover.

14. Takeover began to work with Jason Tucker, a branding and business consultant with deep expertise in licensing, leveraging intellectual property, Internet sales, marketing and finance. Tucker saw the potential of Takeover and put his efforts into moving the company forward on all fronts.

15. Takeover has been remarkably successful. Takeover started in earnest in March, 2021. It quickly secured an endorsement deal with famed boxer Manny Pacquiao and his Manny Pacquiao Foundation. Takeover has since secured endorsement deals with Grammy award winning artist and professional gamer "T-Pain," and other notables including MMA Champions, NFL players, and other celebrities.

16. The Company has retained experts in beverage sales, marketing, and an established public relations firm to further promote the NXT LVL products.

17. Takeover's online store is active. The NXT LVL product line includes Hydrogen-infused water products, and 2oz Gamer Shots that have proven very popular and at times have been sold out. Takeover has secured retail commitments that are slated to put Takover products on the shelves of over 10,000 stores in 2022. It has entered into exclusive manufacturing deals to source its products and substantial endorsement deals to promote its products. NXT LVL's beverages are

among the highest rated beverage products for sale on Amazon and its online store continues to generate substantial sales with little advertising.

18. At the same time, Takeover was updating the books and accounting of its parent company, Labor Smart. Labor Smart is the subject of much speculation among OTC "day traders" who often buy and sell large volumes of penny stocks in short periods of time. Takeover managed these corporate and accounting issues while at the same time building a successful brand. In fact, at the 2021 NACS Trade Show in Chicago, Takeover's Hydrogen Infused Spring Water was awarded the CSP Best New Beverage Product by retailers.

19. At this point, Takeover had four key principals: Holley, Toby McBride, Pavlik and Tucker (the "Takeover Principals"). The Takeover Principals had an agreement that profits from Takeover would not be distributed to any of them unless they were distributed evenly and with unanimous consent.

20. Despite efforts to bring the Labor Smart books current, it became apparent that Takeover would need to spin off from Labor Smart under its own stock ticker. Tucker began to oversee that process. This process included Takeover retaining the services of a third-party CFO Accountant and an Attorney that specialized in this type of corporate business transaction.

21. In September and October, vendors were expressing their frustration to Tucker and other executives about late or nonpayment for outstanding invoices and commitments.

22. In mid-October, 2021, Holley became ill and was hospitalized.

23. In order to pay the increasingly upset vendors and to continue accounting and reconciliation of the books, Takeover Directors and Officers requested access to the Takeover bank account.

24. Holley and Eisenberg were the only parties known to have access to the bank accounts. Directors Tucker and McBride were denied access by Holley and

1 instructed by Holley to seek information from Eisenberg.

2    25.   Tucker requested Eisenberg to provide PDF copies of all bank records. Eisenberg complied. The PDF's were provided to the outside Accountant. Upon his review he contacted Tucker and shared his initial finding.

    26.   The accountant and Tucker were surprised to find Holley had been making significant distributions to himself without any authorization. Holley also delegated some financial duties to his daughter, Courtney Holley, who had also received payment from Takeover.

    27.   Tucker notified Takeover's General Counsel and its parent Company Labor Smart's CEO of the initial finding.

    28.   Tucker and the Accountant looked further into Takeover's accounts and determined that Holley authorized over $750,000 in distributions from Takeover without obtaining Board approval. There had also been $41,500 distributed to One Elite Sports, LLC, a company controlled by Holley.

    29.   When looking at the accounting records, Tucker soon noticed that deals he had negotiated and the associated income were not reflected in the accounting. On information and belief, entry of accounting had been done by Defendant Eisenberg. Tucker wrote to Eisenberg, who responded that he was essentially keeping a record of bank transactions of which he was informed, but he knew nothing of the accounts receivable or contractual or vendor obligations. On information and belief, Eisenberg was aware of improprieties in Takeover's books, including but not limited to: (i) failure to pay any payroll taxes for distributions authorized by Holley; (ii) paying third parties without any corresponding invoices; (iii) paying unequal distributions to the Takeover Principals; (iv) failing to pay necessary vendors and sponsorship partners; and (v) failing to report the misuse of investor funds.

    30.   Takeover was forced to hire an outside law firm to conduct an

independent investigation. That firm concluded that, on the information provided, Holley had committed at least the following legal wrongs: conversion or embezzlement; breach of fiduciary duty; failure to comply with state and federal securities laws; violation of the Takeover Principals' agreement and other local or federal rules.

31. In December, Takeover called a special meeting of the Board of Directors, and Holley was voted off the Board, and a Board directive was issued. With that directive, Tucker was able to obtain his own access to the Takeover bank accounts, and Holley was removed from the account. Tucker and the Accountant later looked through the credit card statement and discovered that Holley had charged tens of thousands of dollars in personal expenses to Takeover, and had been doing so up until as late as December 2021. While Holley was in hospital and unable to leave, Holley's company card was used, for example, to purchase food at a pizza location in Cave Creek, Arizona, a restaurant in Scottsdale, Arizona, and two instances at Costco.

32. On December 22, 2021, Takeover through its counsel sent a letter to Holley demanding that he repay a portion of funds which represented the amount of money he took form the company for himself, minus $140,000 in salary for his services. Takeover also demanded that Holley return all preferred and common shares of Labor Smart. Finally, Takeover demanded that Holley return all passwords and login information that he had in possession. Holley did not respond.

33. Takeover extended his deadline, and Holley did not respond again, though after the second deadline he finally sent an email asking until January 7, 2022 to respond. Takeover's counsel again requested that Holley at least return the login credentials. He did not respond.

## IV. CLAIMS FOR RELIEF

### First Claim for Relief - Breach of Fiduciary Duty Under Nevada Law

**(Against Holley)**

34. Takeover repeats and re-alleges each and every allegation set forth in the preceding paragraphs of this Complaint.

35. As a Director and Officer of Takeover, Holley owed Takeover a fiduciary duty to exercise his powers in good faith and with a view to the interests of the corporation.

36. Holley has breached that duty by the following acts, among others: (i) taking large discretionary withdrawals of money from Takeover without Board approval and during a time when those funds should have been put to use in operations; (ii) directing that money be sent to limited liability company which he controlled but that did no work for Takeover; (iii) refusing to provide other Directors and Officers with access to the bank accounts and accounting records of Takeover; (iv) encouraging other Officers and Directors to raise funds for Takeover when he knew those funds would be wrongfully taken by him; (v) exposing Takeover to liability for failure to properly account for payroll to Officers; and (vi) refusing to turn over passwords and key login information needed by Takeover operate.

37. These breaches of fiduciary duty were intentional and without justification.

38. As a result of these acts, Takeover was damaged in at least the amount of $800,000.

39. These breaches were conducted with oppression, fraud and malice, exposing Holley to punitive damages.

## Second Claim for Relief - Breach of Fiduciary Duty Under California Law

### (Against Holley)

40. Takeover repeats and re-alleges each and every allegation set forth in the preceding paragraphs of this Complaint.

41. As a Director and Officer of Takeover, Holley owed Takeover a duty to act with the utmost good faith in the best interests of Takeover. These duties included, among others, a duty to act with reasonable care in connection with his work with Takeover and a duty of undivided loyalty to Takeover.

42. Holley has breached the these duties by the following acts, among others: (i) taking large discretionary withdrawals of money from Takeover without Board approval and during a time when those funds should have been put to use in operations; (ii) directing that money be sent to limited liability company which he controlled but that did no work for Takeover; (iii) refusing to provide other Directors and Officers with access to the bank accounts and accounting records of Takeover; (iv) encouraging other Officers and Directors to raise funds for Takeover when he knew those funds would be wrongfully taken by him; (v) exposing Takeover to liability for failure to properly account for payroll to Officers; and (vi) refusing to turn over passwords and key login information needed by Takeover operate.

43. These breaches of fiduciary duty were intentional and without justification.

44. As a result of these acts, Takeover was damaged in at least the amount of $700,000. Defendants engaged in said acts willfully, oppressively and with malice within the meaning of California Civil Code section 3294 and are therefore liable for exemplary or punitive damages in an amount appropriate to punish

Defendants and make an example of them to the community. On information and belief, Defendants were acting as the agents of one another or under the control of one another, so each of them are jointly, vicariously or contributorily liable for the acts of the others.

**Third Claim for Relief – Aiding and Abetting Breach of Fiduciary Duty**

**(Against Eisenberg)**

45. Takeover repeats and re-alleges each and every allegation set forth in the preceding paragraphs of this Complaint.

46. As alleged above, Holley breached his fiduciary duties to Takeover. Defendant Eisenberg was the accountant working for Takeover during this time.

47. Defendant Eisenberg failed to ask obvious questions about Takeover's finances, including but not limited to: (i) whether distributions to Holley were authorized by the Board of Takeover; (ii) whether taxes should be withheld from distributions to Holley; (iii) correlating whether monies distributed to Holley were consistent with earnings or whether they were sourced from investment funds; and (iv) verifying that payments to Holley's company were not based upon invoices submitted.

48. Eisenberg had knowledge that Holey had a fiduciary duty to Takeover.

49. In failing to adequately maintain the books of Takeover, Eisenberg provided substantial assistance in Holley's breach of his duties, resulting in unjust enrichment Holley.

50. The extent of Eisenberg's assistance is not presently known, so damage from Eisenberg's conduct will be proven at trial.

**Fourth Claim for Relief – Breach of Contract**

**(Against Holley and Eisenberg)**

51. Takeover repeats and re-alleges each and every allegation set forth in the preceding paragraphs of this Complaint.

52. Holley and Takeover had entered into a contract whereby Holley would perform services as Chief Financial Officer, and he would be compensated for those services. Holley's compensation was to be approved by the Board of Takeover.

53. Eisenberg entered into a contract with Takeover whereby he would provide competent bookkeeping and accounting services in exchange for payment.

54. Takeover performed its contracts with both Holley and Eisenberg.

55. Holley breached his contract with Takeover by failing to pay vendors on time; failing to pay endorsers on time; and by taking more money for himself than was allowed under his agreement with Takeover.

56. Eisenberg breached his contract with Takeover by failing to adequately perform accounting services and putting Takeover at risk by following Holley's directions, which were clearly in violation of Holley's duties to Takeover.

57. Neither Holley nor Eisenberg had any excuse for non-performance.

58. Takeover was damaged as a result of the non-performance of Holley in an amount to be proven at trial, in excess of $300,000, which reflects the minimum amount taken from Takeover in excess of any possible reasonable compensation to Holley. Takeover was damaged as a result of the non-performance by Eisenberg to the extent that Eisenberg distributed money from Takeover improperly without authorization and exposed Takeover to liability from taxing authorities, vendors and endorsers.

59. Through his conduct, Holley has become unjustly enriched at the expense of Takeover. As an alternative to legal relief, Takeover seeks equitable relief for this count and its causes of action in these claims, in absence of an

adequate remedy at law.

### Fifth Claim for Relief -- Breach of Covenant of Good Faith and Fair Dealing
### (Against Holley)

60. Takeover repeats and re-alleges each and every allegation set forth in the preceding paragraphs of this Complaint.

61. As alleged above, Holley breached terms of the aforementioned agreements with Plaintiff. Plaintiff is also informed and believes, and on that basis alleges, that Holley breached the implied covenant of good faith and fair dealing inherent in those agreements by, among other things, taking funds from Takeover that were needed to operate the Company; misrepresenting that he was performing his job; and refusing to turn over important codes and login information after he was let go as an Officer and Director. Accordingly, Holley's actions interfered with Takeover's right to the benefits of its contracts.

62. As a result of Defendant's breaches of the covenant of good faith and fair dealing, Plaintiffs suffered damages as noted above, and other related damages in an amount to be proven at trial.

### Sixth Claim for Relief -- Conversion by Embezzlement
### (Against Holley)

63. Takeover repeats and re-alleges each and every allegation set forth in the preceding paragraphs of this Complaint, as though fully set forth.

64. Without the approval and knowledge of the shareholders, Board or other Officers of Takeover, Defendant Holley sent numerous wires from Takeover's bank accounts, in excess of $700,000.

65. Without the approval and knowledge of the shareholders, Board or other Officers of Takeover, Defendant Holley paid for personal expenses using

Takeover funds. On information and belief, Defendant Eisenberg also received funds from Takeover.

66. Defendants did these acts of embezzlement to intentionally deprive Plaintiff of the money that rightfully belonged to Takeover and to leave Takeover with financial difficulties.

67. As a result, Plaintiff was damaged in an amount to be determined at trial and has experienced financial difficulties as a result of the embezzlement.

68. Defendants engaged in said acts willfully, oppressively and with malice within the meaning of California Civil Code section 3294 and are therefore liable for exemplary or punitive damages in an amount appropriate to punish Defendants and make an example of them to the community. On information and belief, Defendants were acting as the agents of one another or under the control of one another, so each of them are jointly, vicariously or contributorily liable for the acts of the others.

## Seventh Claim for Relief – Fraud
### (Against Holley)

69. Takeover repeats and re-alleges each and every allegation set forth in the preceding paragraphs of this Complaint, as though fully set forth herein.

70. Holley represented to Takeover that he would properly execute and oversee its banking, financial and key operational affairs. Specifically, Holley promised that he would: (i) oversee Takeover's accounts payable, including hiring an accountant or bookkeeper to log invoices from Takeover's vendors and ensure they were paid in a timely manner; (ii) withdraw funds from Takeover's accounts only as needed to operate the business; (iii) distribute profits or dividends only as authorized by the Board of Directors; (iv) maintain complete transparency with regard to Takeover's financial affairs; and (v) transparently manage for Takeover's

benefit various key financial and operations accounts such as bank accounts, website-related accounts, as well as handle digital sales accounts such as Amazon.com and related payment accounts such as PayPal, Venmo, Zelle, etc. He further encouraged Takeover to seek investment funds to meet its obligations and represented that he would use those funds appropriately.

71. Takeover specifically relied upon Holley's representations that he would competently handle these crucial affairs of Takeover. When Holley made these promises, he knew that Takeover would rely upon his representations.

72. When Holley made these promises, he knew that he would not perform them. Specifically, on information and belief, Holley knew that he would not pay vendors in a timely manner but would instead withdraw money for himself without Board approval; he knew that he would withhold banking information and account numbers from Takeover; he knew that he would not be transparent with his banking transactions; and he knew that he would fail to provide the accounting staff with correct information regarding credits, debits, accounts receivable and accounts payable. Holly ordered dozens of bank wires to carry out his scheme.

73. Takeover was injured by its reliance upon Holley's misrepresentations. Takeover has suffered in myriad ways by not having access to the over $750,000 that Holley removed from the Company. Specifically, its vendors became very upset that they were not being paid, and Takeover has had to pay them on an accelerated schedule using capital that had been earmarked for other business operations. Takeover was late on payments to two of its most important celebrity endorsees. Takeover was late on payments to professional service providers, causing a slowdown in services. Takeover was required to hire an outside law firm to analyze Holley's actions, and also required to use its existing legal service providers to address the damage caused by Holley both internally and with outside entities. Takeover's management has had to spend innumerable hours investigating

Holley's fraud and repairing strained relationships.

74. Holley's fraud has resulted in at least $700,000 of damage to Takeover. Defendants engaged in said acts willfully, oppressively and with malice within the meaning of California Civil Code section 3294 and are therefore liable for exemplary or punitive damages in an amount appropriate to punish Defendants and make an example of them to the community. On information and belief, Defendants were acting as the agents of one another or under the control of one another, so each of them are jointly, vicariously or contributorily liable for the acts of the others. Plaintiff is informed and believes, and based thereon alleges that Defendants acted with oppression, fraud, and/or malice, and deliberately caused and intended to cause great economic harm to Plaintiff with full knowledge of the wrongfulness of his conduct. Therefore, Plaintiff should be awarded punitive and exemplary damages sufficient to punish Defendants for engaging in this conduct and to deter similar conduct on the part in the future.

### Eighth Claim for Relief -- Intentional Interference with Contract
### (Against Holley)

75. Takeover repeats and re-alleges each and every allegation set forth in the preceding paragraphs of this Complaint.

76. Plaintiff had valid and existing contracts with its investors and vendors.

77. Defendants intentionally interfered with the contracts by taking funds from Takeover that were earmarked business operations. Defendants knew that the funds were to be used for legitimate purposes, yet they took funds for their own advantage, without notice.

78. As a result of Defendants' intentional acts, the business relationship between Plaintiff and its investors and vendors was disrupted.

79. Defendants' intentional interference with the business relationship

between plaintiff and its investors and vendors has directly and proximately resulted in damage to plaintiff in an amount to be proven at trial.

80. Defendants engaged in said acts willfully, oppressively and with malice within the meaning of California Civil Code section 3294 and are therefore liable for exemplary or punitive damages in an amount appropriate to punish Defendants and make an example of them to the community. On information and belief, Defendants were acting as the agents of one another or under the control of one another, so each of them are jointly, vicariously or contributorily liable for the acts of the others.

## **PRAYER**

WHEREFORE, Plaintiff prays for judgment as follows:

    i.    For compensatory, restitutionary, consequential, and/or incidental damages in an amount exceeding $700,000;

    ii.    For exemplary and punitive damages as appropriate;

    iii.    For disgorgement of unjust enrichment;

    iv.    For a preliminary and permanent injunction against Defendant Holley and his agents for further interference with Takeover's business;

    v.    For attorney fees and costs incurred;

| | | |
|---|---|---|
| vi. | For interest on all amounts at the highest rate allowed by law; and | |
| vii. | For all further relief that the Court deems just and proper. | |

Dated:  January 5, 2021

                Respectfully Submitted,
                KARISH & BJORGUM PC

                By:   /s/ A. Eric Bjorgum
                A. Eric Bjorgum (CSB No. 198392)
                Attorneys for Plaintiff
                TAKEOVER INDUSTRIES, INC

**DEMAND FOR JURY TRIAL**

Plaintiff Takeover Industries, Inc. hereby demands a trial by jury on all issues so triable.

Dated:         January 5, 2021

                                          Respectfully Submitted,
                                          KARISH & BJORGUM PC


                                          By:   /s/ A. Eric Bjorgum
                                          A. Eric Bjorgum (CSB No. 198392)
                                          Attorneys for Plaintiff
                                          TAKEOVER INDUSTRIES, INC