EXHIBIT B

DocuSign Envelope ID: FB8846DD-6D86-445F-9B2C-8C2ECBBA4C15

# PREFERRED STOCK PURCHASE AGREEMENT

THIS PREFERRED STOCK PURCHASE AGREEMENT, (this "Agreement") made this 20th day of September 2021, by and between Joseph Pavlik (the "Seller") and Jason Tucker (the "Purchaser"), setting forth the terms and conditions upon which the Seller will sell 17 shares of Series A preferred stock and 1,850,000,000 common shares (the "Shares") of Labor Smart, Inc. (the "Company") personally owned by Seller to the Purchaser. The Seller and the Purchaser may be referred to herein singularly as a "Party" and collectively, as the "Parties".

In consideration of the mutual promises, covenants, and representations contained herein,

THE PARTIES HERETO AGREE AS FOLLOWS:

**WITNESSETH:**

WHEREAS, the Seller and the Purchaser have appointed J.M. Walker & Associates, Attorneys At Law, to act as an escrow agent ("Escrow Agent") for this transaction and to receive and hold all consideration received from the Purchaser for the purchase of the Shares and all stock certificates and stock powers from the Seller and all documents and corporate records of the Company, into the escrow account, (the " Escrow Account") unless other arrangements are agreed to by all parties.

WHEREAS, the Purchaser, Seller and Escrow Agent have entered into an Escrow Agreement dated 10/13/2021, 2021.

NOW THEREFORE, in consideration of the mutual promises, covenants and representations contained herein, the parties herewith agree as follows:

## ARTICLE I
## SALE OF SECURITIES

    **1.01 Sale.** Subject to the terms and conditions of this Agreement, the Seller agrees to sell the Shares and the Purchaser agrees to purchase the Shares for Five Thousand Dollars ($5,000).

    **1.02 Escrow Agent.** Pursuant to the Escrow Agreement, the Seller and Purchaser have appointed J. M. Walker & Associates, Attorney at Law, to act as the Escrow Agent ("Escrow Agent") as to the distribution of the Funds and Documents to be held in the Escrow Account.

As soon as reasonably practicable after receipt of the Funds by the Escrow Agent, Seller will forward by overnight delivery, or by email, for review by the Purchaser, any and all documents of the Company that Purchaser might request.

Purchaser will provide Seller with the information as requested by the Seller concerning the Purchaser, including information on its director(s) elect.

**1.03 Other Items.** The Closing will take place contemporaneous with such payment. It is agreed that the Shares and Documents shall remain in the Escrow Account until the Closing on the sale and purchase of the Shares shall take place. All Shares and Documents outlined in paragraphs 2.12, 2.13 and 3.02 below shall be delivered pursuant to the instructions of the Purchaser. The Escrowed Funds (as defined in the Escrow Agreement) shall be disbursed pursuant to the instructions of the Seller.

Upon the receipt of the Total Purchase Price by Escrow Agent, and the receipt of all items outlined below to be provided by the Seller, the Closing will take place immediately unless extended by the Parties hereto.

## ARTICLE II
## REPRESENTATIONS AND WARRANTIES

Joe Pavlik, in his capacity as an officer and director of the Company, represents and warrants to the Purchaser the following:

**2.01 Organization.** The Company is a Nevada corporation duly organized, validly existing, and in good standing under the laws of that state, has all necessary corporate powers to own properties and carry on a business, and is duly qualified to do business in the state of Nevada and elsewhere (if required). All actions taken by the incorporators, directors and/or shareholders of the Company have been valid and in accordance with the laws of the state of Nevada.

Immediately following the Closing, the Purchaser shall file all required filings with any state and federal regulators disclosing the acquisition of the Shares by the Purchaser, the change in control of the Company, all changes in the officers and directors, and all such additional disclosure as is required to keep the Company in good standing with any and all regulatory bodies having authority.

**2.02 Capital.** The authorized capital stock of the Company consists of 8,000,000,000 shares of common stock and 5,000,000 Series A Preferred Shares. All outstanding shares are fully paid and non-assessable, free of liens, encumbrances, options, restrictions and legal or equitable rights of others not a party to this Agreement. At the Closing, there will be no outstanding subscriptions, options, rights, warrants, convertible securities, or other agreements or commitments obligating the Company to issue or to transfer from treasury any additional shares of its capital stock. None of the outstanding shares of the Company are subject to any stock restriction agreements. All of such shareholders have valid title to such shares and acquired their shares in a lawful transaction and in accordance with Nevada corporate law and the applicable securities laws of the United States.

**2.03 Filings with Government Agencies.** The Company has not made any filings with the OTC Markets since 2016 and is currently a "no information" company under the symbol LTNC. The Company has not made the required filings with the State of Nevada that might be required and is not current in its filings and reporting to the State of Nevada. The state of Nevada administratively revoked the Company's corporate charter. Upon the purchase of the Shares by the Purchaser, the Purchaser will have the full responsibility for filing any and all documents required by any other government agency that may be required. The Seller will supply the Purchaser with all information that is currently available for the Company. The Purchaser understands that the Seller will have no responsibility whatsoever for any filings made by the Company in the future, either with the SEC, FINRA or with the state of Nevada.

**2.04 Liabilities.** It is understood and agreed that there is limited information on the financial condition of the Company. The Company shall not, as of Closing, have any debt, liability, or obligation of any nature, whether accrued, absolute, contingent, or otherwise that will not be paid at Closing. Seller are not aware of any pending, threatened or asserted claims, lawsuits or contingencies involving the Company or its shares. To the best of knowledge of the Seller, there is no dispute of any kind between the Company and any third party, and no such dispute will exist at the Closing of this transaction and at Closing, except as set forth herein, the Company will be free from any and all liabilities, liens, claims and/or commitments. At Closing, all assets of the Company and all liabilities of the Company will be paid.

**2.05 Tax Returns.** The Company has not filed all required tax returns.

**2.06 Ability to Carry Out Obligations.** The Seller have the right, power, and authority to enter into, and perform his obligations under this Agreement. The execution and delivery of this Agreement by the Seller and the Company and the performance by the Seller of their obligations hereunder will not cause, constitute, or conflict with or result in (a) any breach or violation or any of the provisions of or constitute a default under any license, indenture, mortgage, charter, instrument, articles of incorporation, bylaw, or other agreement or instrument to which the Company's officers, directors or Seller are a party, or by which they may be bound, nor will any consents or authorizations of any party other than those hereto be required, (b) an event that would cause the Company (and/or assigns) to be liable to any party, or (c) an event that would result in the creation or imposition of any lien, charge, or encumbrance on any asset of the Company or upon the shares of the Company to be acquired by the Purchaser.

**2.7 Contracts, Leases and Assets.** To the best of the knowledge of the Seller, the Company is not a party to any contract, agreement or lease (unless such contract, agreement or lease has been assigned to another party or the Company has been released from its obligations thereunder) other than the normal contract with the Transfer Agent. No person holds a power of attorney from the Company or the Seller. At the Closing, the Company will have no assets or liabilities or any obligations that would give rise to a liability in the future, other than the liabilities specifically disclosed in writing to the Purchaser.

DocuSign Envelope ID: FB8846DD-6D86-445F-9B2C-8C2ECBBA4C15

**2.8 Compliance with Laws.** To the best of knowledge of the Seller, the Company has complied in all material respects, with, and is not in violation of any, federal, state, or local statute, law, and/or regulation pertaining. To the best of the knowledge of the Seller, the Company has complied with all federal and state securities laws in connection with the offer, sale and distribution of its securities. At the time that the Company sold the Shares to the Seller, the Company was entitled to use the exemptions provided by the Securities Act of 1933 relative to the sale of its Shares. The Shares being sold herein are being sold in a transaction between the Seller and the Purchaser, and the Seller makes no representations as to whether the Shares are subject to trading restrictions under the Securities Act of 1933, as amended and rules thereunder.

**2.09 Litigation.** To the best of the knowledge of the Seller, the Company is not a party to any suit, action, arbitration, or legal administrative or other proceeding, or pending governmental investigation. To the best knowledge of the Seller, there is no basis for any such action or proceeding and no such action or proceeding is threatened against the Company. The Company is not a party to or in default with respect to any order, writ, injunction, or decree of any federal, state, local, or foreign court, department, agency, or instrumentality.

**2.10 Conduct of Business.** Prior to the Closing, the Company shall conduct its business in the normal course, and shall not (without the prior written approval of Purchaser) (i) sell, pledge, or assign any assets, (ii) amend its Certificate of Incorporation or Bylaws, (iii) declare dividends, redeem or sell stock or other securities (iv) incur any liabilities, except in the normal course of business, (v) acquire or dispose of any assets, enter into any contract, guarantee obligations of any third party, or (vi) enter into any other transaction.

**2.11 Corporate Documents.** Each of the following documents, which shall be true, complete and correct in all material respects, will be submitted at the Closing:

(i) Certificate of Incorporation and all amendments thereto;
(ii) Bylaws and all amendments thereto;
(iii) Minutes and Consents of Shareholders;
(iv) Minutes and Consents of the board of directors;
(v) List of officers and directors;
(vi) Certificate of Good Standing from the Secretary of State of Nevada.
(vii) Current Shareholder list from the Transfer Agent.

**2.12 Closing Documents.** All minutes, consents or other documents pertaining to the Company to be delivered at the Closing shall be valid and in accordance with the laws of Nevada.

**2.13 Title.** The Seller have good and marketable title to all of the Shares being sold to the Purchaser pursuant to this Agreement. The Shares will be, at the Closing, free and clear of all liens, security interests, pledges, charges, claims, encumbrances and

restrictions of any kind, except for restrictions on transfer imposed by federal and state securities laws. None of the Shares are or will be subject to any voting trust or agreement. No person holds or has the right to receive any proxy or similar instrument with respect to such Shares. Except as provided in this Agreement, the Seller are not a party to any agreement which offers or grants to any person the right to purchase or acquire any of the Shares. There is no applicable local, state or federal law, rule, regulation, or decree which would, as a result of the purchase of the Shares by Purchaser (and/or assigns) impair, restrict or delay voting rights with respect to the Shares.

**2.14 Transfer of Shares.** The Seller will have the responsibility for sending all certificates representing the Shares, along with the proper Stock Powers with Signature Guarantees acceptable to the Transfer Agent, to the Escrow Agent for delivery to the Purchaser at Closing.

The Purchaser will have the responsibility of sending the certificates, along with the Stock Powers to the Transfer Agent for the Company to have the certificates transferred into the name of the Purchaser (and/or assigns) and the Purchaser shall be responsible for all costs involved in such transfers and in mailing new certificates to the Purchaser.

**2.15 Representations.** All representations shall be true as of the Closing and all such representations shall survive the Closing.

## ARTICLE III
## CLOSING

**3.01 Closing.** The Closing (the "Closing") of this transaction will occur when all of the documents and consideration described in Paragraphs 2.11 above and in 3.02 below have been delivered or other arrangements have been made and agreed to by the Parties. If the Closing does not occur on or before October 31, 2021, then either party may terminate this Agreement upon written notice.

This Agreement can be terminated in the event of any material breach by either party.

**3.02 Documents and Payments to be Delivered at Closing.** As part of the Closing of the Shares purchase, those documents listed in 2.11 of this Agreement, as well as the following documents, in form reasonably acceptable to counsel to the Parties, shall have been delivered to Escrow Agent at least 48 hours prior to the Closing unless other arrangements are made by all parties:

(a) By the Seller:
    (i) stock certificate or certificates, along with stock powers with signature guarantee acceptable to the Transfer Agent, representing the Shares, containing a blank endorsement;
    (ii) the resignation of all officers of the Company;
    (iii) the resignations of all directors of the Company and the appointment of new director(s) as designated by the Purchaser.

DocuSign Envelope ID: FB8846DD-6D86-445F-9B2C-8C2ECBBA4C15

    (iv) true and correct copies of all of the business and corporate records of the Company, including but not limited to correspondence files, bank statements, checkbooks, savings account books, minutes of shareholder and directors' meetings or consents, financial statements, shareholder listings, stock transfer records, agreements and contracts that exist, and
    (v) such other documents of the Company as may be reasonably required by Purchaser, if available.

 (b) By Purchaser:
    (i) wire transfer to the Escrow Account of the Total Purchase Price.

## ARTICLE IV
## INVESTMENTS

The Purchaser represents, warrants and covenants to the Seller the following:

**4.01 Transfer Restrictions.** Purchaser (and or assigns) agree that the Shares being acquired pursuant to this Agreement may be sold, pledged, assigned, hypothecated or otherwise transferred, with or without consideration ("Transfer") only pursuant to an effective registration statement under the Securities Act of 1933, as amended (the "Act"), or pursuant to an exemption from registration under the Act.

**4.02 Investment Intent.** The Purchaser is acquiring the Shares for their own account for investment, and not with a view toward distribution thereof.

**4.03 No Advertisement.** The Purchaser acknowledges that the Shares have been offered to her in direct communication between her and the Seller (or through the Purchaser), and not through any advertisement of any kind.

**4.04 Knowledge and Experience.** The Purchaser acknowledges that she has been encouraged to seek her own legal and financial counsel to assist her in evaluating this purchase. The Purchaser acknowledges that Seller have given them and all of their advisers, access to all information relating to the Company's business that they or any one of them have requested. The Purchaser acknowledges that they have sufficient business and financial experience, and knowledge concerning the affairs and conditions of the Company so that they can make a reasoned decision as to the purchase of the Shares and are capable of evaluating the merits and risks of this purchase.

**4.05 Restrictions on Transferability.** The Purchaser is aware of the restrictions of transferability of the Shares and further understands that all of the certificates will bear a legend similar to the following:

 **(a) THESE SECURITIES HAVE NOT BEEN REGISTERED WITH THE SECURITIES AND EXCHANGE COMMISSION UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), IN RELIANCE UPON THE EXEMPTION FROM REGISTRATION PROVIDED IN SECTIONS 4(a)(1) AND**

DocuSign Envelope ID: FB8846DD-6D86-445F-9B2C-8C2ECBBA4C15

4(a)(2) AND REGULATION D UNDER THE ACT. AS SUCH, THE PURCHASE OF THIS SECURITY WAS MADE WITH THE INTENT OF INVESTMENT AND NOT WITH A VIEW FOR DISTRIBUTION. THEREFORE, ANY SUBSEQUENT TRANSFER OF THIS SECURITY OR ANY INTEREST THEREIN WILL BE UNLAWFUL UNLESS IT IS REGISTERED UNDER THE ACT OR UNLESS AN EXEMPTION FROM REGISTRATION IS AVAILABLE.

(b) The Purchaser understands that the Shares may only be disposed of pursuant to either (i) an effective registration statement under the Act, or (ii) an exemption from the registration requirements of the Act.

(c) The Company and/or the Seller have neither filed such a registration statement with the SEC or any state authorities nor agreed to do so, nor contemplates doing so in the future for the Shares being purchased, and in the absence of such a registration statement or exemption, the Purchaser may have to hold the Shares indefinitely and may be unable to liquidate them in case of an emergency.

**4.06 Accredited Investor.** The Purchaser is (is not) an "Accredited Investor" as defined in Regulation D of the Securities Exchange Act of 1934.

**4.07 Future Business of the Company.** The Purchaser represents that after the Closing of this transaction, the Purchaser will either carry on the existing business of the Company or vend in a legitimate business. After Closing, the Purchaser covenants not to manipulate or participate in a manipulation of the share price of the Company in a "pump and dump" scheme.

**4.08 Anti-Money Laundering, Anti-Corruption and Anti-Terrorism Laws.** The Purchaser confirms that the funds representing the Total Purchase Price will not represent proceeds of crime for the purpose of any applicable anti-money laundering or anti-terrorist legislation, regulation or guideline and the Purchaser is in compliance with, and has not previously violated, the United States of America Patriot Act of 2001, as amended through the date of this Agreement, to the extent applicable to the Purchaser and all other applicable anti-money laundering, anti-corruption and anti-terrorism laws and regulations.

**4.09 Representations.** All representations shall be true as of the Closing and all such representations shall survive the Closing.

ARTICLE V
REMEDIES

**5.01 Arbitration.** Any controversy of claim arising out of, or relating to, this Agreement, or the making, performance, or interpretation thereof, shall be settled by arbitration in Nevada in accordance with the Rules of the U.S. Arbitration Association then existing, and judgment on the arbitration award may be entered in any court having jurisdiction over the subject matter of the controversy.

DocuSign Envelope ID: FB8846DD-6D86-445F-9B2C-8C2ECBBA4C15

**5.02 Termination.** In addition to any other remedies, the Purchaser may terminate this Agreement, if at the Closing, the Seller have failed to comply with all material terms of this Agreement, has failed to supply any documents required by this Agreement unless they do not exist, or has failed to disclose any material facts which could have a substantial effect on any part of this transaction.

**5.03 Indemnification.** From and after the Closing, the Parties, jointly and severally, agree to indemnify the other against all actual losses, damages and expenses caused by (i) any material breach of this Agreement by them or any material misrepresentation contained herein, or (ii) any misstatement of a material fact or omission to state a material fact required to be stated herein or necessary to make the statements herein not misleading.

**5.04 Indemnification Non-Exclusive.** The foregoing indemnification provision is in addition to, and not derogation of any statutory, equitable or common law remedy any Party may have for breach of representation, warranty, covenant or agreement.

## ARTICLE VI
## MISCELLANEOUS

**6.01 Captions and Headings.** The article and paragraph headings throughout this Agreement are for convenience and reference only, and shall in no way be deemed to define, limit, or add to the meaning of any provision of this Agreement.

**6.02 No Oral Change.** This Agreement and any provision hereof, may not be waived, changed, modified, or discharged, orally, but only by an agreement in writing signed by the Party against whom enforcement of any waiver, change, modification, or discharge is sought.

**6.03 Non Waiver.** Except as otherwise expressly provided herein, no waiver of any covenant, condition, or provision of this Agreement shall be deemed to have been made unless expressly in writing and signed by the Party against whom such waiver is charged; and (i) the failure of any Party to insist in any one or more cases upon the performance of any of the provisions, covenants, or conditions of this Agreement or to exercise any option herein contained shall not be construed as a waiver or relinquishment for the future of any such provisions, covenants, or conditions, (ii) the acceptance of performance of anything required by this Agreement to be performed with knowledge of the breach or failure of a covenant, condition, or provision hereof shall not be deemed a waiver of such breach or failure, and (iii) no waiver by any Party of one breach by another Party shall be construed as a waiver with respect to any other or subsequent breach.

**6.04 Time of Essence.** Time is of the essence of this Agreement and of each and every provision hereof.

**6.05 Entire Agreement.** This Agreement, including any and all attachments hereto, if any, contain the entire Agreement and understanding between the Parties hereto, and supersede all prior agreements and understandings.

**6.06 Partial Invalidity.** In the event that any condition, covenant, or other provision of this Agreement is held to be invalid or void by any court of competent jurisdiction, it shall be deemed severable from the remainder of this Agreement and shall in no way affect any other condition, covenant or other provision of the Agreement. If such condition, covenant, or other provision is held to be invalid due to its scope or breadth, it is agreed that it shall be deemed to remain valid to the extent permitted by law.

**6.07 Significant Changes.** The Seller understand that significant changes may be made in the capitalization and/or stock ownership of the Company, which changes could involve a reverse stock split and/or the issuance of additional shares, thus possibly having a dramatic negative effect on the percentage of ownership and/or number of shares owned by present shareholders of the Company.

**6.08 Counterparts.** This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Facsimile signatures will be acceptable to all Parties.

**6.09 Notices.** All notices, requests, demands, and other communications under this Agreement shall be in writing and shall be deemed to have been duly given on the date of service if served personally on the Party to whom notice is to be given, or on the third day after mailing if mailed to the Party to whom notice is to be given, by first class mail, prepaid registered or certified mail, or on the second day if faxed, and properly addressed or faxed as follows:

If to the Seller:

Joe Pavlik
Address here


If to the Purchaser:

Jason Tucker
c/o Eric Bjorgum
119 E. Union St., Suite B
Pasadena, CA 91103

**6.10 Binding Effect.** This Agreement shall inure to and be binding upon the heirs, executors, personal representatives, successors and assigns of each of the Parties to this Agreement.

**6.11 Effect of Closing.** All representations, warranties, covenants, and agreements of the Parties contained in this Agreement, or in any instrument, certificate, opinion, or other writing provided for in it, shall be true and correct as of the Closing and shall survive the Closing of this Agreement.

**6.12 Mutual Cooperation.** The Parties hereto shall cooperate with each other to achieve the purpose of this Agreement and shall execute such other and further documents and take such other and further actions as may be necessary or convenient to affect the transaction described herein.

**6.13 Governing Law.** This Agreement and the rights of the Parties hereunder shall be governed by and construed in accordance with the laws of the State of Nevada (regardless of its conflict of laws principles), including all matters of construction, validity, performance and enforcement and without giving effect to the principles of conflict of laws.

**6.14 Exclusive Jurisdiction and Venue.** The Parties agree that the courts of the State of Nevada shall have sole and exclusive jurisdiction and venue for the resolution of all disputes arising under the terms of this Agreement and the transactions contemplated herein.

**6.15 Attorneys' Fees.** In the event any Party hereto shall commence legal proceedings against the other to enforce the terms hereof, or to declare rights hereunder, as the result of a breach of any covenant or condition of this Agreement, the prevailing Party in any such breach of a covenant or condition of this Agreement, the prevailing Party in any such proceeding shall be entitled to recover from the losing Party its costs of suit, including reasonable attorneys' fees, as may be fixed by the court.

In witness whereof, this Agreement has been duly executed by the Parties hereto as of the date first written above.

**Seller:**

*Joseph Pavlik*
BA42A8E49F43470...
Joseph Pavlik


**Purchaser:**

*Jason Tucker*
B65AD32120DE434...
Jason Tucker