EXHIBIT F

DocuSign Envelope ID: CDAC97E3-F0E7-4024-B1C3-C7725CC89366

# STOCK TRANSFER AGREEMENT

This Stock Transfer Agreement (the "<u>Agreement</u>") is made and entered into as of November 30, 2023 by and between Battleship Stance, Inc., a Washington state corporation (the "<u>Transferor</u>") and the undersigned transferee (the "<u>Transferee</u>") with respect to the transfer of certain shares of capital stock of LaborSmart, Inc., OTC:LTNC (the "<u>Company</u>").

## AGREEMENT

The parties hereby agree as follows:

1.      **<u>Transfer</u>.** Subject to the terms and conditions of this Agreement, the Transferor hereby agrees to transfer and sell an aggregate of (a) 17 shares of Series A Preferred Stock of the Company, and (b) 1,500,000,000 shares of Common Stock of the Company ((a) and (b) collectively the "<u>Transferred Shares</u>") to the Transferee and the Transferee agrees to purchase the Transferred Shares from the Transferor, as of the Closing Date (as defined below), at an aggregate purchase price of $150,000.00.

2.      **<u>Closing; Delivery</u>.** The transfer and sale of the Transferred Shares pursuant to this Agreement shall commence upon the execution and delivery of this Agreement by the parties (the "<u>Closing Date</u>") and shall be conducted as follows. Upon the Closing Date, immediately upon execution hereof by the parties, Transferee shall pay the aggregate purchase price for the Transferred Shares of $150,000.00 by wire transfer to a bank account designated by the Transferor. Subject to the payment of the purchase price funds having cleared and become irrevocable, no later than 72 hours after receipt of payment the Transferor shall execute the documents required to cause the Company's transfer agent to promptly transfer the Transferred Shares into the name of Transferee.

3.      **<u>Representations and Warranties of the Transferee</u>.**  In connection with the transfer and sale of the Transferred Shares to the Transferee, the Transferee represents and warrants to the Transferor and the Company that:

(a)      Transferee is purchasing the Transferred Shares for investment for Transferee's own account only and not with a view to, or for resale in connection with, any "distribution" of the Transferred Shares within the meaning of the Securities Act of 1933, as amended (the "<u>Securities Act</u>").

(b)      Transferee understands that the Transferred Shares have not been registered under the Securities Act by reason of a specific exemption therefrom, which exemption depends upon, among other things, the bona fide nature of Transferee's investment intent as expressed herein. Transferee acknowledges that the Company is under no obligation to register or qualify the Transferred Shares for resale.

(c)      Transferee understands that the Transferred Shares are "restricted securities" under applicable U.S. federal and state securities laws and that, pursuant to these laws, Transferee must hold the Transferred Shares indefinitely unless they are registered with the Securities and Exchange Commission and qualified by state authorities, or an exemption from such registration and qualification requirements is available. Transferee acknowledges that the Company has no obligation to register or qualify the Transferred Shares for resale. Transferee further acknowledges that if an exemption from registration or qualification is available, it may be conditioned on various requirements including, but not limited to, the time and manner of sale, the holding period for the Transferred Shares, and requirements relating to the Company which are outside of Transferee's control, and which the Company is under no obligation and may not be able to satisfy.

(d)      Transferee will not sell, transfer, pledge or otherwise dispose of any Transferred Shares received by Transferee unless and until (i) the Transferred Shares are subsequently registered under the Securities Act and any applicable state securities laws, or (ii) (A) an exemption from such registration

TUCKER002338

is available thereunder, and (B) Transferee has notified the Company of the proposed transfer and sale and, if requested by the Company, has furnished the Company with an opinion of counsel in a form reasonably satisfactory to the Company that such transfer and sale will not require registration of such Transferred Shares under the Securities Act. In addition, Transferee will not sell, transfer, pledge or otherwise dispose of any Transferred Shares received by Transferee in any manner not permitted under the Company's certificate of incorporation or bylaws. Transferee understands that the Company is not obligated, and does not intend, to register any such Transferred Shares either under the Securities Act or any state securities laws. Transferee authorizes the Company to issue stop transfer instructions to its Transferred Shares transfer agent, or, if at any time the Company may act as its own transfer agent, to make a stop transfer notation in its appropriate records, in order to ensure Transferee's compliance with this provision.

(e)     Transferee is an "accredited investor," as such term is defined in Rule 501(a) of Regulation D promulgated under the Securities Act.

(f)     Transferee is a sophisticated individual or entity familiar with transactions similar to those contemplated by this Agreement. Transferee is fully aware of: (a) the highly speculative nature of the Transferred Shares; (b) the financial hazards involved; (c) the lack of liquidity of the Transferred Shares; and (d) the tax consequences of acquiring the Transferred Shares. Transferee hereby acknowledges and agrees that (i) any future purchase, sale or other valuation of shares of the Company's capital stock could be at a premium or a discount to the per share purchase price hereunder and (ii) the current value of the Company may not support a sale of any of the Transferred Shares at such per share purchase price as of the Closing Date or any future date (and may only support such a sale at a price per share that is substantially lower than the per share purchase price hereunder). Transferee further acknowledges and agrees that, by agreeing to purchase the Transferred Shares from Transferor, Transferee is accepting all risks associated with acquisition and ownership of such Transferred Shares as of the Closing Date, including, without limitation, a potential material depreciation or diminution in the value of the Transferred Shares.

4.     **Representations and Warranties of the Transferor.**  In connection with the transfer and sale of the Transferred Shares to the Transferee, the Transferor represents and warrants to the Transferee and the Company that:

(a)     The Transferor is the sole beneficial owner of the Transferred Shares and the Transferred Shares are free and clear of any liens or encumbrances (other than restrictions on transfer under applicable state and federal laws).  The Transferor further represents that the Transferor has good and marketable title to the Transferred Shares and the right and authority to transfer and sell the Transferred Shares to the Transferee pursuant to this Agreement and without any third-party consent. The Transferor has full legal right and capacity to enter into and perform its obligations under this Agreement and to transfer and sell the Transferred Shares under this Agreement.

(b)     The execution, delivery, and performance of this Agreement, and the consummation of the transactions contemplated hereby will not result in a violation of, or default under, any instrument, judgment, order, writ, decree, or contract known to the Transferor, or an event that results in the creation of any lien, charge or encumbrance upon the Transferred Shares.  The Transferor has received as of the Closing Date all consents or waivers necessary to transfer and sell the Transferred Shares.

(c)     Transferor is a sophisticated individual or entity familiar with transactions similar to those contemplated by this Agreement. Transferor hereby acknowledges that it shall have no rights with respect to the Transferred Shares, as a stockholder of the Company or otherwise, with respect to any future sale, acquisition, merger, liquidation, dissolution or other corporate event regarding the Company or its assets (any of the foregoing, a "Corporate Event"). Transferor further expressly acknowledges that any such Corporate Event may result in the payment by the Company or a third party of assets, funds or other proceeds to the Company's stockholders in a manner such that the value attributed to the Company's capital stock in such Corporate Event (either in an aggregate amount or on a per share basis) may be greater than

the purchase price. Transferor has evaluated the merits and risks of selling the Transferred Shares to be sold by Transferor under this Agreement and is willing to forego through such sale the potential for future economic gain that might be realized from the continued ownership of the Transferred Shares. Transferor has considered, without limitation, the opportunity to achieve current liquidity, the risk of holding the Transferred Shares for an uncertain amount of time, and the possibility that the Company's stock will achieve liquidity at prices substantially higher than the price to be paid by Transferee in connection with their purchase of the Transferred Shares.

5. **Legends.** The Transferee authorizes the Company and its agents to place on each certificate o r b o o k - e n t r y for Transferred Shares which Transferee may receive pursuant to this Agreement any legends required under the Company's certificate of incorporation and bylaws and federal or state securities laws.

Transferee agrees that, in order to ensure compliance with the restrictions imposed by this Agreement, the Company may issue appropriate "stop-transfer" instructions to its transfer agent, if any, and if at any time the Company transfers its own securities, it may make appropriate notations to the same effect in its own records.

6. **Non-Reliance**. Transferor and Transferee acknowledge and agree that neither the Company, nor any of its stockholders, officers, directors, employees, or agents (other than Transferor and the Transferee) have (a) acted as an agent, finder or broker for Transferor or the Transferee or their respective agents with respect to the offer, purchase and/or sale of the Transferred Shares, (b) made any representations or warranties of any kind, express or implied, to Transferor or any of the Transferee or their respective agents in connection with the offer, purchase and/or sale of the Transferred Shares or (c) have at any time had any duty to Transferor or the Transferee or their respective agents to disclose any information relating to the Company, its business, or financial condition or relating to any other matters in connection with the offer, purchase and/or sale of the Transferred Shares. The Transferee acknowledges that the Transferor, its directors or agents have not made any representations as to the condition of the Company.

7. **Miscellaneous.**

(a) **Governing Law; Exclusive Jurisdiction; Venue.** This Agreement and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of Nevada, without giving effect to its principles of conflicts of law. Any action brought by either party that arises out of or relates to this Agreement will be filed only in the state or federal courts located in Phoenix, Maricopa County, Arizona. Each party irrevocably submits to the exclusive jurisdiction of those courts.

(b) **Entire Agreement; Amendment; Third Party Beneficiary.** Except as expressly set forth herein, this Agreement sets forth the entire agreement and understanding of the parties relating to the subject matter herein and merges all prior discussions between them. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, shall be effective unless in writing signed by the Transferee and the Transferor. The Company is an intended third-party beneficiary of this Agreement and shall be entitled to enforce the provisions hereof as if it were a party hereto.

(c) **Notices.** Any notice required or permitted by this Agreement shall be in writing and shall be deemed sufficient when delivered personally or sent by fax (as evidenced by sender's confirmation receipt) or forty-eight (48) hours after being deposited in the U.S. mail, as certified or registered mail, with postage prepaid, and addressed to the party to be notified at such party's address as set forth below or as subsequently modified by written notice.

(d) **Counterparts.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument.

DocuSign Envelope ID: CDAC97E3-F0E7-4024-B1C3-C7725CC89366

Counterparts may be delivered via facsimile, electronic mail (including pdf) or other transmission method and any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes.

*[signature page follows]*

254870690 v8

TUCKER002341

The parties have executed this Stock Transfer Agreement as of the date first set forth above.

**TRANSFEROR: BATTLESHIP STANCE, INC.**

*Jason Tucker*
8E02638EE1FA493...

By: BATTLESHIP STANCE, INC.

Name: Jason Tucker

Title: President

Mailing Address: 3104 E Camelback Road, 2917, Phoenix, AZ 85016


**TRANSFEREE: LUIS AHLBORN SEQUEIRA**

*Luis Sequeira*
9372F660B0ED477...

By: LUIS AHLBORN SEQUEIRA

Name: LUIS AHLBORN SEQUEIRA

Title: Individual

Mailing Address: Feldhof 17, ZUG 6300, Switzerland