EXHIBIT R

1

## Trademark Phase-Out Agreement

This TRADEMARK PHASE-OUT AGREEMENT is entered as of May 4, 2023 (this "Agreement"), by and between Takeover Industries, Inc. ("Takeover"), and Next Level Fitness Water Inc. ("Next Level"). Takeover and Next Level may be referred to herein individually as a "Party" and collectively as the "Parties".

RECITALS

WHEREAS, Takeover has filed applications with the United States Patent and Trademark Office ("PTO") for certain trademarks including, but not limited to, marks using "NXT LVL" in connection with water beverages and energy shots, at US Serial Numbers 90645043, 90676167, 90795246, 97211930, and 90809854 (collectively, the "TO Marks");

WHEREAS, Next Level owns registered U.S. trademarks for "Next Level Fitness Water®" in connection with bottled water, at US Serial Numbers 90695884 and 90695838 (collectively, the "NL Marks") and has filed Opposition proceedings with the PTO (the "Oppositions") contesting the TO Marks;

WHEREAS, Takeover has responded/defended in the Oppositions;

WHEREAS, the Parties desire to resolve their disputes and resolve the Oppositions without need for further litigation or PTO proceedings, in accordance with the terms, and subject to the conditions, set forth herein;

NOW, THEREFORE, in consideration of the mutual agreements, provisions and covenants contained in this Agreement, the Parties, intending to be legally bound, hereby agree as follows:

ARTICLE I

**OWNERSHIP AND USE OF NL MARKS**

SECTION 1.01. Ownership. Takeover acknowledges the validity, and Next Level's exclusive ownership of, and right to use, the NL Marks.

SECTION 1.02. Cancellation. Takeover shall, promptly upon execution of this Agreement, take all necessary actions to request and obtain cancellation of the applications for the TO Marks with the PTO.

SECTION 1.03. Withdrawal of Oppositions. Next Level shall, promptly upon execution of this Agreement, take all necessary actions to withdraw, close, and cancel the Oppositions with the PTO, with no admissions or determination on the merits. The Parties shall file all necessary documents to ensure that the Oppositions are closed, withdrawn and cancelled. Each Party shall bear its own attorneys' fees and costs in connection with the Oppositions and this Agreement, including all fees and costs heretofore incurred and to be incurred with the implementation of this Agreement.

SECTION 1.04. Restrictions on Use; No Registration. Takeover agrees not to, except as permitted in this Agreement, use or register in any jurisdiction any trademarks confusingly similar to, or consisting in whole or in part of, any of the NL Marks. Takeover shall be allowed to file for registration and use, any trademarks that do not contain "Next Level," "NXT LVL," any part of the NL Marks, or any variation thereof, and are not confusingly similar to the NL Marks.

ARTICLE II

**TERM AND TERMINATION; MUTUAL RELEASE**

SECTION 2.01. Notwithstanding the foregoing, the Parties agree that TO may continue to use the TO Marks ONLY as described below:

Transition Term. The transition term of this Agreement shall commence on the date of execution and continue for a period of six (6) months thereafter (the "Transition Term"). During the Transition Term, only the following uses of the TO Marks by Takeover is permitted.

(a) Use of the TO Marks on any internal and external product packaging and labels that have already been created at the time of execution of this Agreement (including images of such product packaging and labels in other materials).

(c) Use of the TO Marks in any stationery, administrative, employment, communications (internal and external) and similar materials.

2

(d) Use of the TO Marks in any website (intranet or extranet) content, domain names, social media content.

(e) After the end of the Transition Terms, Takeover shall be permitted to maintain such domain names with TO Marks <u>solely</u> to redirect to the new corresponding domain name.

(f) Use of the TO Marks in interior and exterior facilities signage, manufacturing and supply chain machinery, and vehicles.

(g) Use of the TO Marks in currently existing bottle or product molds and as embossed or debossed on tablets.

SECTION 2.02. Effect of Termination. Notwithstanding the foregoing, Takeover shall have the right at all times after the Transition Term to use the TO Marks (a) to describe in all aspects and in any and all media the history of the Takeover business solely for historical, archival or factual purposes, in a manner that is not misleading and, does not suggest endorsement, sponsorship or approval by Next Level; or (b) as required by applicable law.

SECTION 2.03. Mutual Release. Each Party, on behalf of itself, its predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates, and assigns, and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them, hereby releases and discharges the other Party, together with any and all predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates and assigns and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them, from all known and unknown charges, complaints, claims, grievances, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, penalties, fees, wages, medical costs, pain and suffering, mental anguish, emotional distress, expenses (including attorneys' fees and costs actually incurred), and punitive damages, of any nature whatsoever, known or unknown, that the Party has, or may have had, whether or not apparent or yet to be discovered, or which may hereafter develop, for any acts or

TO BN 1700

omissions related to or arising from the TO Marks, the NL Marks, the Oppositions, or any other actions which may have arisen for any reason between the Parties, officers, and investors of the Parties prior to the execution of this Agreement.

## ARTICLE III

## WARRANTIES AND COMPLIANCE

SECTION 3.01. Compliance with Laws and Regulations. Each Party shall be responsible for its own compliance with any and all laws applicable to its performance under this Agreement.

SECTION 3.02. No Obligation to Prosecute or Maintain Registrations. Except as expressly set forth in this Agreement, no Party shall have any obligation to seek, perfect or maintain any protection for any of its Trademarks. Without limiting the generality of the foregoing, except as expressly set forth in this Agreement, no Party shall have any obligation to file or prosecute any application for registration or to maintain any registration of Trademarks.

## ARTICLE IV

## ASSIGNMENT

SECTION 4.01. Assignment or Transfer. This Agreement shall not be assignable, in whole or in part, directly or indirectly, by any Party hereto without the prior written consent of the other Party, and any attempt to assign any rights or obligations arising under this Agreement without such consent shall be void. Notwithstanding the foregoing, either Party may assign this Agreement, in whole or in part, without the prior written consent of the other Party to any of its affiliates.

## ARTICLE V

## MISCELLANEOUS

SECTION 5.01. Counterparts; Entire Agreement; Corporate Power. (a) This Agreement may be executed in one or more counterparts, all of which counterparts shall be considered one and the same agreement, and shall become effective when one or more counterparts have been signed by each Party and delivered to the other Party. This Agreement may be executed by

TO BN 1701

facsimile or PDF signature and a facsimile or PDF signature shall constitute an original for all purposes.

(b) This Agreement is the entire agreement between the Parties with respect to the subject matter hereof and supersede all previous agreements, negotiations, discussions, writings, understandings, commitments and conversations with respect to such subject matter, and there are no agreements or understandings between the Parties with respect to the subject matter hereof other than those set forth or referred to herein or therein.

(c) each such Person has the requisite corporate or other power and authority and has taken all corporate or other action necessary in order to execute, deliver and perform this Agreement and to consummate the transactions contemplated hereby; and

(d) this Agreement has been duly executed and delivered by it and constitutes, or will constitute, a valid and binding agreement of it enforceable in accordance with the terms thereof.

SECTION 5.02. Further Assurances. In addition to the actions specifically provided for elsewhere in this Agreement, each of the Parties shall use reasonable best efforts, to take, or cause to be taken, all actions, and to do, or cause to be done, all things reasonably necessary, proper or advisable under applicable laws and agreements to consummate and make effective the transactions contemplated by this Agreement.

SECTION 5.03. Governing Law; Dispute Resolution; Jurisdiction. (a) This Agreement shall be governed by, and construed in accordance with, the Laws of the State of Nevada, regardless of the Laws that might otherwise govern under applicable principles of conflicts of laws thereof.

(b) Unless otherwise set forth in this Agreement, in the event of any dispute arising under this Agreement between the Parties (a "Dispute"), either Party may refer such Dispute to the respective senior officers of such Parties by delivering written notice of such Dispute to the other Party (a "Negotiation Notice"). Upon delivery of a Negotiation Notice, each Party shall attempt in good faith to resolve such Dispute by negotiation among their respective senior officers who hold, at a minimum, the title of Vice President and who have authority to settle such Dispute.

TO BN 1702

(c) If the Parties are unable to resolve any Dispute within 30 calendar days of the delivery of a Negotiation Notice, then either Party shall have the right to initiate non-binding mediation by delivering written notice to the other Party (a "Mediation Notice"). Upon delivery of a Mediation Notice, the applicable Dispute shall be promptly submitted for non-binding mediation conducted in accordance with the Commercial Mediation Rules of the American Arbitration Association (the "Mediation Rules"), and the Parties shall participate in such mediation in good faith for a period of 30 calendar days or such longer period as the Parties may mutually agree in writing (the "Mediation Period"). In connection with such mediation, the Parties shall cooperate with each other and the American Arbitration Association in selecting a neutral mediator with relevant industry experience and in scheduling the mediation proceedings; provided that, if the Parties are unable to agree on a neutral mediator within 10 calendar days of the delivery of a Mediation Notice, the Parties shall cause the American Arbitration Association to select and appoint a neutral mediator on the Parties' behalf in accordance with the Mediation Rules. The Parties agree to bear equally the costs of any mediation, including any fees or expenses of the applicable mediator; provided that each Party shall bear its own costs in connection with participating in such mediation.

(d) If the Parties are unable to resolve any Dispute via negotiation or mediation in accordance with Section 5.03(b) and Section 5.03(c), then, following the Mediation Period, either Party may commence litigation in a court of competent jurisdiction pursuant to Section 5.03(e). For the avoidance of doubt, except as set forth in Section 5.03(f), neither Party may commence litigation with respect to a Dispute until and unless the Parties first fail to resolve such Dispute via negotiation and mediation in accordance with Section 5.03(b) and Section 5.03(c).

(e) Each Party irrevocably consents to the exclusive jurisdiction, forum and venue of the state or federal courts in the State of Nevada over any and all claims, disputes, controversies or disagreements between the Parties or any of their respective subsidiaries, sffiliates, successors and assigns under or related to this Agreement or any document executed pursuant to this Agreement or any of the transactions contemplated hereby or thereby.

6

SECTION 5.04. Third-Party Beneficiaries. Except as otherwise expressly set forth herein, (a) the provisions of this Agreement are solely for the benefit of the Parties hereto and are not intended to confer upon any Person except the Parties hereto any rights or remedies hereunder and (b) there are no third-party beneficiaries of this Agreement and this Agreement shall not provide any third person with any remedy, claim, liability, reimbursement, cause of action or other right in excess of those existing without reference to this Agreement.

SECTION 5.05. Notices. All notices or other communications under this Agreement shall be in writing and shall be deemed to be duly given (a) when delivered in person, (b) when transmitted (except if not a Business Day, then the next Business Day) via email to the email address set out below (to the extent that no "bounce back" or similar message indicating non-delivery is received with respect thereto), (c) on the date received, if sent by a nationally recognized delivery or courier service or (d) upon the earlier of confirmed receipt or the fifth Business Day following the date of mailing if sent by registered or certified mail, return receipt requested, postage prepaid, addressed as follows:

If to Next Level, to:

Next Level Fitness Water Inc.

Attn: Stephen Barrese
Stephen R. Barrese, Esq.
Dilworth & Barrese, LLP.
1000 Woodbury Road, Suite 405
Woodbury, NY 11797
Direct Dial -516-224-1624
Fax-516-228-8516
sbarrese@dilworthbarrese.com

If to Takeover, to:

Takeover Industries, Inc.
Attn: Jennifer Reiter
Reiter Law, PLC
4500 N. 32nd St. Suite 201H

Phoenix, AZ 85018

jenreiter@reiterlawaz.com

cc: Tom Zarro tom@takeoverind.com

7

TO BN 1704

Either Party may, by notice to the other Party, change the address to which such notices are to be given.

SECTION 5.06. Severability. If any provision of this Agreement or the application thereof to any Person or circumstance is determined by a court of competent jurisdiction to be invalid, void or unenforceable, the remaining provisions hereof, or the application of such provision to Persons or circumstances or in jurisdictions other than those as to which it has been held invalid or unenforceable, shall remain in full force and effect and shall in no way be affected, impaired or invalidated thereby, so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to either Party. Upon any such determination, any such provision, to the extent determined to be invalid, void or unenforceable, shall be deemed replaced by a provision that such court determines is valid and enforceable and that comes closest to expressing the intention of the invalid, void or unenforceable provision.

SECTION 5.07. Waivers of Default. No failure or delay of any in exercising any right or remedy under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any such right or power, or any abandonment or discontinuance of steps to enforce such right or power, or any course of conduct, preclude any other or further exercise thereof or the exercise of any other right or power. Waiver by any Party of any default by the other Party of any provision of this Agreement shall not be deemed a waiver by the waiving Party of any subsequent or other default.

SECTION 5.08. Amendments; Waivers. No provisions of this Agreement shall be deemed amended, supplemented or modified by any Party, unless such amendment, supplement or modification is in writing and signed by the authorized representative of each Party, and no waiver of any provisions of this Agreement shall be effective unless in writing and signed by the authorized representative of the Party sought to be bound by such waiver.

SECTION 5.09. Waiver of Jury Trial. EACH OF THE PARTIES ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY THAT MAY ARISE UNDER THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES, AND THEREFORE EACH OF THE PARTIES HEREBY IRREVOCABLY AND

TO BN 1705

UNCONDITIONALLY WAIVES ANY RIGHT SUCH PARTY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT. EACH OF THE PARTIES CERTIFIES AND ACKNOWLEDGES THAT (A) NO REPRESENTATIVE, AGENT OR ATTORNEY OF THE OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE OTHER PARTY WOULD NOT, IN THE EVENT OF ANY LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER, (B) EACH OF THE PARTIES UNDERSTANDS AND HAS CONSIDERED THE IMPLICATIONS OF THIS WAIVER, (C) EACH OF THE PARTIES MAKES THIS WAIVER VOLUNTARILY AND (D) EACH OF THE PARTIES HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 5.09.

IN WITNESS WHEREOF, the Parties have caused this Trademark Phase-Out Agreement to be executed by their duly authorized representatives.

Takeover Industries, Inc.

By: /s/ Michael Holley

Name: Michael Holley

Title: Director

Next Level Fitness Water Inc.

By: _____

Name: _____

Title: _____

TO BN 1706

UNCONDITIONALLY WAIVES ANY RIGHT SUCH PARTY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT. EACH OF THE PARTIES CERTIFIES AND ACKNOWLEDGES THAT (A) NO REPRESENTATIVE, AGENT OR ATTORNEY OF THE OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE OTHER PARTY WOULD NOT, IN THE EVENT OF ANY LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER, (B) EACH OF THE PARTIES UNDERSTANDS AND HAS CONSIDERED THE IMPLICATIONS OF THIS WAIVER, (C) EACH OF THE PARTIES MAKES THIS WAIVER VOLUNTARILY AND (D) EACH OF THE PARTIES HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 5.09.

IN WITNESS WHEREOF, the Parties have caused this Trademark Phase-Out Agreement to be executed by their duly authorized representatives.

Takeover Industries, Inc.

By: _____

Name: _____

Title: _____

Next Level Fitness Water Inc.

By: *[signature]*

Name: John MURW

Title: President

TO BN 1707