IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF ARIZONA

Labor Smart, Inc.,              )
                                )
        Plaintiff,              )
                                )
vs.                             ) Case No.
                                ) 2:22-cv-00357-PHX-DJH
Jason and Melissa Tucker,       )
                                )
        Defendant.              )
                                )
                                )
And related Counterclaims       )
and Third-Party Claims.         )
                                )


VIDEO-RECORDED DEPOSITION OF MICHAEL HOLLEY
(and Videoconference via Zoom)




Scottsdale, Arizona
November 3, 2025
9:15 a.m.






REPORTED BY:                CARRIE REPORTING, LLC
Kristy A. Ceton, RPR, CRR   Certified Reporters
AZ CR No. 50200             12725 W. Indian School Rd.
                            Suite F-100
                            Avondale, AZ 85392
CERTIFIED COPY              (480) 429-7573

Deposition of: Michael Holley                                November 3, 2025

2

```
 1        VIDEO-RECORDED DEPOSITION OF MICHAEL HOLLEY

 2   commenced at 9:15 a.m., on November 3, 2025, at

 3   Manolio & Firestone, 8674 East San Alberto Drive,

 4   Scottsdale, Arizona, and Videoconference via Zoom,

 5   before Kristy A. Ceton, RPR, CRR, Arizona Certified

 6   Court Reporter No. 50200.

 7

 8                        * * *

 9

10   APPEARANCES:

11       For the Plaintiff:

12           PAUL M. LEVINE, P.C.
             By:  Paul M. Levine, Esq.
13           8502 East Via de Ventura
             Suite 230
14           Scottsdale, Arizona 85258
             plevine@pmlevinepc.com
15
         For the Defendants:
16
             MANOLIO & FIRESTONE, PLC
17           By:  Veronica L. Manolio, Esq.
             8674 East San Alberto Drive
18           Scottsdale, Arizona 85258
             vmanolio@mf-firm.com
19
         - and -
20
             FREEMAN LAW FIRM, INC.
21           By:  Spencer D. Freeman, Esq.
             1107 1/2 Tacoma Avenue S.
22           Tacoma, Washington 98402
             sfreeman@freemanlawfirm.org
23           (via Zoom)

24

25
```

Case 2:22-cv-00357-DJH    Document 238-1    Filed 01/12/26    Page 3 of 11

```
 1    APPEARANCES, CONT'D:

 2        Also Present:

 3            Craig Onuschak, the videographer

 4            Jason Tucker

 5            Melissa Tucker (via Zoom)

 6            Tom Zarro (via Zoom)

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

44

1          Q.    And we talked about One Elite Beverage in

2    your prior testimony, correct?

3                MR. LEVINE:  Objection.  Form.

4                I don't know what you mean by "prior

5    testimony."

6          Q.    BY MS. MANOLIO:  At the hearing in this

7    case.  Remember, we had a hearing in this case --

8          A.    I believe so, yeah.

9          Q.    -- and we talked all about the money that

10   Takeover paid to One Elite Beverage?

11         A.    Yes.

12         Q.    In fact, One Elite Beverage is an LLC

13   that you own separate and apart from Takeover; is

14   that right?

15         A.    Used to own.

16         Q.    Okay.  You owned it in 2021?

17         A.    Correct.

18         Q.    And we also talked about the fact that

19   One Elite Beverage was paid $51,500 out of Takeover

20   funds.  Do you remember that discussion?

21         A.    I do.

22         Q.    As you sit here today, do you dispute

23   that amount?

24         A.    I'm not exactly sure on the amount.

25         Q.    Okay.  Well, we'll go through the

47

```
 1                "Myself and Mr. McBride."
 2                It should have been One Elite Beverage;
 3   is that right?   Or was it One Elite Sports?
 4         A.    I don't remember exactly.
 5         Q.    So if we refer to it today as One
 6   Elite --
 7         A.    That's fine, yeah.
 8         Q.    We're talking about one company?
 9         A.    Yeah.
10         Q.    Okay.   So you and Mr. McBride owned One
11   Elite?
12         A.    Correct.
13         Q.    The next question I asked you on line 7,
14   "And One Elite was also receiving income or payments
15   out of Takeover Industries; is that correct?"
16                Your answer:   "Yes.
17                "And what were the payments being paid
18   for?"
19                You told me that those payments were
20   because you used One Elite for start-up costs of
21   Takeover; is that right?
22         A.    That is correct.
23         Q.    What start-up costs specifically did One
24   Elite pay for?
25         A.    All the Nevada corporation start-up fees,
```

Deposition of: Michael Holley                    November 3, 2025

49

```
 1          Q.   I'm not even going to get into whether
 2   you have access because I don't believe that's
 3   actually a true statement.  You had 100 percent
 4   access to One Elite Beverages at all times, didn't
 5   you, sir?
 6          A.   I no longer.  That's what I said.
 7          Q.   At any point, did you ever provide any
 8   proof to Takeover, the company you were running, to
 9   show, hey, I advanced these costs, I'm going pay
10   myself back, or anything like that?
11          A.   Well, Toby McBride and myself owned One
12   Elite and we also ran Takeover.
13          Q.   And so because you both owned each, you
14   didn't feel like you needed to respect any
15   formalities of giving receipts or having loan
16   documents; is that fair?
17          A.   Not exactly.
18          Q.   Well, when I asked you in the hearing if
19   you respected corporate formalities for Takeover,
20   your answer was no.  Do you remember that?
21               MR. LEVINE:  Objection.  Form.
22               THE WITNESS:  No, I don't remember that.
23          Q.   BY MS. MANOLIO:  All right.  Let's take a
24   look at it.
25               MS. MANOLIO:  I'm at, Paul, page 122,
```

Deposition of: Michael Holley                                    November 3, 2025

53

1         Q.    And do you have them?  Are you going to

2    be able to produce them?

3         A.    I would, yes.

4         Q.    And I will tell you why.  Because in

5    court, I said --

6              MS. MANOLIO:  And I'm at page 128 now,

7    Paul.  And I'm going to start at -- I'll start up at

8    line 2.

9         Q.    BY MS. MANOLIO:  You reimbursed, as far

10   as you said in your declaration, that Takeover

11   reimbursed One Elite over $50,000 out of Takeover

12   Industries.  I'm simply trying to find out what that

13   payment or reimbursement was for.

14              Your answer:  "We were also paying back a

15   loan out of that.

16              "What loan?" I asked you.

17              "It was prior to the company formation to

18   help get the company started."

19              And I said:  "So you're saying that One

20   Elite Sports loaned money to Takeover to get started?

21              "Answer:  Yes.

22              "Where is that on the books of Takeover

23   industries?

24              "Answer:  It's not."

25              So you never booked a loan on -- on

Deposition of: Michael Holley                         November 3, 2025

                                                                    54

1    Takeover's books showing that it had a debt to repay

2    to One Elite, did you?

3            A.    I guess not, no.

4            Q.    I don't want you to guess.  You never did

5    that, did you?

6                  MR. LEVINE:  If you don't remember, tell

7    her that.

8                  THE WITNESS:  I don't recall.

9            Q.    BY MS. MANOLIO:  Well, we have presumably

10   received all the documents we have from Takeover.

11   Was there ever a time you remember seeing or

12   personally doing anything on the books to indicate

13   that Takeover owed One Elite any money?

14           A.    I don't remember.

15           Q.    I asked you --

16                 MS. MANOLIO:  Line 16, Paul.

17                 MR. LEVINE:  Same page?

18                 MS. MANOLIO:  Same page.  128.

19                 MR. LEVINE:  Okay.

20           Q.    BY MS. MANOLIO:  "So you're paying back

21   your company.  You're paying back a company that you

22   and Mr. McBride wholly owned through a company that

23   you don't owe a loan on and that's not on the books;

24   is that right?"

25                 And your answer was, "Sounds about

November 3, 2025

55

1    right."

2          A.    I don't recall that.

3          Q.    Okay.  I don't want you to recall it.

4    But I want you to read it and tell me if I read that

5    testimony fairly.  It's highlighted in orange for

6    you.

7          A.    Okay.  I see it here, yeah.

8          Q.    That was your testimony under oath in

9    court before a federal judge; is that fair?

10          A.    I believe so.

11          Q.    And I don't want you to believe.  It's a

12    yes-or-no question.

13                Was that your testimony under oath in

14    federal court in this matter?

15          A.    As far as I can remember, yes.

16          Q.    And today you're telling me there are

17    some loan documents, you just have never produced

18    them; is that right?

19          A.    I believe so, yeah.

20          Q.    All right.  So, as you sit here today,

21    there's zero evidence that we have that One Elite was

22    owed a single penny.  Would you disagree with that

23    statement?

24                MR. LEVINE:  Objection.  Form.

25                THE WITNESS:  Can you repeat?  I'm sorry.

Deposition of: Michael Holley                              November 3, 2025

56

1          Q.    BY MS. MANOLIO:   Sure.

2                 As you sit here today, there is zero

3    evidence that has been produced that One Elite was

4    owed any money from Takeover?

5                 MR. LEVINE:   Objection.   Form.

6          Q.    BY MS. MANOLIO:   Would you agree with

7    that?

8          A.    I would.

9          Q.    Okay.  I just want to clear up one thing

10   we talked about a little earlier.  Now I'm looking at

11   page 134 of the transcript.

12                Remember when I asked you earlier what

13   Labor Smart was buying in the stock purchase of

14   Takeover.  Let me refresh your memory.

15                MR. LEVINE:  Line number?

16                MS. MANOLIO:  Line 19.

17         Q.    BY MS. MANOLIO:  I asked you

18   specifically, "What assets did Takeover own when it

19   sold its stock off to Labor Smart?  What were you

20   selling to Labor Smart?"

21                Your answer, "Actually, nothing."

22                My question, "How much did Labor Smart

23   pay Takeover Industries to acquire the 50,000 shares

24   of stock?"

25                "I don't know.  About 500,000."

Carrie Reporting, LLC - Certified Reporters
480.429.7573

484

```
 1   STATE OF ARIZONA        )
                             ) ss.
 2   COUNTY OF MARICOPA      )

 3

 4              BE IT KNOWN that the foregoing
     proceedings were taken by me, KRISTY A. CETON, a
 5   Certified Reporter, in and for the County of
     Maricopa, State of Arizona; that the witness before
 6   testifying was duly sworn to testify to the whole
     truth; that the questions propounded to the witness
 7   and the answers of the witness thereto were taken
     down by me in shorthand and thereafter reduced to
 8   typewriting under my direction; that the witness
     requested reading and signing said deposition; that
 9   the foregoing pages are a true and correct transcript
     of all proceedings had, all done to the best of my
10   skill and ability.
                I FURTHER CERTIFY that I am in no way
11   related to any of the parties hereto, nor am I in any
     way interested in the outcome hereof.
12              I FURTHER CERTIFY that I have complied
     with the ethical obligations set forth in ACJA
13   7-206(J)(1)(g)(1) and (2).

14
     Kristy A. Ceton                         50200_____
15   Certified Reporter                      CR Number

16
     _____          11.17.2025
17   Certified Reporter Signature           Date

18
                I CERTIFY that this Registered Reporting
19   Firm has complied with the ethical obligations set
     forth in ACJA 7-206(J)(1)(g)(1) and (2).

20

21   Carrie Reporting, LLC                   R1064
     Registered Reporting Firm               RRF No.

22
                                             11.17.2025
23
     Registered Reporting Firm               Date
24   Signature

25
```

Carrie Reporting, LLC - Certified Reporters
480.429.7573