LAW OFFICES
**MANOLIO & FIRESTONE, PLC**
8674 E. San Alberto Drive
Scottsdale, Arizona 85258
(480) 222-9100
vmanolio@mf-firm.com
Veronica L. Manolio, SBN 020230
*Attorneys for Tucker Defendants, Counterclaimants,*
*And Third-Party Claimants*

**IN THE UNITED STATES DISTRICT COURT**

**IN AND FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Labor Smart, Inc.<br><br>Plaintiff,<br><br>v.<br><br>Jason and Melissa Tucker,<br><br>Defendants.<br>---<br>And related Counterclaims and Third-Party Claims. | Case No. 2:22-cv-00357-PHX-DJH<br><br>**JASON TUCKER'S RESPONSE TO ZARRO'S FIRST SET OF NON-UNIFORM INTERROGATORIES**<br><br>(Before the Hon. D. Humetewa) |

Pursuant to Rule 33, Fed. R. Civ. P., Jason Tucker hereby responds to Third-Party Defendant Tom Zarro's First Set of Non-Uniform Interrogatories.

**NON-UNIFORM INTERROGATORIES**

**INTERROGATORY NO. 1:** Please state with specificity all facts to support the allegation that "Within the past 120 days (approximately), both LTNC and all of the Third-Party Defendants have worked collaboratively to attempt to hold a 'restriction' on the LTNC stock controlled by the Tuckers to ensure that they could not trade/sell the shares", as set forth in paragraph 77 of the Amended Claims.

/ / /

**RESPONSE:** In or around March 2024, the Tuckers attempted to have restrictions removed from LTNC stock that was issued to both Battleship Stance, Inc. (Jason Tucker's entity) and Oak Creek Wellness (Melissa Tucker's entity) such that their stock would be unrestricted and available for sale. The transfer agent, ClearTrust, notified Labor Smart (who, at the time, was being run by Holley and Zarro with input from others, including Luis Sequeria). ClearTrust indicated that Labor Smart was given notice of the Tuckers' request and a time limit to respond (until May 13, 2024). The Third-Party Defendants then began playing games, first indicating that Battleship Stance and Oak Creek Wellness shares had to remain restricted due to "open litigation" with Labor Smart. Labor Smart next pretended that it did not have ***its own records*** showing proof of payment for the shares that had been issued and proof of authority for issuance of shares to either entity. Labor Smart then hired outside counsel (Patrick Morris) to draft an "Opinion Letter" to block the legend restriction removal(s). Meanwhile, Tom Zarro made overtures to the Tuckers that if they "settled" this lawsuit, the shares would be unrestricted. The gamesmanship by Labor Smart and Third-Party Defendants caused a significant delay as well as significant attorneys' fees being incurred.

**INTERROGATORY NO. 2:** Please state with specificity all facts to support the allegation that "Takeover, in concert with LTNC, NextGen, Zarro, Holley, McBride, and Pavlik, engaged in concerted actions to accomplish the purpose of hindering or delaying the payment or collection of debt", as set forth in paragraph 119 of the Amended Claims.

**RESPONSE:** These parties acted to "align" themselves and to remove Tucker from his position (President) of Takeover, so they could continue hiding the serious financial malfeasance that each Holley, McBride, and Pavlik had committed. With the help of Zarro, Labor Smart (including others besides these gentlemen), they acted to

hinder and delay collections of Takeover debt by assisting as follows:

A) To pay Holley $5,000 from Takeover funds for his "settlement" in this matter;

B) To use Takeover to settle personal claims against Holley, McBride, and Pavlik in the Florida Lawsuit;

C) To fail paying known debt of Takeover when due, including the significant earned salary/compensation that was known to be due to Tucker (at least $60,000 + $175,000);

D) To dispute debt Takeover knowingly owed to James Deppoleto, Jr.;

E) To incur significant attorneys' fees and costs for Takeover disputing debt that was known;

F) To create a new entity (NextGen Beverages) while significant debt was incurred for Takeover and owed by Takeover;

G) To allow NextGen to purchase Takeover product under value;

H) To have Takeover transfer its intellectual property (including product formulas, website(s)/online accounts, and copyright(s)) to NextGen;

I) To have Takeover make cash transfers to NextGen without consideration;

J) To consult Bankruptcy counsel for Takeover (and even paid a retainer fee); and

K) To await the large (and anticipated Judgment) against Takeover to be entered in the Nevada Lawsuit before filing bankruptcy.

The actions taken in failing to pay Takeover debt, shifting operations to NextGen, and leaving Takeover as a "shell" were all done such that Takeover was left insolvent.

**INTERROGATORY NO. 3:** Please identify with specificity the "assets, rights and intellectual property" Takeover allegedly transferred to Next Gen as set forth in paragraphs 124 and 129 of the Amended Claims.

**RESPONSE:** At a minimum, Takeover transferred assets as follows:

1. Takeover's formula (recipe) for the Hydrogen Water;
2. Takeover's website and online accounts/online presence;
3. Copyright and trademark rights owned by Takeover;
4. Sums of money to cover NextGen's legal expenses;
5. Additional sums of money, without consideration, including at least:
   a. $10,000 on July 7, 2023;
   b. $5,000 on July 14, 2023; and
   c. $10,000 on September 21, 2023.

The Tuckers have reason to believe that Takeover also transferred its shares of Labor Smart stock to NextGen.

There is currently outstanding discovery owed by NextGen, and this Response will be supplemented when NextGen responds, when it provides a fulsome disclosure, and when the Tuckers receive documents from Third-Party Subpoenas *Duces Tecum*.

**INTERROGATORY NO. 4:** Please state with specificity the "financial damages" claimed by the Tuckers, as set forth in paragraph 121 of the Amended Claims.

**RESPONSE:** Paragraph 121 of the Amended Claims deals with losses arising from conspiracy to commit fraudulent transfer. Under a conspiracy theory, damages are limited to the value of property which cannot be recovered or the amount of debt owed. Thus, damages here may presently be stated as:

1. Jason Tucker lost his ability to recapture $235,000 in earned compensation that was due to him;
2. Melissa Tucker lost her ability to pursue breach of her Company's contract, with a base loss of $412,500;
3. Alternatively, Jason Tucker is entitled to 25% ownership in NextGen Beverages, as he was a 25% owner in Takeover when it was stripped of its assets, shut down, and NextGen was created in its stead. Because neither Takeover nor NextGen have yet produced a single piece of paper in this litigation, the Tuckers cannot make a full damage assessment at this time.