Paul M. Levine, Esq. (007202)
**PAUL M. LEVINE, P.C.**
8502 E. Via de Ventura, Suite 230
Scottsdale, Arizona 85258
Telephone: (480) 302.4102
Facsimile: (480) 300.4984
plevine@pmlevinepc.com
*Attorney for Plaintiff/Counterdefendant*
*Labor Smart, Inc. and Third-Party Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**IN AND FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| LABOR SMART, INC.<br><br>Plaintiff,<br>vs.<br><br>JASON AND MELISSA TUCKER.<br><br>Defendants. | Case No: 2:22-cv-00357-PHX-DJH<br><br>**THIRD PARTY DEFENDANTS HOLLEY, MCBRIDE AND PAVLIK'S RESPONSE TO TUCKERS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>(Before the Hon. D. Humetewa) |
| And related Counterclaims and Third-Party Claims. | |

Third-Party Defendants Michael Holley, Toby McBride and Joseph Pavlik (collectively "HMP") submit their Response to Jason and Melissa Tucker's Motion for Partial Summary Judgment.[1] the Motion should be denied because: (**i**) the Tuckers do not have standing to assert their *breach of fiduciary duty* claims; (**ii**) the Tuckers admit Takeover is the entity that owes for *unpaid compensation*; and (**iii**) there are genuine issues of material fact with respect to the claim for *defamation.* As set forth in Third-Party

[1] The Tuckers' Motion is limited to their third-party claims for: (**i**) Breach of Fiduciary Duty against Holley and McBride only, (**ii**) Breach of Contract against HMP, and (**iii**) Defamation against McBride. (Doc. 237, p. 2.) Ms. Manolio does not represent the Tuckers on any of the claims against Mr. Pavlik. As to the claims against Mr. Pavlik, the Tuckers are represented by Spencer Freeman.

Defendants' Motion for Partial Summary Judgment (Doc. 239), Holley and McBride (and Pavlik) are entitled to summary judgment on the Tuckers' claim for Breach of Fiduciary Duties and HMP are entitled to summary judgment on Mr. Tucker's claim for Breach of Contract. For these reasons, the Tuckers' Motion should be denied.

This Response is supported by the attached Memorandum of Points and Authorities, Labor Smart, Inc. ("LTNC") and HMP's Motion for Partial Summary Judgment, and the entire record in this case.[2]

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. Background Information.**

In the Motion (Doc. 237, pp. 2-9), the Tuckers provide a narrative of what they refer to as "Relevant Facts." Many of these "facts" are not relevant to the legal issues in the Motion. Nevertheless, these "Relevant Facts" require clarification.

***2021***. The Tuckers refer to the "June 2021" meeting. (Tucker Ex. 5.)[3] Exhibit 5 specifically states that the Directors' meeting "took place on August 6, 2021." The Minutes approved the "Takeover – LTNC Agreement" (attached to the Minutes) and refers to an agreement made in July 2021. The Minutes also state the "Takeover – LTNC Agreement shall be retroactive to July 1, 2021." However, there is a problem with the Tuckers' chronology and alleged facts.

Mr. Tucker admits the Agreement (pages 2 -3 attached to the Minutes) was not signed until *November 2021*. See, **Exhibit "A"**, (Mr. Tucker's deposition, p. 46, L: 23 – p. 47, L: 19.) ***If the Agreement was not signed until November 2021, then it could not have been attached to Minutes purportedly signed on August 6, 2021.***

[2] To be clear, in their Motion, the Tuckers are seeking judgment on liability only. (Doc. 237, p. 2.) There is no issue regarding damages on any of the claims made in the Motion.

[3] Exhibit 5 is a three-page document. Page 1 is "Takeover Industries, Inc. Minutes of Special Meeting of Directors August 6, 2021." Pages 2-3 are the "Agreement", purportedly made in July 2021.

***2022***. When this lawsuit was filed in March 2022, the Plaintiff was Takeover Industries, Inc. The Complaint was verified by Mr. Tucker, Takeover's then President. (Doc. 1.) The Tuckers admit the Complaint (alleging Breach of Fiduciary Duties) was filed "with *Takeover* seeking redress against Holley for his various breaches and misappropriation of funds." (Doc. 237, p. 5, L: 24, 25.) Clearly, Takeover was the entity that was allegedly damaged. Now, in the Tuckers' First Amended Third-Party Claims (Doc. 179), the Tuckers allege they (not Takeover) have been damaged for the exact same conduct, even though the Tuckers admit the harm was to Takeover. (Doc. 237, pp. 8-9.)

***2023- 2024***. The Tuckers admit the allegations concerning alleged wrongful conduct by Holley and McBride damaged ***Takeover***. (Doc. 237, pp. 8, 9.) The Tuckers' Motion states Holley and McBride "had been lying and stealing from ***Takeover***" (Doc. 237, p. 8, L: 12).

1. "Holley paid himself $348,770.00 in 'distributions' from ***Takeover*** in 2021." (Doc. 237, p. 8, L: 14.)

2. "McBride took $456,500.00 in 'distributions' from ***Takeover*** in 2021." (Doc. 237, p. 8, L: 16.)

3. "Holley charged $14,481.00 in credit card expenses to ***Takeover***…." (Doc. 237, p. 9, L: 1.)

4. "McBride charged more than $243,000 in personal expenses to his ***Takeover*** credit card…." (Doc. 237, p. 9, L: 3.)

5. "McBride paid a separate LLC (One Elite Beverages, LLC), which he owned, $51,500 from ***Takeover***…." (Doc. 237, p. 9, L: 6.)

## II. The Tuckers' Claim for Breach of Fiduciary Duties Fails As a Matter of Law.[4]

The Tuckers' Motion is limited to the claims of "(a) use/misuse of ***Takeover*** funds

[4] Ms. Tucker admits she was never a Takeover shareholder. See, **Exhibit "B"**, (Ms. Tucker's deposition, p. 54, L: 1 -13.)

for personal use; (b) hiding [***Takeover***] corporate waste; and (c) failing to pay Tucker funds/salary he earned while working for/with ***Takeover***." (Doc. 237, p. 10, L: 13-15.) The claims associated with items (***a***) and (***b***) fail as a matter of law because the alleged damage was to ***Takeover***, not the Tuckers.[5] The Tuckers admit the alleged harm was to Takeover.

> In breach of these promises, Holley knowingly, intentionally, and harmfully paid himself $348,770 from Takeover funds in 2021. (Ex. 12) Holley additionally spent $14,481 of Takeover funds on his personal expenses and 2021. (Ex. 12, Ex. 13). McBride took $456,500 in Takeover funds in 2021 (Ex. 12), and additionally charged more than $243,000 to Takeover credit cards for personal expenses. (Exs. 6, 12)."

(Doc. 237, p. 11, L: 19-24.)

The Tuckers claim the conduct is a violation of N.R.S. § 78.138(7)(b)(2). That statute does not help the Tuckers because, notwithstanding the alleged "fraudulent" conduct, the fiduciary duty is owed to the corporation. "The fiduciary duties of directors and officers are to exercise their respective powers in good faith, on an informed basis and with a view to the interests of the *corporation*." N.R.S. § 78.138(1). The Tuckers admit as much by citing the court to *Chur v. Eighth Judicial District Court*, 136 Nev. 68, 458 P. 3d 336 (Sup. Ct. 2020). (Doc. 237, p. 10, L: 20 -21.) The Tuckers admit:

> These fiduciary duties include the duties of loyalty and care to the ***corporation***. [Citation omitted.] Furthermore, the officers and directors of a Nevada corporation have fiduciary duties to exercise their powers 'in good faith' and 'with a view to the interests of the ***corporation***.'"
>
> . . .
>
> Here, there is no dispute that Holley and McBride were officers and directors of both Takeover and Labor Smart who owed fiduciary duties to both ***entities***.

(Doc. 237, pp. 10, 11.)

---

[5] See Doc. 239, pp 6-7.

The Tuckers further conflate the issues by claiming: "In their capacities as officers and directors of Takeover, Holley and McBride both pledged to Tucker that he would be paid 'equal' to them in 'monthly payments, draws and/or salary.' (Ex. 5)." (Doc. 237, p. 11, L: 16-18.) This is false. Exhibit 5 contains the Agreement which included the provision for equal pay between Mr. Tucker and HMP. It was signed by all 4 individuals, each in their individual capacity. Contrary to Mr. Tucker's claim, the Agreement was ***not*** signed by any of the individuals "in their capacities as officers and directors of Takeover".

N.R.S. § 78.138(7)(b)(2) states the statutory basis for individual liability of a director or officer of a corporation. The fiduciary duties are owed to the corporation, not individual shareholders, officers or directors. N.R.S. § 78.138(7)(b)(2) does ***not*** provide an individual (Mr. Tucker) with standing to allege breach of fiduciary duty for his/her individual harm without complying with the requirements of Rule 23.1 (Derivative Actions by Shareholders), Nevada Rules of Court, and N.R.S. § 41 – 520. (Doc. 239, pp. 5-6.)

Even assuming, *arguendo*, Holley and McBride did these alleged acts, the harm was to Takeover. In (***a***), the allegation is that Holley and McBride are liable for misuse of ***Takeover*** funds. In (***b***), the allegation is that Holley and McBride hid ***Takeover*** corporate waste. If these claims exist, they are claims on behalf of Takeover, not the Tuckers. The Tuckers do not have standing to allege a claim on behalf of Takeover. (Doc. 239, pp. 5-8.)

Both of the cases cited by the Tuckers in support of their claim for breach of fiduciary duty (Doc. 237, p. 10), i.e., *Guzman v. Johnson*, 137 Nev. 126, 483 P. 3d 531 (Sup. Ct. 2021), and *Chur*, actually support Holley and McBride. In *Guzman*, the complaint was filed by Ms. Guzman "on behalf of Herself and All Others Similarly Situated". *Id*., p. 531. "Guzman filed a class action against [Defendants], alleging that they breached their fiduciary duties to her and the other minority stockholders…." *Id*., p. 535. In *Chur*, the complaint was filed by the court appointed receiver who had "the power to '[p]rosecute any action which may exist on behalf of the policyholders, members, or shareholders of [Lewis & Clark] against any officer of [Lewis & Clark] or any other person.'" *Id*., p. 338.

In other words, neither of these cases allowed a single shareholder to pursue a claim

against the corporation or an individual director or officer on the shareholder's behalf only, which is exactly what the Tuckers are attempting to do here. See also, *Capital Advisors, LLC v. Cai*, 548 P. 3d 1202 (Sup. Ct. 2024), a case addressing an alleged violation of N.R.S. § 78.138(7), where the plaintiffs filed a shareholder derivative action, something the Tuckers failed to do.

In (***c***), the allegation is that Holley and McBride failed to pay Tucker funds/salary. This is not a claim arising out of any fiduciary duty owed by Holley or McBride to the *corporation*. According to Mr. Tucker, "Holley and McBride both pledged to Tucker that he would be paid 'equal' to them in 'monthly payments, draws and/or salary.'" (Doc. 237, p. 11, L: 16- 18.) Holley and McBride did not owe the corporation a fiduciary duty vis-à-vis Mr. Tucker and his claim for compensation. Mr. Tucker repeatedly admits his salary/compensation was due from Takeover. (Doc. 239, pp. 11-12.) Mr. Tucker has not alleged a contract claim against Takeover, or an interference with contract claim against Holley or McBride.

With respect to this allegation, the Tuckers are attempting to make the alleged failure to pay Mr. Tucker "equal monthly draws" both a breach of fiduciary duty (against Holley and McBride) and a breach of contract (against HMP), neither of which applies. As noted above, Mr. Tucker admits his salary/compensation was due from Takeover. Takeover's alleged failure to pay Mr. Tucker his salary/compensation may give rise to a claim for breach of contract against Takeover (not alleged), but not breach of fiduciary duty against Holley or McBride. Pursuant to Mr. Tucker's reasoning, any employee not paid by a corporation would have a claim for breach of fiduciary duty against the corporation's directors and officers. That is not the law.

Likewise, Mr. Tucker's claim for breach of contract against HMP fails because Mr. Tucker admits the payments were due from Takeover. (Doc. 239, pp. 10-13.)

## III. Mr. Tucker's Contract Claim, If One Exists, Is Against Takeover, Not HMP.

Mr. Tucker repeatedly admits it was Takeover that allegedly owed him money for

unpaid compensation. (Doc. 239, pp. 10-13.) While the Tuckers correctly cite the elements for a claim for breach of contract (Doc. 237, p. 13), the Tuckers cannot establish the existence of a contract between Mr. Tucker and HMP. The Tuckers reference to Doc. 184, p. 5, ¶ 24 (Doc. 237, p. 13), is of no help. In the Answer to the Third-Party Complaint, the Third-Party Defendants admitted the Agreement contained certain terms, including: "c. Holley, McBride, Pavlik, and Tucker were each entitled to receive monthly payments, draws and/or salary equal to each other;" Admitting that term does ***not*** equate to admitting a contract between Mr. Tucker and HMP.

Having failed to establish a contract or agreement between Mr. Tucker and HMP, the claim for breach of contract must be denied.

## IV. Questions of Fact Exist Regarding Holley and McBride's Alleged Misconduct.[6]

The Tuckers claim Holley paid himself $348,770 from Takeover funds and charged $14,481 on a Takeover credit card for personal expenses. (Doc. 237, p. 11.) In support of their argument, the Tuckers reference Exhibits 12 and 13. **Exhibit 12** is a print out of charges on a Takeover credit card by Holley, beginning March 10, 2021 through December 27, 2021. **Exhibit 13** is a litigation created Spreadsheet showing payments to Holley ($348,770) and McBride ($456,500) from Takeover beginning April 6, 2021 through December 8, 2021. Mr. Tucker also admits that he was paid $131,000 in 2021. (Doc 237, p. 11, L: 26.)

**A. Unpaid Compensation Claim Against Holley**: Of the total amount ($348,770), $125,000 was paid prior to July 1, 2021, the date of the "July 2021 Agreement". The Tuckers appear to argue that $20,000 per month was reasonable, beginning July 1, 2021. Even assuming, *arguendo* $20,000 per month is the reasonable amount of compensation, the Tuckers offer no explanation why any charges *before* July 1,

[6] Holley makes this argument without prejudice to or waiver of the preceding argument that the Tuckers lack standing to assert their claim for breach of fiduciary duties because the harm, if at all, was to Takeover.

2021 should be questionable or constitute an unreasonable payment, or why payments of $120,000 from July through December 2021 are not reasonable. If that is the case, with respect to Holley, the only amount in dispute is $103,770, representing the amount paid that is greater than $20,000 per month from July through December 2021 ($223,770 less $120,000 equals $103,770).

**B. Unpaid Compensation Claim Against McBride**: Of the total amount ($456,500), $199,000 was paid prior to July 1, 2021. The only amount in dispute is $137,500, representing the amount paid that is greater than $20,000 per month from July through December 2021 ($257,500 less $120,000 equals $137,500). Like Holley, if $20,000 per month is assumed to be reasonable, the Tuckers offer no explanation why any charges *before* July 1, 2021 should be questionable or constitute an unreasonable payment, or why payments of $120,000 from July through December 2021 are not reasonable. If that is the case, with respect to McBride, the only amount in dispute is $137,500, representing the amount paid that is greater than $20,000 per month from July through December 2021 ($257,500 less $120,000 equals $137,500).

**C. Holley Credit Card Charges:** At his deposition, Holly explained that he "wouldn't charge anything unless it was an expense for the company with either probably the director or another person in town." See, **Exhibit "C"**, (Mr. Holley's deposition, p. 404, L: 6 – 8.)

The Tuckers have offered no evidence that either the payments to Holley (or McBride) or the credit card charges were a breach of fiduciary duty. The Tuckers only offer evidence of the actual amounts. The Tuckers use words like "knowingly, intentionally, and harmfully" to describe Holley's conduct. (Doc. 237,p. L: 20.) This is insufficient.

N.R.S. § 78.138 states that "directors and officers are to exercise their respective powers in good faith, on an informed basis and with a view to the interests of the corporation." N.R.S. § 78.138(3) states:

[D]irectors and officers, in deciding upon matters of business, are presumed to act

> in good faith, on an informed basis and with a view to the interests of the corporation. A director or officer is not individually liable for damages as a result of an act or failure to act in his or her capacity as a director or officer except as described in subsection 7.

N.R.S. § 78.138.7 requires that before a director or officer can be individually liable for any damage as a result of any act or failure to act in his or her capacity as a director or officer unless "[t]he presumption established by subsection 3 has been rebutted;" Whether there was a breach of fiduciary duty is a question of fact. Whether a fiduciary duty has been breached is "a question the trier of fact must resolve after scrutinizing all the evidence,…" *Western Industries, Inc. v. General Ins. Co*., 91 Nev. 222, 533 P. 2d 473, 477 (Sup. Ct. 1975).

**V. Questions of Fact Exist Regarding the Alleged Defamation.**

**A. There Is No Evidence the Statements Are False.**

The Tuckers have failed to produce any evidence in support of their Motion that the alleged defamatory statements are false. This is fatal to their Motion. A plaintiff in a defamation case bears the burden of proof regarding the falsity of the statements. *Nevada Independent Broadcasting Corp. v. Allen*, 99 Nev. 404, 664 P. 2d 337 (Sup. Ct. 1983). In *Dinkins v. Schinzel*, 362 F. Supp. 3d 916 (D. Nev. 2019), a case cited by the Tuckers, the court denied plaintiff's motion for summary judgment on his claim for libel *per se*.

> But neither party has presented evidence proving the truth or falsity of the facts asserted, so neither has satisfied the movant's burden on summary judgment. For Dinkins to prevail, he must prove the falsity of Schinzel's statements because he bears the burden of proof on that element at trial. Conversely, Schinzel—because she's raised the defense of truth—must show there is no dispute that the statements are true. For example, related to the fact that Schinzel called Dinkins a criminal, Dinkins notes that Schinzel produced no documents to show that he had been arrested for or convicted of any crime while Schinzel asserts that, arrests or not, Dinkins has broken several laws in running his business. But neither party proves their case, so the truth of the statements remains in dispute. I cannot rule as a matter of law that either party is entitled to judgment at this stage—especially because "[w]hether a statement is false is generally a question for the jury." I therefore deny both parties' motions for summary judgment on Dinkins's libel per se claim.

*Id.*, p. 924. Furthermore, as the court noted, "[w]hether a statement is false is generally a question for the jury."

In the case cited by the Tuckers, *Clark County School Dist. v. Virtual Educ. Software, Inc.*, 125 Nev. 374, 213 P. 3d 496 (Sup. Ct. 2009), the issue of defamation was decided at trial, not on summary judgment.

**B. Mr. McBride Did Not Make the Statements Claimed by the Tuckers.**

In support of their Motion, the Tuckers claim there is undisputed evidence that McBride accused Tucker of: (**i**) "theft (and, particularly theft of IP, which is his primary business)"; (**ii**) "being hunted by the mob or the mafia"; (**iii**) "wire fraud/bank fraud"; (**iv**) "traveling under false passports"; and (**v**) "trying to commit insurance fraud". (Doc. 237, p. 15, L: 2 - 5.) In support of these allegations, the Tuckers reference Exhibits 11(a)-11(o), which contain segments of a video podcast.[7] Mr. Tucker also claimed the statements are "inflammatory" and "threatening". (Doc. 237, p. 14, L: 25.) Statements that may be inflammatory or threatening do not constitute defamation.

Exhibit 11(c) references stolen IP from "these people". Exhibits 11(e) and (f) are references to the passport and mafia issues. Mr. McBride never says Mr. Tucker is being "hunted by the mob or the mafia". Mr. McBride references that the mafia is "looking" for "it", without using Mr. Tucker's name. Exhibit 11(j) makes reference to "insurance money". Mr. McBride never uses the words "wire fraud", "bank fraud" or "insurance fraud". Exhibits 11(e) and (f) reference Mr. Tucker having "more than one passport." Mr. McBride never says Mr. Tucker is "traveling under false passports."

[7] The Exhibits are redundant. Exhibits 11(a)-11(d) contain 4 segments of a video podcast, totaling 90 minutes and 3 seconds. Exhibits 11(e)-11(o) contain only portions of the 4 segments, totaling 6 minutes and 26 seconds.

**PAUL M. LEVINE, P.C.**

By: */s/ Paul M. Levine*
Paul M. Levine, Esq.
8502 E. Via de Ventura, Suite 230
Scottsdale, Arizona 85258
*Attorney for Plaintiff/Counterdefendant Labor Smart, Inc. and Third-Party Defendants*

**CERTIFICATE OF MAILING**

I hereby certify that the foregoing was served by and through the CM/ECF filing system of the United States District Court, District of Arizona, on March 23, 2026, to the following parties:

Veronica L. Manolio, Esq.
**MANOLIO & FIRESTONE, PLC**
8674 E. San Alberto Drive
Scottsdale, Arizona 85258
VManolio@MF-Firm.com
*Attorney for Tucker Defendants/ Counterclaimants/Third-Party Claimants*

Spencer D. Freeman, Esq.
**FREEMAN LAW FIRM, INC**
1107 1/2 Tacoma Ave S
Tacoma, Washington 98402
SFreeman@FreemanLawFirm.org
Reception@FreemanLawFirm.org
Sierra@FreemanLawFirm.org
*Attorney for Jason Tucker and Melissa Tucker*

By: */s/ Kathleen Mohr*