**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Melissa and Jason Tucker,<br>Plaintiffs,<br>v.<br>Labor Smart Inc. et. al,<br>Defendants. | No. CV-22-00357-PHX-DJH<br>**ORDER** |

Before the Court are two partial motions for summary judgment.

Counter Defendant Labor Smart, Inc. ("LTNC") and Third-Party Defendants Michael Holley ("Holley"), Toby McBride ("McBride"), Joseph Pavlik ("Pavlik"), Thomas Zarro ("Zarro"), Takeover Industries, Inc. ("Takeover"), and Next Gen Beverages, LLC ("Next Gen") (collectively, "TPDs") seek partial summary judgment on the claims Third-Party Claimants Jason Tucker ("Tucker") and Melissa Tucker[1] ("the Tuckers") have asserted against them. (Doc. 239). LTNC says summary judgment is warranted on the Tuckers' counterclaims against it for abuse of process and aiding and abetting tortious misconduct. Holley, McBride, and Pavlik seek summary judgment on the Tuckers' claims against them for breach of fiduciary duties, aiding and abetting tortious conduct, breach of contract, and breach of covenant of good faith and fair dealing claims. Zarro moves for

[1] The spouses of Jason Tucker, Michael Holley, and Thomas Zarro have been named solely for the purposes of reaching marital estates upon a determination of liability; none have personal claims or are alleged to have been engaged in wrongdoing. References to Jason Tucker, Michael Holley, and Thomas Zarro in this Order will thus be to the relevant singular party unless otherwise noted.

judgment on the Tuckers' aiding and abetting tortious misconduct claim against him. Next Gen seeks judgment on the Tuckers' fraudulent transfer and constructive fraudulent transfer claims. And finally, LTNC and all TPDs seek judgment on the Tuckers' conspiracy to commit fraudulent transfer claim. The Tuckers have responded (Doc. 247) and LTNC and the TPDs have replied (Doc. 249).

The Tuckers seek summary judgment on three of the nine claims they have asserted against Holley, McBride, and Pavlik. (Doc. 237). The Tuckers say they have met their burden as to aspects of their breach of fiduciary duty claims against Holley and McBride; their breach of contract claim against Holley, McBride, and Pavlik; and their defamation *per se* claim against McBride. The TPDs have responded (Doc. 246) and the Tuckers have replied (Doc. 248).

The parties have requested oral argument on their motions. The Court finds argument on the briefing is unnecessary for their resolution and thus denies these requests. *See* LRCiv 7.2(f).

## I. Legal Standards

Under Federal Rule of Civil Procedure 56(a), a court shall "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). When, as here, "parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citation modified).

The summary judgment standard operates differently depending on whether the moving or non-moving party has the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). When the non-movant bears the burden of proof on a claim at trial, the movant may prevail either by citing evidence negating an essential element of

the non-movant's claim or by showing the non-movant's proffered evidence is insufficient to establish an essential element of the non-movant's claim. *See Celotex*, 477 U.S. at 322–23; *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000); 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2727.1 (4th ed. 2022).

When the movant bears the burden of persuasion at trial, the movant "must establish 'beyond controversy every essential element' " of the claim based on the undisputed material facts. *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003). *See also United States v. Dibble*, 429 F.2d 598, 601 (9th Cir. 1970) ("the moving party must offer evidence sufficient to support a finding upon every element of his claim for relief, except those elements admitted by his adversary in his pleadings, or by stipulation, or otherwise during the course of pretrial"). If the movant fails to make the required showing, summary judgment is inappropriate, even if the non-moving party has not introduced contradictory evidence in response. Thus, it is generally a "heavy burden" for a plaintiff to seek summary judgment. *Barnes v. Sea Hawaii Rafting*, LLC, 889 F.3d 517, 538 (9th Cir. 2018).

At the summary judgment stage, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (citations omitted). A court does not weigh evidence to discern the truth of the matter; it only determines whether there is a genuine issue for trial. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994).

The parties have the burden to support their motion and opposition with evidence and specific references to the record that they wish the Court to consider. Fed. R. Civ. P. 56(c); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). It is not the Court's task "to scour the record in search of a genuine issue of triable fact" rather, the Court relies on the parties to "identify with reasonable particularity the evidence." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *Schneider v. TRW, Inc.*, 938 F.2d 986, 990 n.2 (9th Cir. 1991) ("district court is under no obligation to mine the full

record for issues of triable fact").

## II. Background Facts[2]

In January 2021, Holley and McBride founded Takeover, a Nevada company that was to operate in the performance water and energy drink industry and whose products would be marketed under the brand "NXT LVL." (Doc. 237 at 3). Holley became the "person responsible for the money of Takeover," including "paying bills, taking in money, et cetera." (*Id.*) Holley and McBride agreed to pay themselves $20,000 per month ($240,000/year) from Takeover. (*Id.*) They took these funds as "distributions," as they were not W-2 employees. (*Id.*)

### A. LTNC Purchases Takeover

In March of 2021, Holley and McBride sold Takeover to LTNC, a preexisting, over-the-counter ("OTC") publicly traded company. (*Id.*) At the time, Takeover was owned equally by Holley and McBride, though no shares of Takeover had been issued. (Doc. 237 at 3). The terms of the Takeover sale to LTNC are unclear. During their depositions, neither Holley nor McBride could explain the terms of the sale, only that LTNC agreed to pay Takeover "around $300,000" or "6.8 billion shares." (Doc. 237-4 at 25–28, 30–34). Holley stated he wanted LTNC to "own" the beverage company because LTNC was a publicly traded company, and he wanted Takeover to be in the public market. (*Id.*) After the purchase, Takeover would "control" the Series A (voting) shares of LTNC. (Doc. 237-2 at 23). There is no evidence that stock certificates were transferred in the sale, or any other formalities were observed. (*Id.*)

It is undisputed that after the sale Holley and McBride controlled both LTNC and Takeover. They served as directors and officers for both entities. They conducted all of

---

[2] The Partial Motion for Summary Judgment filed by LTNC and the TPDs includes only a "Procedural Background" and, for reasons unexplained, repeatedly references allegations made in the Tuckers' original Complaint, which was rendered moot when the Tuckers filed their Amended Complaint (Doc. 179) in September 2024. Apart from the sparse procedural background provided, the Motion does not include a factual background at all and throughout the Motion references exhibits in support of arguments without sufficient factual context. (Doc. 239). The facts in this section are taken from the Tuckers' Motion for Partial Summary Judgment (Doc. 237) and/or the Tuckers' Amended Complaint (Doc. 179). Unless otherwise noted, the facts are undisputed.

LTNC's business, including its stock sales, through Takeover's accounting and banking; they did not open a bank account for LTNC. (Doc. 237 at 3).

**B. Pavlik and Tucker Join the Venture**

At some point after LTNC's purchase of Takeover, Pavlik, a nutritionist, joined the enterprise, and in May 2021, Holley and McBride hired Tucker as a consultant to help with Takeover's trademarks and intellectual property ("IP") issues. (Doc. 237 at 4). Tucker assisted Takeover in negotiating agreements with athletes and personalities as Takeover intended to bring notoriety or exposure to its brand and its water. (*Id.*)

**C. The July 2021 Agreement**

In June 2021, Holley, McBride, and Pavlik flew to Arizona to meet with Tucker to discuss business. The parties have different opinions as to what was discussed during the June meeting. But the signed June 10, 2021, Meeting Minutes, which none of the parties contest, reflect that: (1) Holley was to be re-elected as Takeover's Treasurer, and appointed the Chief Financial Officer ("CFO") and Chief Operating Officer ("COO"); (2) McBride was to be re-elected as Takeover's Secretary and appointed Chief Executive Officer ("CEO"); (3) Tucker was to be appointed as Takeover's President; and (4) Pavlik was to be appointed as Takeover's Chief Science Officer ("CSO"). (Doc. 237-5). The parties also resolved "that the officers are authorized to do and will do whatever is necessary to fulfill the paperwork and requirements required to complete the appointments and elections." (*Id.*)

Signed meeting minutes from an August 6, 2021, Special Meeting of the Directors, reflects that the men approved an attached "Takeover – LTNC Agreement" (the "July 2021 Agreement" or "Agreement"). (Doc. 237-6).[3] The Agreement memorializes terms

[3] In their Response to the Tuckers' Motion, Holley and McBride take issue "with the Tuckers' chronology and alleged facts" in relation to the July 2021 Agreement. (Doc. 246 at 2). Pointing to his deposition testimony, they say Tucker admitted the Agreement was not signed until November 2021. They then state "***[i]f the Agreement was not signed until November 2021, then it could not have been attached to the Minutes purported signed on August 6, 2021.***" (Doc. 246 at 2). Though they offer no further explanation, the Court assumes Holley and McBride are challenging the authenticity of the Agreement attached to the August Meeting Minutes. The record indeed reflects that Tucker said formal signatures were not affixed to the Agreement until November but says the Meeting Minutes and July 2021 Agreement "were all executed simultaneously as evidenced by the identical

between McBride, Holley, and Pavlik, "in their respective positions as *shareholders* of Labor Smart, Inc. a Georgia Corporation and/or Takeover Industries, Inc. a Nevada Corporation *and/or in their individual capacities* and Jason Tucker, an individual." (*Id.*) (emphasis added). These agreed upon terms, which were to be "retroactive to July 1, 2021," include that:

1. Holley, McBride, Pavlik, and Tucker were each to receive 25% of the shares in Takeover;[4]
2. Pavlik and Tucker were each to be named as Directors of Takeover;
3. Holley, McBride, Pavlik, and Tucker were each entitled to receive equal monthly payments, draws and/or salary from Takeover;
4. Holley, McBride, and Pavlik collectively held 51 Preferred Shares (17 shares each) in LTNC, which equaled 51% of the voting rights;
5. 12 of the Preferred Shares were to be released to Tucker when/if LTNC received a "current" status from OTC markets or another market equivalent and McBride, Holley and Pavlik would retain 13 of the Preferred Shares;
6. When LTNC received a "current" status, Tucker was also to receive "750M common shares" of LTNC valued at the same rate as McBride's shares;
7. None of the parties' LTNC shares could be diluted without "collective" agreement;
8. Further changes to the Agreement had to be in writing; and
9. The Agreement was to be governed by Arizona law.

(Doc. 237-6). Tucker says that it was not until November 2022 that he discovered that Holley, McBride and Pavlik over-pledged the shares in Takeover when they executed the Agreement such that receipt of 25% between the four men was an impossibility in July 2021. (Doc. 179 ¶¶ 58, 59–60).

---

DocuSign Envelope ID across all five pages of the exhibit." (Doc. 248 at 2). The Agreement states in plain language that it "shall be retroactive to July 1, 2021." Thus, for purposes of this Motion, the Court finds the objection largely irrelevant.

[4] As noted by the previously assigned district court ("the prior Court"), the co-equal ownership contemplated by this agreement, among other things, is inconsistent with the fact that Takeover was nominally a wholly owned subsidiary of LTNC at this point. The prior Court specifically commented that "[t]his discrepancy is emblematic of all four men's recurring failure or refusal to observe the corporate form and bylaws, which the Court has noted multiple times in its rulings throughout this litigation, including as its basis for denying their requests for injunctive relief, among other things." (Doc. 189). Holley admitted during his deposition that prior to Tucker joining Takeover, corporate formalities were not observed. (Doc. 237-15 at 122).

**D. The Pavlik Stock Agreement for LTNC Shares**

On September 20, 2021, Tucker and Pavlik entered into a written "Preferred Stock Purchase Agreement" (the "Pavlik Stock Agreement") wherein Pavlik agreed to sell his 17 shares of Series A preferred stock in LTNC and 1,850,000,000 of his common shares in LTNC to Tucker for $5,000.00. (Doc. 179 ¶ 31; Doc. 239 n.8). The same day, Pavlik instructed ClearTrust, LLC ("ClearTrust"), a stock transfer agent, to transfer the shares to Battleship Stance, Inc., ("Battleship") a company of which the Tuckers are 50/50 owners. (Doc. 238-6). The Pavlik Stock Agreement was fully executed on October 13, 2021 (Doc. 179 ¶ 31; Doc. 239 n.8; Doc. 239-7 at 2), but LTNC says the share transfer did not occur until May 2022, and per Pavlik's instructions, the transfer was made to Battleship, not the Tuckers. (Doc. 239 at 8–9; Doc. 239-7 at 2).

**E. Tucker Discovers Financial Misconduct by Holley and McBride**

In October of 2021, Holley, who was at the time Takeover's Treasurer and CFO and in exclusive control of Takeover's financials, was hospitalized with COVID-19. Tucker, serving as President of Takeover at this time, says it was during Holley's hospitalization that he first became aware of Takeover's financial issues and Holley's misuse of Takeover funds. Tucker took the evidence of Holley's financial wrongdoing to the other Takeover Directors—McBride and Pavlik—and the three directors subsequently voted to remove Holley from the Board.

In March 2022, Takeover filed this lawsuit against Holley, seeking redress for his misappropriation of funds. (Doc. 1). Tucker, as President of Takeover, verified the Complaint. (*Id.*) Holley filed an Answer to Takeover's claims, along with counterclaims against Takeover and third-party claims "individually and derivatively on behalf of LTNC" against the Tuckers, McBride, and Pavlik. (Doc. 38). With Court permission, Holley later amended his Third-Party Complaint (Doc. 67).

In March 2022, Tucker discovered that McBride had charged more than $243,000 in personal expenses on his Takeover credit card. (Doc. 237 at 6). McBride admitted to

these expenditures and signed a "Reconciliation Form" with Takeover. (Doc. 237-7 (reflecting amount owed to Takeover by McBride to be $243,253.84 as of December 31, 2021)). This did not deter McBride however, as Tucker says in September 2022, he discovered McBride had continued to charge personal expenses on his Takeover credit card. (*Id.*) The Directors of Takeover asked McBride to take a leave of absence while the matter was investigated. McBride agreed to the leave of absence and apologized for his misuse of the Takeover funds. (*Id.*)

**F. Holley, McBride, and Pavlik Oust Tucker from Takeover**

Tucker says that, while McBride was on leave, McBride contacted Holley and Pavlik, and the three men collectively decided to "re-align" amongst themselves; they ultimately ousted Tucker as President and Director of Takeover in November 2022. (Doc. 237 at 6). Tucker says that upon McBride's return to Takeover, McBride began making harassing phone calls to him, some that threatened physical violence. (*Id.* at 7). Tucker says he also told one of Takeover's investors that Tucker was a "con man" and lied about Tucker's business performance with Takeover. (*Id.*)

Around the time that Tucker was ousted, Zarro started advising Takeover, and Tucker says by January 2023, Zarro was "acting in complete participation with and encouraging Holley, McBride, and Pavlik to take actions that harmed Tucker." (*Id.*) Zarro determined that McBride should be terminated in early 2023, and McBride subsequently left Takeover.

In July 2023, McBride went on a several-hour-long podcast with an LTNC shareholder named Sharmila Viswasam. (*Id.*) The podcast was published online and viewed several hundred times. Tucker says multiple statements McBride made while on the podcast personally defamed him and harmed his reputation, including statements that Tucker stole intellectual property; was being chased after by the mafia; had committed bank/wire fraud; possessed multiple passports and traveled under false names; committed insurance fraud; and had fled the United States to avoid the consequences of his theft. (*Id.* at 7–8). McBride does not contest the authenticity of the podcast video or that he appeared

on it.

**G. Other Lawsuits Against Takeover and Holley, McBridge, and Pavlik**

In early December 2022, Takeover was sued in Nevada district court by an investor regarding outstanding loans (the "Nevada Lawsuit"). (Doc. 179 ¶ 70). In January 2023, Holley, McBridge, and Pavlik were personally sued in Florida by investors claiming they had a long-term scheme to defraud investors into LTNC (the "Florida Lawsuit"). (Doc. 179 ¶ 72). The Tuckers say that Holley, McBride, Pavlik, and Zarro improperly and without authority negotiated a settlement with the plaintiffs in the Florida Lawsuit by "pledging LTNC preferred and common shares that are owned by Tucker." (*Id.* ¶ 73).

The Tuckers say that the men then stripped Takeover of all its assets and started a new, competing company—Next Gen—that was to carry on the same business that Takeover conducted. (*Id.* ¶ 74). They say they did this and conducted LTNC business though 2023 without "any regard to Tucker or the 17 Preferred Shares of LTNC he owed (and/or business entities that he owns)." (*Id.* ¶ 75). The Tuckers also allege that LTNC and the TPDs unlawfully restricted their LTNC stock and otherwise threatened the Tuckers with the loss of their LTNC shares in an attempt to settle this lawsuit. (*Id.* ¶ 76).

**H. Holley Moves to Realign the Parties**

Following Tucker's ouster from Takeover, in February 2023, Plaintiff Takeover and Defendant Holley agreed to dismiss the claims and counterclaims between them with prejudice, which the prior Court granted. (Doc. 120). Takeover was accordingly dismissed from the case. Holley then voluntarily dismissed his third-party claim for contribution as to all the third-party defendants without prejudice (Doc. 124) and moved to dismiss without prejudice each of his claims against Pavlik and McBride, which the prior Court again granted. (Doc. 129).

Then, on March 10, 2023, Holley, LTNC, Takeover, McBride, and Pavlik jointly moved to amend Holley's Amended Third-Party Complaint and to substitute LTNC and Takeover as Plaintiffs in place of Holley to prosecute claims against the Tuckers (hereafter, "Motion to Realign"). (Doc. 123). On May 1, 2023, the prior Court allowed LTNC to

substitute in for Holley as the Third-Party Plaintiff. (Doc. 129). The prior Court, however, denied the moving parties' request to file another amended third-party complaint or to allow Takeover to either "intervene" or be added in as a plaintiff to prosecute claims against the Tuckers. In doing so, it noted the suspicious facts and timing surrounding the realignment request, including the fact that Takeover had initiated the lawsuit against Holley; that following Tucker's ouster from Takeover, Takeover and Holley filed a Stipulation to Dismiss all the claims between them; and that a Takeover investor had recently filed suit against Takeover in Nevada. (*Id*. at 7–8). The prior Court observed "that Takeover's about-face with respect to allegations of impropriety against the four principals—withdrawing allegations of wrongdoing against Messrs. Holley, McBride, and Pavlik and asserting new allegations against the Tuckers instead—directly reflects the self-interest of those apparently now in charge," and it would not "tolerate such gamesmanship" by allowing Takeover to intervene after it had so recently been dismissed. (*Id*. at 11).

The prior Court directed that LTNC's amended Third-Party Complaint (Doc. 67) be referred to as the operative amended Complaint going forward. (Doc. 129).

## I. Procedural Posture Since Realignment

The Tuckers' subsequent motion to dismiss LTNC's breach of fiduciary duty claim against him (Doc. 134) was granted on October 6, 2023 (Doc. 140), leaving only two remaining claims against the Tuckers. After the prior Court's October 2023 ruling on the Tuckers' Motion to Dismiss, however, the Tuckers failed to file an Amended Answer to LTNC's Amended Complaint. So, the case sat dormant from October 2023 until April 2024, until the prior Court, on its own accord, instructed LTNC to apply for entry of default or file a status report as to the Tuckers (Doc. 141). The Tuckers ultimately filed an Amended Answer to LTNC's Amended Complaint as well as Counterclaims and Third-Party Claims against Next Gen, Takeover, Zarro, Holley, Pavlik, and McBride. (Doc. 148). The Tuckers subsequently amended their Counterclaims and Third-Party Claims (hereafter "Amended Complaint") (Doc. 179) by Court Order (Doc. 178).[5]

[5] The Tuckers' original Answer (Doc. 148) remained in effect as the operative Answer (Doc. 178).

On January 22, 2025, the case was transferred to the undersigned. (Doc. 197). On October 24, 2025, the Court was notified that Takeover had filed for bankruptcy on September 10, 2025. (Doc. 227). The Court gave the Tuckers until September 4, 2026, to advise the Court whether the bankruptcy stay had been lifted or a request for the stay to be lifted had been made but not ruled upon before dismissing their claims against Takeover. (Doc. 253). The Tuckers did not respond to this Order.[6]

After the close of discovery, on January 8, 2026, LTNC and the Tuckers agreed to dismiss LTNC's remaining two claims against the Tuckers with prejudice. (Doc. 230).[7] Thus, only the Tuckers' two Counterclaims against LTNC and nine Third-Party Claims against LTNC, Next Gen, Zarro, Holley, Pavlik, and McBride remain. These claims are as follows:

**As to LTNC**, the Tuckers allege: (1) an abuse of process claim (Counterclaim ("CC") II); (2) an aiding and abetting tortious misconduct claim (though the Court dismissed this claim insofar as it relates to alleged management torts of Takeover (*see* Doc. 189)) (CC III); and (3) a conspiracy to commit fraudulent transfer (Third-Party Claim[8] ("TPC") V). (Doc. 179 ¶¶ 86–96).

**As to Holley, McBride, and Pavlik**, the Tuckers allege (1) breach of fiduciary duty claims (TPC I); (2) aiding and abetting tortious conduct (TPC II); (3) breach of contract (TPC III); (4) breach of the covenant of good faith and fair dealing (TPC IV); and (5) conspiracy to commit fraudulent transfer (TPC V). (*Id.* ¶¶ 97–117).

---

[6] Due to Takeover's bankruptcy, the resulting stay, and the Tuckers' nonresponse to the Court's Order, the Court will dismiss the Tuckers' claims against Takeover for conspiracy to commit fraudulent transfer; actual fraudulent transfer under A.R.S. § 44-1004; and constructive fraudulent transfer under A.R.S. § 44-1004.

[7] The dismissal of LTNC's claims against the Tuckers has transformed the Tuckers into the Plaintiffs and LTNC and Next Gen, Takeover, Zarro, Holley, Pavlik, and McBride into the Defendants. Going forward, the parties are instructed to refer to themselves accordingly. The Court will order the Clerk of Court to update the parties' statuses on the docket upon entry of this Order.

[8] The Tuckers allege this claim as a third-party claim against the other TPDs, but also include LTNC, who is a Counter Claimant, not a TPD.

**As to Next Gen**, the Tuckers allege claims for (1) conspiracy to commit fraudulent transfer (TPC V); (2) actual fraudulent transfer under A.R.S. § 44-1004 (TPC VI); and (3) constructive fraudulent transfer under A.R.S. § 44-1004 (TPC VII) (*Id*. ¶¶ 123–132).

**As to Zarro**, the Tuckers allege claims for (1) conspiracy to commit fraudulent transfer (TPC V); (2) and aiding and abetting tortious misconduct (TPC VIII). (*Id*. ¶¶ 118–122, 133–138).

**As to McBride**, the Tuckers also allege a defamation per se claim (TPC IX). (*Id*. ¶¶ 139–144).

With this extensive factual and procedural background in mind, the Court will first assess LTNC and the TPDs' Motion for Partial Summary Judgment and then turn to the Tuckers' Motion for Partial Summary Judgment.

## III. LTNC and TPDs' Partial Motion for Summary Judgment (Doc. 239)

LTNC and the TPDs seek summary judgment on a variety of the claims asserted against them. LTNC seeks summary judgment on the claims for abuse of process and aiding and abetting tortious misconduct; Holley, McBride, and Pavlik on Tucker's claims against them for breach of fiduciary duties, aiding and abetting tortious conduct, breach of contract, and breach of covenant of good faith and fair dealing claims; Zarro on Tucker's claim of aiding and abetting tortious misconduct claim; and Next Gen on Tucker's fraudulent transfer and constructive fraudulent transfer claims. For the most part, these parties do not challenge the sufficiency of the evidence underlying these claims but say they cannot proceed as a matter of law because they fail to state a claim. The Court will address each argument in turn.

### A. The Tuckers' Counterclaim Against LTNC for Abuse of Process

LTNC says it is entitled to summary judgment on the Tuckers' abuse of process claim against it. In Arizona, "[t]he elements of an abuse-of-process claim are '(1) a willful act in the use of judicial process; (2) for an ulterior purpose not proper in the regular conduct of the proceedings.' " *Crackel v. Allstate Ins. Co.*, 92 P.3d 882, ¶ 11 (Ariz. Ct. App. 2004) (quoting *Nienstedt v. Wetzel*, 651 P.2d 876, 861 (Ariz. Ct. App. 1982)). "[A]

plaintiff must prove that one or more specific judicially sanctioned processes have been abused to establish an abuse-of-process claim." *Crackel*, 92 P.3d at ¶ 14. A plaintiff must do more than simply "establish that the defendant [] possessed an improper purpose in sustaining the overall litigation." *Id.* Moreover, Arizona courts reject the "contention that a generalized allegation that a defendant has misused the litigation process as a whole can support a claim of abuse of process." *Id.* ¶ 15. "Rather, it must be based on something more than the opposing party's mere persistence in the litigation." *Id.* Nevertheless, the range of processes that may be abused is broad, encompassing the "entire range of court procedures incident to the litigation," including, inter alia, motions for continuances. *Id.* ¶ 16 (*quoting Nienstedt*, 651 P.2d at 881).

In its December 1, 2024, Order on LTNC's Motion to Dismiss the Tuckers' Counterclaims, the prior Court said that the Tuckers' abuse of process claim "just barely manages to constitute a *prima facie* claim for abuse of process." (Doc. 189 at 14). The prior Court allowed the claim to proceed on the narrow theory that LTNC abused a particularized judicial process when it sought to realign the parties. (*Id.* at 14–15).

In its Motion for Partial Summary Judgment on this claim, LTNC argues that because the Court partially allowed the parties to realign (by allowing LTNC to substitute in as Plaintiff for Holley), there was no improper purpose in filing the Motion to Realign. LTNC says it cannot be found liable for abuse of process because its Motion to Realign was "filed (and granted) pursuant to a legally recognized process, i.e., Rule 21, Fed. R. Civ. P." (Doc. 239 at 4).

Yet, the question of whether the Motion to Realign was filed for an improper purpose cannot be answered simply because the Court partially granted the Motion to Realign. Indeed, if that were the case, then the Court would not have subsequently allowed the abuse of process claim to proceed on this narrow theory. A party demonstrates an improper ulterior purpose by "showing that the process has been used *primarily* to accomplish a purpose for which the process was not designed." *Crackel*, 92 P.3d ¶ 11 (emphasis added). "[A] claim of abuse of process may not be based solely on the fact that

an opposing litigant received some secondary gain or emotional satisfaction from the use of a court process. Rather, to survive a motion for [judgment as a matter of law], a claimant must have presented evidence that the court process was used primarily to pursue that improper motive." *Id.* ¶ 18. A party must also "establish that the defendant used a court process in a fashion inconsistent with legitimate litigation goals." *Id.* ¶ 19. "Thus, plaintiffs must not only present evidence that the defendant used a court process for a *primarily* improper purpose, they must also show that, in using the court process, the defendant took an action that could not logically be explained without reference to the defendant's improper motives." *Id.* (emphasis added).

LTNC says it sought realignment for the intended purpose of substituting in as the real party at interest and prosecuting claims against the Tuckers. Tucker disagrees and says there is a "material dispute as to the primary motivation of the LTNC Parties in seeking Realignment, making LTNC the real Plaintiff in interest, and continued pursuit of LTNC's claims without substantial justification." (Doc. 247 at 3). Tucker says that the Motion to Realign was filed for the improper purpose of hiding the alleged misconduct of Holley, McBride, Pavlik, and Takeover and pursuing frivolous claims against the Tuckers. (*Id.*) Tucker also says LTNC improperly restricted his LTNC shares and used this lawsuit as leverage to get Tucker to sell his LTNC stock. (*Id.*)

Tucker's Response fails to substantiate his claims of improper motivation or explain how LTNC's substitution as Plaintiff for Holley was then used to hide the parties' alleged wrongdoings. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (as the party with the burden of proof at trial, plaintiff is required "to designate specific facts demonstrating the existence of genuine issues for trial"). Instead, his Response reiterates many of the TPDs' alleged wrongdoings without explaining how these alleged wrongdoings were hidden once LTNC was substituted in for Holley. Under Arizona law, there is no abuse of process unless there is a "subsequent misuse of process after it was lawfully issued." *Bird v. Rothman*, 627 P.2d 1097, 1100 (Ariz. Ct. App. 1981). Perhaps cognizant of this requirement, the Tuckers argue that LTNC wrongfully prosecuted

baseless claims against them for over two years and only dismissed the claims after discovery closed and under the threat of Rule 11 sanctions. (Doc. 247-15 ¶ 12). But on such slim assertions, supported only by Tucker's Declaration,[9] the Court declines to infer that the Motion to Realign was filed *primarily* to prosecute frivolous claims (claims that had notably been alleged against the Tuckers prior to LTNC's substitution as Plaintiff) such that the subsequent dismissal of those claims was a "misuse of process." *Id*. An abuse of process claim "must be based on something more than the opposing party's mere persistence in the litigation." *Crackel*, 651 P.2d at ¶ 15. Tucker has not met its burden of showing LTNC's voluntary dismissal of its claims against Tucker was a subsequent misuse of LTNC's request to step in as the real party of interest to prosecute the same claims Holley had brought against the Tuckers.

A closer call is the Tuckers' assertion that "[j]urors must consider that Labor Smart tried to extort a settlement in 2024 by stripping Tucker of all his remaining shares in Labor Smart and ensuring he would not be issued additional voting shares of Labor Smart." (Doc. 247 at 7). This argument suggests that LTNC substituted in as the Plaintiff to leverage the Tuckers' LTNC shares to obtain a settlement, which could constitute an abuse of process. The problem is that the Tuckers have offered little to support the assertion that this was LTNC's primary motivation in seeking substitution two years earlier or indeed, how LTNC's position as Plaintiff enabled it to extort the Tuckers in such a manner. In his Declaration, Tucker states:

> In June 2024, Labor Smart Board Member Sequeira, who is not a party to the lawsuit, began reaching out to me independently seeking to settle this lawsuit and promising me that Labor Smart would release the restrictions on my shares if I would agree to "walk away" from this lawsuit. Mr. Sequeira

[9] The deposition testimony allegedly given by Zarro, who testified as LTNC's 30(b)(6) representative, is not in the exhibit cited by the Tuckers. In support of their claim that LTNC pursued baseless claims against them for years, the Tuckers say Zarro admitted "that Labor Smart never reviewed evidence provided by Tucker **two-and-a-half-years ago** demonstrating **he repaid Takeover every penny owed**. (Ex. I at 53-61). Labor Smart did nothing to authenticate the evidence nor evaluate Labor's Smart's claim (against the Tuckers), allowing a baseless claim against Tucker to proceed for 2 ½ years. *Id*." (Doc. 247 at 6). Exhibit I to the Tuckers' Response is a Summary of McBride Additional Charges. (Doc. 247-10). Portions of Zarro's deposition are attached at Doc. 247-11, but the pages cited are not included.

> further wanted me to sell shares to him and Zarro. They wanted to make sure I would have no voting power in Labor Smart. I called out Zarro and Sequeira for extortion or blackmail.

(Doc. 247-15 ¶¶ 19–20). The Tuckers also attach a May 20, 2024, email communication between their attorney David Wise and a ClearTrust representative, in which Mr. Wise writes, "Jason told me that he had spoken with Luis Sequeira, a Director of Labor Smart, Inc., and that Luis told him that Labor Smart was using the legend removal as leverage to force a settlement in an unrelated court case." (Doc. 247-16 at 9). Setting aside that the two statements conflict as to *what* lawsuit Mr. Sequeira was seeking to settle, these statements do little to support the assertion that LTNC's primary motivation *to substitute in as the plaintiff in 2022* was to extort the Tuckers into settling this action by restricting his shares in 2024.[10]

"Mere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Sudre v. The Port of Seattle*, 2016 WL 7035062, at *7 (W.D. Wash. Dec. 2, 2016) (*quoting Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996). As the prior Court noted when granting the substitution of LTNC, in responding to the Motion to Realign, the Tuckers did not contest that LTNC was the proper party in interest. The Tuckers' Response does not identify any evidence showing how realignment was *primarily* sought to hide the alleged misconduct of Holley, McBride, Pavlik and Takeover or to blackmail Tucker into settling the matter by restricting his LTNC shares. *Crackel*, 92 P.3d at ¶ 19 (noting the plaintiff must be able to show how the court process "could not logically be explained without reference to the defendant's improper motives"). On

[10] The restriction issue apparently arose as a result of Tucker's May 7, 2024, email demand to the TPDs, in which he asks that 25% of LTNC common shares owned by Takeover be transferred to his Clear Trust Account, and that he "receive the 12 Series A Preferred Shares of LTNC and 750,000,000 Common Shares of LTNC from Toby, Michael, and Joe." (Doc. 247-16 at 1). Subsequent communications the Tuckers attach to their Response reflect that the TPDs told ClearTrust that "the legend should not be removed because there is open litigation between [Tucker] and the company" and they were requesting proof of payment for the shares. (*Id.* at 3). Though this may be evidence that the TPDs were involved in improperly restricting the Tuckers' shares, it does not suggest that the LTNC's motivation for substituting in as plaintiff in 2022 was due to its desire to restrict the Tuckers' ability to sell or transfer their shares.

summary judgment, this is the Tuckers' burden, and it has not been met. Fed. R. Civ. P. 56(a) (summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial).

The Court allowed the Tuckers to proceed with their abuse of process claim on a very narrow basis and after noting that the Amended Complaint largely failed to specify what processes had been abused. Now, at the summary judgment stage, the Court finds that Tucker has failed to sufficiently substantiate his abuse of process claim and it will be dismissed.[11]

### B. The Tuckers' Breach of Fiduciary Duty Claims Against Holley, McBride and Pavlik[12]

Holley, McBride, and Pavlik move for summary judgment on the Tuckers' breach of fiduciary duty claims against them.

The Tuckers allege Holley, McBride, and Pavlik breached their fiduciary duties by

> a) using/misusing Takeover funds for personal use; b) hiding corporate waste; c) misleading Tucker about the over-pledging of Takeover share ownership before he joined Takeover; d) improperly staging a "takeover" of Takeover; e) failing to pay Tucker funds/salary he had earned while working for Takeover; f) freezing Tucker out of LTNC management decisions and voting of his LTNC Preferred Shares; g) using this lawsuit for improper purposes and with ulterior motives; h) assisting in the fraudulent avoidance of Takeover debt by creating a new company to shield assets and avoid debt; and i) assisting in thwarting Tucker's ability to sell/transfer his stock by manufacturing a "restriction.

(Doc. 179 ¶ 99).

Holley, McBride and Pavlik raise several arguments regarding the legal sufficiency of these alleged breaches.

/ / /

---

[11] Accordingly, the Tuckers' third-party claims for aiding and abetting tortious conduct against Holley, McBride, Pavlik, and Zarro that arise out LTNC's abuse of process will also be dismissed.

[12] The parties and the Court agree that Nevada law applies to the Tuckers' breach of fiduciary duty claims.

### 1. Takeover Shareholder Issue

First, the parties dispute whether Tucker was a Takeover shareholder at certain relevant times. The TPDs say Tucker was not a Takeover shareholder until May 16, 2022, and so any alleged breaches of fiduciary duty prior to that time—over-pledging Takeover shares (c) and failure to pay his salary (e)—must be dismissed because they did not owe him a duty at that time and/or because he does not have standing as a shareholder to sue them. (Doc. 239 at 8). In support of this statement, the TPDs cite to "Doc. 239, F: 10." (Doc. 249 n.2). The Court is at a loss as to what document in the record this may refer to.[13] In his Response, however, Tucker takes issue with what appears to be a Takeover Certified Shareholder List that the TPDs attached to their Motion. That List reflects that Jason Tucker held 79,000 Takeover shares "effective" May 16, 2022. (Doc. 239-20 at 4).

Tucker disputes that he did not become a Takeover shareholder until May 16, 2022. He says he "became a *de facto* shareholder in Takeover in June 2021, with the July 2021 Agreement following as the written documentation of the grant of Takeover shares." (Doc. 247 at 9). In his Declaration, he states that the List "was simply correcting documentation of the issuance of my 25% stake that I was given in June 2021." (Doc. 247-15 ¶ 26). He says once he learned of the TPDs' fraudulent over-pledging of Takeover in the spring of 2022, he wanted to make sure Takeover's shares "were properly documented on the books of Takeover, which is what is represented in the LTNC Parties' Ex. 19 attached to their motion." (*Id.*)

Though the Tuckers offer no legal authority for the argument that one can be a "de facto" shareholder, the Court finds that a material fact remains in dispute as to the date Tucker became a shareholder of Takeover. The List notes the same "effective" date for Takeover shares held by McBride and Pavlik. (*Id.*) In light of their history with the

[13] Throughout their briefing, the TPDs generally cite to the exhibits without description or explanation as to how the information in the exhibit is relevant or demonstrative of their arguments. The Court declines to make these connections for them. " 'Judges are not like pigs, hunting for truffles buried in briefs,' much less buried in disorganized, scattershot evidentiary submissions." *Christian Legal Soc. v. Wu*, 626 F.3d 483, 488 (9th Cir. 2010) (quotation omitted).

company, the Court is confident that McBride and Pavlik would also object to the characterization that they did not become Takeover shareholders until May 16, 2022. This supports Tucker's assertion that the List was merely "correcting documentation" of shares issued at a prior time. These disputed facts are for the jury to resolve. Accordingly, the TPDs are not entitled to judgment on the claims that they breached fiduciary duties when they over-pledged Takeover and failed to pay his salary on the grounds that Tucker was not a Takeover shareholder.

**2. LTNC Shareholder Issue**

The TPDs also state that the Tuckers were *never* shareholders of LTNC and thus do not have standing to allege breaches arising out of their use of this lawsuit for improper purposes (g) and restricting Tucker's ability to transfer his LTNC stock (i). (Doc. 239 at 3). The TPDs advance the argument without providing the Court with any factual context. But the Court gleans from the Tuckers' Response that the TPDs are arguing that the Tuckers have never been LTNC shareholders because all shares were transferred to the Tuckers' wholly-owned companies, Battleship Stance, Inc. ("Battleship") and Oak Creek Wellness, Inc. ("Oak Creek"), not to them personally. (Doc. 239 at 8–9). In support of this, the TPDs point to emails that the Tuckers' attorney, Mr. Wise, sent to a stock transfer agent at ClearTrust. Therein, Mr. Wise states in part that LTNC's restrictions on the Tuckers' shares are unwarranted because neither Battleship nor Oak Creek are parties to the litigation, presumedly an admission from the Tuckers that they are not LTNC shareholders. (*Id.*)

In their Response, the Tuckers say the LTNC shares they received were given to them individually, but that they asked to have the certificates issued in the name of entities that they solely own. (Doc. 247 at 12). They argue, again without citing to any authority, that though the stock is held in their companies' names, they have the "full right and authority to pursue losses for shares issued to them." (Doc. 247 at 12).

The Court disagrees with the Tuckers. In name, the record does not show that the Tuckers are title shareholders of LTNC, a fact that they do not and cannot dispute.

Allowing them to obtain damages for a breach of fiduciary duty claim on behalf of Battleship and Oak Creek would ignore the legal realities of the corporate form. The Tuckers ask, however, that if the Court so finds, that it substitute Battleship and Oak Creek as the real parties in interest for these limited claims. (Doc. 247 at 13). They note that despite the late date, the TDPs would suffer no prejudice from the substitution because no additional discovery would be required, particularly because LTNC has already received Battleship and Oak Creek records. (*Id.*) The TPDs object to the substitution, citing the age of the case, but offer no explanation as to why they would be prejudiced. The Court finds that equity demands substitution here. The TPDs have identified Battleship and Oak Creek as the title owners of shares the Tuckers have clearly identified as having been restricted. No further discovery is needed on these issues and their substitution will not cause further delay.

Accordingly, the request for dismissal of these claims because the Tuckers are not LTNC shareholders is denied. Instead, LTNC shareholders Battleship and Oak Creek shall be substituted in for the Tuckers for their claims against Holley, McBride and Pavlik for damages arising out of the allegedly unlawful restrictions put on their LTNC shares, including the alleged breach of fiduciary duties.

### 3. Whether the Tuckers Allege Derivative vs. Direct Harm

Holley, McBride, and Pavlik next challenge the Tuckers' standing to assert the breaches in (a), (b), (d), and (h) because the harms alleged in these subsections are harms to Takeover, not to the Tuckers personally. To bring such claims, they say, the Tuckers would have had to bring them as derivative shareholder claims in compliance with Nevada Rules of Court 23.1 and N.R.S. § 41.520. Having failed to do so, they say these claims fail as a matter of law. (Doc. 239 at 6).

> It is true that a former shareholder has no standing to sue for breach of fiduciary duty on a derivative claim. A derivative claim is one brought by a shareholder on behalf of the corporation to recover for harm done *to the corporation*. Because a derivative claim is brought on behalf of the corporation, a former shareholder does not have standing to assert a derivative claim. **A former shareholder does [] however, have standing to**

> **seek relief for direct injuries that are independent of any injury suffered by the corporation.**

*Cohen v. Mirage Resorts, Inc.*, 62 P.3d 720, 732 (Nev. 2003) (emphasis added). To distinguish between direct and derivative claims, the Nevada Supreme Court says courts "should consider only (1) who suffered the alleged harm (the corporation or the suing shareholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Parametric Sound Corp. v. Eighth Judicial District Court in and for Cty of Clark*, 401 P.3d 1100, 1108 (Nev. 2017) (internal quotations omitted). This "direct harm test" serves as a means for "determining whether stockholders can bring a claim for breach of fiduciary duty directly, or whether a particular fiduciary duty claim must be brought derivatively on the corporation's behalf." *Brunk v. Eighth Judicial District Court in and for Cty of Clark*, 449 P.3d 1270 (Nev. 2019) (quoting *Citigroup Inc. v. AHW Inv. P'ship*, 140 A.3d 1125, 1139 (Del. 2016)). Under the direct harm test, the relevant inquiry in addressing who suffered the alleged harm is: "Looking at the body of the complaint and considering the nature of the wrong alleged and the relief requested, has the plaintiff demonstrated that he or she can prevail without showing an injury to the corporation?" *Id.* (cleaned up).

The Court will apply the direct harm test to each of the Tuckers' allegations.

#### a. Misuse of Takeover Funds (a) and Concealment of Corporate Waste (b)

For the allegations in subsections (a) and (b), Tucker says his "ownership was diminished when Holley and McBride siphoned Takeover funds and concealed corporate waste." (Doc. 247 at 9). Merely characterizing this harm as personal to Tucker's ownership interests, however, does not alter the nature of the claim. The essence of this misconduct alleges direct harm to Takeover, which indirectly harmed Takeover's shareholders and all of their ownership interests. Even assuming that Tucker owned 25% of the shares in Takeover, all of Takeover's shareholders suffered when Holley and McBride siphoned Takeover funds and concealed their illicit corporate spendings. Tucker cannot plausibly allege that the other Takeover shareholders did not suffer as a result of

these actions. Because these claims are derivative in nature, Tucker does not have standing to assert the claims in subsections (a) and (b). So, the Court finds they fail as a matter of law.[14]

**b. Staged "Takeover" of Takeover (d).**

Tucker next says "the staged 'takeover' deprived him of equal compensation and payment of deferred compensation that he had already earned (but which debt was on the books of Takeover)." (Doc. 247 at 10). The TPDs' Reply does not respond to this argument. The Court finds that the damage asserted by Tucker as a result of the takeover is sufficiently personal to Tucker and could be obtained without showing an injury to Takeover itself.

**c. Transfers of Takeover Assets to Next Gen (h).**

Tucker says at the time Takeover transferred its assets to Next Gen, he "remained a [sic] both a shareholder of Takeover and a creditor who was owed significant compensation" and thus suffered personal damage when those assets were transferred. (*Id*. at 10). Any damages relating to the asset transfer, however, would have been felt by all the Takeover shareholders. This claim is derivative in nature and thus cannot be asserted individually by the Tuckers. It will be dismissed.

**4. Duty to Pay Salary Issue**

Holley, McBride and Pavlik finally argue that the claim that they failed to pay Tucker's salary in subsection (e) cannot stand because such a claim arises out of contract against Takeover, not a fiduciary duty claim against them. (Doc. 239 at 8). Tucker says, "Nevada law allows a creditor to pursue damages from individual officers or directors if the damages were caused by intentional misconduct, fraud, or a knowing violation of the law." (Doc. 247 at 12). Tucker says though his salary is owed to him by Takeover, N.R.S. § 78.138(7) allows him to pursue the individuals for personal liability based on their misconduct. (*Id*.) In their Reply, the TPDs say that to establish liability under N.R.S.

[14] The Tuckers have moved for summary judgment on these breach of fiduciary duty claims. (Doc. 237 at 4). Because those claims are derivative and they must be dismissed, that request will be denied, as discussed *infra*.

78.138(7), the Tuckers must first show that the failure to pay arises out of fiduciary duty to the corporation and here, the Tuckers cannot allege that the TPDs owed a fiduciary duty to Takeover with respect to Tucker's claim that he was not paid his salary. (Doc. 249 at 7).

A claim for breach of fiduciary duty under Nevada law requires a plaintiff to demonstrate a fiduciary duty exists, that duty was breached, and the breach proximately caused the damages. *Brown v. Kinross Gold U.S.A., Inc.*, 531 F.Supp.2d 1234, 1245 (D. Nev. 2008). " '[A] fiduciary relationship is deemed to exist when one party is bound to act for the benefit of the other party. Such a relationship imposes a duty of utmost good faith.' " *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 880–81 (9th Cir. 2007) (quoting *Hoopes v. Hammargren*, 725 P.2d 238, 242 (Nev. 1986)).

The sole mechanism to hold directors and officers individually liable for damages in Nevada is found in N.R.S. § 78.138. *Chur v. Eighth Judicial District Court in and for Cty of Clark*, 458 P.3d 336, 340 (Nev. 2020). To establish a claim against directors or officers individually in Nevada, a plaintiff must first rebut the presumptions of the business judgment rule, codified at N.R.S. § 78.138(3),[15] and second, prove the "director's or officer's act or failure to act" consists a breach of his fiduciary duties involving "intentional misconduct, fraud or a knowing violation of law." N.R.S. § 78.138(7)(b)(1)–(2); *Chur*, 458 P.3d at 340–41.

The parties haphazardly brief this issue, and the Court finds that it could deny Holley, McBride and Pavlik's request on this basis alone. Neither party, for example, points to legal authority for the proposition that directors or officers owe a duty to the corporation to ensure employees are paid in accordance with terms of a separate shareholder agreement.

Indeed, in reviewing the Tuckers' Amended Complaint (Doc. 179), the Court finds that the only third-party defendant against whom they have arguably pled a breach of fiduciary duty claim arising out Takeover's failure to pay Tucker a salary is Holley, who

[15] Section 78.138(3) states that "directors and officers, in deciding upon matters of business, are presumed to act in good faith, on an informed basis and with a view to the interests of the corporation."

was its CFO, until Tucker himself took over the finances of Takeover. Again, individual liability under N.R.S. §78.138 only lies against a director when there is an allegation of intentional misconduct. In the Amended Complaint, the Tuckers allege that through the last quarter of 2021, "Holley was the only Takeover officer/director with access to the bank account(s) of Takeover," and "Holley denied any other Takeover officers/directors to have direct access." (Doc. 179 ¶¶ 39, 40). They allege that Takeover's accounting firm subsequently discovered Holley's malfeasances, including that he had been making distributions to himself without authorization and ignoring that all four Directors were to be paid the same. (*Id.* ¶ 47). From the Court's review of the Tuckers' Amended Complaint, the Tuckers do not advance *any* allegations toward McBride or Pavlik to suggest that these directors intentionally withheld Tucker's salary. Nor do the Tuckers identify such allegations in their Response.

But what is ultimately fatal to the Tuckers' claim—even as to Holley—is that the only source of alleged duty they can point to is the obligation to pay Tucker's salary as stated in the July 2021 Agreement. The Agreement, however, was not executed by Holley, McBride and Pavlik in their capacity as directors or officers of Takeover (or LTNC), but as *shareholders* of Takeover and LTNC and/or in their *individual* capacity. (Doc. 247-17 at 2). Tucker himself did not enter into the Agreement in his capacity as a shareholder of Takeover, but as "an individual." (*Id.*) Holley, McBride, and Pavlik clearly have a contractual obligation to ensure Tucker is paid according to the terms of the July 2021 Agreement. This does not translate into a fiduciary obligation to Takeover, however. Having failed to identify facts or law showing that Holley, McBride, or Pavlik owed Takeover a fiduciary duty to pay Tucker a salary equal to the others, this claim cannot proceed and will be dismissed.

**C. Aiding and Abetting Tortious Conduct Against LTNC, Holley, McBride, Pavlik, and Zarro**

LTNC, Holley, McBride, Pavlik, and Zarro seek summary judgment on aspects of the Tuckers' aiding and abetting tortious conduct claims against them.

For the Tuckers to establish a claim of aiding and abetting tortious conduct in

Arizona, they must show that (1) the primary tortfeasor committed a tort that caused him injury; (2) that these Defendants knew the primary tortfeasor committed the tort; and (3) that Defendants substantially assisted or encouraged the primary tortfeasor in the achievement of the tort. *Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust*, 38 P.3d 12, 23 (Ariz. 2002).

### 1. The Tuckers' claim that LTNC, Holley, McBride, Pavlik, and Zarro aided and abetted Takeover in its fraudulent transfer of its assets to Next Gen

The Tuckers allege that Takeover has engaged in a conspiracy to commit fraudulent transfers, and actual and constructive fraudulent transfers under Arizona law and Takeover did so when it "transferred its assets, rights and intellectual property to Next Gen with the intent to delay and/or hinder the Tuckers (and others) from collecting debt owed by the entity." (*Id.* ¶¶ 118–132). They further allege that LTNC, Holley, McBride, Pavlik, and Zarro aided and abetted Takeover when it withheld payments and fraudulently transferred Takeover assets to avoid paying debts owed to him. (Doc. 179 ¶¶ 95, 104, 136).

LTNC, Holley, McBride, Pavlik, and Zarro say the Tuckers' claims that they aided and abetted Takeover in the fraudulent transfer of Takeover assets cannot proceed because the claims arise out of Tucker's contract with Takeover. (Doc. 239 at 9–10).[16] They say by definition they cannot be liable for aiding and abetting the alleged breach of contract between Tucker and Takeover, which is not a tort. (*Id.* at 9). The Tuckers disagree and say their "claim for aiding and abetting fraudulent transfer arises from the **intentional** failure to pay Takeover debts while stripping the assets of Takeover and siphoning them to a new entity (Next Gen Beverages, LLC) as part of a conspiracy to commit fraudulent transfer and to aid, assist, and substantially participate in fraudulent transfer, a **tort**." (Doc. 247 at 14). They say they only allege that Takeover withheld payments to Tucker as a factual predicate to this claim; namely that Takeover intentionally withheld payments to Tucker and then fraudulently transferred assets to a new company to avoid paying its

[16] Defendants also argue that Tucker has not alleged any claim against Takeover "which, if proven, would make him a Takeover creditor." (Doc. 239 at 10). This argument is addressed in Section III.E, *infra*.

debts.

The Court agrees with the Tuckers that their claim against LTNC, Holley, McBride, Pavlik, and Zarro for aiding and abetting Takeover in the fraudulent transfer of its assets does not necessarily arise out of any contract Tucker had with Takeover and thus is not precluded as a matter of law. The Tuckers allege that the parties were each aware that Tucker had a right to compensation from Takeover and nonetheless assisted in transferring Takeover assets to avoid paying this and other obligations. (*See e.g.*, Doc. 179 ¶¶ 102, 104(a)). The reference to Takeover's failure to pay Tucker his salary is merely one description of the alleged debts Takeover sought to avoid by transferring assets to Next Gen and is not necessarily precluded because of an unestablished contractual obligation between Tucker and Takeover.

**2. The Tuckers' claim that Holley, McBride, Pavlik, and Zarro aided and abetted LTNC when LTNC restricted Tucker's LTNC stock**

Holley, McBride, Pavlik, and Zarro also seek summary judgment on the Tuckers' claim that they aided and abetted LTNC's inference with the Tuckers' ability to sell and transfer their LTNC stock. The only argument they make is that the Tuckers are not shareholders of LTNC and thus have no claim. This issue has been resolved by the substitution of Battleship and Oak Creek for these claims. Because Battleship and Oak Creek will substitute in as the party in interest to prosecute this claim, their request for judgment is denied.

**D. Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing Claims against Holley, McBride, and Pavlik**

Holley, McBride, and Pavlik seek summary judgment on the breach of contract and breach of good faith and fair dealing claims against them.

The Tuckers allege that Holley, McBride and Pavlik breached the July 2021 Agreement "by failing to provide Tucker 'equal' payments and, instead, authorizing that Holley and McBride would receive exponentially more each month than Tucker while Holley and McBride hid charges from and payments to themselves from Tucker."

(Doc. 179 ¶ 108). Tucker also alleges that Holley, McBride, and Pavlik "refused to ensure that Tucker receive" the "Preferred Shares owned by Holley and McBride and the 750M common shares" promised under the July 2021 Agreement. (*Id.* ¶ 109).

In their Motion, Holley, McBride, and Pavlik argue that these claims should be dismissed because any compensation owed under the Agreement is owed by Takeover. They also say they cannot be liable for LTNC's alleged failure to deliver the referenced LTNC shares. (Doc. 239 at 11–12). Holley, McBride, and Pavlik cite to various portions of the Tuckers' original complaint and say these "judicial admissions" establish Tucker's awareness that these are Takeover and/or LTNC obligations. (*Id.*) They say there was "no agreement between the Tuckers and [Holley, McBride, and Pavlik] whereby [Holley, McBride, and Pavlik] agreed to individually pay compensation for Mr. Tucker's work at Takeover. Logically, the claim makes no sense." (*Id.* at 13). They say Tucker admitted the unpaid compensation was owed by Takeover, not Holley, McBride, or Pavlik. (*Id.*) They also say that Tucker has admitted to receiving the LTNC shares and so any obligation has been satisfied.

Most of these arguments can be rejected upon a plain reading of the July 2021 Agreement, which was entered into between McBride, Holley, and Pavlik, "in their respective positions as *shareholders* of Labor Smart, Inc. a Georgia Corporation and/or Takeover Industries, Inc. a Nevada Corporation *and/or in their individual capacities* and Jason Tucker, an individual." (Doc. 237-6). Therein, the parties agreed that they "shall be entitled to and receive monthly payment, draws and/or salary equal to each other or their assigns." (Doc. 237-6 at 2). The Agreement also states that Holley, McBride, and Pavlik agree that 12 of the 51 LTNC Preferred Shares held by McBride, Holley, and Pavlik would be "released and issued to Jason Tucker or his assigns if/when LTNC receives a 'current' status from OTC Markets or another market…" (*Id.*) Finally, the Agreement states that "the Parties agree that Jason Tucker or his assigns shall receive 750M common shares valued at the same rate as Toby McBride or his assigns." (*Id.*)

Neither Takeover nor LTNC are parties to the Agreement.[17] And though Tucker testified that he expected to be paid by Takeover (Doc. 239-3 at 57–58), he also stated that he expected McBride, Holley, and Pavlik to pay him because Takeover had failed to do so. (*Id.* at 58:6–11). Tucker also sufficiently explains in his Response that contrary to Defendants' position, he does not admit that the LTNC shares at issue were transferred (and thus any obligation to do so has been satisfied). (Doc. 247 at 15). He says Defendants conflate the LTNC shares that he purchased from Pavlik in 2021 with the separate shares that were owed to him under the July 2021 Agreement. (*Id.*) The shares he received from Pavlik are the shares he says Defendants wrongfully restricted. (*Id.* at 16). "The shares at issue on the breach of contract are the second category – the common and preferred shares that Holley, McBride, and Pavlik **admit** they owe Tucker but never delivered to him." (*Id.*)

Summary judgment will not be granted in favor of Holley, McBridge and Pavlik on the grounds that these are solely contract obligations of Takeover and/or LTNC.

### E. Fraudulent Transfer Claims

LTNC and the TPDs seek summary judgment on the Tuckers' conspiracy to commit fraudulent transfer claim, and Takeover and Next Gen seek summary judgment on the Tuckers' actual and constructive fraudulent transfer claims.

#### 1. Failure to Allege that UFCA Damages are Inadequate

LTNC, Holley, McBride, Pavlik, Zarro, Takeover, and Next Gen argue that the Tuckers' claim for conspiracy to commit fraudulent transfer fails as a matter of law because they have failed to allege that damages are inadequate under the Uniform Fraudulent Transfer Act ("UFTA"). (Doc. 239 at 14). The Tuckers do not respond to this argument.

In Arizona, a cause of action for conspiring to commit a fraudulent transfer occurs where the following elements are proven: (a) a fraudulent transfer made with the intent to

[17] The Tuckers aptly note that the prior Court agreed with LTNC when it sought to dismiss the Tuckers' breach of contract claim against it for the same breach because it was not a party to the July 2021 Agreement. (Doc. 247 at 15). Indeed, that part of the Tuckers' counterclaim against LTNC was dismissed on the grounds that it appeared to be "a redundant means of pleading the breach-of-contract claim against McBride, Holley, and Pavlik—one that improperly conflates LTNC's corporate form with the personages of its shareholders." (Doc. 189 at 13).

hinder, delay or defraud creditors; (b) an agreement between two or more persons to commit the fraudulent transfer; (c) damages resulting from the transfer that are traceable to the conspiracy; and (d) inadequate equitable remedies available under the UFTA. *In re Hashim*, 356 B.R. 728, 739 (Bank. D. Ariz. 2007). Such a claim must be proven by clear and convincing evidence. *Id*. at 743; *see also Dawson v. Withycombe*, 163 P.3d 1034, 1053 (Ariz. Ct. App. 2007). The Tuckers have not identified any evidence in the record that establishes equitable remedies under the UFTA are inadequate. Having failed to meet their burden on summary judgment, judgment will be afforded to LTNC, Holley, McBride, Pavlik, Zarro, Takeover, and Next Gen on the Tuckers' conspiracy to commit fraudulent conveyance claim.

**2. Standing**

LTNC and the TPDs contend that the Tuckers are not Takeover creditors and thus have no standing to make a claim against Takeover or Next Gen for fraudulent conveyance. (Doc. 239 at 13).

A.R.S. §44-1004 is Arizona's version of the UFTA. It "provides rights to creditors against debtors who evade their financial responsibilities." *Farris v. Advantage Cap. Corp.*, 170 P.3d 250, 251 (Ariz. 2007). Under the UFTA, a creditor is a "person who has a claim." A.R.S. § 44–1001(3). The UFTA broadly defines the term "claim" to include "a right to payment[.]" A.R.S. § 44–1001(2).

LTNC and the TPDs say the Tuckers have not alleged any claim, as defined by A.R.S. § 44–1001(3), against Takeover for unpaid compensation that would give them standing to bring a fraudulent conveyance claim. (Doc. 239 at 14).

The Court, however, finds that the Tuckers have established sufficient evidence on summary judgment that may qualify them as creditors with claims against Takeover and Next Gen. Tucker and his wife are listed as creditors in Takeover's bankruptcy filing. (Doc. 247 at 14). As noted by Tucker, at the time Takeover's assets were transferred to Next Gen, Takeover's books showed a $160,000 debt to him and he possessed a legal claim against Takeover and its Directors, Holley, McBride, and Pavlik, that he was owed the

promised distributions. (*Id.*) The Court agrees with the Tuckers that after defending multiple claims on the grounds that Tucker's remedies for various breaches are with Takeover, not the individual TPDs, Defendants' argument that the Tuckers are not creditors of Takeover appears disingenuous.

Tuckers may be considered creditors for purposes of their fraudulent transfer claims.

**3. No Fraudulent Conveyance to Next Gen**

Finally, Next Gen says there is no evidence that Takeover fraudulently conveyed assets to Next Gen. (Doc. 239 at 15). It says (1) Takeover never owned or transferred a hydrogen water formula; (2) Next Gen's website is completely different from Takeover's; (3) Takeover never owned any trademarks to wrongfully transfer; and (4) any money transfers from Takeover were done to repay loans Next Gen had made to the entity. (*Id.*)

The Tuckers raise more than enough evidence to show multiple disputes of fact preclude summary judgment on this claim. The Tuckers dispute the contention that Takeover never owned its own hydrogen water formula and say it was "electronically maintained and not made public, with copies limited to the manufacturers, takeover's owners, and counsel." (Doc. 247 at 16). The Tuckers also say "NextGen's website was 100% 'ported' from Takeover, as shown by the website source code and in other historical data for the sites" and that Next Gen's site replicated Takeover "100 percent." (*Id.* at 17). Testimony from both Tuckers support that the Takeover site, customer databased, and email lists were sent to Next Gen. (*Id.*) The Tuckers rightfully say that a jury must further determine issues related to the similarity of Takeover and Next Gen water cans. Takeover and Next Gen appear to concede as much as they offer no rebuttal to these arguments in their Reply.

This claim must go to the jury for resolution of multiple factual disputes.

**F. Conclusion**

In summary, the Court finds that LTNC and the TPDs have met their burden that they are entitled to judgment on: (1) the abuse of process claim against LTNC; (2) the aiding and abetting tortious conduct arising out of LTNC's abuse of process against Holley,

McBride, Pavlik, and Zarro; (3) the breach of fiduciary duty claims against Holley, McBride, and Pavlik that arise out of Holly and McBride's misuse of Takeover funds (subsection (a)); corporate waste (subsection (b)); failure to pay Tucker an equal salary (subsection (e)) and assisting in the fraudulent avoidance of Takeover debt by creative a new company to shield assets and avoid debt (subsection (h)); and (4) the conspiracy to commit fraudulent transfer against all LTNC and TPDs. The remainder of the Motion is denied.

## IV. The Tuckers' Partial Motion for Summary Judgment (Doc. 237)

The Tuckers move for summary judgment on aspects of their claims for breach of fiduciary duty against Holley and McBride, their breach of contract claims against Holley, McBride and Pavlik, and their defamation *per se* claim against McBride. They say the remaining claims, as well as the proper measure of damages, are factual in nature and must be left to a jury.

As the party with the burden of persuasion for these claims at trial, the Tuckers must establish "beyond controversy every essential element" of the claims against Holley, McBride, and Pavlik. *S. Cal. Gas Co.*, 336 F.3d at 888. Holley, McBride, and Pavlik can defeat summary judgment by demonstrating the evidence, taken as a whole, could lead a rational trier of fact to find in their favor. *Id.*

### A. Breach of Fiduciary Duties Claims Against Holley and McBride

The Tuckers say indisputable evidence shows Holley and McBride breached their fiduciary duties to them as shareholders of LTNC and to Tucker as an officer and director of both Takeover and LTNC when they (1) misused Takeover funds for their personal use; (2) hid their corporate waste; and (3) failed to pay him the salary he earned while working for Takeover. (Doc. 237 at 10).

The Court has already determined that the Tuckers' claims for breach of fiduciary duty arising out of Holley and McBride's misuse of Takeover funds and corporate waste are derivative in nature and cannot proceed as a matter of law. In their briefing, the parties present slightly better versions of their arguments on the failure to pay Tucker an equal

salary. So, the Court will briefly address those points, resolution of which reinforces that this claim also cannot proceed as a matter of law.

In their Motion, the Tuckers say that in their "capacities as officers and directors of Takeover, Holley and McBride both pledged to Tucker that he would be paid 'equal' to them in 'monthly payments, draws and/or salary.' " (Doc. 237 at 11). But as has been noted, the assertion is not supported by the record. Holley and McBride did not make the promises in the July 2021 Agreement in their capacities as a director or officer of Takeover. The Agreement between the parties clearly states that Holley and McBride entered into the Agreement in their capacity as shareholders of Labor Smart and Takeover and/or in their individual capacities. In the absence of authority otherwise, the alleged breaches of a shareholder agreement between shareholders Holley and McBridge and Tucker as an individual does not give rise to a breach of fiduciary duty claim for Tucker's unpaid compensation. This claim fails as a matter of law and accordingly, the Tuckers have not met their burden for these claims on summary judgment.

**B. Breach of Contract Claims Against Holley and McBride**

The Tuckers say they have met their burden of establishing that Holley and McBride breached the July 2021 Agreement and that the amount of damages is the only issue that needs to go to the jury.

Pointing to the July 2021 Agreement, Tucker says Holley and McBride promised him 25% of the shares/ownership in Takeover and that he was entitled to receive equal amounts of monthly payments, draws, and/or salary. (Doc. 237 at 13). He says Holley and McBride knew at the time they signed the Agreement that they could not give Tucker 25% of Takeover's shares. (*Id*. at 14 citing Doc. 237-2 at 279, Holley Dep. (affirming that because in July 2021 LTNC owed 100% of Takeover shares, and he and McBride owned zero Takeover shares, they could not have given Tucker 25% of Takeover's shares)). The Tuckers also produce accounting evidence reflecting payouts Takeover made to Holley and McBride in 2021, 2022, and 2023, and payments Takeover made to Tucker in 2021 and 2022. (Doc. 237-11 (payments to Holley, McBride, and Pavlik); and Doc. 237-14

(payments to Tucker)). They say this evidence shows payments Tucker received from Takeover were not equal to those received by Holley and McBride.

The July 2021 Agreement is governed by Arizona law. In Arizona, "[i]t is well established that, in an action based on breach of contract, the plaintiff has the burden of proving the existence of a contract, breach of the contract, and resulting damages." *Chartone, Inc. v. Bernini*, 83 P.3d 1103, 1111 (Ariz. Ct. App. 2004). Holley and McBride do not contest the facts underlying the alleged breaches or that Tucker has been damaged. They instead contest the existence of the July 2021 Agreement. They fail to articulate the grounds for this challenge, however, and the record before the Court does not support the contention.

The Amended Complaint alleged in part that the July 2021 Agreement specified the following terms:

> a. Holley, McBride, Pavlik, and Tucker were each to receive 25% of the shares in Takeover;
> b. Pavlik and Tucker were each to be named as Directors of Takeover;
> c. Holley, McBride, Pavlik, and Tucker were each entitled to receive monthly payments, draws and/or salary equal to each other;
> d. Holley, McBride, and Pavlik collectively held 51 Preferred Shares (17 shares each) in LTNC, which amounts equaled 51% of the voting rights in LTNC;
> e. 12 of the Preferred Shares were to be released to Tucker when LTNC received a "current" status from OTC Markets or another market, such as NASDAQ, NYSE, or an equivalent;
> f. In addition, when LTNC received a "current" status, Tucker was to receive 750M common shares of LTNC valued at the same rate as McBride's shares;
> g. None of the parties' LTNC shares could be diluted without "collective" agreement;
> h. Further changes to the Agreement had to be in writing; and
> i. The Agreement was governed by Arizona state law.

(Doc. 179 ¶ 29). In their Amended Answer (Doc. 184), Holley and McBride "allege the [July 2021 Agreement] speaks for itself. Notwithstanding the foregoing, Third-Party Defendants admit subparagraphs a, b, c, d, h, and i." (*Id.* ¶ 24). In their Response, Holley and McBride say, without any explanation, that their admission of certain terms "does ***not*** equate to admitting a contract between Mr. Tucker and HMP." (Doc. 246 at 7). They offer

no other reason why the July 2021 Agreement is not an enforceable contract. There is no contention, for example, that Holley or McBride did not sign the document or that they were defrauded into entering into it.

The Court rejects the contention that the July 2021 Agreement is not an enforceable contract. The Tuckers have presented uncontested evidence showing that Holley and McBride breached their promises to give Tucker 25% of Takeover shares and to pay him in equal amounts paid to them. They have also sufficiently shown Tucker has been damaged as a result of the breaches, though the amount and kind of damage must be resolved by a jury. Accordingly, the Court will grant judgment, as to liability only, on the Tuckers' breach of contract claims for Holley and McBride's failure to deliver Tucker 25% of Takeover shares and failure to pay Tucker equal compensation.

### C. Defamation *Per Se* Claim Against McBride

The Tuckers have sued McBride for defamation *per se* stemming from various statements he made to employees and investors of Takeover and on a shareholder's podcast. (Doc. 179 ¶¶ 139–144). They say McBride has made false statements "claiming that Tucker uses false names on his passport; that Tucker travels under assumed names; that Tucker is wanted by 'organized crime' parties, and that Tucker is the reason that Takeover failed." (*Id.* ¶ 140). Without specifying, the Tuckers also say McBride "made multiple inflammatory comments and threats of violence to Tucker, his wife, and non-party Deppoleto, Jr." (*Id.* ¶ 142). In their Motion (but not specified in the Amended Complaint), the Tuckers say "there is undisputed evidence the McBride accused Tucker of theft (and, particularly theft of IP, which is his primary business); McBride accused Tucker of being hunted by the mob or the mafia; McBride accused Tucker of wire fraud/bank fraud; McBride accused Tucker of traveling under false passports; and, McBride accused Tucker of trying to commit insurance fraud." (Doc. 237 at 15). The Tuckers have provided the Court with screenshots (Doc. 237-10) and copies of the podcast video and say this evidence conclusively establishes McBride's liability on this claim.[18] These statements were

[18] The Tuckers also cite to their Exhibit 11 (Doc. 237 at 14), but this exhibit is a summary of payments made to Takeover principals and is irrelevant to this claim.

allegedly made in Nevada and the parties agree that Nevada law applies to the claim.

In Nevada, "an action for defamation requires the plaintiff to prove four elements: '(1) a false and defamatory statement; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages.' " *Clark Cnty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 213 P.3d 496, 503 (Nev. 2009) (cleaned up). However, if the defamatory communication imputes a "person's lack of fitness for trade, business, or profession," or tends to injure the plaintiff in his or her business, it is deemed defamation *per se* and damages are presumed. *Id*. "A claim for defamation *per se* primarily serves to protect the personal reputation of an individual." *Id*. at 504.

"There can be no liability for defamation without proof of falsity," and the plaintiff bears the burden of proof regarding the statement's falsity. *Gordon v. Dalrymple*, 2008 WL 2782914, at *3 (D. Nev. July 8, 2008) (citing *Nevada Ind. Broad. Corp. v. Allen*, 664 P.2d 337, 412 (Nev. 1983)). Whether a statement is false is generally a question for the jury. *Nevada Ind. Broad. Corp.*, 664 P.2d at 413.

McBride says the Tuckers are not entitled to summary judgment on this claim because they have not proven the statements' falsity. Indeed, for the Tuckers to prevail, they must prove the falsity of McBride's statements because they bear the burden of proof on that element at trial. The Tuckers point out that McBride has never raised a truth defense in this case. And while that may be true, the burden is on the Tuckers to first establish the falsity of the allegedly defamatory statements. The Court notes that the Tuckers do not cite to any deposition testimony that would otherwise confirm the falsity of McBride's statements. Though McBride does dispute the authenticity of the video podcast segments and said he was "not proud" of his appearance, none of his testimony addresses the specific statements the Tuckers allege are defamatory. (*See generally* McBride Depo at Doc. 237-4 at 296–99). Accordingly, though McBride may have an uphill battle defending this claim before a jury, the Tuckers have not met their burden on summary judgment to show these defamatory statements are false. This claim will go to the jury.

/ / /

**D. Conclusion**

In summary, the Tuckers are entitled to summary judgment on their breach of contract claims against Holley and McBride for failure to provide Tucker with 25% shares in Takeover and payment equal to the other Directors. Summary judgment as to the Tuckers' breach of fiduciary duty claims against Holley and McBride for improper use of Takeover funds, corporate waste, and failure to pay Tucker an equal salary is denied because these claims are insufficient as a matter of law. Finally, because the Tuckers have not yet met their burden of showing McBride's allegedly defamatory statements about Tucker are false, summary judgment on this claim would be premature and will be denied.

In accordance with the above,

**IT IS ORDERED** that LTNC and TPDs' Motion for Partial Summary Judgment (Doc. 239) is **granted in part and denied in part**. The following claims of the Tuckers' shall be **dismissed**:

- Tuckers' Counterclaim II for abuse of process claim against LTNC in its entirety, and to the extent alleged, any Third-Party Claim II for aiding and abetting tortious conduct arising out abuse of process claim against Holley, McBride, Pavlik, and Zarro;
- Tuckers' Third-Party Claim I for breach of fiduciary duty claims against Holley, McBride and Pavlik arising out of their use of Takeover funds for personal use (a); hiding corporate waste (b); failing to pay Tucker funds/salary earned while working for Takeover (e); and assisting in the fraudulent avoidance of Takeover debt by creating a new company to shield assets and avoid debt (h); and
- Tuckers' Counterclaim and Third-Party Claim V for conspiracy to commit fraudulent transfer against LTNC, Next Gen, Holley, McBride, Pavlik, and Zarro in its entirety.

**IT IS FURTHER ORDERED** that **Battleship, Inc.** and **Oak Creek Wellness, Inc.** shall be **added as Plaintiffs in this matter and substituted** for the Tuckers in the Tuckers' Third-Party Claim I for breach of fiduciary duties arising out of the unlawful

restriction of their LTNC shares claims against Holley, McBride, and Pavlik and the Tuckers' Third-Party Claim II for aiding and abetting LTNC in the wrongful restriction of their shares against Holley, McBride, and Pavlik. **Counsel for Battleship and Oak Creek Wellness shall file a Notice of Appearance within five (5) days of this Order.**

**IT IS FURTHER ORDERED** that Tuckers' Motion for Partial Summary Judgment (Doc. 237) is **granted in part and denied in part**. The Motion is **denied** as to the Tuckers' claims that Holley and McBride have breached their fiduciary duties as alleged in Third-Party Claim I and that McBride has defamed Tucker as alleged in Third-Party Claim IX. The Motion is **granted** as to the Tuckers' Third-Party Claim III for breach of contract against Holley and McBride regarding their failure to provide him 25% of Takeover shares and to pay him in equal distributions in accordance with the July 2021 Agreement.

**IT IS FURTHER ORDERED** that in light of its bankruptcy and stay, and having been provided no indication that a request to lift the stay has been made to the bankruptcy court, the Tuckers' claims against Takeover Industries, Inc. are **dismissed** and **Takeover Industries, Inc. shall be dismissed from this matter.**

**IT IS FURTHER ORDERED** that the docket shall reflect the updated status of the parties in this litigation. Jason and Melissa Tucker, Battleship, Inc. and Oak Creek Wellness shall be identified as the **Plaintiffs**. Labor Smart, Inc., Next Gen Beverages, LLC, Michael and Chirine Holley, Toby McBride, Joseph Pavlik, and Thomas and Kimberly Zarro shall be identified as the **Defendants**.

**IT IS FINALLY ORDERED** that the Tuckers shall file and serve their Notice of Readiness for Pretrial Conference within **ten days** of this Order. (Doc. 212 at 7). Within ten days of this Order, the parties may also seek a referral to a United States Magistrate Judge for a settlement conference.

Dated this 18th day of September, 2026.

Honorable Diane J. Humetewa
United States District Judge